## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1507 (SLR) |
| ) | Honorable Sue L. Robinson |
| BATH & BODY WORKS, INC., ) | JURY TRIAL DEMANDED |
| and ) | |
| LIMITED BRANDS, INC., ) | |
| and ) | |
| KAO BRANDS CO. (f/k/a THE ANDREW ) | |
| JERGENS COMPANY), ) | |
| and ) | |
| KAO CORPORATION, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF CHRISTOPHER T. RHODES

        FOX ROTHSCHILD, L.L.P.
        Francis G.X. Pileggi (Del. Bar No. 2624)
        Sheldon K. Rennie (Del. Bar No. 3772)
        919 North Market Street, Suite 1300
        Wilmington, Delaware 19801
        Phone: (302) 655-3667
        Fax: (302) 656-8920

        *Attorneys for Defendants Bath & Body*
        *Works, Inc. and Limited Brands, Inc.*

OF COUNSEL:

WARD & OLIVO
John F. Ward
David M. Hill
Michael J. Zinna
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

## **TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS .......................................................1

II. STATEMENT OF FACTS ......................................................................................1

    A. Rhodes' Conclusion that Orange Oil Cleans at Less Than 5.0% Is Based Primarily on the '485 Patent .......................................................................1

    B. Rhodes Bases His Expansion of the pH Range on a Hunch ........................2

III. ARGUMENT...........................................................................................................3

    A. The Standard for Admissibility of Expert Testimony..................................3

    B. Rhodes' Testimony That Orange Oil Cleans at 5.0% or Lower Should Be Excluded Because It Is Not Based on a Reliable Methodology ..................6

    C. Rhodes Testimony Regarding Expanding the pH Range Should Be Excluded Because It Is Not Based on a Reliable Methodology ..................8

IV. CONCLUSION......................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................ 3-6, 9

*Heller v. Shaw*, 234 F.3d 136 (3d Cir. 2000) ................................................................... 9

*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994) .......................... 3-6

*Izumi Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F.Supp.2d 589 (D. Del. 2004) ................................................................................................................. 3-6

*Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999) ............................................... 5

*O'Connell v. LeBloch*, 2000 Del. Super. LEXIS 128 (Sup. Ct. April 19, 2000) ................ 6

*Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2000) ....................................................... 6

*State Farm Fire and Casualty Co. v. Holmes Products*, 165 Fed. Appx. 182 (3d Cir. 2006) ........................................................................................................................... 4

*Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998) ................................................................. 4

**Statutes**

Rule 702, Federal Rules of Evidence .......................................................................... 1, 3, 4

Rule 104, Federal Rules of Evidence .................................................................................. 6

I.  **NATURE AND STAGE OF PROCEEDING**

Plaintiff LP Matthews, L.L.C. ("plaintiff" or "LPM") filed an action against the Limited Defendants alleging that certain of the Limited Defendants' products infringe United States Patent No. 5,053,062 ("the '062 patent"). (Attached as Exhibit 1). All parties exchanged expert reports on February 28, 2006 and rebuttal reports were exchanged on March 31, 2006 as set forth in ¶ 2(c)(1) of the Court's Scheduling Order. Plaintiff's expert, Christopher T. Rhodes, Ph.D., submitted an expert report (attached as Exhibit 2), a supplemental expert report (attached as Exhibit 3) and a responsive report (attached as Exhibit 4), purporting to provide opinions for LPM on infringement and validity.

The Scheduling Order stated that expert discovery closed on May 12, 2006. Rhodes was deposed on April 26 through April 28, 2006. The Court's Scheduling Order at ¶ 2(c)(3) set June 22, 2006 as the deadline for all *Daubert* motions and objections.

The Limited Defendants herein move to exclude the expert testimony of Rhodes specifically as it relates to (1) the ability of orange oil to clean at less than 5.0 % and (2) expanding the pH range from the 4.5 to 6.0 called for by Claim 6 to 4.0 to 6.5 – a range that appears nowhere in the '062 patent. These opinions violate F.R.E. 702 because they are pure speculation.

II.  **STATEMENT OF FACTS**

    A.  <u>Rhodes' Conclusion that Orange Oil Cleans at Less Than 5.0% Is Based Primarily on the '485 Patent</u>

Rhodes concludes that orange oil can clean at levels of 5.0% or lower based on United States Patent No. 5,013,485 ("the '485 Patent"). (Exhibit 2, page 4). At his deposition, Rhodes stated that he also based this conclusion on testing described in the

-1-

'062 patent and his knowledge of cosmetics and lotions, and particularly surfactants. (Rhodes' Deposition, page 159, lines 4-12 and page 160, lines 12-22). (A copy of the relevant pages from Rhodes' deposition are attached as Exhibit 6).

Rhodes' position ignores the fact that the '485 patent discloses a cleaning composition comprised of three cleaning components. Orange oil is only one of the three. There is no support for his conclusion that as little as 0.01% orange oil will provide any cleaning effect in the absence of the other two cleaning components. Certainly, the '485 patent does not say so. Rhodes also ignores that the '485 patent does teach that 0.1 and 1.0% orange oil (in combination with the other cleaning components) works effectively, while 10% orange oil does not. (The '485 patent, Table 2). In other words, the '485 patent teaches away from the patent-in-suit, which clearly states that as little as 5.0% orange oil may be used, but at least 25% is preferable. (Exhibit 1, col. 6, lines 56-61).[1]

      B.      <u>Rhodes Bases His Expansion of the pH Range on a Hunch</u>

Rhodes asserts that the pH range of Claim 6, i.e., "4.5 to 6.0 inclusively" should be expanded to 4.0 to 6.5 based on what is and what is not disclosed in the '062 patent (i.e. its failure to indicate how to measure the pH). (Exhibit 2, page 5). Rhodes' Expert Report describes the colorimetric and potentiometric measurement of pH, and then concludes that the '062 patent "clearly suggests" imprecise values, "suggesting that the colorimetric method would be sufficient." (Exhibit 2, pages 5-6). Since most (but not all) of the pH values in the patent disclose pH as an integer or exact half of a pH unit,

---

[1] It is interesting to note that the '485 patent is prior art that does teach that orange oil may be used as a cleaner, at least at concentrations less than 10%. If one wanted to adapt such a cleaner for use on skin, it would have been obvious to add oatmeal for its skin-soothing qualities – Aveeno has been doing this with its skin products for generations.

Rhodes believes this "clearly indicates that the inventors were using an implied precision of plus or minus 0.5 of a pH unit or greater." (Exhibit 2, pages 5-6). (Exhibit 6, page 357, line 10 through page 358, line 16).

Here, Rhodes pays lip service to the '062 patent, but again conveniently ignores the many teachings that run counter to his hypothesis. First, since the patent teaches that preferred embodiments (i.e., Samples IV and V) have pHs of 5.0 and 5.5, respectively, it appears the inventors have already expanded their range by 0.5 pH units on either end. (Exhibit 1, col. 8, lines 19-21). Rhodes' additional expansion is overkill. Second, the '062 patent clearly shows that samples having a pH under 4.5 or over 6.0 do not work. (Exhibit 1, col. 5, lines 53-60 and col. 6, lines 15-24). Rhodes does not explain why the claimed pH range should be broadened to cover non-working samples.

### III.    ARGUMENT

####     A.    The Standard for Admissibility of Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Izumi Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F.Supp.2d 589, 600 (D. Del. 2004). Rule 702 states "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Rule 702 contemplates some degree of regulation of the subjects and theories about which an expert may testify". *Izumi Products*, 315 F.Supp.2d at 600 (*quoting*

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)).  *See also In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 741-743 (3d Cir. 1994) ("*Paoli II*").

The "proposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.  *See also Izumi Products*, 315 F.Supp.2d at 600.  The requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.  *Daubert*, 509 U.S. at 590.  In addition to being reliable, the proffered expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 591.  The Third Circuit has construed Rule 702 to embody "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." *Izumi Products*, 315 F.Supp.2d at 600 (*quoting Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 1998)).

To qualify as an expert witness, he or she "must have sufficient qualifications in the form of knowledge, skills, and training" in the proposed area of testimony.  *Izumi Products*, 315 F.Supp.2d at 600.  *See Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998). Specialized knowledge can be in the form of academic training and credentials as well as practical experience.  *Waldorf*, 142 F.3d at 625 (citations omitted).  The Third Circuit has previously stated that the policy of liberal admissibility of expert testimony "extends to the substantive as well as the formal qualification of experts." *Id.*  At a minimum, the expert must have skills or knowledge greater than the average layman. *Id.* (*quoting Aloe Coal Co. v. Clark Equip. Corp.*, 816 F.2d 110, 114 (3d Cir. 1987)).

Rule 702 examines the method used by the expert in reaching his/her conclusions or opinions.  *Daubert*, 509 U.S. at 594-595.  An expert's opinion is reliable if it is based on valid scientific analysis or methodology, rather than "subjective belief or unsupported

-4-

speculation." *State Farm Fire and Casualty Co. v. Holmes Products*, 165 Fed. Appx. 182 (3d Cir. 2006) (*citing Paoli II*, 35 F.3d at 742). *See also Izumi Products*, 315 F.Supp.2d at 600. "The expert must have 'good grounds' for his or her belief." *Izumi Products*, 315 F.Supp.2d at 600 (*quoting Paoli II*, 35 F.3d at 742). The Third Circuit has set forth the following factors as a non-exclusive list for courts to consider when determining whether an expert's scientific methodology is "reliable":

> (1) whether a method consists of a testable hypothesis;
>
> (2) whether the method has been subjected to peer review;
>
> (3) the known or potential rate of error;
>
> (4) the existence and maintenance of standards controlling the technique's operation;
>
> (5) whether the method is generally accepted;
>
> (6) the relationship of the technique to methods which have been established to be reliable;
>
> (7) the qualifications of the expert witness testifying based on the methodology; and,
>
> (8) the non-judicial uses to which the method has been put. *Izumi Products*, 315 F. Supp. 2d at 600-601 (*citing Paoli II*, 35 F.3d at 742); *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999).

The judge has considerable leeway in evaluating reliability and can consider the "specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Izumi Products*, 315 F.Supp.2d at 601 (*quoting Kumho Tire Co., Ltd.*, 526 U.S. at 152).

The proffered testimony must also "fit" the case – it must be relevant and it must assist the trier of fact. *Id.* The "fit" requirement mandates a "valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Paoli II*, 35 F.3d at 743 (*quoting Daubert*, 509 U.S. at 591). This requirement applies to each step in an expert's analysis, including the step that connects the work of the expert to the particular case.

*Paoli II,* 315 F.3d at 744. "Any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Id.*, at 745.

The trial judge acts as the gatekeeper to ensure that all expert testimony admitted meets the requirements of qualification, reliability and fitness. *Daubert*, 509 U.S. at 597; *O'Connell v. LeBloch*, 2000 Del. Super. LEXIS 128, *8 (Sup. Ct. 2000). (Attached as Exhibit 5). The court must determine at the outset whether the witness proposes to testify to (1) scientific or specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue pursuant to F.R.E. Rule 104. *Izumi Products*, 315 F.Supp.2d at 601 (*quoting Daubert*, 509 U.S. at 597). The judge must conduct a preliminary assessment to ensure the expert's testimony fulfills these three requirements. *Id. See also Paoli II*, 35 F.3d at 743-744. The party proffering the expert testimony must prove by a preponderance of the evidence that the opinion testimony is reliable. *Id.*; *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000).

    B.    <u>Rhodes' Testimony That Orange Oil Cleans at 5.0% or Lower Should Be Excluded Because It Is Not Based on a Reliable Methodology</u>

At the outset, the Limited Defendants should make it clear that they do not dispute Dr. Rhodes' qualifications. Rather, it is clear that the shortcomings in his testimony stem from the fact that plaintiff tied Dr. Rhodes' hands here. He was not allowed to do any of his own testing, even though he is more than capable of running tests along the lines of those conducted by the Limited Defendants' expert. Measuring pH values or cleaning capabilities at orange oil concentrations less than the 5.0% minimum disclosed by the '062 patent would have been simple for Dr. Rhodes. Yet he did no testing whatsoever.

It is therefore incontrovertible that Rhodes' testimony and conclusions regarding orange oil cleaning at 5.0% concentration or lower is not based on sufficient facts or data, and does not follow a reliable method, because he followed no method and produced no facts or data. His opinions on this topic should, therefore, be excluded.

There are fundamental problems with relying solely on patents for your opinions, as Rhodes does here. First, Rhodes is forced to presume that the patents in question are completely accurate. But patents are not peer-reviewed scientific documents. They frequently contain significant, and sometimes fatal, inaccuracies. For example, Rhodes takes on faith that the samples reported in the '062 and '485 patents are accurate and reproducible – when there is nothing but uncorroborated inventor testimony that any sample was even prepared.

More critically, when Rhodes presumes that orange oil at less than 5.0% will clean because the '062 patent reports some weak cleaning at 5.0% and even at 12.5%, he does so in disregard of actual testimony from one of the co-inventors. Phillip Low testified that they ran tests with orange oil concentration down almost to 0.0%. The claimed range (i.e., 5.0 – 60%) represented the compositions that best fit the objectives of their cleaning composition.

Rhodes' method of referring to patent disclosures has no standards or controls to ensure that the results are accurate, nor is the method generally accepted in the scientific community. That is, scientists would not make conclusions based on unreliable data, or nonexistent data. Scientists, by their very nature, are skeptical and require results in the form of numbers and quantifiable data before they will draw conclusions. Extrapolations, inferences and educated guesses are traditionally based on known quantities and known

properties of substances in tested conditions. Here, however, no testing conditions or quantifiable data exists to support the contention orange oil cleans at 5.0% or lower. Although Rhodes refers broadly to his experience to fill the gap, the methodology is suspect and is more akin to a subjective believe than it is an educated analysis and conclusion.

At a minimum, the scientific method requires preparation and testing of actual samples – Rhodes admits he did not do this.

   C. <u>Rhodes Testimony Regarding Expanding the pH Range Should Be Excluded Because It Is Not Based On a Reliable Methodology</u>

Rhodes conveniently ignores that many teachings of the scientific community that run counter to his hypothesis for expanding the pH range. The '062 patent teaches preferred embodiments that have pHs of 5.0 and 5.5. (Exhibit 1, col. 8, lines 19-21). The inventors already expanded on the pH of preferred embodiments by +/- 0.5 pH point when they claimed the range 4.5 to 6.0. (Exhibit 1, col. 6, lines 24-27). Rhodes additional expansion of the pH range is overkill. Second, the '062 patent clearly demonstrates that the samples tested with pH's outside the 4.5 to 6.0 pH range do not work. (Exhibit 1, col. 5, lines 53-60 and col. 6, lines 15-24). Rhodes offers no explanation for why the claimed pH range should be broadened to include these non-working samples.

Further, the term "inclusive" is a term of art in patent claim language. It simply means that the endpoints are included in the range. Without the addition of "inclusively" in Claim 6, we would argue (as has been done in the past) that a range <u>*between*</u> 4.5 and 6.0 does not include either 4.5 and 6.0 but only the numbers between the endpoints. The addition of "inclusively" makes it clear to one familiar with patent parlance, that 4.5 and

6.0 were intended to be covered. During his deposition, Dr. Rhodes admitted that he was unfamiliar with this usage of "inclusively". That being the case, there is no support, scientific or otherwise, to interpret a pH "within a range of 4.5 to 6.0, inclusively" as anything other than a range starting at 4.5 and ending at 6.0.

In conclusion, no connection exists between the use of the patent language and Rhodes opinion expanding the pH range. Language in the patent such as "approximate" and the patent's failure to "require any particular method of measuring pH" does not qualify as scientific data generally accepted by the scientific community or established as reliable. Rhodes merely infers from patent language that the pH range can be expanded. The patent does not qualify as reliable or trustworthy data, nor does it support Rhodes' conclusion. *See Daubert*, 509 U.S. at 590. Scientists ordinarily rely on data and numbers or similar *quantifiable* results as a basis for their conclusions. Rhodes' testimony clearly does not use any reliable data or any reliable scientific method.

Rhodes technique has no relationship to other established methods in the relevant art which are known to be reliable indicators of pH range (i.e., the colorimetric and potentiometric methods). Rhodes' brief description of the colorimetric and potentiometric methods, the methods used and accepted in the scientific community to evaluate pH, was not used as a basis for expanding the pH range. This expert conclusion does not "fit" the case – Rhodes' conclusion does not reliably flow from the few facts known to Rhodes and employed in his methodology. *See Heller v. Shaw*, 234 F.3d 136, 146 (3d Cir. 2000).

Rhodes' testimony is clearly based on his subjective belief and interpretation of patent language, and qualifies as unsupported speculation. Accordingly, Rhodes' testimony on this subject should be excluded.

## IV. CONCLUSION

For the foregoing reasons, the Limited Defendants respectfully request this Court to exclude the expert testimony of Rhodes relating to orange oil cleaning at 5.0% or lower, and expanding the pH range by +/- 0.5 pH points.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated: June 22, 2006

By: /s/ Francis G.X. Pileggi
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
Fox Rothschild, LLP
Suite 1300
919 North Market Street
Wilmington, Delaware 19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com
E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath and Body Works, Inc.
Limited Brands, Inc