IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | |
| | ) | **<u>REDACTED PUBLIC VERSION</u>** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1507-SLR |
| | ) | |
| BATH & BODY WORKS, INC.; LIMITED | ) | |
| BRANDS, INC.; KAO BRANDS CO. | ) | |
| (f/k/a THE ANDREW JERGENS | ) | |
| COMPANY); and KAO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**LP MATTHEWS' OPENING MEMORANDUM SUPPORTING ITS *DAUBERT* MOTION
TO STRIKE THE EXPERT REPORTS AND EXCLUDE THE TRIAL TESTIMONY OF
THE LIMITED DEFENDANTS' LIABILITY EXPERT, JOHN C. CARSON**

ASHBY & GEDDES
Steven J. Balick, Esq. (I.D. # 2114)
John G. Day, Esq. (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Office: 302-654-1888

*Of Counsel:*

*Counsel for Plaintiff LP Matthews*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Office: 800-553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
Office: 202-775-0725

Dated: June 27, 2006

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

SUMMARY OF THE ARGUMENT ......................................................................... 1

FACTUAL BACKGROUND .................................................................................... 1

    1.    The Patent-in-Suit ................................................................................ 1

    2.    Mr. Carson is Not an Expert in Orange Oil or Oats .......................... 2

    3.    Mr. Carson's Literature-Based Opinions Are Confused and Depend
        Upon Expertise He Does Not Have ..................................................... 4

    4.    Mr. Carson's Experiments Did Not Happen, Do Not Employ the
        Scientific Method, Or Would Not Survive Peer Review ..................... 5

    5.    Mr. Carson Did Not Apply the Correct Legal Standards .................. 10

ARGUMENT ......................................................................................................... 10

    1.    Mr. Carson's Experiment-Based Opinions Are Not Reliable Because
        His Experiments Fail the Scientific Method ..................................... 11

    2.    Mr. Carson's Invalidity Opinions Do Not Have Good Grounds
        Because He Did Not Apply the Critical Burden of Proof ................. 12

    3.    Mr. Carson's Unenforceability Opinions Do Not Have Good Grounds
        Because the Inventors Could Have Reached Different Results ......... 12

CONCLUSION ...................................................................................................... 13

## TABLE OF AUTHORITIES

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)....................................................................................10, 11, 13

*Kuhmo Tire Co., Ltd., v. Carmichael*,
  526 U.S. 137 (1999).........................................................................................10, 11

*National Presto Indus., Inc. v. West Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996)...................................................................................12

*In re Paoli Railyard PCP Litig.*,
  35 F.3d 717 (3d. Cir. 1995)......................................................................................12

*Zuchowicz v. U.S.*,
  140 F.3d 381 (2d Cir. 1998)......................................................................................10

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. filed a Complaint for patent infringement against defendants Kao Brands Company (formerly known as The Andrew Jergens Company), Kao Corporation, Limited Brands, Inc., and Bath & Body Works, Inc. (D.I. 1.) LP Matthews amended its Complaint on February 2, 2005. (D.I. 5, 8.) This Court entered a Scheduling Order on June 9, 2005. (D.I. 39.) Expert discovery closed on May 12, 2006. (*Id.* at 1.) *Daubert* motions must be filed by June 22, 2006. (*Id.* at 3.)

## SUMMARY OF THE ARGUMENT

LP Matthews submits this memorandum in support of its motion to strike the expert report, opinions, and proffered trial testimony of defendants Bath & Body Works, Inc.'s and Limited Brands, Inc.'s ("the Limited defendants") purported liability expert, John C. Carson. Mr. Carson's opinions and alleged experiments do not meet the standards for reliability required to be presented to a jury. His opinions depend upon expertise he admits to not having and subjective, self-evaluated experiments so devoid of scientific method that he admits they would not survive scrutiny by his peers.

LP Matthews does not seek the exclusion of Mr. Carson's proposed expert testimony based on the *conclusions* he reached. Rather, this motion seeks to exclude his testimony based on the *inadequate methodology* he used. This distinction between inadequate methodology on the one hand, and the purported expert's conclusions, on the other hand, lies at the heart of a proper *Daubert* inquiry.

## FACTUAL BACKGROUND

### 1.    The Patent-in-Suit

The United States Patent and Trademark Office ("PTO") issued United States Patent No. 5,063,062 ("the '062 patent") to Douglas Greenspan and Philip Low on November 5,

1

1991. The '062 patent claims compositions for cleaning human skin that contain orange oil,

an oat ingredient, and a moisturizer. (Ex. A at 9:3-10:25.) LP Matthews asserts that the

Limited defendants infringe claims 6 and 9 of the '062 patent by making and selling 28

accused products. Claim 9 reads:

> A cleaning composition for use on human skin comprising
> forty-five percent (45%) or less by volume of orange oil, forty-
> five percent (45%) or less by volume of oatmeal and a
> pharmaceutically acceptable moisturizer.

(*Id.* at 10:13-18.) Claim 6 contains a pH limitation and requires an "oat grain derivative

product as an emulsifying agent." (*Id.* at 10:1-6.) Thus, the relevant fields of the '062 patent

are skin-cleaning compositions, orange oil, oats, moisturizers, and pH (analytical chemistry).

On February 28, 2006, the Limited defendants served an "Expert Report of John C.

Carson, M.S. Regarding Greenspan United States Patent No. 5,063,062." (Ex. B.) There,

Mr. Carson concludes that the '062 patent is (1) invalid under 35 U.S.C. §§ 103 and 112 and

(2) unenforceable because of a breached duty of candor to the PTO. On March 31, 2006, the

Limited defendants served a "Rebuttal Expert Report of John C. Carson, M.S. Regarding

Greenspan United States Patent No. 5,063,062." (Ex. C.) There, Mr. Carson concludes that

none of the Limited defendants' 28 accused products infringe either claim 6 or 9. This report

also purports to rebut LP Matthews' expert, Dr. Christopher Rhodes's opening expert report

in which Dr. Rhodes opines that those 28 products infringe either claim 6 or claim 9 (or

both). (Ex. D.)

### 2.    Mr. Carson is Not an Expert in Orange Oil or Oats

Mr. Carson candidly admitted,    **REDACTED**    in oranges and

orange oil. (Ex. E at 246.) He confirmed that lack of expertise:

**REDACTED**

2

**REDACTED**

(*Id.* at 264-65.) Mr. Carson also admitted he is not an expert in hydrocarbon terpenes like

limonene, a molecule found in all citrus fruits:

**REDACTED**                                    (*Id.* at 151

(emphasis added).)  Finally, even though some orange oils in the accused products were

purportedly added as components in flavors or fragrances, Mr. Carson readily volunteered

that          **REDACTED**          (*Id.* at 439.)

He also qualified his answers concerning oat ingredients in the accused products with

his                                    Again, he directly confirmed this:

**REDACTED**

(*Id.* at 264.) Notwithstanding this lack of expertise, Mr. Carson opines, apparently based

solely on literature review or his own experiments, that claims 6 and 9 of the '062 patent are

---

[1] The Limited defendants have asserted a defense that Mandarin oranges are not oranges.

not valid and not infringed by the Limited defendants.  (Exs. B, C.)

### 3.    Mr. Carson's Literature-Based Opinions Are Confused and Depend Upon Expertise He Does Not Have

Mr. Carson's infringement opinions (Ex. C) depend upon his analysis of oranges and oats.  For example, Mr. Carson concludes in his report that orange oil has a cleaning effect at [2] (Ex. C at 10-12.)  During his deposition, however, he testified that

**REDACTED**                                      (Ex. E at 325.)  Nowhere did Mr. Carson identify a factual basis for that cutoff.[3]

Mr. Carson defines in his infringement report the claim term "oat grain derivative." (Ex. C at 14-16.)  He did not actually define the claim term "oatmeal" in his report.  (Ex. C at 16-17.)  Later, however, he testified                **REDACTED**                (Ex. E at 259.)

Mr. Carson's Section 103 validity opinions depend upon his analysis of prior art references that disclose d-limonene *and not* orange oil.  Mr. Carson opines that the Dellutri and Coleman references – which the Limited defendants' attorneys gave him – make obvious claims 6 and 9 of the '062 patent (when combined with other references).  (*See* Ex. B at 5-6 and Appendix C.)  His report does not say either reference discloses orange oil.  He testified that neither does.  (Ex. E at 203,[4] 216-17[5].)

---

[2] He did not dispute the calculations Dr. Rhodes made to determine the amount of orange oil in the accused products.

[3] Dr. Rhodes concluded based on an issued patent owned by the Kao defendants that orange oil has a cleaning effect at volumes as low as 0.01%.  (Ex. D at 4-5.)

[4]

[5]

**REDACTED**

Both references disclose d-limonene, which Mr. Carson's report seems to treat as interchangeable with orange oil for purposes of invalidating the '062 patent. (Ex. B at 4-7.) But he testified they behave (chemically) different. (*Id.* at 163-64.) He could not, apparently owing to his lack of expertise, explain the reason for those differences. (*Id.* at 162-164.)

### 4.    Mr. Carson's Experiments Did Not Happen, Do Not Employ the Scientific Method, Or Would Not Survive Peer Review

Mr. Carson based his Section 112 validity opinion, his unenforceability opinion, and the oat portion of his infringement opinion on his own alleged experiments with orange oil and oats. (*See* Ex. B at 6-7 & Appendix D, Ex. D.) His experiments fall into two categories – cleaning experiments with orange oil and d-limonene, and emulsion experiments with oat ingredients in the accused products.

Mr. Carson described his own experiments:

**REDACTED**

(Ex. E at 360.) He said his experiments were

(*Id.* at 302.) He **REDACTED** submitting any of his studies in this case for peer review. (*Id.* at 361-62.) As he candidly admitted,

**REDACTED**

(*Id.* at 66-67.)

In his emulsion experiments, Mr. Carson experimented with oat ingredients in the accused products to see if he could form emulsions. He concluded from those experiments that **REDACTED** as required by claim 6 of the '062 patent. (Ex. B at Appendix D.) To reach that conclusion, Mr. Carson reported that he

calculated the "CMC" of each ingredient (a specific scientific calculation). (Ex. C at 16.)

When asked during deposition, however, he admitted that he did no such thing:

**REDACTED**

(Ex. E at 290.)

Although he did not perform those calculations, he apparently did conduct some cleaning experiments. He made up test products by roughly following two Examples from the '062 patent specification. (Ex. B at 5-7.) Mr. Carson's tests were subjective; he testified that different evaluators could reach different conclusions than he did from the tests that he did last year. (Ex. E at 75-76.) He concluded, however, that orange oil does not clean any better than d-limonene and that the applicants violated their duty of candor to the patent office by saying otherwise. (Ex. B at 5-7.) Notwithstanding this conclusion, he admitted that Messrs. Greenspan and Low could have reached different conclusions from their tests in 1989. (*Id.* at 105-06.) The ten unpaid family and friends that the inventors asked to test their invention presumably could have, too. (See Ex. A at 3:14-16.) Despite knowing about the potential for subjective variability, Mr. Carson did not even consider independent observers. (Ex. E at 325.) According to Mr. Carson, the scientific method teaches us to use independent observers if subjective evaluation must be used, but to avoid such methods if possible. (*Id.* at 112-14.)

That is one of seven (7) elements of the scientific method Dr. Christopher Rhodes identified as critical failures in Mr. Carson's experiments. He spent over 5 pages parsing those failures: "(1) sufficiency of description of experimental methods[6], (2) selection of

---

[6] Dr. Rhodes did not have the benefit of Mr. Carson's laboratory notebook that was not produced until Mr. Carson's deposition, well after the deadline for rebuttal reports. Asserting claims of attorney work product, the *Footnote continued on next page...*

representative samples, (3) replication of test methods and statistical evaluation of data, (4)

use, whenever possible, of quantitative, objective measurements of results, (5) if subjective

methods have to be used, sufficiency of replicates by independent observers, (6) validation of

methods, and (7) reliability of inferences." (Ex. F at 7.) Mr. Carson agreed that each of

these seven elements is important. (Ex. E at 112-14.) LP Matthews respectfully refers to Dr.

Rhodes' Report for the articulation of these failures. (*See* Ex. F at 6-11.)

       These are not the only deficiencies, as became apparent during Mr. Carson's

deposition. Mr. Carson considered and rejected using quantitative, objective measurements

that would have been easy to conduct in favor of his subjective tests. He testified that several

instruments, including a scale for gravimetric analysis[7] or a reflectometer,[8] were available for

his cleaning experiments. (Ex. E at 61-68, 79-81, 104-05, 404-05.) Instruments also were

available for his emulsion experiments, but he elected not to use those either. (Ex. E at 320-

322.) The instruments prevent subjective variation in results interpretation by separate

observers. (*Id.* at 66-68.) They yield more precise results for his cleaning experiments. (*Id.*

at 61-68, 79-81, 104-05, 404-05.) Mr. Carson had access to these instruments – including

---

*... footnote continued from previous page*

Limited defendants' counsel improperly withheld the notebook until Mr. Carson's first deposition, after expert reports were filed. At that deposition, LP Matthews learned that the Limited defendants' counsel also had photographs depicting Mr. Carson's experiments, which also were improperly withheld under claims of attorney work product. (*E.g.* Ex. E at 57-60.) At Mr. Carson's second deposition, necessitated by that litigation conduct, LP Matthews learned that photographs were still missing. (Ex. E at 362-64.) The Limited defendants produced those photographs after the close of fact discovery and did not offer Mr. Carson again. Yet counsel for Limited defendants withheld the photographs (and his laboratory notebook) on the basis of attorney work product.

     According to Mr. Carson, "with the photographic record we can have all of the evaluators that we want." (Ex. E at 72.) All but one: Dr. Rhodes could not evaluate the photos in his rebuttal report. Mr. Carson would be the second witness to appear for deposition three times as a result of the Limited defendants' litigation conduct. He already was the third witness to appear twice for that reason.

[7] Gravimetric instruments are scales used to measure weight loss after cleaning.

[8] A reflectometer emits a light that reflects off the surface and is detected in a receiver. The reflectance is reported quantitatively by the machine.

five instruments for gravimetric measurements right in his home. (*Id.* at 63-64.) The

instruments are easy to use. (*Id.* at 64-68.) Conducting the objective experiments would be

easy:                    REDACTED                    (*Id.* at 87.)

Mr. Carson rejected these readily-available, quantitative, objective measurements in

favor of his subjective and unconfirmed tests because '                    REDACTED

REDACTED          .  (*Id.* at 82-84.)  He chose the '

(*Id.* at 67.)  Why?


REDACTED


***

REDACTED

(Ex. E at 405.) '          REDACTED                    (*Id.* at 85.)

Mr. Carson also did not use replicants, as Dr. Rhodes pointed out. Instead, he only

ran one test for each experiment.[9] (*Id.* at 71-72.) He testified, however, that his test results

contradict the very statements in the prosecution history of the '062 patent that were the

impetus for his tests in the first place. (*Id.* at 69-71.) Mr. Carson himself testified that

replicants are specifically important when test results contradict hypotheses or known

information. (*Id.* at 70.) Nevertheless, he didn't use replicants.

Mr. Carson also failed to use an appropriate substrate in his cleaning tests. According

to Mr. Carson, testing a cosmetic product for cleaning effect implicates the substrate to be

cleaned. (Ex. E at 41-42.) In the testing reported in the '062 patent, human skin is the

---

[9] See *supra*. Mr. Carson's laboratory notebook that was improperly withheld until after Dr. Rhodes' report
indicates that in two instances Mr. Carson repeated an experiment.

substrate. (Ex. A.) Mr. Carson agrees. (Ex. E at 106.) But Mr. Carson used tiles as his

substrate. (Ex. B.) Mr. Carson testified that using skin substrate would have had a different

result than in his experiments. (Ex. E at 107-08.) In fact, Mr. Carson expected to see *more*

cleaning on the skin. (*Id.* at 110.) Why? Mr. Carson pointed to        **REDACTED**

between the human skin and the tiles: skin and tiles do not have the same permeability, skin

is reasonably flexible and tiles aren't, skin has a different pH than tiles, skin is significantly

warmer than tiles were, and skin has hair and an electrical current that tiles do not have. (Ex.

E at 49-52.)

    In addition to using the wrong substrate, the unwanted materials Mr. Carson tried to

clean were not spread evenly or uniformly over the tile – he arbitrarily and capriciously

    **REDACTED**        (Ex. E at 379.) Mr. Carson did not scrub or otherwise use the test

products in a normal way – although he testified that scrubbing could influence the outcome

of his tests (he did not know how). (*Id.* at 421-22, Ex. A.) He also did not know if certain

    **REDACTED**        were oil or water soluble – a potentially significant difference. (Ex.

E at 370-74; *see also* 374-76.)

    Mr. Carson testified that other artifacts of his methods could have influenced his

results. For example, if Mr. Carson had used a blender to mix his compositions, orange oil

would disperse more uniformly throughout his emulsions. (Ex. E at 96-97.) That could

enhance the cleaning effects of the orange oil as opposed to d-limonene. (*Id.* at 100-02.)

    Mr. Carson's emulsion experiments used methods that were not identified in texts he

cited in his own report. (*Id.* at 302-04.) He didn't conduct his emulsion experiments

according to methods in the '062 patent. (*Id.* at 316-18.) He didn't use consistent methods to

mix his test products. (*Id.* at 318.) Sometimes Mr. Carson shook the bottle, sometimes he

mixed – shaking, he said, sometimes makes good emulsions and sometimes makes poor ones, which could give different results. (*Id.* at 320-21.)

In sum, Mr. Carson's experiments were not conducted in accordance with any recognized scientific method and are not supported by appropriate validation.

### 5.    Mr. Carson Did Not Apply the Correct Legal Standards

With respect to his Sections 103 and 112 opinions, Mr. Carson's report does not apply – or even discuss – the Limited defendants' burden of proof to prove invalidity. (*See* Ex. B.) He had not heard of the "clear and convincing evidence" burden. (Ex. E at 191-98.) Mr. Carson also did not know that his unenforceability opinion amounted to accusing the applicants of fraud on the patent office. (*Id.* at 273-76.) Mr. Carson lacks the knowledge, skill, experience, or training to render legal opinions on invalidity or unenforceability.

### ARGUMENT

Federal Rule of Evidence 702, which governs the admissibility of expert opinion testimony, provides that:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise…

Rule 702 imposes a special obligation upon a trial judge to ensure that proposed expert testimony will "assist the trier of fact" because that testimony is both "relevant" and "reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see Kuhmo Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 147 (1999)(district court judge must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). In fulfilling this screening function, the judge acts as a

"gatekeeper" for proposed expert testimony. See *Zuchowicz v. U.S.*, 140 F.3d 381, 386 (2d Cir. 1998). This gatekeeping function requires a preliminary assessment "of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. That is, to be admissible, expert testimony must be reliable and relevant.

### 1.    Mr. Carson's Experiment-Based Opinions Are Not Reliable Because His Experiments Fail the Scientific Method

To be reliable, expert opinion evidence must employ the same level of intellectual rigor that characterizes the practice of an expert in the that field. *See Kuhmo*, 526 U.S. at 147. In this case, Mr. Carson's opinions "must be derived by the scientific method" and "must be supported by appropriate validation." *Daubert*, 509 U.S. at 590.

Mr. Carson's opinions based on his cleaning and emulsion experiments fall spectacularly short of this standard. For his experiments, he did not select representative samples; he did not use the correct test substrate, skin, which he admitted could yield different results than his tiles; he did not replicate his tests (when even he said that would be appropriate because his results contradicted the '062 patent inventors); he did not statistically evaluate his data (and even reported calculations he did not make); he rejected using readily-available quantitative, objective measurements for subjective ones (purportedly to make his experiments easier); he did not use independent observers (in contrast to the inventors of the '062 patent); he did not validate his methods; he did not use reliable inferences; he used methods that are not described in scientific texts he cited; and he did not mix his test products consistently. Several of these deficiencies were intentional, purportedly done to make his test "easier." However, "easier" is not the appropriate standard for admissibility – reliability is.

Mr. Carson correctly described his subjective, self-evaluated, non-validated, non-peer-reviewable experiments as '     REDACTED

and                                        ' (Ex. E at 67,

82-83, 302, 360.) All he '     REDACTED

REDACTED     (*Id.* at 360.) His experiments fail the scientific method and his

opinions based on his experiments should be excluded.

**2.    Mr. Carson's Invalidity Opinions Do Not Have Good Grounds Because He Did Not Apply the Critical Burden of Proof**

Mr. Carson's invalidity opinions should be excluded because he did not have "good

grounds" for each step in his analysis underlying his opinions. *In re Paoli Railyard PCP*

*Litig.*, 35 F.3d 717, 745 (3d. Cir. 1995). Specifically, Mr. Carson ignored the critical burden

of proof in reaching his assertion that the asserted claims are invalid. The Limited

defendants' obviousness challenge to the validity of the '062 patent requires clear and

convincing evidence. *See National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1189

(Fed. Cir. 1996). Mr. Carson had not even heard of the clear and convincing evidence

standard. He cannot have applied it. His Section 103 and 112 invalidity opinions should

therefore not be admitted.

**3.    Mr. Carson's Unenforceability Opinions Do Not Have Good Grounds Because the Inventors Could Have Reached Different Results**

Mr. Carson's opinion that the '062 patent is not enforceable is inadmissible because

he admitted that the inventors (or anyone) could reach different conclusions from his own

tests, nevermind the tests the inventors conducted in 1989. In the face of this admitted

ambiguity, Mr. Carson's opinion is entirely conclusory and will only mislead and confuse the

trier of fact, and certainly not assist in understanding the evidence or determining a fact in

issue. Essentially, Mr. Carson opines that the inventors intentionally lied to the PTO, solely because his own subjective evaluation of his own tests was not the same as the inventors' statement in the file wrapper. But Mr. Carson admitted that Messrs. Greenspan and Low (or anyone else) might reach different conclusions from his test results. (*Id.* at 105-06; Ex. A at 3:14-16.) *Daubert* and its progeny do not permit Mr. Carson to opine that the inventors could have legitimately reached different results and then accuse them of fraud for doing so. His unenforceability opinion should not be admitted.

## CONCLUSION

For the foregoing reasons, LP Matthews requests that this Court grant LP Matthews' motion to strike Mr. Carson's expert reports and preclude his testimony at trial.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. # 2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Office: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Counsel for Plaintiff LP Matthews*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
Office:  800-553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C.  20006
Office:   202-775-0725

Dated: June 22, 2006
170703.1

# EXHIBIT A

**REDACTED**

# EXHIBIT B

REDACTED

# EXHIBIT C

**REDACTED**

# EXHIBIT D

# REDACTED

# EXHIBIT E

# REDACTED

# EXHIBIT F

# REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2006, the attached **REDACTED PUBLIC VERSION OF LP MATTHEWS' OPENING MEMORANDUM SUPPORTING ITS** *DAUBERT* **MOTION TO STRIKE THE EXPERT REPORTS AND EXCLUDE THE TRIAL TESTIMONY OF THE LIMITED DEFENDANTS' LIABILITY EXPERT, JOHN C. CARSON** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz, Esquire<br>Potter Anderson & Corroon, LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| Arthur I. Neustadt, Esquire<br>Oblon, Spivak, McClelland, Maier & Neustadt, P.C.<br>1940 Duke Street<br>Alexandria, VA  22314 | VIA ELECTRONIC MAIL |
| Francis G.X. Pileggi, Esquire<br>Fox Rothschild LLP<br>Suite 1300<br>919 North Market Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| John Ward, Esquire<br>Ward & Olivo<br>708 Third Avenue<br>New York, NY  10017 | VIA ELECTRONIC MAIL |

*/s/ Lauren E. Maguire*

Lauren E. Maguire