# Exhibit 1

THIS OPINION WAS NOT WRITTEN FOR PUBLICATION

The opinion in support of the decision being entered today (1) was not written for publication in a law journal and (2) is not binding precedent of the Board.

Paper No. 28

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

———————

Ex parte DOUGLAS H. GREENSPAN
and PHILLIP A. LOW

———————

Appeal No. 95-2450
Application 07/786,804[1]

———————

ON BRIEF

———————

**MAILED**

**APR 1 5 1997**

PAT.&T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Before CAROFF, WILLIAM F. SMITH, and GRON, Administrative Patent Judges.

WILLIAM F. SMITH, Administrative Patent Judge.

DECISION ON APPEAL

This is an appeal under 35 U.S.C. § 134 of the final rejection of claims 1 through 3, 5 through 21, and 25, all the claims remaining in the application. Claims 1, 17, and 25 are illustrative of the subject matter on appeal and read as follows:

———————————

[1] Application for patent filed November 4, 1991. According to appellants, the application is a continuation-in-part of Application 07/413,395, filed September 27, 1989, now U.S. Patent No. 5,063,062.

1

Appeal No. 95-2450
Application 07/786,804

1.    A method of externally treating human skin including the steps of:

applying to said skin a composition having a first ingredient being between five percent (5%) and sixty percent (60%) by volume of orange oil, a second ingredient being a pharmaceutically acceptable moisturizer for human skin including a plant material such as plant oils and plant extract and a third ingredient being an emulsifying agent in the form of a grain based derivative.

17.    A method for treating acne on human skin comprising the step of applying a composition including forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of an emulsifying agent in the form of a grain based derivative, and a pharmaceutically acceptable moisturizer including plant material such as plant oils and plant extract to said acne on the human skin.

25.    A cleaning product comprising a towellet [sic] formed of an absorbent material, said towellet [sic] being impregnated with a cleaning composition and hermetically sealed in a packet member wherein said cleaning composition comprises a first ingredient being between five percent (5%) and sixty percent (60%) by volume of orange oil, a second ingredient being a pharmaceutically acceptable moisturizer including a plant material such as plant oils and plant extract, for human skin and a third ingredient being a grain based emulsifying agent in the form of an oat grain based derivative product.

The references relied upon by this merits panel are:

Dellutri                    4,620,937              Nov. 4, 1986

R.L. Coleman, "D-Limonene As A Degreasing Agent," Citrus Industry, pp. 23-25 (November 1975).

2

Appeal No. 95-2450
Application 07/786,804


Physicians' Desk Reference (PDR 1969)[2], pp. 665-66 (24th ed., Medical Economics, Inc., New Jersey, 1969).

Physicians' Desk Reference (PDR 1989)[3], p. 655 (43rd ed., Medical Economics Inc., New Jersey, 1989).


The examiner has not relied upon prior art in rejecting the claims on appeal. Rather, claims 1 through 3, 5 through 21, and 25 stand rejected under 35 U.S.C. § 112, first paragraph, as being nonenabled by the supporting specification and under 35 U.S.C. § 112, second paragraph, as being indefinite. We reverse the rejection under the first paragraph of the statute and affirm the rejection under the second paragraph of the statute. We also make new grounds of rejection under 37 CFR § 1.196(b), as well as raise several issues which require the examiner's attention upon return of the application file.


<u>Enablement Rejection</u>

The examiner's concern centers around the third ingredient set forth in claim 1, i.e., "an emulsifying agent in the form of a grain based derivative." The only reason given in support of this rejection by the examiner appears at page 2 of the Answer

---

[2] We rely upon the entries appearing on these pages for Acnaveen bar, Acnaveen Cream, Aveeno® Bar, Aveeno® Colloidal Oatmeal, Aveeno® Lotion, Aveeno® Oilated, Avenol™ Bath Additive and Emulave™ Bar.

[3] We rely upon the entry for Massengill® Medicated Soft Cloth Towelette.

3

Appeal No. 95-2450
Application 07/786,804

where the examiner states that "the disclosure is enabling only for claims limited to the emulsifiers being derived from grains such as corn, rice, wheat, barley and oats."

By now it is well settled that the examiner bears the initial burden of providing reasons why a supporting disclosure does not enable a claim. In re Marzocchi, 439 F.2d 220, 223, 169 USPQ 367, 369 (CCPA 1971). Here, the examiner has only stated that undue experimentation would be required to practice the invention as claimed. The examiner has not relied upon any facts in support of this conclusion. Consequently, the examiner's holding of nonenablement is unsupported on this record. We reverse the rejection.


## Definiteness Rejection

As set forth at page 3 of the Answer, the examiner is of the opinion that the terms "plant material" and "plant extract" are vague and indefinite.

As set forth in In re Moore, 439 F.2d 1232, 1235, 169 USPQ 236, 238 (CCPA 1971) "the definiteness of language employed must be analyzed—not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art." [Footnote omitted.] Here, the examiner has not attempted to read the claim in light of the supporting specification. Thus, the examiner has not properly considered the issue of claim definiteness.

4

Appeal No. 95-2450
Application 07/786,804

However, appellants have compounded the examiner's error in responding to this rejection. They have done so by attempting to incorporate a specification limitation in the claims. Specifically, appellants argue at page 7 of the Appeal Brief that reading the claims in light of the specification "makes clear the recited 'plant extract' is meant to be relatively pure aloe vera plant extract." Reading claim 1 as being limited in this manner is legal error. In re Zletz, 893 F.2d 319, 321-22, 13 USPQ2d 1320, 1321-22 (Fed. Cir. 1989).

Consequently, we affirm the rejection under 35 U.S.C. § 112, second paragraph, because the record provides adequate reasons to question the metes and bounds of the phrase "plant extract."

## New Grounds of Rejection Under 37 CFR § 1.196(b)

Under the provisions of 37 CFR § 1.196(b) we make the following new grounds of rejection.

1. Introduction.

We express our concern that the claims on appeal have not been adequately examined in the first instance by the examiner. As set forth above, the examiner did not appear to apply the relevant legal standards used in determining whether claims are in compliance with the requirements of 35 U.S.C. § 112, first and second

5

Appeal No. 95-2450
Application 07/786,804

paragraphs. For reasons set forth below, the claims on appeal do not comply with these sections of the statute.

Furthermore, it does not appear that the prior art has been adequately searched. The examiner has not applied prior art against any of the claims on appeal. The administrative record of this file indicates that the examiner searched a single class and subclass. It does not appear that the examiner sought to determine whether any of the specific components used in the compositions in the claimed methods and products were used either individually or in combination with other ingredients for the purpose of treating human skin or any of the specific conditions set forth in the claims. As is apparent from a reading of the specification, a key aspect of the present invention is the use of oatmeal to treat human skin. The examiner's search of the single subclass apparently did not result in any relevant prior art regarding the use of oatmeal in treating human skin. This merits panel has not undertaken a complete independent search of the subject matter on appeal. This is the examiner's responsibility in the first instance. However, a brief consultation of standard reference texts such as the Physician's Desk Reference readily uncovered significant prior art regarding the use of oatmeal in skin care products. If appellants elect the option under 37 CFR § 1.196(b) to re-open prosecution in front of the examiner, the examiner should expand the prior art search beyond the single subclass that has been searched and ensure that all

6

Appeal No. 95-2450
Application 07/786,804

relevant prior art regarding the use of the individual components of the present

invention has been uncovered and considered.


2. Definiteness.

Claims 1 through 3, 5 through 21, and 25 are rejected under 35 U.S.C. § 112,

second paragraph, as being indefinite.

a.    The claims are indefinite to the extent the independent claims, claims 1,

17, and 25, require the use of a "plant material such as plant oils and plant extract."

The use of the phrase "such as" raises the question as to whether plant oils and plant

extract are exemplary or limiting.  In other words, it is not clear whether the claims are

open to plant material other than plant oils and plant extract.  See Ex parte Remark, 15

USPQ2d 1498, 1500 (Bd. Pat. App. & Int. 1990).

b.    The scope of claims 15 and 16 is unclear.  Claim 15 limits the method of

claim 1 so that the "composition is operative . . . to reduce the peeling of the human

skin resulting from . . . sunburn."  Claim 16 limits the method of claim 1 so that "said

composition is operative to repel insects from human tissue."  It is not clear what if

anything needs to be done to the composition of claim 1 in order to make it "operative"

for these purposes.  For example, it is not clear from this record whether appellants

intend claim 16 to be limited to a composition having 20% citrus oil as disclosed at

pages 23-24 of the specification.  Clarification is required.

7

Appeal No. 95-2450
Application 07/786,804


c.    Claims 17 through 21 are indefinite in that claim 17 is directed to a

method for treating acne on human skin while dependent claims 18 through 21 are

directed to compositions. Thus, it is unclear which preamble is correct, i.e., do

appellants intend claims 17 through 21 to be directed to a method or a composition?

Also, it is not clear whether claims 18 through 21 further limit claim 17 as required by

the fourth paragraph of § 112.


2.  Enablement.

Claims 1, 2, 5 through 17, and 19 through 21 are rejected under 35 U.S.C.

§ 112, first paragraph, as being nonenabled by the supporting specification.

The emulsifier of these claims is to be in the form of a grain based derivative.

The supporting specification of this application indicates in the paragraph which

bridges pages 9-10 that wheat and oats are the grains most preferred to serve as a

source of emulsifying agents. However, this portion of the supporting specification then

states that wheat did not provide the desired texture to the composition. Thus, it

appears that appellants are admitting in this portion of the supporting specification that

wheat based derivatives are not useful as the emulsifying agent in the present

invention. Therefore, the supporting specification does not appear to provide sufficient

information to determine without undue experimentation which grain based derivatives

are suitable for use.

8

Appeal No. 95-2450
Application 07/786,804

3. Prior art.

     a.     Claims 1 through 3 and 5 through 18 are rejected under 35 U.S.C. § 103.
As evidence of obviousness we rely upon Coleman, Dellutri, and PDR 1969.

     These claims read on treating human skin either broadly or for the stated
purposes with a composition which comprises orange oil, aloe vera extract, and
oatmeal. The orange oil ingredient is present in an amount between 5% and 60% by
volume.

     Coleman describes the use of d-limonene obtained from citrus oils, such as
orange oil, as a hand cleaner. As seen from the formulation set forth on page 24 of
Coleman, emollients or moisturizers such as stearic acid, oleic acid, and lanolin are
conventionally used in combination with d-limonene. As seen in the paragraph which
bridges pages 24-25 of the reference, citrus oil-containing compositions were preferred
because they cause less skin irritation and had a pleasant odor.

     Dellutri also describes cleaning agents that can be used as a hand cleaner
which include d-limonene obtained from orange oil. Significantly, the distilled citric oil
used as a source of d-limonene in this reference should be between 20% and 90% of
the liquid volume of the cleaning agent mixture. See column 2, lines 19-26 of the
reference. Also note that aloe vera extract may be used as an optional ingredient. See
column 3, lines 23-38 of the reference. As set forth in this portion of the reference, the
aloe vera extract serves to protect the user's hands and reduces the risk of irritation.

9

Appeal No. 95-2450
Application 07/786,804

PDR 1969 is relied upon as evidence that colloidal oatmeal has long been used to treat skin in general and for treating skin conditions such as acne, sunburn, rashes, dermatitis, and poison ivy. The Acnaveen® Bar and Cream are formulated using colloidal oatmeal and other ingredients to clean oily skin and scalp in treating acne. Anti-pruritic and anti-irritative activities are attributed to the soothing effects of the colloidal oatmeal. Those formulations also have had their pH adjusted to approximate that of normal skin.

The entry for Aveeno® Bar indicates that colloidal oatmeal is useful in treating dermatitis. The entry for Aveeno® Colloidal Oatmeal indicates that the colloidal oatmeal by itself is useful in treating poison ivy, diaper rash, and atopic dermatitis. Note that the entry for Aveeno® Lotion indicates that that product containing colloidal oatmeal is useful in providing systematic relief of sunburn, poison, and other skin conditions. The remaining entries relied upon provide further evidence that colloidal oatmeal is a well-known additive in skin care compositions to provide relief from itching and irritation.

On the basis of the combined disclosures of these three references, we hold that one of ordinary skill in the art would have found it obvious to treat human skin with a composition which comprises orange oil, aloe vera extract, and colloidal oatmeal. As seen from Dellutri, the hypothetical person of ordinary skill in the art would have understood that such compositions should have a high volume percentage of orange

10

Appeal No. 95-2450
Application 07/786,804

oil. That hypothetical person would have fully understood and expected at the time of
the present invention that treating human skin with a composition which comprises
orange oil, aloe vera extract, and colloidal oatmeal would be soothing and help
alleviate itching and irritation. Specifically, the hypothetical person would have found it
obvious to use such a composition to treat damaged skin as claimed including skin
which has been burned, acne, rashes, and poison ivy.

In regard to the requirements of claims 5 and 6 that the resulting composition
have a pH range of between 4.5 to 6.0, optionally through use of a buffering compound,
we point to the disclosure in PDR 1969 that skin care compositions should be adjusted
to have a pH approximate to that of normal skin. Thus, the pH of the resulting
composition is a result effective variable and would routinely be optimized by one of
ordinary skill in the art. In re Boesch, 617 F.2d 272, 276, 205 USPQ 215, 219 (CCPA
1980).

As to the requirement of claim 15 that the composition is "operative" to reduce
peeling skin resulting from sunburn, we point out that the claim does not require any
affirmative step or ingredient beyond applying the composition of claim 1.

In regard to claim 16, it appears that the only requirement for the composition to
be "operative" to repel insects is that the composition contain 20% citrus oil. This is an
amount specifically suggested by Dellutri.

11

Appeal No. 95-2450
Application 07/786,804

    b.    Claim 25 is rejected under 35 U.S.C. § 103. As evidence of obviousness, we rely upon Coleman, Dellutri, and PDR 1969 as applied above, and PDR 1989.

    We held above that Coleman, Dellutri, and PDR 1969 would have suggested to one of ordinary skill in the art a skin treating composition which comprises orange oil, aloe vera extract, and oatmeal. Claim 25 is directed to a cleaning product which comprises a towelette formed of an absorbent material being impregnated with such a cleaning composition. We rely upon PDR 1989 only for its disclosure of the well known fact that skin care compositions were conventionally impregnated on a soft cloth towelette and hermetically sealed in packet member at the time of the present invention.

    Thus, on the basis of these four references together, we hold that the subject matter of claim 25 would have been obvious to one of ordinary skill in the art.

OTHER ISSUES

    We have not included claims 19 through 21 in the new grounds of rejection since these claims require, inter alia, the use of jojoba oil, glycerin and safflower oil. In researching this case, as suggested above, the examiner should be especially watchful for relevant prior art that would establish that these three compounds have been used in skin care products. We emphasize that by not including these claims in the new grounds of rejection we are not indicating that the subject matter of these claims is

12

Appeal No. 95-2450
Application 07/786,804

patentable. That determination will have to be made by the examiner after the relevant prior art has been reviewed.

## TIMES FOR RESPONSES

Any request for reconsideration or modification of this decision by the Board of Patent Appeals and Interferences based upon the same record must be filed within one month from the date hereof. 37 CFR § 1.197.

With respect to the new rejections under 37 CFR § 1.196(b), should appellants elect the <u>alternate</u> option under that rule to prosecute further before the Primary Examiner by way of amendment or showing of facts, or both, not previously of record, a shortened statutory period for making such response is hereby set to expire two months from the date of this decision. In the event appellants elect this alternate option, in order to preserve the right to seek review under 35 U.S.C. §§ 141 or 145 with respect to the affirmed rejection, the effective date of the affirmance is deferred until conclusion of the prosecution before the examiner unless, as a mere incident to the limited prosecution, the affirmed rejection is overcome.

If the appellants elect prosecution before the examiner and this does not result in allowance of the application, abandonment or a second appeal, this case should be returned to us for final action on the affirmed rejection, including any timely request for reconsideration thereof.

13

Appeal No. 95-2450
Application 07/786,804


No time period for taking any subsequent action in connection with this appeal

may be extended under 37 CFR § 1.136(a).

<u>AFFIRMED-IN-PART - 37 CFR § 1.196(b)</u>




Marc L. Caroff                                )
Administrative Patent Judge         )
                                                        )
                                                        )
                                                        )
                                                        ) BOARD OF PATENT
William F. Smith                            )
Administrative Patent Judge        )   APPEALS AND
                                                        )
                                                        ) INTERFERENCES
Teddy S. Gron                               )
Administrative Patent Judge         )
                                                        )

14

Appeal No. 95-2450
Application 07/786,804

Timothy J. Martin, P.C.
9250 W. 5th Avenue, Suite 200
Lakewood, CO  80226

# Exhibit 2



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL 07/676,804 FILING 04/04/91 | GREENSTEIN | NAMED APPLICANT | P | ATTORNEY DOCKET NO. |

15M1/1218

TIMOTHY J. MARTIN, P. C.
9250 W 5TH AVE., SUITE 200
LAKEWOOD CO 80226

| BAWA, R EXAMINER |
| --- |
| 1508T | PAPER NUMBER |
| DATE MAILED: | 12/18/97 |

#32

### NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☐ Applicant's failure to respond to the Office letter, mailed _____.

2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.

3. ☐ Applicant's failure to timely file the response received _____ within the period set in the Office letter.

4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of _____ of the Notice of Allowance.

    ☐ The issue fee was received on _____.
    ☐ The issue fee has not been received in Allowed Files Branch as of _____.

    In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17(l), and a verified showing as to the causes of the delay.

    If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.

5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by _____ as required in the last Office action.
    ☐ The corrected and/or substitute drawings were received on _____.

6. ☒ The reason(s) below.

    *Decision by Board*

RAJ BAWA, Ph.D.
PRIMARY EXAMINER
GROUP 1500

PTO-1432 (Rev. 4/93)