IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1507-SLR |
| | ) | |
| BATH & BODY WORKS, INC.; LIMITED BRANDS, INC.; KAO BRANDS CO. (f/k/a THE ANDREW JERGENS COMPANY); and KAO CORPORATION, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**LP MATTHEWS' OPENING MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO STRIKE THE EXPERT REPORT AND EXCLUDE
THE TRIAL TESTIMONY OF THE KAO DEFENDANTS' DAMAGES EXPERT**

*Of Counsel*:

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Office: 800-553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
Office: 202-775-0725

Dated: June 29, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Office: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff
LP Matthews, L.L.C.*

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS .......... 1

SUMMARY OF THE ARGUMENT .......... 1

FACTUAL BACKGROUND .......... 2

ARGUMENT .......... 3

A. Applicable Legal Standard .......... 3

B. Dr. Jizmagian Improperly Ignores the *Georgia-Pacific* Methodology and Merely Repeats Unsupported Contentions of a Fact Witness .......... 4

CONCLUSION .......... 7

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Coffey v. Dowley Mfg., Inc.*,
187 F. Supp. 2d 958 (M.D. Tenn. 2002) .......... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) .......... 1, 3, 4, 7

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) .......... 1, 2, 4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......... 3, 7

### FEDERAL STATUTES

Fed. R. Evid. 702 .......... 4, 6, 7

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. filed a complaint for patent infringement against defendants Kao Brands Company (formerly known as The Andrew Jergens Company), Kao Corporation, Limited Brands, Inc., and Bath and Body Works, Inc. (D.I. 1). LP Matthews amended its Complaint on February 2, 2005. (D.I. 5, 8). This Court entered a Scheduling Order on June 9, 2005. (D.I. 39). Pursuant to the Scheduling Order, expert discovery closed on May 12, 2006, (*id.* at 1), and *Daubert* motions must be filed by June 22, 2006. (*Id.* at 3.)

## SUMMARY OF THE ARGUMENT

LP Matthews submits this opening memorandum in support of its motion to strike the expert report, opinions, and proffered trial testimony of defendants Kao Brands Company's and Kao Corporation's ("Kao defendants") alleged damages expert Dr. G. Stephen Jizmagian. Dr. Jizmagian will purportedly offer into evidence testimony regarding what "reasonable royalty" LP Matthews supposedly would agree to with the defendants as the result of a "hypothetical negotiation," under the 15-part analytical framework laid out in the seminal Georgia Pacific case. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). The testimony of Dr. Jizmagian should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

LP Matthews does not seek the exclusion of Dr. Jizmagian's proposed expert testimony based on the *conclusions* he reached. Rather, this motion seeks to exclude his testimony based on the *inadequate methodology* used by Dr. Jizmagian. This distinction between inadequate methodology on the one hand, and the purported expert's conclusions, on the other hand, lies at the heart of a proper *Daubert* inquiry.

## FACTUAL BACKGROUND

### A. Dr. Jizmagian's Report & Testimony for the Kao Defendants

The Kao defendants submitted the Expert Report of G. Stephen Jizmagian, Ph.D. in support of their theory that, in a hypothetical negotiation over a reasonable royalty for their infringement of the '062 patent, they

REDACTED

Jizmagian Report at ¶ 7.[1] In any event, says Dr. Jizmagian, the Kao defendants would not have agreed to pay REDACTED

REDACTED as proposed by LP Matthews's damages expert, Mr. Evans. *Id.* at ¶ 10. Dr. Jizmagian's report consists of a mere 10 numbered paragraphs, the entire report is two pages long (plus two lines carried over to the signature page). His attempt at a *Georgia-Pacific* analysis amounts to just three lines, and considers only one REDACTED *Id.* at ¶ 9. For that one factor, his opinion that the Kao defendants allegedly REDACTED

REDACTED he relies on two paragraphs (20 & 21) of the "Lochhead further expert report," and a declaration from David Story. *Id.* at ¶¶ 6-8.

For his part, Mr. Story provided a six paragraph (1 ½ page) declaration asserting that,

REDACTED

Story Decl. at ¶ 5.[2] He concludes by surmising that, were a REDACTED in place against using orange oil, but the Kao defendants preferred orange oil to other masking agents or fragrances, they

REDACTED

---

[1] Attached as Exhibit A.

[2] Attached as Exhibit B.

**REDACTED** ' *Id.* at ¶ 6. Paragraphs 5 & 6 of Mr. Story's declaration are what Dr. Jizmagian repackages in paragraphs 7 & 8 of his report, with no added analysis or elaboration, as his so-called "expert" opinion.

## ARGUMENT

### A. Applicable Legal Standard

With respect to expert testimony, this Court was assigned the role of gatekeeper by the United States Supreme Court. In its *Daubert* opinion, 509 U.S. 579, the Supreme Court set out the requirements for admissibility of expert testimony under Federal Rule of Evidence 702. To be admissible at trial, the testimony of an expert must (1) pertain to scientific knowledge, and (2) assist the trier of fact in understanding the evidence or determining a fact issue. *Id.* at 589-592. The first factor establishes a standard of evidentiary reliability. *Id.* at 590. The expert's opinion "must be derived by the scientific method" and "must be supported by appropriate validation." *Id.* The second factor requires that the testimony "fit" the purpose for which it is being offered. *Id.* at 591. In other words, it must be relevant. *Id.* The proponent of the expert testimony must demonstrate its admissibility by a preponderance of the evidence. *Id.* at 592 n.10.

The objective of the *Daubert* requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). Where the methodology employed by an expert in reaching an opinion is unreliable, the opinion is to be excluded. *See id.* (affirming exclusion of testimony where district court found methodology employed by expert and scientific basis for opinion unreliable); *Daubert*, 509 U.S. at 579 (the trial judge's determination "entails a preliminary assessment of whether the reasoning or methodology underlying the

testimony is scientifically valid. . ."); Fed. R. Evid. 702 ("... a witness qualified as an expert ... may testify ... if ... (2) the testimony is the product of reliable principles and methods ...").

The *Daubert* Court set forth several considerations a district court may apply, in performing its "gatekeeper" function, to ensure that offered expert testimony is both relevant and reliable. These considerations do not constitute a definitive checklist or test; the Court characterized them as "general observations." *Daubert*, 509 U.S. at 593. The first consideration is whether the expert's theory or technique can be (and was) tested. *Id.* Other considerations are whether the theory or technique was subjected to peer review and publication, the technique's known or potential rate of error, and whether the theory or technique is generally accepted by the relevant scientific community. *Id.* at 593-594. The inquiry is a flexible one and the focus is on the expert's principles and methodology, not his or her conclusions. *Id.* at 594-595.

**B. Dr. Jizmagian Improperly Ignores the *Georgia-Pacific* Methodology and Merely Repeats Unsupported Contentions of a Fact Witness.**

The first problem with Dr. Jizmagian's report and proposed testimony as an alleged expert is that he does not actually provide any expert opinions. He completely omits any discussion of the *Georgia-Pacific* factors for determining a reasonable royalty, apparently because Dr. Jizmagian believes that,

REDACTED

Jizmagian Report at ¶ 9.

Choosing to avoid infringement is *not* one of the factors. *See Georgia-Pacific*, 318 F. Supp. at 1120 (the decision explicitly presumes a licensee "who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention"). Worse yet, his one-sentence dismissal of 36 years of *Georgia-Pacific* based patent damages precedent contains no analysis and cites no authority. If Kao defendants'

counsel wishes to argue that *Georgia-Pacific* does not apply here for some reason, that would be a matter for attorney argument, not expert testimony. Dr. Jizmagian employs the same technique in paragraph 10 of his report where he summarily dismisses the work of LP Matthews's damages expert, **REDACTED** Ex. A, Jizmagian Rep. at ¶ 10. In both instances, Dr. Jizmagian contributes nothing, simply echoing David Story's unsubstantiated fact contentions.

Turning back to Mr. Story's declaration, a second and more fundamental problem arises. Specifically, Mr. Story's deposition testimony fatally undermines the two factual assertions upon which Dr. Jizmagian builds his sparse report. First, although Mr. Story contends in his Declaration that the Kao defendants could simply have switched from orange oil to another masking agent, or to a fragrance, or removed orange oil and not replaced it with anything, his deposition testimony reveals that there are no bases for any of these contentions.

Regarding a change in masking agents, Mr. Story testified as follows:

**REDACTED**

(Story Dep. at 72-73.)[3] Mr. Story also has no knowledge whatsoever to rely on, by his own admission, for changing from a masking agent to a fragrance, or for dropping a masking agent. (*Id.* at 73-75 ("I'm only aware of changing fragrances from a fragrance to a different fragrance.").) When asked directly, **REDACTED** he replied **REDACTED** (*Id.* at 145.)

Second, Mr. Story's reasoning behind his choice of **REDACTED** appears to be nothing more than what Mr. Story was authorized to spend, since he could not ***himself*** agree to

[3] Cited excerpts of David Story's Deposition are attached as Exhibit C.

authorize an expenditure any greater that that amount. He testified he chose these numbers,

**REDACTED**

(*Id.* at 178.) Mr. Story agreed, however, that his company might have been **REDACTED** willing to pay more, **REDACTED** (*Id.* at 179-80.) To exceed **REDACTED** a more extensive review would take place and more people would get involved. (*Id.* at 182-184.) In other words, Mr. Story **REDACTED** cannot in fact say they would refuse to pay more than **REDACTED** Instead, he testified,

**REDACTED**

(*Id.* at 183.) He reiterated when asked about how decisions are made above his paygrade,

**REDACTED**

(*Id.* at 183-184.)

Basically, the Kao defendants manipulated Dr. Jizmagian's conclusions about what amount they allegedly would agree to pay by choosing to provide him with a supporting fact declaration from someone too far down the corporate ladder to have authority to spend more than what they wanted to assert as an "expert" calculation. By extension of the Kao defendants' logic, were this Court to admit Dr. Jizmagian's opinions based on the Story declaration, a defendant in a patent case could offer so-called expert testimony based on underlying fact contentions from a janitor who says he does not think his company would be willing to pay more than 50 dollars to license an invention, because he is not himself authorized to spend any more than that amount in the course of his work without approval from someone higher up in the company.

authorize an expenditure any greater that that amount. He testified he chose these numbers,

**REDACTED**

(*Id.* at 178.) Mr. Story agreed, however, that his company might have been **REDACTED** willing to pay more, **REDACTED** (*Id.* at 179-80.) To exceed **REDACTED** a more extensive review would take place and more people would get involved. (*Id.* at 182-184.) In other words, Mr. Story **REDACTED** cannot in fact say they would refuse to pay more than **REDACTED** Instead, he testified,

**REDACTED**

(*Id.* at 183.) He reiterated when asked about how decisions are made above his paygrade,

**REDACTED**

(*Id.* at 183-184.)

Basically, the Kao defendants manipulated Dr. Jizmagian's conclusions about what amount they allegedly would agree to pay by choosing to provide him with a supporting fact declaration from someone too far down the corporate ladder to have authority to spend more than what they wanted to assert as an "expert" calculation. By extension of the Kao defendants' logic, were this Court to admit Dr. Jizmagian's opinions based on the Story declaration, a defendant in a patent case could offer so-called expert testimony based on underlying fact contentions from a janitor who says he does not think his company would be willing to pay more than 50 dollars to license an invention, because he is not himself authorized to spend any more than that amount in the course of his work without approval from someone higher up in the company.

Rule 702 provides that, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and expert "may testify thereto." Fed. R. Evid. 702; *see Daubert*, 509 U.S. at 589-90. The Supreme Court in *Daubert* emphasized that, "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id.* at 590.[4] Allowing Dr. Jizmagian to present before the jury the subjective and speculative beliefs of a defendant's in-house researcher, gussied up in the trappings of expert testimony, would mislead rather than help the trier of fact. Dr. Jizmagian applies no recognized methodology of any kind in his report that could by any stretch of the imagination turn Mr. Story's self-interested factual assertions into legitimate expert opinion evidence. *See Daubert*, 509 U.S. at 591 ("Proposed testimony must be supported by appropriate validation – *i.e.*, 'good grounds,' based on what is known."); *see also Coffey v. Dowley Mfg., Inc.*, 187 F.Supp.2d 958, 975 (M.D. Tenn. 2002) (excluding expert testimony where expert "failed to employ reasonable principles and methods"). Dr. Jizmagian's opinion is based on nothing more than pure speculation without underlying proof, classic *ipse dixit* that cannot provide the basis for admissible expert opinion. Accordingly, Dr. Jizmagian's report and his proposed testimony at trial in this case should be excluded.

[4] *Kumho Tire* included an example close to home for this case of what sorts of proposed expert testimony must be scrutinized and validated under Daubert: "it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable." *See Kumho Tire*, 526 U.S. at 151

**CONCLUSION**

For the foregoing reasons, LP Matthews requests that this Court grant LP Matthews' motion to strike Dr. Jizmagian's expert report and preclude his testimony.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. # 2403)
Lauren E. Maguire (I.D. #4261)
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Office: 302-654-1888

*Attorneys for Plaintiff LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Office: 800-553-9910

Robert A. Auchter, Esq.
Jason R. Buratti, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
Office: 202-775-0725

Dated: June 22, 2006

170671.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of June, 2006, the attached **REDACTED PUBLIC VERSION OF LP MATTHEWS' OPENING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE THE EXPERT REPORT AND EXCLUDE THE TRIAL TESTIMONY OF THE KAO DEFENDANTS' DAMAGES EXPERT** was served upon the below-named counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

HAND DELIVERY

Arthur I. Neustadt, Esquire
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, VA 22314

VIA ELECTRONIC MAIL

Francis G.X. Pileggi, Esquire
Fox Rothschild LLP
Suite 1300
919 North Market Street
Wilmington, DE 19801

HAND DELIVERY

John Ward, Esquire
Ward & Olivo
708 Third Avenue
New York, NY 10017

VIA ELECTRONIC MAIL

Tiffany Geyer Lydon