IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 04-1507-SLR |
| v. ) | |
| ) | |
| BATH & BODY WORKS, INC.; LIMITED ) | |
| BRANDS, INC.; KAO BRANDS CO. ) | |
| (f/k/a THE ANDREW JERGENS ) | |
| COMPANY); and KAO CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## LP MATTHEWS' ANSWERING MEMORANDUM IN OPPOSITION TO THE LIMITED DEFENDANTS' MOTION TO EXCLUDE <u>EXPERT TESTIMONY OF CHRISTOPHER T. RHODES</u>

|  |  |
|---|---|
|  | Steven J. Balick (I.D. #2114) |
|  | John G. Day (I.D. #2403) |
|  | Lauren E. Maguire (I.D. #4261) |
|  | Ashby & Geddes |
|  | 222 Delaware Avenue, 17th Floor |
|  | P.O. Box 1150 |
|  | Wilmington, Delaware 19899 |
|  | 302-654-1888 |
| *Of Counsel*: | sbalick@ashby-geddes.com |
|  | jday@ashby-geddes.com |
| Ronald J. Schutz | lmaguire@ashby-geddes.com |
| Robins, Kaplan, Miller & Ciresi L.L.P. |  |
| 2800 LaSalle Plaza | *Attorneys for Plaintiff LP Matthews, L.L.C.* |
| 800 LaSalle Avenue |  |
| Minneapolis, MN 55402-2015 |  |
|  |  |
| Robert A. Auchter |  |
| Jason R. Buratti |  |
| Robins, Kaplan, Miller & Ciresi L.L.P. |  |
| 1801 K Street, Suite 1200 |  |
| Washington, DC 20006 |  |

Dated: July 6, 2006
171000.1

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ....................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

    1.       The Patent-in-Suit ................................................................................................2

    2.       Dr. Rhodes' Orange Oil Opinion Is Based On Good Grounds .............................2

    3.       Dr. Rhodes' pH Opinion Is Based On Good Grounds .........................................4

ARGUMENT .................................................................................................................................5

CONCLUSION ..............................................................................................................................9

i

<a>
<p></p>
</a>

## TABLE OF AUTHORITIES

### Cases

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)...........................................................................................7

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
    392 F. Supp. 2d 676 (D. Del. 2005).....................................................................................5

*Eclipse Elec. v. Chubb Corp.*,
    176 F. Supp. 2d 406 (E.D. Pa. 2001) ................................................................................5, 6

*Erie Ins. Exchange ex rel. McCracken v. Applica Consumer Prods., Inc.*,
    No. 3:CV-02-1040, 2005 WL 1165562 (M.D. Pa. May 17, 2005)......................................6

*Kao Corp. v. Unilever U.S., Inc.*,
    441 F.3d 963 (Fed. Cir. 2006)..............................................................................................7

*Schneider v. Fried, D.O.*,
    320 F.3d 396 (3d Cir. 2003).................................................................................................7

*Stecyk v. Bell Helicopter Textron, Inc.*,
    295 F.3d 408 (3d Cir. 2002).................................................................................................5

### Statutes

35 U.S.C. § 282 (2002) ....................................................................................................................7

<p></p>

## NATURE AND STAGE OF THE PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. ("LP Matthews") filed a Complaint for patent infringement against defendants Kao Brands Company (formerly known as The Andrew Jergens Company), Kao Corporation, Limited Brands, Inc., and Bath & Body Works, Inc. (D.I. 1.) LP Matthews amended its Complaint on February 2, 2005. (D.I. 5, 8.) This Court entered a Scheduling Order on June 9, 2005. (D.I. 39.) Expert discovery closed on May 12, 2006. (D.I. 39 at 1.) *Daubert* motions were filed on June 22, 2006 (*id*. at 3), including the Limited defendants'[1] instant motion. (D.I. 230.) LP Matthews submits this answering memorandum in opposition to the Limited defendants' June 22, 2006 Motion to Exclude Expert Testimony of Christopher T. Rhodes.

## SUMMARY OF ARGUMENT

An expert witness is not required to conduct his own experiments. Whether or not he does goes only to weight – not to admissibility. The Limited defendants' devote their brief to tasks that Dr. Rhodes did not do (and is not required to do). A proper *Daubert* challenge, however, must attack what the expert did. Here, Dr. Rhodes used regularly-accepted methods to formulate his opinions – relying on the patent-in-suit, other issued U.S. patents, peer-accepted literature, and his own experience in the precise field of the accused products and patent-in-suit. The Limited defendants simply cannot demonstrate that Dr. Rhodes' proposed testimony fails to meet the *Daubert* standard of reliability. The Limited defendants' motion should be denied.

---

[1] "The Limited defendants" means defendants Limited Brands, Inc. and Bath & Body Works, Inc.

## STATEMENT OF FACTS

1. **The Patent-in-Suit**

The United States Patent and Trademark Office ("PTO") issued United States Patent No. 5,063,062 ("the '062 patent") to Douglas Greenspan and Philip Low on November 5, 1991. The '062 patent claims compositions for cleaning human skin that contain orange oil, an oat ingredient, and a moisturizer. (LEX 1 at 9:3-10:25.[2]) Claim 6 also requires the composition to have a "pH within a range of 4.5 to 6.0, inclusively." (*Id.* at 10:1-6.) Thus, the relevant fields of the '062 patent are skin-cleaning compositions, orange oil, oats, moisturizers, and pH (analytical chemistry). LP Matthews asserts that the Limited defendants infringe claims 6 and 9 of the '062 patent by making and selling nearly 30 cosmetic products.

On March 6, 2006, LP Matthews served an "Updated Expert Report of Christopher T. Rhodes Pursuant to Federal Rule of Civil Procedure 26(A)(2)(b)."[3] There, Dr. Rhodes opines, *inter alia*, that (1) orange oil can perform cleaning at levels lower than 5%, and (2) the pH range in claim 6 is 4.0 to 6.5. (LEX 3 at 4-6.)

2. **Dr. Rhodes' Orange Oil Opinion Is Based On Good Grounds**

Dr. Rhodes based his opinion concerning the level at when orange oil cleans on the teachings of the '062 patent and of United States Patent No. 5,013,485 ("the '485 patent")[4], on studies described in the '062 patent specification and in the prosecution history of the '062 patent, and on his independent knowledge and experience with cosmetics, surfactants and solvents. (Ex. B at 159-61.) Dr. Rhodes also has an excellent working knowledge of orange oil.

---

[2] "LEX" refers to exhibits attached to the Limited defendants' Memorandum in Support of Defendants' Motion to Exclude Expert Testimony of Christopher T. Rhodes.
[3] The original report was served February 28, 2006. On March 31, 2006, LP Matthews served a "Responsive Expert Report of Christopher T. Rhodes Pursuant to Federal Rule of Civil Procedure 26(A)(2)(b)." Both reports contain the same orange oil opinion; the rebuttal report does not contain the pH opinion.
[4] A copy of the '485 patent is attached at Exhibit A.

(*Id.* at 252-53, 255-57.)  From this, Dr. Rhodes concluded that orange oil could clean at levels below 5%.  (*Id*. at 160.)

Indeed, test results identified in the '062 patent reported that orange oil concentrations at 5% levels had cleaning ability, albeit reduced.  (*Id*. at 159.)  Dr. Rhodes explained:

> Q.  Isn't it true that that sentence says: From these tests, applicants concluded that with respect to cosmetics, a composition according to the present invention could have as little as 5 percent by volume of orange oil, although it was preferable to have a cleaning composition having at least 25 percent by volume of orange oil? Isn't that what it says?
>
> A.  You have read out that sentence correctly.
>
> Q.  Doesn't that indicate that 5 percent is the lowest amount that they considered effective for cleaning as the tests are set out in the application?
>
>> Mr. Buratti: Objection to form.
>
> A.  I disagree.  I think what that's saying is if you are interested particularly in having a cleaning composition to remove the real toughies, like calking compounds, et cetera, et cetera, then 5 percent may not be appropriate.  However, if you are interested in removing cosmetics or other forms of dirt which are less tenacious, then 5 percent or even less may be perfectly appropriate.

(*Id*. at 163-64.)

Because the '485 patent taught that orange oil concentrations could clean at levels of 0.01% or less, it corroborated what Dr. Rhodes had already hypothesized:

> But where I found the patent that you just put before me, the '485 patent, particularly be useful was I already knew that the teachings would be useful well below 5 percent.  This patent gave me a lower limit, which was very much in line with what I had previously hypothesized.
> So the '485 patent was confirmatory in nature.  And I found it very useful in that sense.

(*Id*. at 161.)

3

### 3. Dr. Rhodes' pH Opinion Is Based On Good Grounds

Dr. Rhodes opines that the pH range in claim 6 encompasses values of 4.0 to 6.5. He bases that opinion on his knowledge and experience with colorimetric and potentiometric methods for measuring pH as applied to the specification of the '062 patent. His report gives a detailed analysis of his opinion. (LEX 3 at 5-6.) With respect to the patent, Dr. Rhodes testified:

> Q. If you could briefly explain why it was that you added a half point into the pH range on either end?
>
> A. Throughout the patent there are a number of pH values indicated. Now, with the exception of one, which is in Table 1 where it tells me a pH of 4.7, all the other values are either an exact pH value with nothing on the right of the decimal point or they are exactly half a pH unit.
> In no case is there, for example, the second decimal unit given to us. If the patentees had been using a pH meter, I would have expected to see two decimal points in the values that they record.
> Additionally, I note that in the tables where they give the pH, at the head of the pH values it says very clearly approximate. So when I read that I say to myself, this is strongly indicating to me that the method of determining pH used by the patentees was a colorimetric one, probably using pH test papers, and with that type of technique it is not very precise. It may be accurate, but it is not very precise, and a precision of plus/minus half a pH unit is reasonable.
> So that's how I come to this point that when they are talking about pH values, they are saying approximate. Although they don't actually say so in the patent, I take all their values, in my mind I see plus/minus half a pH unit.

(Ex. B at 357-58; *see also* 355-56.)

**ARGUMENT**

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. (Limited Br. at 3-4.[5]) The Limited defendants admit that "an expert's opinion is reliable if it is based on valid scientific analysis or methodology…." (Limited Br. at 4.) Dr. Rhodes' opinions with respect to orange oil and pH easily exceed the "preponderance of the evidence" standard for admissibility. (*See* Limited Br. at 6.) The Limited defendants' arguments about experiments that Dr. Rhodes did not conduct go only to credibility, a question properly considered by the fact finder or addressed on cross-examination. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination."). They do not pertain to admissibility.

The Limited defendants do not dispute Dr. Rhodes' qualifications. Their sole criticism is that "Measuring pH values or cleaning capabilities at orange oil concentrations less than the 5.0% minimum disclosed by the '062 patent would have been simple for Dr. Rhodes. Yet he did no testing whatsoever." (Limited Br. at 6.)

Testing is not required for an expert witness to render a reliable opinion. "[T]here is no requirement for an expert to perform or rely on testing of an accused product in order to establish infringement." *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 685 (D. Del. 2005). Courts in this Circuit readily acknowledge that an expert's testimony is not rendered unreliable simply because the expert conducted few or no independent tests. *See, e.g., Eclipse Elec. v. Chubb Corp.,* 176 F. Supp. 2d 406, 412 (E.D. Pa. 2001) ("The fact that Peel did not

---

[5] "Limited Br." means the Limited defendants' Memorandum in Support of Defendants' Motion to Exclude Expert Testimony of Christopher T. Rhodes.

5

conduct extensive testing on his own, does not render his opinion, in its entirety, unreliable and unhelpful."); *Erie Ins. Exchange ex rel. McCracken v. Applica Consumer Prods., Inc.*, No. 3:CV-02-1040, 2005 WL 1165562, at **7-8 (M.D. Pa. May 17, 2005) (expert's failure to conduct additional tests did not render his testimony unreliable; lack of further testing goes to weight of opinion, not admissibility).

In *Eclipse*, the court rejected virtually the same challenge raised by the Limited defendants here. The *Eclipse* court held that the plaintiffs' expert's (Peel's) opinions had good grounds despite his lack of extensive testing. 176 F. Supp. 2d at 411-12. The court reasoned that Peel's reliance on tests conducted in a prior study was entirely permissible:

> An expert should not be required to "reinvent the wheel" and start his inquiry from square one in order to be deemed qualified under *Daubert*. He may rely on the research, studies, and expertise of others, so long as they are of the sort of information regularly relied on by experts in the field.

*Id*. at 412 (*citing In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994)). The defendants' challenge to Peel's lack of testing, the *Eclipse* court held, was "a more appropriate subject for cross-examination than a motion *in limine*." *Id*. at 412.

Applying the *Eclipse* reasoning here, Dr. Rhodes did not need to reinvent the wheel. He reasonably relied upon testing reported in the '485 and '062 patents, as well as information in the prosecution history of the '062 patent, *and* his independent knowledge of the use of surfactants and solvents. (Ex. B at 159-61.) Tellingly, the '485 patent substantiated the conclusion that Dr. Rhodes had already reached that orange oil can perform cleaning at levels of 5% or lower. (*Id*. at 161.) Since this testing had been conducted and reported and since Dr. Rhodes has extensive experience in the relevant field, he could rely on and extrapolate from those tests to form his opinions.

6

In addition, literature such as the '062 and '485 patents, as well as the other texts Dr. Rhodes (as well as the Limited defendants' expert) considered, particularly when considered with extensive experience, easily meet the criteria for appropriate scientific analysis under *Daubert*. *See Schneider v. Fried, D.O.*, 320 F.3d 396, 406 (3d Cir. 2003) (expert's opinion based on literature and experience was admissible because experience rendered expert's testimony reliable and based on good grounds). Contrary to the Limited defendants' emphatic plea, "***quantifiable*** results" are not required. (Limited Br. at 9.) If they were, no expert would ever be able to provide an opinion without concrete experiment-generated numbers – clearly a more stringent standard than the Supreme Court contemplated when it set out its *Daubert* considerations.

Finally, the Limited defendants write that "Extrapolations, inferences and educated guesses are traditionally based on known quantities and known properties of substances in tested conditions." (Limited Br. at 7-8.) To the extent Dr. Rhodes extrapolated at all, he did so based on tests of known quantities reported in issued and presumed valid U.S. patents, including the '485 patent assigned to defendant Kao Corporation, and the properties of orange oil, a surfactant with which he thoroughly familiarized himself. His opinions are relevant and reliable.

The remaining arguments by the Limited defendants are red herrings. First, they argue that "Dr. Rhodes is forced to presume that the patents in question are completely accurate." (Limited Br. at 7.) But they don't actually question the tests reported in those patents. They can't; Federal Circuit precedent directs that patents are presumed enabled "under authority going beyond § 282." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003). (Section 282 provides that patents are presumed valid. 35 U.S.C. § 282 (2002); *see Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006).) Consequently, Dr. Rhodes'

7

consideration of the '062 and '485 patent studies is proper. The Limited defendants' argument to the contrary should be disregarded.

Second, they argue that Dr. Rhodes disregarded inventor testimony about tests run "with orange oil concentration down almost to 0.0%." (Limited Br. at 7.) LP Matthews is not aware of that testimony. The Limited defendants didn't cite it. This argument should be disregarded.

Third, the Limited defendants have a single line at the end of their brief that Dr. Rhodes' opinions do not "fit" the case. That argument appears to be based solely on reliability, not relevance. There is no argument that his opinions are not relevant. Nor could there be – orange oil and pH are claim elements at issue here.

At bottom, the Limited defendants' arguments regarding Dr. Rhodes' proposed testimony go to the weight, not the admissibility, of his testimony. That the Limited defendants dislike or disagree with Dr. Rhodes' opinions is not a proper basis upon which to exclude those opinions. With no legitimate *Daubert* attack on Dr. Rhodes' proposed testimony, the Limited defendants' motion should be denied.

## CONCLUSION

For the foregoing reasons, LP Matthews requests that this Court deny the Limited defendants' motion to exclude expert testimony of Christopher T. Rhodes.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, DC  20006

Dated: July 6, 2006
171000.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2006, the attached **LP MATTHEWS' ANSWERING MEMORANDUM IN OPPOSITION TO THE LIMITED DEFENDANTS MOTION TO EXCLUDE EXPERT TESTIMONY OF CHRISTOPHER T. RHODES** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz, Esquire<br>Potter Anderson & Corroon, LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| Arthur I. Neustadt, Esquire<br>Oblon, Spivak, McClelland, Maier & Neustadt, P.C.<br>1940 Duke Street<br>Alexandria, VA  22314 | VIA FEDERAL EXPRESS |
| Francis G.X. Pileggi, Esquire<br>Fox Rothschild LLP<br>Suite 1300<br>919 North Market Street<br>Wilmington, DE  19801 | HAND DELIVERY |
| John Ward, Esquire<br>Ward & Olivo<br>708 Third Avenue<br>New York, NY  10017 | VIA FEDERAL EXPRESS |

/s/ *John G. Day*
_____
John G. Day