# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1507 (SLR) |
| | ) | JURY TRIAL DEMANDED |
| BATH & BODY WORKS, INC., | ) | |
| and | ) | |
| LIMITED BRANDS, INC., | ) | |
| and | ) | |
| KAO BRANDS CO. (f/k/a THE ANDREW | ) | |
| JERGENS COMPANY), | ) | |
| and | ) | |
| KAO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS BATH & BODY WORKS, INC. AND LIMITED BRANDS, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 103

Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
FOX ROTHSCHILD LLP
919 North Market Street, Suite 1300
Wilmington, Delaware  19801
Phone: (302) 655-3667
Fax: (302) 656-8920

*Attorneys for Defendants Bath & Body Works, Inc. and Limited Brands, Inc.*

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York  10017
Phone: (212) 697-6262
Fax: (212) 972-5866

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ............................................. 1

SUMMARY OF THE ARGUMENT ................................................................... 2

STATEMENT OF FACTS ................................................................................... 3

    A.   The '062 Patent, Its Claims, And File History ....................................... 3

    B.   The Board's 35 U.S.C § 103 Rejection .................................................. 7

    C.   The Prior Art ........................................................................................ 10

        1.   The Dellutri Patent........................................................................ 10

        2.   The Coleman Reference................................................................. 11

        3.   The Physicians' Desk Reference .................................................. 11

        4.   The Juliano Patent......................................................................... 11

        5.   The Soaps Manual......................................................................... 12

ARGUMENT...................................................................................................... 13

    A.   The Legal Standard For Summary Judgment ....................................... 13

    B.   The Legal Standard For Obviousness ................................................... 14

    C.   Claims 6 And 9 Are Invalid As Being Obvious In View Of The Prior Art ............. 15

        1.   The Board's Decision Constitutes Clear and Convincing Evidence of the Obvious of Claims 6 And 9 of the '062 patent .................................................. 15

        2.   Claims 6 and 9 of the '062 Patent are Obvious in View of Dellutri and Juliano......................................................................... 22

        3.   Any Alleged Commercial Success Cannot Overcome the Proper Legal Conclusion that the Asserted Claims of the '062 Patent are Invalid for Obviousness ...................................................................... 23

CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*ACS Hospital Systems Inc. v. Montefiore Hospital*, 732 F.2d 1572 (Fed. Cir. 1984)................... 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ................................................................ 13

*Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990)............................. 13

*B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577 (Fed. Cir. 1996)............... 14, 23

*Brown & Williamson Tobacco Co. v. Phillip Morris, Inc.*, 229 F.3d 1120 (Fed. Cir. 2000) ....... 23

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) .......................................................................... 14

*IMX, Inc. v. Lendingtree, LLC* 405 F. Supp. 2d 479 (D. Del. 2005) .................................... 14, 15

*In re Boesch*, 617 F.2d 276, 205 USPQ 215 (CCPA 1980).......................................................... 10

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000).......................................................................... 21

*In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000).............................................................................. 21

*In re Semaker*, 702 F.2d 989 (Fed. Cir. 1983) ............................................................................ 21

*In re Vaeck*, 947 F.2d 488 (Fed. Cir. 1991) ................................................................................. 14

*In re Young*, 927 F.2d 588 (Fed. Cir. 1991)................................................................................. 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................................... 13

*Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157 (Fed. Cir. 2006)........................................... 20, 23

*Merck & Co., Inc. v. Biocraft Laboratories, Inc.*, 874 F.2d 804 (Fed. Cir. 1989)....................... 23

*Newell Cos., Inc. v. Kanney Mfg. Co.*, 864 F.2d 757 (Fed. Cir. 1988) .................................. 14, 23

*Ruiz v. A.B. Chance Co.*, 357 F.3d 1270 (Fed. Cir. 2004) ........................................................... 21

*Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714 (Fed. Cir. 1991).................................................... 23

*Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567 (Fed. Cir. 1984) ............................. 15

**Statutes**

35 U.S.C. § 102 ................................................................................................................ 17

35 U.S.C. § 103 ........................................................................................................... passim

35 U.S.C. § 112 .................................................................................................................. 8

35 U.S.C. § 282 ................................................................................................................ 14

**Rules**

Fed.R.Civ.P. 56(c) .......................................................................................................... 13

**<u>INTRODUCTION</u>**

Limited Brands, Inc. and Bath & Body Works, Inc. (hereinafter collectively referred to as the "Limited Defendants") respectfully request that the Court grant summary judgment that the asserted claims (Claims 6 and 9) of Greenspan et al. United States Patent No. 5,063,062 ("the '062 patent"; attached as Ex. A to the Declaration of David M. Hill, Esq. in Support of the Opening Brief in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 103)[1] are invalid under 35 U.S.C. § 103.  In doing so, the Court would merely be echoing what the Board of Patent Appeals (the "Board") thought years ago.  During the prosecution of a continuation-in-part application of the '062 patent, the Board, unaware of *Soaps, A Practical Manual of the Manufacture of Domestic, Toilet and Other Soaps*, by George Hurst (2D 1907) (the "Soaps Manual"), recognized that the invention was disclosed by prior art.

**<u>NATURE AND STAGE OF THE PROCEEDINGS</u>**

On December 8, 2004, plaintiff LP Matthews, L.L.C. (hereinafter "plaintiff" or "LPM"), filed a Complaint against the Limited Defendants, KAO Brands Co., and KAO Corp. alleging infringement of the '062 patent. (D.I. 1).  This Court entered a Scheduling Order on June 9, 2005. (D.I. 39).  Fact discovery closed on January 26, 2006 (*Id.* at 1) and expert discovery closed on May 12, 2006. (*Id.* at 3).  Claim construction briefs were filed on June 29, 2006, and summary judgment motions must be filed by July 6, 2006. (D.I. 243).

---

[1] The exhibits attached to the Declaration of David M. Hill, Esq. in Support of the Opening Brief in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 103 will hereinafter be referenced as "Ex. __".

## SUMMARY OF THE ARGUMENT

This motion seeks summary judgment that the asserted claims of the '062 patent (Claims 6 and 9) are invalid under 35 U.S.C. § 103.  The asserted claims of the '062 patent claim a cleaning composition containing orange oil, a moisturizer, oatmeal or an oat grain derivative product, and have an appropriate pH value.  During prosecution of a continuation-in-part application directed at an invention for the same composition as the '062 patent, the Board held that the prior art taught a skin cleaning composition comprising orange oil, a moisturizer, oatmeal (which is an oat grain derivative product), and has an appropriate pH.  Therefore, the Board's decision is clear and convincing evidence that the subject matter of Claims 6 and 9 of the '062 patent is obvious in view of Dellutri United States Patent No. 4,620,937 (Ex. B; "Dellutri"), in combination with Richard L. Coleman, "D-Limonene as a Degreasing Agent," The Citrus Industry, Vol. 56, No. 11, 1975 (Ex. C; "Coleman"), and The Physicians' Desk Reference, 24th ed., 1969 (Ex. D; the "PDR").  Moreover, the asserted claims are obvious in view of Dellutri in combination with Juliano United States Patent No. 4,014,995. (Ex. E; "Juliano").

Claims 6 and 9 of the '062 patent are broadly asserted by LPM as being directed at a cleaning composition for use on human skin that includes orange oil, a moisturizer, and either oatmeal (Claim 9) or an oat grain derivative product as an emulsifying agent (Claim 6).  Such a cleaning composition was well known and obvious to a person of skill in the art at the time of the invention.  The Examiner correctly noted this in originally rejecting the patent claims; and the Board confirmed this in rejecting a continuation-in-part application, which included similar claims directed at the same invention.

The prior art is replete with references that disclose citrus oils as the primary cleaning ingredient in a variety of compositions, as well as cleaning compositions with both a moisturizer and oatmeal. (*See* Ex. B; Ex. C).  Indeed, the Board rejected the patentees' continuation-in-part application, United States Application Ser. No. 07/786,804 (Ex. F; "the '804 application"), as being obvious in view of a combination of Dellutri, Coleman, and the PDR, a ruling that forced the patentees to abandon the '804 application. (Ex. G; the Boards' Decision on Appeal dated April 15, 1997).  Importantly, the claims rejected in the '804 application were nearly identical to the asserted claims of the '062 patent.  As shown below, the express and implicit disclosures of the prior art, such as Dellutri, Coleman, and the PDR, as well as Juliano, teach each and every element of Claims 6 and 9 of the '062 patent.

While the Limited Defendants' accused products do not infringe the asserted claims of the '062 patent, the Court need not reach a decision on infringement in the present case because both of the asserted claims are invalid under 35 U.S.C. § 103 as being obvious in view of the prior art as set forth herein.  Because no genuine issues of material fact exist with respect to these issues, summary judgment of patent invalidity is appropriate.

## STATEMENT OF FACTS

A.    The '062 Patent, Its Claims, And File History

The '062 patent, entitled CLEANING COMPOSITIONS WITH ORANGE OIL, issued on November 5, 1991, from an application filed on September 27, 1989. (Ex. A, Cover Page). The catalyst for the invention was co-inventor Phillip Low's observation that the juices from an orange he was eating were dissolving the sealing caulk on his hands. (Ex. H; 1/14/06 Dep. Trans.

3

of Phillip Low, 11-17). After consulting his business advisor, the industrial-type cleaner

disclosed in the '062 patent was developed. (Ex. H, 11-17).

The '062 patent issued with twelve (12) claims, of which only independent Claims 6 and

9 are asserted in this case. They read as follows:

> 6.    A skin cleaning composition for external use on human tissues, comprising orange oil, a pharmaceutically acceptable moisturizer for human skin and an oat grain derivative product as an emulsifying agent, wherein said composition has a pH within a range of 4.5 to 6.0, inclusively. (Ex. A, Col. 10, lns. 1-6).

> 9.    A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer. (Ex. A, Col. 10, lns. 13-17).

In order to determine the bounds of a suitable cleaning composition according to their

invention, the Applicants evaluated various compositions and their respective physical properties

to determine which combinations would effect cleaning. (*See generally* Ex. A, Col. 3-Col. 8).

They compared (subjectively) the amount of orange oil needed in the composition, the amount

and type of natural product required to form an emulsion, and the effective pH range of a

cleaner. (*See* Ex. A, Col. 3-Col. 8).

> With regard to the effective amount of orange oil, the Applicants concluded that:

> With respect to cosmetics, a composition according to the present invention could have as little as 5% by volume of orange oil although it was preferable to have a cleaning composition having at least 25% by volume of orange oil. (Ex. A, Col. 6, lns. 56-61)(emphasis added).

Indeed, co-inventor Phillip Low testified that the inventors tested compositions down to almost

no orange oil and concluded that anywhere from 5% to 60% provided adequate cleaning while

also being comfortable on the skin. (Ex. H, 26, 86-87).

Regarding emulsifiers, the Applicants selected grain base derivatives (i.e., oatmeal gum and oatmeal) as the primary emulsifying agent. "In order to determine whether a natural ingredient could act as an emulsifying agent, the Applicants selected a grain base derivative as an emulsifying agent. To this end, Applicants tested oatmeal gum and oatmeal to act as the primary emulsifier." (Ex. A, Col. 4, lns. 22-27). The Applicants' tests revealed that these two substances could perform as primary emulsifiers. (Ex. A, Col. 4, ln. 27 - Col 5, ln. 27). The patent does not indicate that any other substances were tested or that the Applicants knew whether any other grain base derivatives would even work as primary emulsifiers in their composition. (Ex. A, Col. 4, ln. 27 – Col 5 ln. 27).

Regarding the appropriate pH for the composition, the Applicants concluded that the invention "should have a pH between 4.5 and 6.0, inclusively." (Ex. A, Col. 6, lns. 25-26; Col. 2, lns. 41-42).

The application that led to the '062 patent as originally filed contained eighteen (18) claims. Claims 1 through 15 were directed to cleaning compositions containing orange oil.[2] In an Office Action dated June 18, 1990 the Examiner rejected Claims 3-7, and 9-15 under 35 U.S.C. § 103 as being unpatentable over Coleman and Dellutri, and in further view of Juliano.[3] (Ex. I; Office Action dated 6/18/90, p. 2).[4] The Examiner stated that Coleman taught a lotion

---

[2] Claims 16 through 18 were directed to a towellete containing orange oil. The first Office Action was a restriction requirement. Specifically, the Examiner found that Claims 1-15 and 16-18 were drawn to patentably distinct inventions in an intermediate-final product relationship. In a Response dated May 17, 1990, the Applicants elected Claims 1-15 with traverse.

[3] The Limited Defendants and plaintiff agree that the level of ordinary skill in the art is either a bachelor's degree in chemistry or the equivalent through some combination of educational and practical experience. (Ex. N; Expert Report of John Carson, p. 4). Therefore, a factual determination of the level of ordinary skill in the art is unnecessary. In addition, the Limited Defendants maintain that the references are so pertinent, and the differences between the art and the "invention" so minor, that the invention is obvious regardless of the level of skill selected.

[4] The Examiner withdrew Claims 16 through 18 because the Applicants' arguments regarding the election requirement were unconvincing. (Ex. I, p. 2).

hand cleaner comprising d-limonene derived from citrus oil, a moisturizer, and emulsifying agents. (Ex. I, p. 2). Dellutri was cited to teach a hand cleaning composition comprising orange oil and aloe vera (i.e., a moisturizer). Juliano was cited to teach skin compositions using oat flour as an emulsifier. (Ex. I, p. 3).

The Applicants submitted a response without amending the claims on September 18, 1990. To overcome the rejection over Juliano and Coleman, the Applicants stated: "[f]irst, as the Examiner has noted, none of the cited references disclose the use of orange oil as a <u>primary</u> constituent." (Ex. J; 9/18/90 Office Action Response, p. 2) (emphasis added).

In addition, the Applicants attempted to overcome Juliano and Coleman by arguing that the '062 patent utilizes orange oil, not d-limonene: "[s]imply put, these references do not suggest the use of orange oil alone, but rather <u>teach away from</u> the use of orange oil since they rely on the distillate d-limonene."[5] (Ex. J, p. 2) (emphasis in original). Further, the Applicants stated: "Applicants have found that undistilled orange oil has higher cleaning properties when used in a composition than distilled d-limonene." (Ex. J, p. 2).

The Applicants also described the function of oatmeal in the present invention: "[i]t has been found that the oatmeal may lend cleaning properties in that oatmeal acts as a drawing agent to help remove certain oils or other material from the surface to be cleaned. It also adds an abrasive quality to the cleaning compound to enhance the scrubbing ability." (Ex. I, p. 4).

In a Final Office Action dated December 20, 1990, the Examiner rejected the Applicants' arguments and rejected the application under 35 U.S.C. § 103. (Ex. K; s*ee* Final Office Action dated 12/20/90, p. 2). More specifically, the Examiner rejected Claims 1-2, 9 and 11 under 35 U.S.C. § 103 as being unpatentable over Dellutri. According to the Examiner, Dellutri showed

---

[5] This complete mischaracterization of the references serves as the basis for Limited Defendants' Motion for Summary Judgment for Unenforceability due to Inequitable Conduct, filed concurrently herewith.

compositions with 20-90% citric oil used with moisturizers. As a result, the Examiner concluded "Dellutri teaches that citrus oil, which can be derived from oranges, is suitable for the invention." (Ex. K, p. 3).

The Examiner also rejected original Claims 5-8 under 35 U.S.C. § 103 as unpatentable over Dellutri and further in view of Juliano. According to the Examiner: "Juliano teaches the inclusion of substances to maintain specific pH. Both Juliano and Dellutri teach compositions having a pH of 5.5…. To use Juliano's agent in the Dellutri invention would have been obvious to one of ordinary skill in the art. The motivation to do so is suggested by Dellutri's use of emulsifiers in view of Juliano's teaching emulsifiers in maintaining pH." (Ex. K, p. 3). Additionally, the Examiner noted that original Claims 3-4, 10 and 12-15 would be allowable if they were rewritten in independent form including all of the limitations of the base claim and any intervening claims. (Ex. K, pp. 3-4).

In response, the Applicants amended original independent Claims 7 and 11.[6] The Applicants were forced to add the limitations of an oat grain derivative product as the emulsifying agent into Claim 7 from Claim 10 and oatmeal into Claim 11 from Claim 12. As a result, Claim 6 requires that the oat grain derivative product function as an emulsifying agent. Similarly, Claim 9 requires that oatmeal act as an emulsifying agent.

The Examiner allowed amended Claims 7 and 11, which were renumbered as issued Claims 6 and 9, respectively. The '062 patent issued on November 5, 1991.


B.     The Board's 35 U.S.C. § 103 Rejection

On November 4, 1991, the Applicants filed a continuation-in-part application of the '062 patent, which was assigned application number 07/786,804 ("the '804 application"). (Ex. F).

---

[6] Original Claims 7 and 11 issued as Claims 6 and 9 of the '062 patent, respectively.

In a first Office Action dated April 6, 1992, the Examiner rejected the claims, in part because the term "oat grain derivative" was indefinite under 35 U.S.C. § 112.  (Ex. L; Office Action dated April 6, 1992, p. 2).  In response, the Applicants noted that the term "oat grain derivative product" means a product "selected from the group consisting of oat gum and oatmeal."  (Ex. M; Office Action Response dated July 6, 1992, pp. 1-2).

After several additional Office Actions and Responses not pertinent here, the Examiner maintained his rejections and the Applicants appealed to the Board.  Among other things, the Applicants reiterated that the primary emulsifier is formulated from a grain derivative product such as oatmeal or oatmeal gum.

Ultimately, the '804 application was rejected by the Board under 35 U.S.C. § 103 as obvious over Coleman in view of Dellutri and the PDR. (Ex. G, p. 9).  More specifically, the following claims (among others) were found invalid:

1.  A method of externally treating human skin including the steps of: applying to said skin a composition having a first ingredient being between five percent (5%) and sixty percent (60%) by volume of orange oil, a second ingredient being a pharmaceutically acceptable moisturizer for human skin including a plant material such as plant oils and plant extract and a third ingredient being an emulsifying agent in the form of a grain based derivative. (Ex. G, p. 2)

17. A method for treating acne on human skin comprising the step of applying a composition including forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of an emulsifying agent in the form of a grain based derivative, and a pharmaceutically acceptable moisturizer including plant material such as plant oils and plant extract to said acne on the human skin. (Ex. G, p. 2).

25. A cleaning product comprising a towellet [sic] formed of an absorbent material, said towellet [sic] being impregnated with a cleaning composition and hermetically sealed in a packet member wherein said cleaning composition comprises a first ingredient being between five percent (5%) and sixty percent

(60%) by volume of orange oil, a second ingredient being a
pharmaceutically acceptable moisturizer including a
plant material such as plant oils and plant extract, for human skin
and a third ingredient being a grain based emulsifying agent of
an oat grain derivative product. (Ex. G, p. 2).

These claims (Claim 25 in particular) are substantially the same as to the asserted claims
of the '062 patent. The Board also noted that it is a "well known fact that skin care compositions
were conventionally impregnated on a soft cloth towelette and hermetically sealed in [a] packet
member." (Ex. G, p. 12). In light of the combined disclosure of Coleman, Dellutri and the PDR,
the Board stated "we hold that one of ordinary skill in the art would have found it obvious to
treat human skin with a composition which comprises orange oil, [a moisturizer] aloe vera
extract, and colloidal oatmeal." (Ex. G, p. 10; *see also*, Ex. G, p. 12).

Furthermore, in rejecting the '804 application in view of Coleman and Dellutri, the Board
found that the "claims on appeal have not been adequately examined in the first instance by the
examiner." (Ex. G, p. 5). The Board also questioned the Examiner as "[i]t does not appear that
the examiner sought to determine whether any specific components used in compositions in the
claimed methods and products were used either individually or in combination with other
ingredients for the purpose of treating human skin or any of the specific conditions set for in the
claims." (Ex. G, p. 6). The Board also stated that although it "has not untaken a complete
independent search of the subject matter on appeal," (which is the same as that of the '062
patent), it "uncovered significant prior art" with only "a brief consultation of standard reference
texts." (Ex. G, p. 6).

Since all of the references related to cleaning compositions particularly adapted for a
user's hands, the Board succinctly stated the self-evident motivation to combine the references:

As seen from Dellutri, the hypothetical person of ordinary skill in
the art would have understood that such compositions [i.e., hand

cleaning compositions] should have a high volume percentage of orange oil. That hypothetical person would have fully understood and expected at the time of the present invention that treating human skin with a composition which comprises orange oil, aloe vera extract, and colloidal oatmeal would be soothing and help alleviate itching and irritation. Specifically, the hypothetical person would have found it obvious to use such a composition to treat damaged skin. (Ex. G, pp. 10-11).

The Board also stated, regarding the pH limitation, that:

the pH of the resulting composition is a result effective variable and would be routinely optimized by one of ordinary skill in the art. *In re Boesch*, 617 F.2d, 276, 205 USPQ 215, 219 (CCPA 1980). (Ex. G, p. 11).

*In re Boesch* held that mere optimization of ranges is well within the purview of one skilled in the art and thus, not able to make a composition patentably distinct.

Applicants' request for reconsideration was denied by the Board on November 19, 1997, and the application went abandoned.

### C.    The Prior Art

#### 1.    The Dellutri Patent

Dellutri, entitled ALL PURPOSE CLEANER CONTAINING D-LIMONENE, issued on November 4, 1986, AND describes hand cleaners which use 20 to 90% d-limonene derived from citric oil as its basic ingredient.[7] (Ex. B, Cover Page; Col. 2, lns. 15-16 and 19-26). The stabilized hand cleaners contain one or more moisturizers (e.g., aloe vera juice) to improve the feel of the cleaning composition on a user's hands. (Ex. B, Col. 2, lns. 33-36; Col. 3, lns. 23-32). A properly blended composition has a pH of 5.5 which will soothe the skin and will not irritate it. (Ex. B, Col. 3, lns. 57-58; Col. 1, lns. 32-33). The composition is particularly adept at

---

[7] Citric oil (or citrus oil) is approximately 94% d-limonene.

removing soiled ingredients from the hands including oil, grease, tar, ink, adhesives, and the like. (Ex. B, Col. 3, lns. 48-51).

### 2.     The Coleman Reference

Richard L. Coleman, "D-Limonene as a Degreasing Agent," The Citrus Industry, Vol. 56, No. 11, published in November 1975, describes citrus oil in various types of hand cleaners. (Ex. C, pp. 23-24). One of the hand cleaners in the article also contains moisturizers (e.g., lanolin) and emulsifiers (e.g., Arlacel 40). (Ex. C, p. 24). Evaluative studies confirmed that the compositions having citrus oil in combination with a moisturizer and an emulsifying agent were preferred over conventional cleaners because they caused less skin irritation than traditional skin cleaning compositions. (Ex. C, pp. 24-25).

### 3.     The Physicians' Desk Reference

The 24th edition of the PDR was published in 1969. (Ex. D, Cover Page). The PDR discloses the use of colloidal oatmeal in hand cleaning compositions for treating itchy skin, for softening skin, and for cleaning skin. (Ex. D, p. 665). In addition, the PDR teaches "that skin care compositions should be adjusted to have a pH approximate to that of normal skin." (Ex. G, p. 11, Ex. D, p. 665).

### 4.     The Juliano Patent

Juliano, entitled COSMETICS CONTAINING FINELY DIVIDED OAT FLOUR, issued on March 29, 1977. (Ex. E, Cover Page). Juliano teaches oat flour in cleansing creams and lotions. (Ex. E, Col. 2, lns. 55-61). Oat flour has the beneficial ability to act as an emulsifier in

the cleaning composition and is added to help soften the skin along with other moisturizers. (Ex. E, Col. 3, lns. 16-21). The final composition should have a pH that approximates the pH of normal skin (i.e., 5.5) to further soothe the skin. (Ex. E, Col. 1, ln. 67 to Col. 2, lns. 5-8; Col. 2, lns. 51-54).

5.    The Soaps Manual

Cleaning compositions with orange oil (such as those which utilize orange oil as a perfume) have been well known for over a century. (*See generally,* e.g., Ex. O). The Soaps Manual, published in 1907, is a comprehensive book describing modern and traditional methods of soap-making that were in use at the turn of the century. (Ex. O, Copyright Page, p. 273). This comprehensive manual is a practical guide to soap-making, including background information and materials for making good soaps (i.e., cleaning compositions). (*See generally,* Ex. O). The Soap Manual further comprises recipes, methodology, and instructions, including suggestions for overcoming problems commonly encountered in soap-making. (Ex. O, pp. 271-275, 295-301, 311-315). The manual states that any person of skill in the art (i.e., the soap-maker) "may use a large number of formulae and produce a great variety of toilet soaps" using the process and methodology described therein. (Ex. O, pp. 270).

More specifically, the soap formulae disclosed in the Soaps Manual include, for example, Oatmeal Dry Soap, Orange Soap and Glycerine Soap,[8] all of which comprise orange peel oil as one of the ingredients in combination with one or more natural or plant moisturizers such as glycerine and/or tallow. (Ex. O, pp. 272-273, 314). Of particular importance is the Oatmeal Dry Soap, which contains oatmeal, a moisturizer which may be water, tallow or any number of natural or plant oils, and a perfume "to any extent and of any character the soap-maker desires."

---

[8] Glycerine Soap lists the ingredient orange peel which contains orange peel oil.

(Ex. O, pp. 312-314). The Soaps Manual specifically identifies orange oil as one such perfume. (Ex. O, p. 164).

## **ARGUMENT**

A.    <u>The Legal Standard For Summary Judgment</u>

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Federal Circuit has held that summary judgment "is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *See Anderson,* 477 U.S. at 255. The existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See id*. at 249. A "mere scintilla" of evidence in support of the non-movant's position is insufficient. *See id.* at 252.

13

B.     The Legal Standard For Obviousness

Under 35 U.S.C. § 103, a person is not entitled to a patent, even if it is not identically disclosed in a reference,

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.  35 U.S.C. § 103(a).

In short, any such reference renders a later filed patent claim "obvious."  35 U.S.C. § 103; *In re Young*, 927 F.2d 588, 591 (Fed. Cir. 1991).  Obviousness is a question of law, *see, e.g., Newell Cos., Inc. v. Kanney Mfg. Co.*, 864 F.2d 757 (Fed. Cir. 1988), and is thus a proper subject of a summary judgment motion.

Because a patent is presumed to be valid, *see* 35 U.S.C. § 282, clear and convincing evidence is required to invalidate a patent.  *IMX, Inc. v. Lendingtree, LLC,* 405 F. Supp. 2d 479, 493 (D. Del. 2005).  In determining whether an invention is obvious under 35 U.S.C. § 103 in view of the prior art, a court must assess: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective evidence that may be present (e.g., "secondary considerations").  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed. Cir. 1996).

Multiple prior art references can be utilized to establish obviousness under 35 U.S.C. § 103, however, the prior art references, when combined, must teach or suggest all of the claim limitations and there must be some reasonable expectation of success regarding the combination of references.  *In re Vaeck,* 947 F.2d 488 (Fed. Cir. 1991).  In addition, "[u]nder section 103, teachings of references can be combined only if there is some suggestion or incentive to do so."  *ACS Hospital Systems Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fed. Cir. 1984).  "Such

14

a suggestion or motivation may come from the references themselves, from knowledge by those skilled in the art that certain references are of special interest in a field, or even from the nature of the problem to be solved." *IMX, Inc.,* 405 F.Supp.2d at 493.

C.    Claims 6 And 9 Are Invalid As Being Obvious In View Of The Prior Art

1.    The Board's Decision Constitutes Clear and Convincing Evidence of the Obviousness of Claims 6 and 9 of the '062 patent

In the present case, there is no question of obviousness – the scope and content of the prior art includes cleaning compositions containing, orange oil, citrus oil, d-limonene (i.e., the primary active ingredient in citrus oil), oatmeal or oat gum as an emulsifier, one or more moisturizers, and a pH within the range of 4.5 to 6.0, inclusively. *See Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572 (Fed. Cir. 1984). All of the patent references upon which the Limited Defendants rely are material to the patentability of the invention of the '062 patent. (*See* Exs. B-E). Plaintiff asserts that Claims 6 and 9 broadly cover a cleaning composition comprising orange oil, a moisturizer, and oatmeal or an oat grain derivative product.

"We [the Board] held above that Coleman, Dellutri, and PDR 1969 would have suggested to one of ordinary skill in the art a skin treating composition which comprises orange oil, [a moisturizer] aloe vera extract, and oatmeal." (Ex. G, p. 12). Rejected Claim 25 of the '804 application and Claims 6 and 9 of the '062 patent are substantially the same. The Board utilized the combination of Dellutri, Coleman, and the PDR to reject Claim 25 of the '804 application.[9] This claim is nearly identical to those asserted against the Limited Defendants in this case. In light of the combined disclosure of Coleman, Dellutri, and the PDR, the Board stated "we hold that one of ordinary skill in the art would have found it obvious to treat human skin with a

---

[9]   In rejecting the '804 application in view of Coleman and Dellutri, the Board found that the "claims on appeal have not been adequately examined in the first instance by the examiner." (Ex. G, p. 5).

composition which comprises orange oil, [a moisturizer] aloe vera extract, and colloidal oatmeal." (Ex. G, p. 10). The Board also rejected Claims 5 and 6 of the '804 application, which recited a pH within the range of 4.5 to 6.0, inclusively, as "skin care compositions should be adjusted to have a pH approximate to that of normal skin." (Ex. G, p. 11). In short, the Board found that the prior art was not adequately searched and the Examiner did not seek to determine which ingredients used in the claimed composition were used either individually or in combination in the prior art to treat or clean human skin.

The Board's comments are equally applicable to the asserted claims of the '062 patent. Specifically, these deficiencies resulted in the issuance of the claims directed at the subject matter the Board found to be obvious in the '804 application. The Board's decision is clear and convincing evidence of unpatentability. According to the Board, a skin cleaning composition comprised of orange oil, a moisturizer, and oatmeal would have been obvious in view of the prior art.

Rejected Claim 25 of the '804 application recites a "cleaning composition" comprising "orange oil," "a pharmaceutically acceptable moisturizer," and "a grain based emulsifying agent in the form of an oat grain derivative product." (Ex. G, p. 2). Similarly, Claim 6 of the '062 patent recites a "cleaning composition" comprising "orange oil," "a pharmaceutically acceptable moisturizer," and "an oat grain derivative product as an emulsifying agent." (Ex. A, Col. 10, lns. 1-6). And, Claim 9 recites a "cleaning composition" comprising "orange oil," "a pharmaceutically acceptable moisturizer," and "oatmeal." (Ex. A, Col. 10, lns. 13-17). The Board's rejection Claim 25 as being obvious in view of the prior art is plainly applicable to Claims 6 and 9 of the '062 patent.

That Claims 6 and 9 are obvious is also apparent from the references themselves. Both Coleman and Dellutri teach using orange oil in a hand cleaner; both Coleman and Dellutri teach using a moisturizer with orange oil; and the PDR teaches that oatmeal has long been used to treat skin and is a well-known additive in skin care compositions. As held by the Board, it would have been obvious to include oatmeal in a hand cleaner to provide this benefit. (Ex. G, pp. 10-12).

Plaintiff does not dispute that each is relevant prior art to the '062 patent. As discussed in the concurrently filed motion for summary judgment of invalidity under 35 U.S.C. §102, Juliano and the Soaps Manual both anticipate Claims 6 and 9 of the '062 patent. Nonetheless, even if this Court determines that either Claim 6 or Claim 9 require something not shown in either Juliano of the Soaps Manual, the claims are still invalid because any such difference between the claims and these references would have been obvious to one of ordinary skill in the art at the time the patent application was filed. 35 U.S.C. § 103; *see In re Young*, 927 F.2d 588, 591 (Fed. Cir. 1991).

For the convenience of the Court, below is a chart summarizing the prior art's teachings as they relate to each and every element of each of Claim 6 and Claim 9 of the '062 patent.

| CLAIM 6 OF U.S. PATENT NO. 5,063,062 | PRIOR ART |
|---|---|
| A skin cleaning composition for external use on human tissues, comprising: | Coleman discloses a hand cleaning composition. (Ex. C, pp. 24-25).<br><br>Dellutri discloses a hand cleaning composition:<br><br>"This invention relates to cleaning agents, and more particularly to a cleaning agent having a citric oil composition for industrial cleaning, which can also be used as a hand cleaner as well as being an all purpose cleaner." (Ex. B, Col. 1, lns. 6-10). |
| orange oil; | Coleman discusses the use of citrus oil: |

| | |
|---|---|
| | "Distilled citrus oil (~ 94% d-limonene) was obtained from a chemical supplier and used in the following formulations." (Ex. C, p. 24).<br><br>Dellutri discloses the use of citric oil, and specifically its major component, d-limonene, as a cleaning agent:<br><br>"A cleaning agent is provided which has a citric oil as its basic ingredient. The citric oil can be further combined with various other ingredients to enhance its usefulness as a cleaning agent. In a particular embodiment of the present invention, the citric oil is mainly distilled d-Limonene." (Ex. B, Col. 2, lns.10-16). |
| a pharmaceutically acceptable moisturizer for human skin; | Coleman uses lanolin, a well known moisturizer, in a Lotion-Type hand cleaner:<br><br>"Lotion-Type hand cleaner<br>Solution A:    300-450 g d-limonene<br>               30 g lanolin<br>Solution B:    25 g Arlacel 40<br>               75 g Tween 40<br>               15 g Arlacel 60<br>               85 g Tween 60"<br>(Ex. C, p. 24).<br><br>Dellutri discloses the use of aloe vera in cleaning compositions in combination with citric oil and d-limonene:<br><br>"When the cleaning agent comprising the citric oils are combined with the water and the Aloe Vera juice, where possibly preselected amounts of surfactants, stabilizers and lanolin may also optionally be included as required, the cleaning agent can be effectively utilized as a hand cleaner." (Ex. B, Col. 3, lns. 39-44). |
| and an oat grain derivative product as an emulsifying agent; | The PDR discloses a composition with colloidal oatmeal. |
| wherein said composition has a pH within a range of 4.5 to 6.0 inclusively. | Dellutri discloses a composition with a pH 5.5:<br><br>"The sample had approximately 19% of alcohol soluble solids (soap and surfactants), no alcohol insoluble solids, no free alkali, and no prohibited solids. It has a pH of 5.5 and a gelatinous consistency." (Ex. B, Col. 3, lns. 55-58). |

| CLAIM 9 OF U.S. PATENT NO. 5,063,062 | PRIOR ART |
|---|---|
| A cleaning compound for use on human skin comprising: | Coleman discloses a hand cleaning composition.  (Ex. C, pp. 24-25).<br><br>Dellutri discloses a hand cleaning composition:<br><br>"This invention relates to cleaning agents, and more particularly to a cleaning agent having a citric oil composition for industrial cleaning, which can also be used as a hand cleaner as well as being an all purpose cleaner." (Ex. B, Col. 1, lns. 6-10). |
| forty-five percent (45%) or less by volume of orange oil; | Coleman discusses the use of citrus oil:<br><br>"Distilled citrus oil (~ 94% d-limonene) was obtained from a chemical supplier and used in the following formulations." (Coleman, p. 24).<br><br>Dellutri discloses the use of citric oil, and specifically its major component, d-limonene, as a cleaning agent:<br><br>"A cleaning agent is provided which has a citric oil as its basic ingredient.  The citric oil can be further combined with various other ingredients to enhance its usefulness as a cleaning agent.  In a particular embodiment of the present invention, the citric oil is mainly distilled d-Limonene."  (Ex. B, Col. 2, lns. 10-16). |
| forty-five percent (45%) or less by volume of oatmeal; | The PDR discloses a composition with colloidal oatmeal: |

19

| | |
|---|---|
| and a pharmaceutically acceptable moisturizer. | Coleman uses lanolin, a well known moisturizer, in a Lotion-Type hand cleaner:<br><br>"Lotion-Type hand cleaner<br>Solution A:    300-450 g d-limonene<br>                     30 g lanolin<br>Solution B:    25 g Arlacel 40<br>                     75 g Tween 40<br>                     15 g Arlacel 60<br>                     85 g Tween 60"<br> (Ex. C, p. 24).<br><br>Dellutri discloses the use of Aloe Vera in cleaning compositions in combination with citric oil and d-limonene:<br><br>"When the cleaning agent comprising the citric oils are combined with the water and the Aloe Vera juice, where possibly preselected amounts of surfactants, stabilizers and lanolin may also optionally be included as required, the cleaning agent can be effectively utilized as a hand cleaner."  (Ex. B, Col. 3, lns. 39-44). |

These prior art references constitute clear and convincing evidence that Claims 6 and 9 of the '062 patent are obvious and invalid.  As held by the Board, the teachings of these prior art references together disclose each and every element of Claims 6 and 9 of the '062 patent, which are therefore rendered obvious and invalid.  *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164 (Fed. Cir. 2006).

The Limited Defendants and plaintiff agree that the level of ordinary skill in the art is either a bachelor's degree in chemistry or the equivalent through some combination of educational and practical experience.[10]  (Ex. N; p. 4).  Therefore, a factual determination of the level of ordinary skill in the art is unnecessary.  In addition, the Limited Defendants maintain

---

[10]  In his reports, plaintiff's expert, Christopher Rhodes, suggests that a person of ordinary skill in the art would be a person with "an educational background that at least is equivalent to an associate's degree in chemistry or a related discipline.  Apart from education, a person skilled in the art has at least one-two years experience in the formulation of comparable products."

that the references are so pertinent, and the differences between the art and the "invention" so minor, that the invention is obvious regardless of the level of skill selected.

The requisite motivation or suggestion may be found either expressly or implicitly in the prior art references. *In re Semaker*, 702 F.2d 989, 994 (Fed. Cir. 1983). The Board agreed. The motivation to combine the references may be implicit from the prior art as a whole rather than expressly stated. *In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000). Here, there is clear and convincing evidence that motivation to combine these references exists to support the § 103 obviousness determination. *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004).

In the present case, motivation to combine the prior art exists on several levels. For example, each of the references teaches compositions to remove substances such as dirt, tar, caulk and cosmetics while simultaneously moisturizing a user's hands. (*See* Ex. A, Col. 2, lns. 21-33; Ex. B, p. 24; Ex. C, Col. 1, lns. 6-10; Ex. D, p. 665; Ex. E, Col. 2, lns. 33-36). *See Ruiz* 357 F.3d at 1275 (Fed. Cir. 2004); *see also In re Gartside*, 203 F.3d 1305, 1319-1320 (Fed. Cir. 2000) (finding motivation to combine references existed because they both attempted to solve the same problem).

In addition, The Board succinctly states the self-evident motivation to combine the references:

> As seen from Dellutri, the hypothetical person of ordinary skill in the art would have understood that such compositions [i.e., hand cleaning compositions] should have a high volume percentage of orange oil. That hypothetical person would have fully understood and expected at the time of the present invention that treating human skin with a composition which comprises orange oil, aloe vera extract, and colloidal oatmeal would be soothing and help alleviate itching and irritation. Specifically, the hypothetical person would have found it obvious to use such a composition to treat damaged skin. (Ex. G, pp. 10-11).

As a result, the combined teachings of Dellutri, Coleman, and the PDR disclose each and every claim limitation for each of Claims 6 and 9. The scope and content of the prior art in light of the level of ordinary skill in the art yields a composition with no discernible differences to the claimed invention. Therefore, summary judgment of invalidity is appropriate because no genuine issue of material fact exists.

2.    Claims 6 and 9 of the '062 Patent are Obvious in View of Dellutri and Juliano

There is no question as to the scope and content of the prior art. Juliano and Dellutri disclose cleaning compositions containing citrus oil, d-limonene (i.e., the primary active ingredient in citrus oil), oatmeal as an emulsifier, one or more moisturizers, and a pH approximate to that normal skin (i.e., 5.5).

Dellutri teaches the desirability of a hand cleaner comprised of 20 to 90% d-limonene obtained from orange oil. (Ex. B, Col. 2, lns. 15-26). Various other emulsifiers and moisturizers can be added to the composition. (Ex. B, Col. 2, lns. 33-36; Col. 3, lns. 23-32). Juliano teaches incorporating oat flour into hand cleaning compositions (which preferably already contain moisturizers and emulsifiers). In addition, Juliano teaches compositions that approximate the pH of skin (i.e., a pH of approximately 5.5) and that include oat flour, the moisturizer mineral oil, and a perfume (e.g., orange oil). (Ex. B. Col. 1, lns. 6-10; Col. 2, lns. 10-16; Col. 3, lns. 39-44; Ex. E, Col. 2, lns. 5-8; Col 2, lns. 55-61; Ex. N, p. 5). Thus, the combined teachings of the references result in a cleaning composition which comprises orange oil, one or more moisturizers, and colloidal oatmeal. (Ex. N, Table 1). Further, the resulting composition has a pH that approximates that of normal skin (e.g., 5.5).

Thus, Dellutri in view of Juliano is clear and convincing evidence that Claims 6 and 9 of the '062 patent are invalid as being obvious to one of skill in the art at the time of the invention. The teachings of these prior art references together disclose each and every element of Claims 6 and 9 of the '062 patent. *Medichem,* 437 F.3d at 1164.

        3.      Any Alleged Commercial Success Cannot Overcome the Proper Legal Conclusion
                That the Asserted Claims of the '062 Patent are Invalid for Obviousness

In a proper case, secondary considerations of non-obviousness, such as industry acquiescence, long felt need, commercial success and the like, if presented, must be considered. However, they do not control the question of obviousness. *Newell Cos., Inc.*, 864 F.2d at 768.

It is well established that a determination of obviousness clearly based upon primary considerations cannot be overturned by secondary considerations, *Ryko Mfg. Co.*, *v. Nu-Star, Inc.*, 950 F.2d 714, 719-20 (Fed. Cir. 1991), particularly when the differences between the prior art and the claimed invention are minor. *BF Goodrich v. Aircraft Braking Systems Corp.*, 72 F.3d 1577, 1583 (Fed. Cir. 1996). Indeed, even on a motion for summary judgment, evidence of commercial success cannot negate a clear finding of obviousness. *Ryko Mfg. Co.*, 950 F.2d at 719-20.

In the present case, plaintiff may assert that the Limited Defendants' own "commercial success" in selling the accused products is the only such secondary factor alleged to support its position.[11] Because a determination of obviousness is based on a totality of the evidence, one such indication of nonobviousness (if at all) is insufficient to render the '062 patent valid. *See Merck & Co., Inc. v. Biocraft Laboratories, Inc.*, 874 F.2d 804, 809 (Fed. Cir. 1989); *Brown & Williamson Tobacco Co. v. Phillip Morris Inc.*, 229 F.3d 1120, 1131 (Fed. Cir. 2000). The

---

[11] Of course, plaintiff does not actually manufacture or sell any product under the '062 patent. In addition, the inventors' product, Healthy Kleaner, was a commercial failure.

Limited Defendants' overwhelming showing of obviousness, and thus invalidity, cannot be outweighed by any secondary indicia offered by the plaintiff.

In view of the aforementioned references, it is indisputable that each and every element of Claims 6 and 9 of the '062 patent is taught by the prior art.  Accordingly, there is no question of fact as to the nonexistence of any differences between the prior art and the claimed invention.

## <u>CONCLUSION</u>

For the forgoing reasons, the Limited Defendants respectfully request that summary judgment be granted that Claims 6 and 9 of the '062 patent are invalid under 35 U.S.C. § 103.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated:  July 6, 2006

By:____/s/ Francis G.X. Pileggi_____
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
FOX ROTHSCHILD LLP
Suite 1300
919 North Market Street
Wilmington, Delaware  19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com

E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath and Body Works, Inc.
Limited Brands, Inc.