Applicant or Patentee: Douglas Howard Greenspan and Phillip A. Low Attorney's
Serial or Patent No.:
Filed or Issued:                                                          Docket No.: 1286
For: CLEANING COMPOSITIONS WITH ORANGE OIL

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY
STATUS (37 CFR 1.9 (f) and 1.27 (b)) — INDEPENDENT INVENTOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9 (c) for pur-
poses of paying reduced fees under section 41 (a) and (b) of Title 35, United States Code, to the Patent and Trademark
Office with regard to the invention entitled CLEANING COMPOSITIONS WITH ORANGE OIL
described in

[X] the specification filed herewith
[ ] application serial no. _____, filed _____
[ ] patent no. _____, issued _____

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant, convey
or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR
1.9 (c) if that person had made the invention, or to any concern which would not qualify as a small business concern under
37 CFR 1.9 (d) or a nonprofit organization under 37 CFR 1.9 (e).

Each person, concern or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation
under contract or law to assign, grant, convey, or license any rights in the invention is listed below:

[ ] no such person, concern, or organization
[ ] persons, concerns or organizations listed below*

*NOTE: Separate verified statements are required from each named person, concern or organiza-
tion having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME _____
ADDRESS _____
          [ ] INDIVIDUAL        [ ] SMALL BUSINESS CONCERN      [ ] NONPROFIT ORGANIZATION

FULL NAME _____
ADDRESS _____
          [ ] INDIVIDUAL        [ ] SMALL BUSINESS CONCERN      [ ] NONPROFIT ORGANIZATION

FULL NAME _____
ADDRESS _____
          [ ] INDIVIDUAL        [ ] SMALL BUSINESS CONCERN      [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitle-
ment to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee
due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28 (b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information
and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements
and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States
Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or
any patent to which this verified statement is directed.

Douglas Howard Greenspan    Phillip A. Low
NAME OF INVENTOR          NAME OF INVENTOR          NAME OF INVENTOR

_____   _____   _____
Signature of Inventor       Signature of Inventor       Signature of Inventor

9-26-89                     9-26-89
Date                        Date                        Date

LPM 000167

17 413395

FORM PTO-1082

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Case Docket No. __1286__

Date: **September 27, 1989**

Sir:

Transmitted herewith for filing is the patent application of

Inventor: **Douglas Howard Greenspan and Phillip A. Low**

For: **CLEANING COMPOSITIONS WITH ORANGE OIL**

Enclosed are:

☑ ___10___ sheets of drawing.

☐ An assignment of the invention to _____

☐ A certified copy of a _____ application.
☐ An associate power of attorney.
☑ A verified statement to establish small entity status under 37 CFR 1.9 and 37 CFR 1.27.
☐

The filing fee has been calculated as shown below:

| FOR: | (Col. 1) NO. FILED | (Col. 2) NO. EXTRA | SMALL ENTITY RATE | SMALL ENTITY FEE | OR | OTHER THAN A SMALL ENTITY RATE | OTHER THAN A SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $185 | OR | | $370 |
| TOTAL CLAIMS | 18 -20= | 0 | 0 ×6 | $00 | OR | ×12 | $ |
| INDEP CLAIMS | 4 -3= | 1 | 1×18 | $18 | OR | ×36 | $ |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENTED | | | +60 | $ | OR | +110 | $ |
| | | | TOTAL | $203. | OR TOTAL | $ | |

*If the difference in Col. 2 is less than zero, enter "0" in Col. 2.

☐ Please charge my Deposit Account No. _____ the amount of $_____ A duplicate copy of this sheet is enclosed.

☑ A check in the amount of $203.00 to cover the filing fee is enclosed.☐ and recordation of assignment.

☐ The Commissioner is hereby authorized to charge payment of the following fees associated with this communication or credit any overpayment to Deposit Account No. _____ A duplicate copy of this sheet is enclosed.

☐ Any additional filing fees required under 37 CFR 1.16.
☐ Any patent application processing fees under 37 CFR 1.17.

☐ The Commissioner is hereby authorized to charge payment of the following fees during the pendency of this application or credit any overpayment to Deposit Account No. _____ A duplicate copy of this sheet is enclosed.

☐ Any patent application processing fees under 37 CFR 1.17.
☐ The issue fee set in 37 CFR 1.18 at or before mailing of the Notice of Allowance, pursuant to 37 CFR 1.311 (b).
☐ Any filing fees under 37 CFR 1.16 for presentation of extra claims.

Respectfully submitted,

_Timothy J. Martin_

Timothy J. Martin, Reg. No. 28,640
J. Preston Oxenham, Reg. No. 31,862
44 Union Blvd., Suite 620
Lakewood, Colorado   80228

LPM 000168



CERTIFICATE OF EXPRESS MAILING UNDER 37 C.F.R. 1.10

I hereby certify that the attached documents, including a patent application entitled CLEANING COMPOSITIONS WITH ORANGE OIL, with check number 9238 for $209.00, declaration and power of attorney, and verified statement claiming small entity status are being deposited with the United States Postal Service as EXPRESS MAIL, label number B94492708, for overnight delivery in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, DC 20231, on this 27th day of September, 1989.

*Donne R. Culbey*

LPM 000169



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

07/413,395   09/27/89   GREENSPAN      D      1286

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620                      SPEAR, J
LAKEWOOD, CO  80228

                                              152      2

                                              04/19/90

☒ This application has been examined.   ☐ Responsive to communication filed on _____   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____ month(s), 30 days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.          4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐

**Part II   SUMMARY OF ACTION**

1. ☒ Claims 1-18 _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☐ Claims _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☒ Claims 1-18 _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-32s (Rev. 8-88)                    **EXAMINER'S ACTION**

LPM 000170

Serial No. 413,395                          -2-
Art Unit 152

Restriction to one of the following inventions is
required under 35 U.S.C. 121:

I.  Claims 1-15, drawn to a skin cleaning prepara-
tion, classified in Class 424, subclass 401.

II.  Claims 16-18, drawn to a towelette, classified
in Class 15, subclass 209.

The inventions are distinct, each from the other,
because of the following reasons:

Inventions Group I and Group II are related as
mutually exclusive species in intermediate final product
relationship.  Distinctness is proven for claims in this
relationship if the intermediate product is useful to
make other than the final product (MPEP Section
806.04(b), 3rd paragraph), and the species are paten-
tably distinct.  (MPEP Section 806.04(h)).

In this instant case, the intermediate product is
deemed to be useful as a liquid cleaner or solvent solu-
tion for cosmetics, and the inventions are deemed
patentably distinct since there is nothing on this
record to show them to be obvious variants.

Should applicant traverse on the ground that the
species are not patentably distinct, applicant should
submit evidence or identify such evidence now of record
showing the species to be obvious variants, or clearly
admit on the record that this is the case.  In either
instance, if the examiner finds one of the inventions
anticipated by the prior art, the evidence of admission
may be used in a rejection under 35 U.S.C. 103 of the
other invention.

Because these inventions are distinct for the
reasons given above, and have acquired a separate status
in the art as shown by their different classification,

LPM 000171

Serial No. 413,395                     -3-

Art Unit 152

restriction for examination purposes as indicated is
proper.

    Applicant is advised that the response to this
requirement to be complete must include an election of
the invention to be examined even though the requirement
may be traversed. (37 CFR 1.143).

    A telephone call was made to Mr. Timothy J. Martin
on April 4, 1990 to request an oral election to the
above restriction requirement, but did not result in an
election being made.

    Applicant is reminded that upon the cancellation of
claims to a nonelected invention, the inventorship must
be amended in compliance with 37 CFR 1.48(b) if one or
more of the currently named inventors is no longer an
inventor of at least one claim remaining in the
application. Any amendment of inventorship must be
accompanied by a diligently filed petition under 37 CFR
1.48(b) and by the fee required under 37 CFR 1.17(h).

    The Group and/or Art Unit location of your
application in the Patent and Trademark Office has
changed. To aid in correlating any papers for this
application, all further correspondence regarding this
application should be directed to Group 150, Art Unit
152.

    Any inquiry concerning this communication should be
directed to James M. Spear at telephone number
703-557-6525.



J.Spear:lak

04/11/90



LPM 000172



RECEIVED

MAY 23 1990

GROUP 150

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RE:  Patent Application for        :    Date: May 17, 1990
     Greenspan and Low            :    Group: Art Unit 152
Serial No.: 07/413,395            :    Examiner: J. Spear
Filed:  September 27, 1989         :    Action: ELECTION WITH
For: CLEANING COMPOSITIONS WITH    :               TRAVERSE
     ORANGE OIL                    :
                                   :

TO:  The Commissioner of Patents and Trademark Office
     Washington, DC  20231

Sir:

In response to the Office Action of 19 April 1990, Applicant hereby provisionally elects to prosecute the species shown in Claims 1-15 which is drawn to a skin cleaning preparation.  This election is made with traverse.

In the present matter, the Examiner has required the restriction of the invention to a single species disclosed according to 35 U.S.C. 121.  The Examiner has argued that Claims 1-15 designated group 1 are drawn to a skin cleaning preparation classified in Class 424, subclass 401 and that Claims 16-18 designated group 2 are drawn to a towellet, classified in Class 15, subclass 209.  The Examiner alleges the inventions are distinct because the invention group 1 and group 2 are related as mutually exclusive species in intermediate-final product relationship.  The Examiner claims that the intermediate product is deemed to be useful as a liquid cleaner or solvent for cosmetics.  Therefore, the Examiner alleges that the inventions are patentably distinct since there is nothing in the record to show them to be obvious variants.

1

LPM 000173

It is believed that the Examiner's citation of MPEP §
806.04(b) third paragraph is not an appropriate rejection in this
matter. It is not believed that this is a case of an
intermediate product and a final product. The example of an
intermediate and final product shown in the MPEP has to do with
two carbon compounds presumably developed in a chemical process
of producing a new composition of matter. The present invention
is not an intermediate and final product, instead it is a
combination with an essential sub-combination. The MPEP §
806.05(a) defines a combination or an aggregation as an
organization in which a sub-combination or element is apart. It
is believed that Claims 16-18 are drawn to a combination, and
Claims 1-15 are drawn to a sub-combination or element or part of
that combination. It is believed that MPEP §806.05(o) is the
appropriate section to be reviewed in regards to the issue of
patentability and the distinction of this combination. MPEP
806.05(g) is instructive:

> In order to establish that combination and
> sub-combination inventions are distinct, 2-way
> distinctness must be demonstrated.
>     To    support    a    requirement    for
> restriction, both 2-way distinctiveness and
> reasons for insisting on restrictions are
> necessary. If it can be shown that a
> combination, as claimed (1) does not require
> to  particulars of these  sub-combinations
> claimed for patentability (to show novelty and
> unobviousness), and (2) the sub-combination
> can be shown to have utility either by itself
> or in other and different relations, the
> inventions are distinct. When these factors
> can not be shown, the inventions are not
> distinct.

It is believed that the second example shown under 806.05(b) is
similar to the facts underlying this invention. If there is no

2

LPM 000174

evidence that the combination is patentable without the details of the sub-combination, restriction should not be required. Where the relationship between the claims is such that the separately claimed sub-combination constitutes the essential distinguishing feature of the combination as claimed, the inventions are not distinct and a requirement for a restriction must not be made, even though the sub-combination has separate utility.

The combination of Claims 16-18 show a towellet formed of absorbent material with a cleaning composition comprising a first ingredient being from between 5% and 60% by volume of orange oil, and a second ingredient being pharmaceutically acceptable moisturizer for human skin and a third ingredient being an emulsifying agent. The sub-combination of Claims 1-15 show a cleaning composition which includes the three (3) previously mentioned ingredients. The sub-combination is claimed separately and constitutes the essential distinguishing feature of the combination of the towellets and ingredients as claimed in Claims 16-18. There is no evidence that the combination of A, a towellet formed of absorbent material and B, a cleaning composition, is patentable without the details of B which are the various ingredients which make B up. Towellets formed of absorbent material that have cleaning compositions impregnated on them packaged in a small sealed container are known. Thus under MPEP 806.05(b) the sub-combination, which is the cleaning composition and the various ingredients that make it up, is

3

LPM 000175

essential distinguishing feature of the combination of a towellet formed of absorbent material with the cleaning combination. The inventions are not distinct and requirement for restriction is inappropriate although the sub-combination may have a separate utility.

The Applicants submit that the combination and the sub-combination which are Claims 1-18 are clearly permitted in the manner claimed in the present invention as originally filed. See MPEP 806.05(b). Because this invention has claims to a sub-combination and claims to a combination in which the sub-combination is essential to the combination, a restriction requirement should not be required. Therefore, the Applicants request that the Examiner reconsider the restriction requirement and if appropriate kindly withdraw the restriction requirement set forth in the Office Action of 19 April 1990.

Respectfully submitted,

TIMOTHY J. MARTIN, P.C.

Timothy J. Martin, #28,640
Raymond Fink, #20,309
Dana Rewoldt, #P-33,762
44 Union Blvd., Suite 620
Lakewood, Colorado    80228
(303) 988-0800

CERTIFICATE OF MAILING UNDER 37 C.F.R. 1.8

I hereby certify that the foregoing ELECTION WITH TRAVERSE is being deposited with the United States Postal Service as first-class mail, postage prepaid, in an envelope addressed to The Commissioner of Patents and Trademarks, Washington, DC 20231; on this *15th* day of May, 1990.

4

LPM 000176



**UNITED STA... S DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/413,395 | 09/27/89 | GREENSPAN | 1266 |

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO 80228

| EXAMINER |
|---|
| SPEAR, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 152 | 4 |

DATE MAILED:

06/18/90

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☐ Responsive to communication filed on _____   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☒ Notice of Art Cited by Applicant, PTO-1449.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.

2. ☐ Notice re Patent Drawing, PTO-948.
4. ☐ Notice of Informal Patent Application, Form PTO-152
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims __1-18__ are pending in the application.
Of the above, claims __16-18__ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims __1-15__ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev.3-83)                    EXAMINER'S ACTION

LPM 000177

Serial No. 413,395                                        -2-

Art Unit 152


This action is in response to the election with traverse of claims 1-15 submitted May 17, 1990 by Timothy J. Martin. The applicants' arguments have been considered but they are not deemed to be persuasive.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claim 1 is rejected under 35 U.S.C. 103 as being unpatantable over Coleman, The Citrus Industry Pub:, November 1975.

Coleman shows a lotion hand cleaner comprising approximately 57% d-limonene, moisturizer (lanolin) and emulsifying agents (Arlacel and Tween). Although distilled citrus oil (94% d-limonene) is used it would be obvious to use orange oil, if it were not the source in this case. Page 24-25.

Claim 2 is rejected under 35 U.S.C. 103 as being

LPM 000178

Serial No. 413,395                                        -3-
Art Unit 152

unpatentable over Coleman as applied to claim 1 above,
and further in view of Dellutri US 4,620,937.

Dellutri shows a skin cleaner comprising d-limonene
and further comprising aloe vera. To use aloe vera in
the Coleman invention would be obvious since both
inventors teach hand cleaners of similar compositions
containing moisturizers. Col. 1, lines 60-65. Col. 3,
lines 23-28.

Claims 3-7; 9-15 are rejected under 35 U.S.C. 103
as being unpatentable over Coleman and Dellutri as
applied to claim 2 above, and further in view of Juliano
et al US 4,014,995.

Juliano for claim 3 shows compositions for use on
the skin containing oat flour. Juliano further shows
oat flour as an emulsifier. Col. 1, lines 34-40. Col.
3, lines 16-25. To use the oat flour in the invention
described above would be obvious in as much as the use of
emulsifiers is a well recognized art. Nothing unobvious
is seen by using oatmeal in claim 4, since oatmeal by
definition is ground oats of a larger particle size than
flour.

For claim 5 both Dellutri and Juliano teach
compositions having a ph of 5.5. Juliano col. 2, lines
3-13, col. 3, lines 5-15. Dellurti col. 3, lines 52-59.

LPM 000179

Serial No. 413,395                    -4-
Art Unit 152

For claims 6-7 Juliano teaches the inclusion of substances to maintain a specific ph. Nothing un-obvious is seen in applicant' use of a ph range of 4.5-6, since the prior art shows the importance of ph balanced preparations for on the skinuse.

Claim 8 is rejected under 35 U.S.C. 103 as being unpatentable over Coleman, Dellutri, Juliano as applied to claims 1-7 above, and further in view of Jones US 4,5 33,487.

Jones shows the preparation of d-limonene containing buffers. The preparation is rendered harmless to the skin primarily due to the presence of the buffers Col. 3, lines 43-50. To use the buffered stable d-limonene preparations of Jones in the above mentioned inventions would be obvious in view of the prior art teachings. Note Dellutri's use of stabilized d-limonene. Col. 2, lines 19-23.

For claims 9-11 see Coleman, Dellutril and Juliano as applied to claim 3 above.

For claim 12 see Juliano as applied to claim 4 above.

For claims 13-15 see Coleman and Dellutri as applied to claim 2. Glycerin, aloe vera, jojoba oil and safflower oil are considered equivalents. Nothing un-obvious is seen in applicants use of mixtures.

LPM 000180

Serial No. 413,395                           —5—
Art Unit 152


    The motivation to produce cleaning compositions for
use on the skin arises from the teachings of Coleman,
Dellutri, Juliano and Jones who suggest the desirability
to prepare cleaners comprised of orange oil having
enhanced cleaning properties. The formulations are
non-toxic, stable and non irritating to the skin.
Claims 1-15 are rejected.

    The Group and/or Art Unit location of your
application in the Patent and Trademark Office has
changed. To aid in correlating any papers for this
application, all further correspondence regarding this
application should be directed to Group 150, Art Unit
152.

    Any inquiry concerning this communication should be
directed to James M. Spear at telephone number
703-557-6525.

Spear:pla
(703) 557-6525
06/11/90

                                    SPE
                                    AU152

TO SEPARATE, ??? ? TOP AND BOTTOM EDGES, SNAP-APART AND ??? ??? CARBON

| FORM PTO-892 (REV. 3-78) U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE NOTICE OF REFERENCES CITED | SERIAL NO. 413395 | GROUP ART UNIT 152 | ATTACHMENT TO PAPER NUMBER 4 |
|---|---|---|---|
| | APPLICANT(S) Greenspan et al. | | |

### U.S. PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 4014995 | 3-77 | Juliano et al. | 514 | 783 | |
| B | | 4533487 | 8-85 | Jones | 252 | 173 | |
| C | | 4620937 | 11-86 | DeMutri | 252 | 162 | |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHT. DWG SPEC. |
|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | | | | | |
| P | | | | | | | | |
| Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | D-Limonene as a Degreasing Agent Richard L. Coleman, The Citrus Industry Vol. 56, No. 11, November, 1975, pages 23-25 |
| S | |
| T | |
| U | |

| EXAMINER James M. Spear | DATE 6-1-90 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action. (See Manual of Patent Examining Procedure, section 707.05 (a).)

LPM 000182

RECEIVED

SEP 21 1990

GROUP 150

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Patent Application for | : | Date: September 18, 1990 |
| Greenspan and Low | : | Group: Art Unit 152 |
| Serial No.: 07/413,395 | : | Examiner: J. Spear |
| Filed:  September 27, 1989 | : | Action: AMENDMENT |
| For: CLEANING COMPOSITIONS WITH | : | |
|   ORANGE OIL | : | |

TO:  The Commissioner of Patents and Trademark Office
     Washington, DC  20231

Sir:

   In response  to the Office Action of 18 June  1990,  please

reconsider  the  claims  of  this  application  in  view  of  the

following remarks:


                          REMARKS

   These  remarks  are in response to the Office Action  of  18

June 1990 in the above referenced patent application.   In that

application,  Claims 1-18 were pending.  However,  Claims  16-18

were  deemed  withdrawn from  consideration  despite  Applicants'

traverse of the election.

   Of the remaining claims,  Claim 1 was rejected over  Coleman,

The  Citrus Industry Publication, November 1976 under  35  U.S.C.

Section  103.  Claim 2 was rejected over Coleman in further  view

of U.S. Patent No. 4,620,937 to Bellutri under 35 U.S.C.  Section

103.  Claims 3-7 and 9-15 were rejected over Coleman and Dellutri

in  further  view  of U.S. 4,014,995 to  Juliano.   Claim  8  was

rejected  over  the  Coleman reference in view  of  Dellutri  and

Juliano  and  in  further view of U.S. Patent  No.  4,553,487  to

Jones.

                              1

At the outset, Applicants note with appreciation the thoroughness of the Examiner's comments in applying the cited references against the claims. However, Applicants have not amended their claims since they believe that the references teach away from the present invention, as currently claimed, so that all of the claims in this application are allowable over these references. Applicants' position is supported by two arguments.

First, as the Examiner has noted, none of the cited references disclose the use of orange oil as a primary constituent. Rather, each of the references rely on the cleaning properties of d-limonene as the primary cleaning constituent. The Examiner then concludes that it would be obvious to substitute orange oil for the d-limonene since the d-limonene is distilled from a citrus oil.

Simply put, these references do not suggest the use of orange oil alone, but rather teach away from the use of orange oil since they rely on the distillate d-limonene. Applicants have found that undistilled orange oil has higher cleaning properties when used in a composition than distilled d-limonene. Applicants have tested the compositions produced according to the ranges of the present application wherein an equal weight percent of d-limonene was substituted for the orange oil. In each case, the orange oil based composition had superior cleaning properties than the identical composition with an equivalent amount of d-limonene substituted for the orange oil. While Applicants believe that other esters and volatiles in the orange oil may contribute to the enhanced cleaning properties, although the

2

LPM 000184

exact reason for the enhanced cleaning properties has not yet been determined. Nonetheless, Applicants have learned of a surprising result from the raw orange oil in these enhanced cleaning properties. This distinction over the use of d-limonene in the prior art is significant and not at all obvious. Indeed, Applicants have found that their composition is effective on substances such as urethane caulking, paint and tar that resist d-limonene cleaning compositions.

The enhanced cleaning property of orange oil contributes to the second distinction between the compositions recited in this application and the prior art. A review of the prior art shows that d-limonene is used in weight percentage ratios that are above the lower ratios claimed in the present application. These ratios run from a low of 51% d-limonene (Coleman) to a high of approximately 70% d-limonene (Coleman). Dellutri uses approximately 58%-60% d-limonene. As noted in the Coleman reference, citrus oil contains approximately 94% d-limonene so that the equivalent amount of citrus oil necessary to provide the amount of d-limonene in the prior art compositions run from approximately 55%-75%.

Claim 1 of the present application claims a range of 5% to 60% orange oil which, as noted above, allows for greater cleaning ability for lesser of the included cleaning agent (orange oil). Since the expense of orange oil is fairly substantial, this surprising result allows a reduction in the proportion of orange oil as opposed to d-limonene, and this leads to substantial economies.

3

LPM 000185

A derivative benefit is seen where the quantity of orange oil, (and thus the amount of d-limonene) since studies have indicated that d-limonene may have carcinogenic effects. For example, the attached study taken from the National Toxicology Study Program (January 1990) indicates a possible adverse effect from excess d-limonene. Where a cleaning composition is intended as one suitable for hand cleaning, as is the present invention, the benefits from reducing the quantity of d-limonene while maintaining the cleaning ability may be appreciated without further explanation.

Accordingly, all of the claims in this application are believed allowable for the inclusion of orange oil. However, several points directed to the dependent claims are in order since it is believed that the dependent claims contain allowable subject matter in their own right. In particular, those claims including the use of oat-grain derivatives and oatmeal. Here, it has been found that the oatmeal may lend cleaning properties in that oatmeal acts as a drawing agent to help remove certain oils or other materials from the surface to be cleaned. It also adds an abrasive quality to the cleaning compound to enhance the scrubbing ability.

Based on the foregoing, it is believed that this application is conditioned for allowance and action to that end is courteously solicited. Should the Examiner request any further information, in the form of affidavits or otherwise, regarding the matters addressed in this Amendment, the Examiner is invited to contact attorney for the Applicants at the telephone number

4

LPM 000186

listed    below.    Applicants    would    specifically    request    the
opportunity   to   submit   such   affidavits   in   the   event   that   the
Examiner maintains the rejection of the present application.

Respectfully submitted.

TIMOTHY J. MARTIN, P.C.

Timothy J. Martin, #28,640
Dana Rewoldt, #P-33,762
44 Union Blvd., Suite 620
Lakewood, Colorado     80228
(303)  968-0800

CERTIFICATE OF MAILING UNDER 37 C.F.R. 1.8

I  hereby  certify  that  the  foregoing  AMENDMENT  is  being
deposited  with  the  United  States  Postal  Service  as  first-class
mail,   postage   prepaid,   in   an   envelope   addressed   to   The
Commissioner of Patents and Trademarks, Washington, DC 20231, on
this _____ day of September, 1990.

5

LPM 000187

NTP TECHNICAL REPORT

ON THE

# TOXICOLOGY AND CARCINOGENESIS

## STUDIES OF *d*-LIMONENE

(CAS NO. 5989-27-5)

## IN F344/N RATS AND B6C3F₁ MICE

(GAVAGE STUDIES)

C.W. Jameson, Ph.D., Study Scientist

NATIONAL TOXICOLOGY PROGRAM
P.O. Box 12233
Research Triangle Park, NC 27709

January 1990

NTP TR 347

NIH Publication No. 90-2602

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
Public Health Service
National Institutes of Health

LPM 000188

*Conclusions:* Under the conditions of these 2-year gavage studies, there was *clear evidence of carcinogenic activity* of *d*-limonene for male F344/N rats, as shown by increased incidences of tubular cell hyperplasia, adenomas, and adenocarcinomas of the kidney. There was *no evidence* of *carcinogenic activity* of *d*-limonene for female F344/N rats that received 300 or 600 mg/kg. There was *no evidence of carcinogenic activity* of *d*-limonene for male B6C3F₁ mice that received 250 or 500 mg/kg. There was *no evidence of carcinogenic activity* of *d*-limonene for female B6C3F₁ mice that received 500 or 1,000 mg/kg.

An increased severity of spontaneous nephropathy, increased incidences of linear mineralization of the renal medulla and papilla, and hyperplasia of the transitional epithelium of the renal papilla were present in dosed male rats.

## SUMMARY OF THE TWO-YEAR GAVAGE AND GENETIC TOXICOLOGY STUDIES OF d-LIMONENE

| Male F344/N Rats | Female F344/N Rats | Male B6C3F₁ Mice | Female B6C3F₁ Mice |
|---|---|---|---|
| **Doses** 0, 75, or 150 mg/kg *d*-limonene in corn oil by gavage, 5 d/wk | 0, 300, or 600 mg/kg *d*-limonene in corn oil by gavage, 5 d/wk | 0, 250, or 500 mg/kg *d*-limonene in corn oil by gavage, 5 d/wk | 0, 500, or 1,000 mg/kg *d*-limonene in corn oil by gavage, 5 d/wk |
| **Body weights in the 2-year study** Approximately 6% reduction in high dose group | Approximately 6% reduction in high dose group | No effect | 10% reduction in high dose group by end of study |
| **Survival rates in the 2-year study** 29/50; 33/50; 42/50 | 42/50; 40/50; 36/50 | 33/50; 34/50; 39/50 | 42/50; 44/50; 42/50 |
| **Nonneoplastic effects** Mineralization (2/50; 43/50; 45/50) and epithelial hyperplasia (6/50; 25/50; 43/50) of the renal papilla; renal tubular cell hyperplasia (0/50; 4/50; 7/50) | None | None | None |
| **Neoplastic effects** Renal tubular cell adenomas (0/50; 4/50; 8/50) and adenocarcinomas (0/50; 1/50; 3/50) | None | None | None |
| **Level of evidence of carcinogenic activity** Clear evidence | No evidence | No evidence | No evidence |

| **Genetic toxicology assays** | | | |
|---|---|---|---|
| *S. typhimurium* (gene mutation) Negative with and without S9 | Mouse L5178Y/TK⁺/⁻ (TK mutations) Negative with and without S9 | CHO Cells in Vitro | |
| | | SCE Negative with and without S9 | Aberrations Negative with and without S9 |

*Explanation of Levels of Evidence of Carcinogenic Activity is on page 6.
A summary of the Peer Review comments and the public discussion on this Technical Report appears on pages 9-10.

LPM 000189



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/413,395 | 09/27/89 | GREENSPAN | D | 1296 |

EXAMINER

SPEAR, J

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO 80228

| ART UNIT | PAPER NUMBER |
|---|---|
| 152 | 6 |

DATE MAILED: 12/20/90

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☐ Responsive to communication filed on _____    ☒ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims __1 - 15__ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims __1-2, 5-9 and 11__ are rejected.

5. ☒ Claims __3-4, 10 and 12-15__ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

ß

EXAMINER'S ACTION

1 (Rev. 9-89)

LPM 000190

Serial No. 417,195                                    2-

Art Unit   153

15.

Applicant's arguments filed September 18, 1990 have been
fully considered but they are not deemed to be persuasive.

16.

The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

A patent may not be obtained though the invention is not
identically disclosed or described as set forth in section
102 of this title, if the differences between the subject
matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the
time the invention was made to a person having ordinary
skill in the art to which said subject matter pertains.
Patentability shall not be negatived by the manner in which
the invention was made.

Subject matter developed by another person, which qualifies
as prior art only under subsection (f) or (g) of section 102
of this title, shall not preclude patentability under this
section where the subject matter and the claimed invention
were, at the time the invention was made, owned by the same
person or subject to an obligation of assignment to the same
person.

17.

Claims 1-2, 9 and 11 are rejected under 35 U.S.C. § 103 as
being unpatentable over Dellutri US 4,620,937.

For claim 1, Dellutri shows compositions wherein 20-90%
citric oil is used in combination with stearic acid, oleic acid
and aloe vera.  See col. 2, lines 10-13, Claims 1 and 7.  Note
that the stearic and oleic acids emulsify the composition.  Col.
2, lines 33-38.  Aloe vera acts as a moisturizer as in
applicants' claimed invention. Col. 3, lines 23-28.  Dellutri

LPM 000191

Serial #   113,395                        -3

Art Unit   259

does not specify orange oil. IT would have been obvious to one
of ordinary skill in the art to use orange oil the motivating
facts being suggested by Dellutri's use of undistilled citrus
oil. Although distilled D-Limonene is preferred, Dellutri
teaches that citrus oil  which can be derived from oranges  is
suitable for the invention. Col. 2, lines 14-17, thus negating
applicants' claim of nonobviousness.

    For claims 8, 9 and 11, see Dellutri as explained above.

14.

    Claims 5-9 are rejected under 35 U.S.C. § 103 as being
unpatentable over Dellutri as applied to claim 1 above, and
further in view of Juliano US 4,911,895.

    Juliano teaches the inclusion of substances to maintain a
specific pH  Both Juliano and Dellutri teach compositions having
teach compositions having a pH of 5.5 Juliano col. 2  lines 7-11
col. 3  lines 5-15.  Dellutri col. 3, lines 55-59   To use
Juliano's agent in the Dellutri invention would have been obvious
to one of ordinary skill in the art. The motivation to do so is
suggested by Dellutri's use of emulsifiers in view of Juliano's
teaching emulsifiers in maintaining pH.

    Claims 1-3, 5-9 and 11 are rejected.

15.

    Claims 3-4  10 and 12-15 are objected to as being dependent
upon a rejected base claim, but would be allowable if rewritten

LPM 000192

Serial No. 411,395

Art Unit   152

In independent form including all of the limitations of the base
claim and any intervening claims.

20.

THIS ACTION IS MADE FINAL.  Applicant is reminded of the
extension of time policy as set forth in 37 C.F.R. § 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

21.

The Group and/or Art Unit location of your application in
the PTO has changed.  To aid in correlating any papers for this
application, all further correspondence regarding this
application should be directed to Group Art Unit 152.

LPM 000193

Serial No. 113,795                                    -5-

Art Unit   152

22.

    Any inquiry concerning this communication should be directed
to James H. Spear at telephone number (703) 308-2467.

Spear:ird
December 18, 1990
(703)308-2351



THURMAN PAGE
PRIMARY EXAMINER
ART UNIT 152

LPM 000194



RECEIVED: GROUP 150

1991 MAR 26 AM 9: 34

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RE: Patent Application for          :    Date: March 18, 1991
    D. Greenspan                    :    Group: At Unit 152
Serial No.: 07/413,395             :    Examiner: Thurman Page
Filed: September 27, 1989          :    Action: AMENDMENT
For: CLEANING COMPOSITIONS          :
     WITH ORANGE OIL                :
                                    :

TO: The Commissioner of Patents and Trademark Office
    Washington, DC  20231

Sir:

       In  response  to the Office Action dated 20  December  1990,
finally  rejecting this application, please enter  this  proposed
amendment in the above identified application:

In the Claims:

       1.  (Once Amended)  A skin cleaning composition adapted  for
external  use  on human tissues, comprising  a  first  ingredient
being between five percent (5%) and sixty percent (60%) by volume
of  orange  oil, a second ingredient being a  pharmaceutically
acceptable  moisturizer  for human skin and  a  third  ingredient
being an emulsifying agent in the form of an oat grain derivative
product.

       Claim 4, line 2, kindly cancel "3", and  substitute —1—.

       6.  (Once Amended)  A skin cleaning composition for external
use  on human tissues, comprising orange oil, a  pharmaceutically
acceptable moisturizer for human skin and an oat grain derivative
product  as an emulsifying agent, wherein said composition has  a
pH within a range of 4.5 to 6.0, inclusively.

(as amended)

4-3-91     1. A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of [an emulsifying agent,] oatmeal and a pharmaceutically acceptable moisturizer.

Claim 13, line 1, kindly cancel "12" and substitute --11--.

Kindly delete Claims 3 and 10.

## REMARKS

This action is in response to the Examiner's Office Action of 20 December 1990 in which Claims 1-2, 5-9 and 11 were rejected and Claims 3-4, 10 and 12-15 were objected to in a final action.

Pursuant to the Examiner's suggestion Claim 1 has been amended to include the language of allowable claim 3. Claim 3 has been canceled. The dependency of Claim 4 has been accordingly changed. Claims 5 and 6 which depend from newly amended Claim 1 are believed allowable as written.

Independent Claim 7 now incorporates the language of allowable Claim 10 so that Claim 7 specifies the emulsifying agent is an oat grain derivative product. Claim 10 has been canceled. It is believed that claims 8 and 9 which depend from newly amended Claim 7 are patentable as written without further amendment.

Claim 11 now incorporates the additional language found in allowable Claim 12, and Claim 12 has been canceled. The dependency of Claim 13 has been correspondingly changed. These amendments have been made without prejudice to Applicants' right

LPM 000196

to file a continuation or continuation-in-part of the original independent claims.

It is believed that the claims are now in condition for allowance. The Examiner is respectfully requested to enter this amendment and grant allowance in this manner, as the references do not fully and fairly disclose the invention as now claimed.

Respectfully submitted,

TIMOTHY J. MARTIN, P.C.

Timothy J. Martin, #28,640
Dana Rewoldt, #33,762
44 Union Blvd., Suite 620
Lakewood, Colorado    80228
(303) 988-0800

CERTIFICATE OF MAILING UNDER 37 C.F.R. 1.8

I hereby certify that the foregoing AMENDMENT is being deposited with the United States Postal Service as first-class mail, postage prepaid, in an envelope addressed to The Commissioner of Patents and Trademarks, Washington, DC 20231, on this ____ day of March, 1991.

LPM 000197



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address:   Box  ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO 80228

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

☐ Note attached communications from the Examiner
☐ This notice is issued in view of applicant's communications filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/413,395 | 09/27/89 | 012 | SPEAR, J. | 152 | 04/10/91 |

First Named Applicant
GREENSPAN, DOUGLAS H.

TITLE OF INVENTION
CLEANING COMPOSITIONS WITH ORANGE OIL

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 1286 | 424-443.000 | 064 | UTILITY | YES | $525.00 | 07/10/91 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the
FEE DUE shown above and notify the Patent and
Trademark Office of the change in status, or
B. If the Status is the same, pay the FEE DUE shown
above.

If the SMALL ENTITY is shown as NO:

A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.**

PTOL-85 (REV 12.90)(OMB Clearance is pending)

**PATENT AND TRADEMARK OFFICE COPY**

LPM 000198

UNITED STATE  ARTMENT OF COMMERCE
Patent and Tra.   & Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/413,395 | 09/27/89 | GREENSPAN | B    1295 |

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO  80228

| EXAMINER |  |
|---|---|
| SPEAR, J | |
| ART UNIT | PAPER NUMBER |
| 152 | 8 |

DATE MAILED: 04/10/91

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to *Amendment filed March 19, 1991*

2. ☐ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are *1-2, 4-9, 11 and 13-15*

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received. ☐ not been received ☐ been filed in parent application Serial No. _____ filed on _____

6. ☒ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.

b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
– Examiner's Amendment
– Examiner Interview Summary Record, PTOL-413
– Reasons for Allowance
– Notice of References Cited, PTO-892
– Information Disclosure Citation, PTO-1449
– Notice of Informal Application, PTO-152
– Notice re Patent Drawings, PTO-948
– Listing of Bonded Draftsmen
– Other

PTOL-37 (REV. 2-85)

USCOMM-DC 85-3544

1

*8/B*

Serial No. 413395

Art Unit 152                                                    -2-

An Examiner's Amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the Issue Fee.

Authorization for this Examiner's Amendment was given in a telephone interview with Timothy J. Martin on April 5, 1991.

Non elected claims 16-18 have been cancelled by applicant. Applicant's amendment filed March 19, 1991, now places application in condition for allowance.

Claims 1-2, 4-9, 11 and 13-15 are allowable over the prior art of record.

Any inquiry concerning this communication should be directed to James H. Spear at telephone number 703 308-2351.

J. H. Spear

04/5/91

JONATHAN R. PAGE
SUPERVISORY PATENT EXAMINER
ART UNIT 152

PART B - ISSUE FEE TRANSMITTAL

525-242-B
15-501

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advanced orders and notification of maintenance fees will be mailed to addresses shaped in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

1. CORRESPONDENCE ADDRESS

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO 80228

2. INVENTOR'S ADDRESS CHANGE (Complete only if there is a change)

INVENTOR'S NAME
Street Address
City, State and ZIP Code
CO-INVENTOR'S NAME
Street Address
City, State and ZIP Code
☐ Check if additional changes are on reverse side

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|

First Named Applicant

TITLE OF INVENTION: CLEANING COMPOSITIONS WITH ORANGE OIL

| | ATT'S DOCKET NO. | CLASS/SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|

3. Further correspondence to be mailed to the following:

Timothy J. Martin
44 Union Blvd., Suite 620
Lakewood, Colorado 80228

4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed.

1  Timothy J. Martin
2  _____
3  _____

120 HB 07/18/91 074133PS
120 HB 07/18/91 074133PS

DO NOT USE THIS SPACE

1 242    525.00 CK
1 501    15.00 CK

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)
(1) NAME OF ASSIGNEE:
D. Greenspan and W. Ingram
(2) ADDRESS: (City & State or Country)
200 Lois Circle, Louisville, CO 80027
(3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION

A. ☐ This application is NOT assigned.
☒ Assignment previously submitted to the Patent and Trademark Office.
Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

PLEASE NOTE: Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

6a. The following fees are enclosed:
☒ Issue Fee  ☒ Advanced Order - # of Copies [10] Ten
6b. The following fees should be charged as:
DEPOSIT ACCOUNT NUMBER _____
(Enclose Part C)
☐ Issue Fee  ☐ Advanced Order - # of Copies
☐ Any Deficiencies in Enclosed Fees

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Signature of person identified above)    (Date) July 10, 1991

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE

LPM 000201

## Certificate of Mailing

I hereby certify that this correspondence is being deposited with
the United States Postal Service with sufficient postage as first class
mail in an envelope addressed to:

Box ISSUE FEE
Commissioner of Patents and Trademarks
Washington, D.C. 20231

on _____July 10, 1991_____
                    (Date)

_____Lori George_____
(Name of person making deposit)

_____Lori D. George_____ (Signature)
(Signature)

_____7-10-91_____
(Date)

Note: If this certificate of mailing is used, it can only be used to transmit the
Issue Fee. This certificate cannot be used for any other accompanying
papers. Each additional paper, such as an assignment or formal drawings,
must have its own certificate of mailing.

This form is estimated to take 20 minutes to complete. Time will vary
depending upon the needs of the individual applicant. Any comments on
the amount of time you require to complete this form should be sent to the
Office of Management and Organization, Patent and Trademark Office,
Washington, D.C. 20231 and to the Office of Information and Regulatory
Affairs, Office of Management and Budget, Washington, D.C. 20503.



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RE:  Patent Application for      :   Dated:  July 10, 1991
     Douglas H. Greenspan        :   Group:  Art Unit 152
Serial No.: 07/413,395          :   Examiner:  J. Spear
Filed:  September 27, 1989       :   Action:  TRANSMITTAL OF BASE
For:  CLEANING COMPOSITIONS      :            ISSUE FEE
      WITH ORANGE OIL            :

TO:  Box Issue Fees
     The Commissioner of Patents and Trademarks
     Washington, DC  20231

Sir:

Enclosed is our check no. 1069 in the amount of $540.00
($525.00 for Base Issue Fee plus $15.00 for advance order of
patent copies) along with the Base Issue Fee transmittal form
PTOL-85b (Rev. 12-88). Formal drawings were previously submitted
on 10 April 1991.

                         Respectfully submitted,

                         TIMOTHY J. MARTIN, P.C.


                         Timothy J. Martin, #28,640
                         Dana Rawoldt, #33,762
                         44 Union Blvd., Suite 620
                         Lakewood, Colorado    80228
                         (303)  988-0800


CERTIFICATE OF MAILING UNDER 37 C.F.R. 1.8

     I hereby certify that the attached TRANSMITTAL OF BASE ISSUE
FEE and check no. 1069 in the amount of $540.00 is being
deposited with the United States Postal Service as first-class
mail in an envelope addressed to The Commissioner of Patents and
Trademarks, Washington, DC 20231, on this __10__ day of July, 1991.


LPM 000203







LPM 000205

LPM 000206

# EXHIBIT C

greenspan JAN 12.txt

1

```
1          IN THE UNITED STATES DISTRICT COURT
                 FOR DISTRICT OF DELAWARE
2               CASE NO 04-01507 (SLR)

3

4   LP MATTHEWS, LLC,            )

5              Plaintiff,        )

6              v.                )

7   BATH & BODY WORKS, INC.;     )CASE NUMBER

8   LIMITED BRANDS, INC.;        )04-cv-01507 (SLR)

9   KAO BRANDS CO. (f/k/a THE    )

10  ANDREW JERGENS COMPANY);     )

11  and KAO CORPORATION,         )

12             Defendants.       )

13             - - - - - - - - - -

14             BUSINESS CONFIDENTIAL

15      DEPOSITION OF DOUGLAS H. GREENSPAN

16            VOLUME I (Pgs. 1 - 268)

17          Thursday, January 12, 2006

18

19  Reported by:

20  Craig L. Knowles, CM

21                     Boulder, Colorado

22                     Thursday, January 12, 2006
```

0

**Page 1**

greenspan JAN 12.txt

2

 1    Deposition of DOUGLAS H. GREENSPAN, a witness

 2    herein, called for examination by counsel for

 3    Defendants in the above-entitled matter, pursuant

 4    to notice and the Federal Rules of Civil Procedure,

 5    the witness being duly sworn by CRAIG KNOWLES, a

 6    Notary Public in and for the State of Colorado,

 7    taken at the Boulder Marriott, Telluride Room, 2660

 8    Canyon Boulevard, Boulder, Colorado, at 9:07 a.m.,

 9    on Thursday, January 12, 2006, and the proceedings

10    being taken down in Stenotype by CRAIG KNOWLES and

11    transcribed under his direction.

12

13

14

15

16

17

18

19

20

21

22

0

greenspan JAN 12.txt

97

1      Q.    Is the Healthy Kleaner in that inventory
2   today the same as the Healthy Kleaner that was
3   initially marketed?
4     A.    Yes.
5      Q.    So the formula of Healthy Kleaner has never
6   changed; is that correct?
7           MR. BURATTI:  Objection.  Ambiguous.
8     A.    I don't recall.
9           BY MR. BAXTER:
10     Q.    You don't know of any, or you can't recall
11   any changes in the formulation of Healthy Kleaner
12   as you sit here today; is that correct?
13     A.    Yes.
14     Q.    As far as you know, did Healthy Kleaner
15   always contain oatmeal?
16           MR. BURATTI:  Objection, assumes facts not
17   established.
18     A.    Depends on your definition of oatmeal.
19           BY MR. BAXTER:
20     Q.    What is your definition of oatmeal?
21           MR. BURATTI:  Objection to the extent that
22   question calls for a legal conclusion with respect

greenspan JAN 12.txt

98

1    to the patent.  I'm not sure that you are asking

2    him about what is in the patent or what oatmeal

3    means to him today.

4        A.    What oatmeal means to me is ground or

5    processed oat grain product.

6            BY MR. BAXTER:

7        Q.    Healthy, has Healthy Kleaner ever contained

8    oatmeal using that definition?

9        A.    Yes.

10       Q.    And has it always contained oatmeal using

11   that definition?

12       A.    Yes.

13       Q.    Whose idea was it to include oatmeal in

14   Healthy Kleaner?

15       A.    It was mine.

16       Q.    And why did you decide to include oatmeal

17   in Healthy Kleaner?

18       A.    I don't remember.

19       Q.    Did -- in the last year, has anybody asked

20   you about what kind of cleaning compositions you

21   prepared and tested in connection with the patent

22   application which matured into Greenspan Exhibit

greenspan JAN 12.txt

99

1   Number 1?

2        MR. BURATTI:  I'm going to caution the

3   witness not to disclose any privileged information

4   here in the answer to that question.

5        Answer the question "yes" or "no" or "I

6   don't know."

7        THE WITNESS:  Could you repeat the question

8   without -- there were a lot of pauses in there.

9        BY MR. BAXTER:

10   Q.   I will re-ask the question.

11        In the last year, has anyone asked you

12   about the compositions you tested in connection

13   with the patent application which matured into

14   Greenspan Exhibit Number 1?

15   A.   Yes.

16   Q.   When was that?

17        MR. BURATTI:  Again, I caution the witness

18   to make sure he doesn't divulge any privileged

19   information.

20   A.   In the last couple weeks.

21        BY MR. BAXTER:

22   Q.   At that time were you able to remember

0

# EXHIBIT D

# REDACTED

# EXHIBIT E

**REDACTED**

# EXHIBIT F

**REDACTED**

# EXHIBIT G

# THE RANDOM HOUSE

# College Dictionary

**Laurence Urdang**
Editor in Chief

**Stuart Berg Flexner**
Managing Editor

Based on

**The Random House Dictionary of the English Language**
*The Unabridged Edition*

Jess Stein
Editor in Chief

Laurence Urdang
Managing Editor



Copyright © 1972, 1969, 1968 by Random House, Inc.

All rights reserved under International and Pan-American Copyright Conventions. No part of this book may be reproduced in any form or by any means, electronic or mechanical, including photocopying, without permission in writing from the publisher. All inquiries should be addressed to Random House, Inc., 201 E. 50th Street, New York, N.Y. 10022.

Based on *The Random House Dictionary of the English Language—The Unabridged Edition* Copyright © 1971, 1970, 1969, 1967, 1966 by Random House, Inc.

PUBLISHED IN THE UNITED STATES OF AMERICA, BY RANDOM HOUSE, INC., NEW YORK AND SIMULTANEOUSLY IN CANADA, BY RANDOM HOUSE OF CANADA, LIMITED, TORONTO

A number of entered words which we have reason to believe constitute trademarks have been designated as such. However, neither the presence nor the absence of such designation should be regarded as affecting the legal status of any trademark.

*Chart of Periodic Table of the Elements*, Copyright © 1964 by E. H. Sargent & Co.

*Table of Common Proofreader's Marks*, Copyright 1950, © 1956 by Alfred A. Knopf, Inc.

c. 2/ba

Library of Congress Catalog Card Number: 68-19699

Manufactured in the United States of America

Type set by R. R. Donnelley & Sons Company
Printed and bound by Rand McNally and Company

# EXHIBIT H

# United States Patent [19]

## Tsukuda et al.

[11] Patent Number: 5,013,485

[45] Date of Patent: May 7, 1991

[54] LIQUID DETERGENT COMPOSITION CONTAINING TERPENE AND CALCIUM OR MAGNESIUM SALTS

[75] Inventors: Kazunori Tsukuda; Masakazu Toda, both of Utsunomiya; Masami Saito, Ichikai; Masaki Tsunadori, Utsunomiya, all of Japan

[73] Assignee: Kao Corporation, Tokyo, Japan

[21] Appl. No.: 373,278

[22] Filed: Jun. 28, 1989

[30]        Foreign Application Priority Data

Jul. 19, 1988 [JP] Japan .................... 63-177996

[51] Int. Cl.5 ............... C11D 1/12; C11D 3/04; C11D 3/18

[52] U.S. Cl. .................... 252/551; 252/550; 252/554; 252/162; 252/558

[58] Field of Search ............ 252/106, 107, 111, 114, 252/118, 122, 139, 153, 162, 170, 171, 545, 546, 540, 551, 550, 554

[56]            References Cited

### U.S. PATENT DOCUMENTS

4,414,128 11/1983 Goffinet .................... 252/111

Primary Examiner—Prince E. Willis
Assistant Examiner—John F. McNally
Attorney, Agent, or Firm—Oblon, Spivak, McClelland, Maier & Neustadt

[57]            ABSTRACT

A liquid detergent composition for household use is disclosed. It comprises, as essential components, (A) 0.01–1.0% by weight of an anionic surface active agent, (B) 0.01–1.0% by weight of a terpene-type hydrocarbon solvent selected from monoterpenes and sesquiterpenes, and (C) 0.001–0.1% by weight of a water-soluble divalent metallic salt. The composition has superior detergency, exhibits a minimum adverse effect on surfaces which it contacts and a high degree of safety when in contact with the human body, and does not require rinsing.

7 Claims, No Drawings

5,013,485

| 1 | 2 |

**LIQUID DETERGENT COMPOSITION CONTAINING TERPENE AND CALCIUM OR MAGNESIUM SALTS**

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to a liquid detergent composition, and, in particular, to a liquid detergent composition for household use having superior detergency, as well as exhibiting a minimum adverse effect on surfaces which it contacts, a high degree of safety when in contact with the human body, and which does not require rinsing.

### 2. Description of the Background

In general, when a prolonged period of time elapses after a solid surface gets soiled, washing becomes difficult because the soiling material adheres strongly to the surface. For example, in the case where dirt adhering to exhaust fan blades, walls in the kitchen area, glass, refrigerator surfaces, and the like has accumulated over a long period of time, this dirt changes to a highly viscous, oxidized form of degenerated oils. In addition, difficult-to-clean, oily-type soiling, such as that from hand stains, cigarette tars, and the like exists throughout the household in locations other than the kitchen area.

Commonly known detergents for removing such oily-type soiling include those containing a strong alkaline agent such as sodium hydroxide or the like, as a major component, and those containing an organic amine, a water-soluble organic solvent (such as ethylene glycol monoalkyl ether, diethylene glycol monoalkyl ether, or the like), and a surface active agent.

However, the former type presents a safety problem, especially with respect to skin irritation, while the latter type gives rise to discomfort because of having an offensive odor of the organic solvent.

Detergents containing monoterpenes and sesquiterpenes have been proposed as detergents with a high degree of safety and without an offensive odor of organic solvents (Japanese Patent Laid-open Nos. 14296/1986, 14297/1986, and 164798/1987). Although they have high detergency performance, their handling is sometimes cumbersome upon practical use. For example, they must be diluted with water before use, or rinsed off with water after being used in the original liquid form. This problem is caused by abrasive powders contained in the detergent or surface active agents contained in the emulsion type detergents.

## SUMMARY OF THE INVENTION

The present inventors conducted extensive studies to provide, with due consideration to the drawbacks of such conventional detergents, a liquid detergent composition for household use having superior detergency, exhibiting a minimum adverse effect on surfaces which it contacts, and a high degree of safety in contact with the human body, and which does not require rinsing, and found that a liquid detergent composition which comprises an anionic surface active agent, a terpene-type hydrocarbon selected from monoterpenes and sesquiterpenes, and a water-soluble divalent metal salt, did not require dilution prior to use, nor an after-rinse, had a high degree of safety, and easily removed soiling.

Accordingly, an object of the present invention is to provide a liquid detergent composition comprising as essential components:

(A) 0.01–1.0% by weight of an anionic surface active agent,

(B) 0.01–1.0% by weight of a terpene-type hydrocarbon solvent selected from monoterpenes and sesquiterpenes, and

(C) 0.001–0.1% by weight of a water-soluble divalent metal salt.

Other objects, features and advantages of the invention will hereinafter become more readily apparent from the following description.

## DETAILED DESCRIPTION OF THE INVENTION AND PREFERRED EMBODIMENTS

Examples of the anionic surface active agent used as the component (A) in the present invention include sulfonate-type anionic surface active agents and sulfate-type anionic surface active agents commonly used in detergent compositions. The sulfonate-type anionic surface active agents include linear or branched alkyl ($C_8$–$C_{22}$) benzene sulfonates, long chain alkyl ($C_8$–$C_{22}$) sulfonates, and long chain olefin ($C_8$–$C_{22}$) sulfonates. Examples of sulfate-type anionic surface active agents include long chain monoalkyl ($C_8$–$C_{22}$) sulfates, polyoxyethylene (1–6 mols) long chain alkyl ($C_8$–$C_{22}$) ether sulfates, polyoxyethylene (1–6 mols) alkyl ($C_8$–$C_{18}$) phenylether sulfates, and the like. As counter ions to these anionic surface active agents, examples which can be given are alkali metal ions such as sodium, potassium, and the like, and alkanolamine ions such as monoethanolamine, diethanolamine, triethanolamine, and the like.

Among the above anionic surface active agents the sulfonate-type anionic surface active agents are particularly desirable as the (A) component of the present invention from the aspect of high resistance to hydrolysis. In addition, linear or branched alkylbenzene sulfonates are desirable from the aspect of high detergency.

The (A) component anionic surface active agents may be used individually or as a mixture of two or more types in the composition of the present invention.

The amount of the (A) component as a percentage by weight (hereinafter referred to as wt %) of the total composition is in the range of 0.01 to 1.0 wt %; a particularly desirable amount is in the range of 0.1 to 0.5 wt %. If the amount is less than 0.01 wt % of the mixture, the surface active agent exhibits insufficient emulsifying and dispersion action and the solubilizing activity is inadequate; if greater than 1.0 wt %, it leaves wiping traces on the surface of the washed object after wiping, which needs an undesirable rinsing step.

The component (B) of the composition of the present invention is a terpene-type hydrocarbon solvent selected from monoterpenes and sesquiterpenes. Examples of monoterpene-type hydrocarbon solvents are D-limonene and L-limonene which are contained in orange oil, lemon oil, or the like, α-terpineol contained in pine oil or the like, and α-pinene, β-pinene, myrcene, and p-cymene contained in turpentine oil or the like. Examples of sesquiterpene-type hydrocarbon solvents which can be given are caryophyllene, cedrene, and the like, which are contained in substantial quantities in cedar oil, clover oil, camanga oil, and the like.

The (B) component which is a terpene-type hydrocarbon solvent selected from monoterpenes and sesquiterpenes may be used individually or as a mixture of two

3
5,013,485
4

or more types in the composition of the present invention. In addition, it is possible to incorporate their starting materials of orange oil, turpentine oil, or pine oil as they are into the composition of the present invention.

A desirable amount of the (B) component as a percentage of the total composition is in the range of 0.01 to 1.0 wt %; a particularly desirable amount is in the range of 0.1 to 0.5 wt %. If the amount is less than 0.01 wt % of the composition, action as a solvent cannot be expected; if greater than 1.0 wt %, a large amount of a surface active agent is necessary to ensure stable solubilization of the compound. Because remnants remain on the surface of the washed object they must be rinsed and wiped a second time, which is undesirable.

Water-soluble divalent metal salts which are suitable as the component (C) of the composition of the present invention are, for example, calcium salts and magnesium salts. Of the calcium salts, the chloride and the sulfate are particularly desirable; for the magnesium salts, the sulfate is best used.

window glass. The detergency, wiping traces, and solvent odor were then evaluated.

The object window glass was sprayed with 1 cc of a liquid detergent using a commercial sprayer, and wiped with a dry towel. Sensory evaluations were then carried out, using the following evaluation criteria.

Evaluation Criteria

Detergency
O: 80% of soiling is removed
F: 20 to 50% of soiling is removed
X: Almost no soiling removed

Wiping traces
O: Second wiping not necessary
F: Slight wiping traces remaining
X: Considerable wiping traces observed

Solvent odor
O: No objectionable odor detected
F: Slight objectionable odor
X: Objectionable odor noted

The results are shown in Table 1.

### TABLE 1

| Components | | 1 | 2 | 3 | 4 | 5 | 6* | 7* |
|---|---|---|---|---|---|---|---|---|
| | | | | | (wt %) | | | |
| Sodium alkylbenzene sulfonate(1) | | 0.5 | 0.5 | 0.3 | 0.3 | 1.5 | 0.2 | 0.3 |
| Polyoxyethylenealkyl-ether(2) | | — | — | — | 0.2 | — | 0.1 | — |
| D-limonene | | — | — | 0.3 | — | 0.5 | 0.3 | — |
| α-Pinene | | — | — | — | 0.5 | — | — | 0.5 |
| Ethyl cellosolve | | 1.0 | — | — | — | — | — | — |
| Butyl carbitol | | — | 1.0 | — | — | — | — | — |
| Calcium chloride | | — | — | — | — | — | — | — |
| Ion exchanged water | | Balance | Balance | Balance | Balance | 0.01 Balance | 0.01 Balance | 0.01 Balance |
| Detergency | | O | O | F | F | O | O | O |
| Wiping traces | | O | F | F | F | X | O | O |
| Solvent odor | | X | F | O | O | O | O | O |

*Composition of the present invention
(1) An average carbon number in alkyl chain C12
(2) An average carbon number in alkyl chain C12, An average ethylene oxide addition mole: 6

A desirable amount of the (C) component in a percentage of the total composition is in the range of 0.001 to 0.1 wt %. The HLB value of the component (A) of the present invention can be freely adjusted corresponding to the amount of the component (C) added. Addition of the component (C) also assists to solubilize the component (B).

In addition, as required, components other than the essential components (A), (B), and (C) can be added to the liquid detergent composition of the present invention. These optional components include nonionic surface active agents, alkaline agents, dispersing agents, solvents, acids, perfumes, dyes, pigments, preservatives, germicides, and the like.

Other features of the invention will become apparent in the course of the following description of the exemplary embodiments which are given for illustration of the invention and are not intended to be limiting thereof.

### EXAMPLES

#### Example 1

Detergent compositions listed in the following Table 1 were prepared and actually used to wash a household

#### Example 2

Detergent compositions listed in the following Table 2 were prepared, and the detergency and wiping traces were evaluated using soiled models.

Soiled models used were 3 cm×8 cm glass plates to which cigarette tars were adhered. The glass plates were immersed in test solutions for 2 minutes and the elimination of the soiling was evaluated to determine the detergency according to the following criteria. The glass plates were wiped with dry towel and the completeness after drying was sensorially evaluated according to the following criteria to determine wiping traces.

Detergency
O: 80% of soiling is removed
F: 20 to 50% of soiling is removed
X: Almost no soiling removed

Wiping traces
O: Second wiping not necessary
F: Slight wiping traces remaining
X: Considerable wiping traces observed

Results are shown in Table 2.

### TABLE 2

| Components | 8* | 9* | 10* | 11* | 12* | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|
| | | | | (wt %) | | | | |
| Sodium alkylbenzene sulfonate(1) | 0.3 | 0.3 | 0.3 | 0.3 | 0.5 | 0.3 | 0.3 | 2.5 |
| Polyoxyethylenealkyl- | 0.1 | 0.1 | 0.1 | 0.1 | 0.5 | 0.1 | 0.1 | 2.5 |

5,013,485

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 5 | | | | | | 6 |

### TABLE 2-continued

| | | | | (wt %) | | | | |
|---|---|---|---|---|---|---|---|---|
| Components | 8* | 9* | 10* | 11* | 12* | 13 | 14 | 15 |
| ether(2) | | | | | | | | |
| Orange oil (Major component: D-limonene) | 0.5 | — | — | — | 1.0 | — | — | 10.0 |
| Terpentine oil (Major component: α, β-pinene) | — | 0.5 | — | — | — | — | — | — |
| Caraage oil (Major component: α, β-caryophyllene) | — | — | 0.5 | — | — | — | — | — |
| α-terpineol | — | — | — | 0.5 | — | — | — | — |
| Butyl carbitol | — | — | — | — | — | 3.0 | — | — |
| Ethanol | — | — | — | — | — | — | 10.0 | — |
| Diethanolamine | 0.5 | 0.5 | 0.5 | 0.5 | 0.1 | 0.5 | 0.5 | 0.1 |
| Calcium chloride | 0.01 | 0.01 | 0.01 | 0.01 | 0.01 | — | — | — |
| Ion exchanged water | Balance | Balance | Balance | Balance | Balance | Balance | Balance | Balance |
| Detergency | O | O | O | O | O | O | F | O |
| Wiping trace | O | O | O | O | O | O | F | X |

*Composition of the present invention
(1) An average carbon number in alkyl chain $C_{11}$
(2) An average carbon number in alkyl chain $C_{12}$. An average ethylene oxide addition mole 6

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore to be understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

What is claimed is:

1. A liquid detergent composition comprising as essential components:

(A) 0.01-1.0% by weight of an anionic surface active agent;

(B) 0.01-1.0% by weight of a terpene hydrocarbon solvent selected from monoterpenes and sesquiterpenes; and

(C) 0.001-0.1% by weight of a water-soluble divalent metallic salt selected from the group consisting of $CaCl_2$, $CaSO_4$ and $MgSO_4$.

2. The liquid detergent composition of claim 1, wherein the anionic surface active agent is selected from the group consisting of the linear or branched alkyl $C_8$-$C_{23}$ benzene sulfonates, long chain alkyl $C_8$-$C_{23}$ sulfonates, long chain olefin $C_8$-$C_{23}$ sulfonates, long chain monoalkyl $C_8$-$C_{23}$ sulfates, polyoxyethylene (1-6 mol) long chain alkyl $C_8$-$C_{23}$ ether sulfates and polyoxyethylene (1-6 mols) alkyl $C_8$-$C_{18}$ phenylether sulfates or mixtures thereof.

3. The liquid detergent composition of claim 1, wherein the anionic surface active agent is present in from 0.1-0.5% by weight.

4. The liquid detergent composition of claim 1, wherein the terpene hydrocarbon solvent is selected from the group consisting of D-limonene, L-limonen, orange oil, lemon oil, α-terpineol, pine oil, α-pinene, β-pinene, myrcene, p-cymene, terpentine oil, caryophyllene, cedrene, cedar oil, clover oil, and casanga oil or mixtures thereof.

5. The liquid detergent composition of claim 1, wherein the terpene hydrocarbon is present in from 0.1-0.5% by weight.

6. The liquid detergent composition of claim 1, wherein the counterion of the anionic surface active agent is selected from the group consisting of alkali metal ions, alkanolamine ions.

7. The liquid detergent composition of claim 1, wherein the anionic surface active agent is a linear or branched alkyl benzene sulfonate.

* * * * *

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of July, 2006, the attached **REDACTED PUBLIC VERSION OF LP MATTHEWS' OPENING CLAIM CONSTRUCTION BRIEF** was served upon the below-named counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esquire                               <u>HAND DELIVERY</u>
Potter Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Arthur I. Neustadt, Esquire                             <u>VIA ELECTRONIC MAIL</u>
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, VA  22314

Francis G.X. Pileggi, Esquire                           <u>HAND DELIVERY</u>
Fox Rothschild LLP
Suite 1300
919 North Market Street
Wilmington, DE  19801

John Ward, Esquire                                   <u>VIA ELECTRONIC MAIL</u>
Ward & Olivo
708 Third Avenue
New York, NY  10017

/s/ *Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon