IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    v. | ) C.A. No. 04-1507 (SLR) |
| | ) |
| BATH & BODY WORKS, INC.; LIMITED BRANDS, INC.; KAO BRANDS CO. (f/k/a THE ANDREW JERGENS COMPANY); and KAO CORPORATION, | ) **PUBLIC VERSION** |
| | ) |
|    Defendants. | ) |

**KBC'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
<u>BASED UPON LACK OF WRITTEN DESCRIPTION</u>**

OF COUNSEL:

Arthur I. Neustadt
Stephen G. Baxter
Richard L. Chinn
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000
Fax: (703) 413-2220

Dated: June 29, 2006
Public Version Dated: July 7, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel.: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants Kao Brands Co.*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..................................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ......................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................. 1

CONCISE STATEMENT OF FACTS ...................................................................................... 2

    The '062 Patent-In-Suit ........................................................................................................ 2

    The Accused KBC Products ................................................................................................ 4

ARGUMENT ............................................................................................................................... 6

    Summary Judgment Is Appropriate ..................................................................................... 6

    Asserted Claims 6 and 9 Are Invalid for Lack of Written Description ............................... 7

CONCLUSION ........................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 6

*Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) ................... 6

*LizardTech Inc. v. Earth Resource Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005) ................................................................................. 7

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ................................................................................. 7

*Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001) ................................................................................. 7

*Rules*

Fed. R. Civ. P. 56 ............................................................................................................. 6

Fed. R. Civ. P. 56(c) ........................................................................................................ 6

Fed. R. Civ. P. 56(e) ........................................................................................................ 6

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff LP Matthews, L.L.P. ("LPM") filed its complaint for patent infringement on December 8, 2004 (D.I. 1), fact discovery and expert discovery have been completed and motions for summary judgment are due on June 29.

## SUMMARY OF ARGUMENT

The '062 patent-in-suit is directed to a skin cleaning composition comprising orange oil, a moisturizer and oatmeal. The specification provides that the orange oil must be at least 5% (by volume) of the composition. Yet the asserted claims simply recite orange oil without the 5% restriction. The accused KBC products have far less than ▇▇ orange oil. This results in two conclusions. First, there can be no infringement. Second, based upon LPM's assertion that the orange oil can be far less than even ▇ of the composition, the asserted claims are invalid for lack of a written description since the specification plainly provides that the orange oil must be at least 5% of the composition.

The asserted claims also lack a written description in one other respect. The invention is directed to and the asserted claims specifically recite "[a] skin cleaning composition and "[a] cleaning composition for use on human skin." However, the primary accused product is not a skin cleaning composition but, rather, is a moisturizing lotion for extra dry skin. Based upon LPM's moisturizing lotion infringement assertion, the asserted claims are invalid for lack of a written description since the specification provides that the invention is directed to "a skin cleaning compound suitable for cleaning non-water soluble products such as grease, caulking, adhesives, sealants, tars, oils, ink and the like" (col. 2, ll. 12-15).

## CONCISE STATEMENT OF FACTS

### The '062 Patent-In-Suit

The '062 patent-in-suit (5,063,062, Exhibit A hereto) is entitled CLEANING COMPOSITIONS WITH ORANGE OIL.

The FIELD OF THE INVENTION states that "[t]he present invention generally relates to cleaning compositions suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives and the like." Col. 1, ll. 5-9.

The BACKGROUND OF THE INVENTION states that "[d]espite the long felt need for better cleaners, the suitability of orange oil has thus not been recognized, and the inventors of the subject invention have found success by examining this substance contrary to the direction of inquiry adopted by the industry at large." Col. 2, ll. 2-7.

The '062 invention is described in the SUMMARY OF THE INVENTION as follows.

> The present invention, then, provides a skin cleaning composition
> which is adapted for external use on human tissues. Broadly, this
> composition comprises *a first ingredient being between five
> percent (5%) and sixty percent (60%) by volume of orange oil*, a
> second ingredient being a pharmaceutically acceptable moisturizer
> for human skin and a third ingredient being an emulsifying agent.

Col. 2, ll. 25-33, emphasis added.

The specification reports testing where the percentage of orange oil was varied to determine cleaning ability at various percentages.

> *In order to evaluate cleaning properties as a function of percent
> volume of orange oil*, additional samples were prepared wherein
> the weight percentages of the ingredients other than orange oil was
> held constant *while the amount of orange oil was varied to provide
> differing volume percentages of orange oil*. Accordingly, Samples

> XIV-XVII were prepared to have volume percents of orange oil approximately *5%, 10%, 15% and 25%*, respectively. In each case, the emulsions were stable. These Samples XIV-XVII were given to the test group to subjectively evaluate cleaning effectiveness.

Col. 6, ll. 29-41, emphasis added.

The 5% orange oil composition (Sample XIV) could not effectively clean tar or caulking compounds and, indeed, was only effective in removing cosmetics, the easiest substance to remove.

> With respect to Sample XIV, the test group reported that cleaning properties were substantially reduced; *Sample XIV could not effectively clean tar or caulking compounds. Indeed, Sample XIV was only effective in removing cosmetics from the skin.*

Col. 6, ll. 41-45, emphasis added.

From these tests, the '062 inventors concluded that it was preferable to have at least 25% by volume of orange oil although as little as 5% by volume could be used to clean the easier to remove cosmetics.

> From these tests, Applicants concluded that, *with respect to cosmetics*, a composition according to the present invention *could have as little as 5% by volume of orange oil* although it was preferable to have a cleaning composition having at least 25% by volume of orange oil.

Col. 6, ll. 56-61, emphasis added.

The specification sums up the '062 invention as follows.

> From the foregoing, the inventors have concluded that a suitable skin cleaning composition can be prepared wherein the skin composition has *a first ingredient of between 5% and 60% by volume of orange oil*, a second ingredient being a pharmaceutical acceptable moisturizer for human skin and a third ingredient being an emulsifying agent.

Col. 8, ll. 39-45, emphasis added.

3

Only claims 6 and 9 of the '062 patent are asserted to be infringed. Claim 6 is as follows.

> 6. A skin cleaning composition for external use on human tissues, comprising orange oil, a pharmaceutically acceptable moisturizer for human skin and an oat grain derivative product as an emulsifying agent, wherein said composition has a pH within a range of 4.5 to 6.0, inclusively.

Col. 10, ll. 1-6.

Claim 9 is as follows.

> 9. A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer.

Col. 10, ll. 13-17.

### The Accused KBC Products

There are four accused KBC products, only one of which is a current product.

Curél Ultra Healing Lotion (current)

Curél Extreme Care Body Lotion (discontinued)

Curél Extreme Care Facial Wash (discontinued)

Curél Extreme Care Body Cleanser (discontinued)

Although each of these products includes orange oil, the amount of orange oil in each product is more than ▬▬▬ than the 5% lower limit for sufficient cleaning as stated in the '062 specification. Col. 6, ll. 28-61 and, in particular, ll. 56-61. The orange oil percentage by weight for each of these products is ▬▬▬ which translates into an orange oil percentage by volume of ▬▬▬. The master formula for each of these products with the percentage (by weight) of orange oil is set forth in Exhibits 1-4 of the Story declaration filed herewith.

4

Apart from having only a miniscule amount of orange oil, the Curél Ultra Healing Lotion is a lotion and not a cleaning composition as required by claims 6 and 9. Claim 6 requires "[a] skin cleaning composition for external use on human tissues" and claim 9 requires "[a] cleaning composition for use on human skin." The specification emphasizes that the invention is directed to a skin cleaning composition.

> Another object of the present invention is to provide a skin cleaning compound suitable for cleaning non-water soluble products such as grease, caulking, adhesives, sealants, tar, oils, ink and the like.

Col. 2, ll. 2-15, emphasis added. Also *see* col. 3, ll. 2-6 ("to establish the necessary proportion of orange oil to give suitable cleaning"); col. 4, ll. 3-8 ("each of Samples I-III readily removing polyurethane and silicone base caulking compounds, tars, grease, oil and adhesives"); col. 5, ll. 16-19 ("In each case, the emulsions were able to clean all caulking materials and tars, including silicon and polyurethane based caulking compounds as well as oil and grease from the skin."); col. 8, ll. 4-8 ("this sample proved effective in removing cosmetics, but the sample was not effect[ive] in removing heavier, industrial substances such as caulking compounds, adhesives, tars and the like.").

The container for the Curél Ultra Healing Lotion describes it as a "Daily Moisture Therapy Lotion" that "has all the healing power of a cream in a non-greasy lotion" and further states that "[i]ts unique formula penetrates deeply to heal and prevent extra dry skin" and "[i]t's clinically proven to quadruple skin's natural moisture level." The user of the product is instructed to "[s]mooth onto dry skin daily" and "[r]e-apply liberally to especially rough, chapped or ashy areas." Exhibit 5 to the Story declaration.

Similarly, the Curél Extreme Care Body Lotion is a lotion and not a cleaning composition. Its container describes it as "designed to relieve frustrating itch problems

5

and build healthy feeling skin" and further states that it "[h]elps prevent the return of severely dry, itchy skin," it "[l]ocks in moisture to deliver superior moisturization and build healthier skin" and it "[l]eaves your skin feeling soft and smooth." Exhibit 6 to the Story declaration.

## ARGUMENT

### Summary Judgment Is Appropriate

Rule 56(c), Fed. R. Civ. P., provides that "[t]he judgment sought shall be rendered forthwith if [the evidentiary materials upon which the motion is based] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial" and "[i]f the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

The Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) held that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and, "[i]f the evidence is merely colorable [citation omitted] or is not significantly probative [citation omitted], summary judgment may be granted." *Id.* at 249-250.

The Federal Circuit in *Becton Dickinson Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) held that "the grant of summary judgment under Fed. R. Civ. P. 56 [footnote

6

omitted] is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Id.* at 795.

### Asserted Claims 6 and 9 Are Invalid for Lack of Written Description

Based upon LPM's assertion that claims 6 and 9 are infringed by a composition which has far less than ▮ by volume of orange oil, claims 6 and 9 are invalid for lack of written description since the specification provides that the orange oil must be at least 5% by volume.

The Federal Circuit's recent decision in *LizardTech Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005) is pertinent here. In *LizardTech*, the Federal Circuit referred to its earlier *Tronzo* decision which has facts closely analogous to those in the case at bar. As stated by the Federal Circuit,

> The inadequacy of the specification in this case is similar to the failing identified in *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998). In *Tronzo*, the patent at issue pertained to an artificial hip socket that included cup implants adapted for insertion into a hip bone. *Id.* at 1156. In describing the shape of the cup implants, the specification distinguished prior art shapes as inferior and "tout[ed] the advantage of the conical shape." *Id.* at 1159. *However, the claims spoke of the shape of the cups generically. Id.* On appeal, *this court assessed whether the patent disclosure was sufficiently detailed to enable a person of skill in the art to recognize that Tronzo had invented what he claimed, i.e., cup implants with a generic shape. Id.*; see also *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111 (Fed. Cir. 2001). *This court recognized that there was nothing in the patent's specification "to suggest that shapes other than conical are necessarily a part of the disclosure." Tronzo*, 156 F.3d at 1159. Therefore, the court held that the patent failed to provide the written description necessary to support the claims. *Id.* at 1160.

*Id.* at 1345-46, emphasis added.

Just as in *Tronzo* where the specification stated that shapes other than conical were not satisfactory, the '062 specification plainly states that an orange oil percentage

7

below 5% is not satisfactory to achieve sufficient cleaning. Therefore, the specification lacks a written description that the orange oil percentage can be far less than ▮.

The asserted claims also lack a written description in one other respect. The invention is directed to and the asserted claims specifically recite "[a] skin cleaning composition and "[a] cleaning composition for use on human skin." However, the primary accused product is not a skin cleaning composition but, rather, is a moisturizing lotion for extra dry skin. Based upon LPM's moisturizing lotion infringement assertion, the asserted claims are invalid for lack of written description since the specification provides that the invention is directed to "a skin cleaning compound suitable for cleaning non-water soluble products such as grease, caulking, adhesives, sealants, tars, oils, ink and the like" (col. 2, ll. 12-15).

Accordingly, based upon LPM's assertion that claims 6 and 9 cover an orange oil percentage of far less than ▮, claims 6 and 9 lack a written description. Also, based upon LPM's assertion that claims 6 and 9 cover a moisturizing lotion, claims 6 and 9 further lack a written description.

8

## CONCLUSION

For the foregoing reasons, based upon LPM's assertion of infringement, claims 6 and 9 lack the required written description and, therefore, are invalid.

                Respectfully submitted,

                POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Stephen G. Baxter
Richard L. Chinn
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke St.
Alexandria, VA 22314
Tel.: (703) 413-3000
Fax: (703) 413-2220

Dated: June 29, 2006
Public Version Dated: July 7, 2006

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899-0951
    Tel.: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants Kao Brands Co.*

740049

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 7, 2006, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE 19801

Francis G.X. Pileggi
Fox Rothschild LLP
919 Market Street
Suite 1300
Wilmington, DE 19801

I hereby certify that on July 7, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
rjschutz@rkmc.com

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, NW
Washington, DC 20006
raauchter@rkmc.com
jrburatti@rkmc.com

John F. Ward
Ward & Olivo
382 Springfield Avenue
Summit, NJ 07901
wardj@wardolivo.com

By:   /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

673089