IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1507 (SLR) |
| ) | Honorable Sue L. Robinson |
| BATH & BODY WORKS, INC., ) | JURY TRIAL DEMANDED |
|    and ) | |
| LIMITED BRANDS, INC., ) | |
|    and ) | |
| KAO BRANDS CO. (f/k/a THE ANDREW ) | PUBLIC VERSION |
| JERGENS COMPANY), ) | FILED: JULY 11, 2006 |
|    and ) | |
| KAO CORPORATION, ) | DATED: JULY 3, 2006 |
| ) | |
| Defendants. ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS
BATH & BODY WORKS, INC. AND LIMITED BRANDS, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING</u>**

> Francis G.X. Pileggi (Del. Bar No. 2624)
> Sheldon K. Rennie (Del. Bar No. 3772)
> FOX ROTHSCHILD LLP
> 919 North Market Street, Suite 1300
> Wilmington, Delaware 19801
> Phone: (302) 655-3667
> Fax: (302) 656-8920
>
> *Attorneys for Defendants Bath & Body Works, Inc.
> and Limited Brands, Inc.*

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................1

SUMMARY OF THE ARGUMENT ......................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT...........................................................................................................................4

    1.    Summary Judgment is Appropriate Here..................................................................4

    2.    A Patent Assignment Must Name the Right Parties ..................................................6

    3.    Standing Cannot be Based on Invalid Assignments ..................................................6

CONCLUSION......................................................................................................................10

i

# TABLE OF AUTHORITIES

**CASES**

*Afros S.P.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402 (D. Del. 1987) .................................. 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 4, 5

*Crown Die & Tool Co. v. Nye Tool Machine Works*, 261 U.S. 24 (1923) ................................ 8, 9

*FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215 (1990) ................................................................. 7

*Gaia Techs., Inc. v. Reconversion Techs., Inc., et al.*, 93 F.3d 774 (Fed. Cir. 1996) ................. 9

*Grace v. American Cent. Ins. Co.,* 109 U.S. 278 (1883) ............................................................ 7

*Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345 (E.D. Mich. 2003) ..................................... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................. 7

*Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379 (1884) ........................................................ 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................. 4

*Ortho Pharmaceutical Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026 (Fed. Cir. 1995)
    (*cert. denied*), 516 U.S. 907 (1995) ...................................................................................... 7

*Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F. Supp. 1352 (D. Del. 1993) ............ 6

*Proctor & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305 (D. Del. 1995) .......... 9

*Quiedan Co., Inc. v. Central Valley Builders Supply Co., Inc.*, 1993 U.S. Dist.
    LEXIS 15238 (N.D. Cal. 1993) .............................................................................................. 7

*Quiedan Co., Inc. v. Central Valley Builders Supply Co., Inc.*, 1994 U.S. App.
    LEXIS 19682 (Fed. Cir. 1994) ................................................................................................ 8

*Switzer Brothers, Inc. v. Byrne*, 242 F.2d 909 (6th Cir. 1957) ................................................... 8

**STATUTES**

35 U.S.C. § 261 ............................................................................................................................ 6

35 U.S.C. § 281 ............................................................................................................................ 9

**RULES**

Fed.R.Civ.P. 11 ......................................................................................................................... 2, 5

Fed.R.Civ.P. 56(c) ......................................................................................................................... 4

## INTRODUCTION

The *sine qua non* to a suit for patent infringement is a plaintiff who actually possesses rights to the patent-in-suit. Here, in a foul-up of monumental proportions, Plaintiff, LP Matthews, L.L.C. ("LPM"), possesses no rights to United States Patent No. 5,063,062 ("the '062 patent"), because the assignments it relies on were executed by the Greenspan Company – an entity that does not exist. Or rather, it does exist, but it is a California insurance company that is unrelated to any of the persons or the patent here involved. Absent a valid assignment, LPM lacks standing and the present action must be dismissed.

## NATURE AND STAGE OF THE PROCEEDINGS

On December 8, 2004, LPM filed a Complaint against Limited Brands, Inc., Bath & Body Works, Inc., (collectively referred to as the "Limited Defendants"), KAO Brands Co. and KAO Corp. alleging infringement of the '062 patent. This Court entered a Scheduling Order on June 9, 2005. (D.I. 39). Pursuant to the Order, fact discovery closed on January 26, 2006 and expert discovery closed on May 12, 2006. Summary judgment motions must be filed by July 6, 2006. (D.I. 243).

## SUMMARY OF THE ARGUMENT

## REDACTED

**REDACTED**

Even then, before refiling LPM will have to be diligent with respect to its obligation pursuant to Rule 11, Fed.R.Civ.P. During discovery, the defendants uncovered a continuation-in-part application to the '062 patent. That application, including a claim virtually identical to Claim 1 of the '062 patent, was rejected by the Board of Appeals on several grounds, including obviousness.

For now, this action must be dismissed because legal precedent from this District and the Federal Circuit make it clear that standing cannot be conferred retroactively.

**REDACTED**

**STATEMENT OF FACTS**

The application for the '062 patent, entitled "Cleaning Compositions with Orange Oil," was filed by Douglas H. Greenspan and Phillip A. Low on September 27, 1989. (*See* the July 12, 1990 Assignment attached as Exhibit A to the Declaration of David M. Hill, Esq. in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment for Lack of Standing).[1] While pending, Low assigned his rights in the application to Mr. Greenspan and William J. Ingram. (Ex. A). This

---

[1] The Exhibits referenced hereinafter as "Ex. __" are the exhibits attached to the Declaration of David M. Hill, Esq. in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment for Lack of Standing, filed concurrently herewith.

2

Assignment was recorded at the United States Patent and Trademark Office.

**REDACTED**

Undoubtedly, LPM thought it had covered every little thing – but it missed the

────────────────────────

**REDACTED**

forest for the trees.  No one checked the *bona fides* of the so-called Greenspan Company.

## REDACTED

## ARGUMENT

1.  **SUMMARY JUDGMENT IS APPROPRIATE HERE**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).

In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable

inferences in favor of that party. *See Anderson*, 477 U.S. at 255. The existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See id*., at 249. A "mere scintilla" of evidence in support of the non-movant's position is insufficient. *See id.,* at 252.

Summary judgment is appropriate here because there are no genuine issues of material fact.  **REDACTED**

It is beyond argument that the Greenspan Company, conducting its insurance business in California, did not accept or transfer rights to the '062 patent. (Ex. J).

**REDACTED**

If and when it does so, LPM must be cognizant of its duties and obligations under Rule 11, Fed.R.Civ.P. When LPM first filed this action, it was apparently unaware that a continuation-in-part application had been filed from the '062 patent. That continuation-in-part application contained a number of claims that were strikingly similar to claims issued in the '062 patent. (D.I. 255 at 6-7; *see also generally*, Ex. C of Hill Decl. filed therewith). All the claims were finally rejected by the Examiner and the inventors appealed. The Board of Appeals actually chastised the Examiner for not conducting a more thorough prior art investigation. (D.I. 255 and Ex. C, pp. 5-7 of Hill Decl. filed therewith). In the Board's view, the invention disclosed in the continuation-in-part (and almost identical to the one disclosed in the '062 patent) was obvious. (D.I. 255 at 7 and

5

Ex. C, pp. 9-12 of Hill Decl. filed therewith). LPM will have to carefully consider whether any action alleging infringement of the '062 patent is appropriate in light of the Board's decision.

### 2. A PATENT ASSIGNMENT MUST NAME THE RIGHT PARTIES

A patent assignment is an important legal document. Its form and content are dictated by federal law. 35 U.S.C. § 261. A patent assignment must be in writing, it should be notarized, and it should be filed with the United States Patent and Trademark Office. Failure to do so can have serious repercussions: "[a]n assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage." *Id.* This important notice function is not met if a party to an assignment is improperly or incorrectly identified.

### 3. STANDING CANNOT BE BASED ON INVALID ASSIGNMENTS

While it is beyond dispute that all pertinent assignments relating to the '062 patent misname a party, LPM will undoubtedly argue that this is all just semantics or form over substance. It is not. A federal court is obligated to examine its jurisdiction. Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993). Standing cannot be inferred from the averments of the

6

pleadings, *Grace v. American Cent. Ins. Co.*, 109 U.S. 278, 284 (1883), but "must affirmatively appear in the record." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884).

The party seeking jurisdiction bears the burden of establishing that it is a proper party to invoke judicial resolution of the dispute. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Ortho Pharmaceutical Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 907 (1995).  In response to a motion for summary judgment on the issue of standing, the party alleging standing must set forth by affidavit or by other appropriate means "specific facts" to support its standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Standing is not a clerical error that can be rectified by the court. For example, in *Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345 (E.D. Mich. 2003), the plaintiff was misnamed in both the lawsuit and the patent assignment as "Corp." when its legal name was "Inc.".  The court reasoned that the "Hilgraeve" entity was the real party in interest – it did own the patent – and it allowed an amended complaint rather than dismissal.

Here, LPM stands in different shoes.  This case is clearly analogous to *Quiedan Co., Inc. v. Central Valley Builders Supply Co., Inc., et al.*, 1993 U.S. Dist. LEXIS 15238 (N.D. Cal. 1993).  In *Quiedan*, the license for the patent-in-suit was granted to "Daniel F. McNamara, doing business as Quiedan Company" rather than directly to Quiedan. Plaintiff attempted to correct this error during suit, to no avail:

> In an attempt to correct the drafting error and escape summary judgment, plaintiff and Broyles have submitted a Nunc Pro Tunc License Agreement in which the parties acknowledge that a mistake was made in the written license agreement, corrects the mistake, and confirms that plaintiff, Quiedan Company, is the exclusive licensee under the

7

> written agreement. Under United States Patent law, standing is determined by virtue of the parties rights on the date suit is filed. As noted in *Switzer Brothers, Inc. v. Byrne*, 242 F.2d 909, 913 (6th Cir. 1957): The right of the plaintiff to recover depended upon its right at the inception of the suit and the nonexistence of a cause of action when the suit was started is a fatal defect which cannot be cured by the accrual of a cause of action pending suit.

The *Quiedan* court relied on *Afros S.P.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1445 (D. Del. 1987) for its explanation of the policy rational behind the standing rule in patent cases:

> The policy rationale for limiting the right to bring an infringement suit to those who possess all rights to the patent is to permit complete adjudication of a dispute in order to protect the patent owners' rights and the public's access to the technological innovation contained in a patent. As the Supreme Court noted in *Crown Die & Tool Co.*, permitting nonowners or licensees to sue "would give the patentee an opportunity without expense to himself to stir up litigation by third persons that is certainly contrary to the purpose and spirit of the statutory provisions for the assignment of patents." 261 U.S. at 39.

The court further concluded that since Quiedan did not possess a valid license at the time suit was filed, the *nunc pro tunc* agreement could not correct the standing problem. The court also refused to add McNamara as a party, finding that since plaintiff lacked standing to sue, it lacked jurisdiction to rule on the request.

The Federal Circuit affirmed, *Quiedan Co., Inc. v. Central Valley Builders Supply Co., Inc. et al.*, 1994 U.S. App. LEXIS 19682 (Fed. Cir. 1994), and expanded on the importance of the standing requirement:

> The only "instrument in writing" adequate to transfer an interest in the patent was, as the district court properly found, the July, 1992, written license agreement. This agreement, however, granted exclusive rights to "Daniel F. McNamara, doing business as Quiedan Company." The

8

parties to that agreement now allege the naming of the licensee was a "mutual mistake," but the terms of the agreement are plain and the court was properly bound by those terms in determining standing. The only party to which the agreement conveyed exclusive rights was McNamara, as an individual, and not Quiedan the corporation. Accordingly, Quiedan did not have standing by virtue of the July 1992 agreement.

The Federal Circuit also affirmed the district court's refusal to allow Quiedan to cure the standing defect with a *nunc pro tunc* agreement:

> That the nunc pro tunc agreement may be enforceable under state law as between the parties named in it is simply not relevant to the issue of standing which is controlled by federal law. One may not create standing by later action if it did not exist at the time the suit was brought. To allow a party to craft a retroactive agreement as attempted here would impermissibly expand the limited class of persons empowered by Congress to sue for infringement. *See* 35 U.S.C. § 281 (1988); *Crown Die & Tool Co. v. Nye Tool Machine Works*, 261 U.S. 24, 38-39, 67 L. Ed. 516, 43 S. Ct. 254 (1923).

In another case quite similar to the present action, the Federal Circuit rejected plaintiff's attempt to rely on Board meeting minutes and a *nunc pro tunc* assignment to confer standing retroactively. *Gaia Techs., Inc. v. Reconversion Techs., Inc., et al.*, 93 F.3d 774, 780 (Fed. Cir. 1996). Relying on both *Quiedan* and *Afros*, it found:

> This agreement is not sufficient to confer standing on Gaia retroactively. As the court in *Proctor & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 38 U.S.P.Q.2D (BNA) 1678 (D. Del. 1995), aptly stated:
>
>> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring

9

> to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day.

Here, the circumstances are even worse for LPM, which is a step further removed from the invalid assignments than either the *Quiedan* or *Gaia* plaintiffs.

## **REDACTED**

Arguably, this Court could follow the *Hilgraeve* model and allow an amended complaint if the Greenspan Corporation was the plaintiff. That is not the situation here. LPM lacks even the standing to ask for that remedy.

## **CONCLUSION**

Based on the forgoing, the Limited Defendants request that this Court grant summary judgment for lack of standing and dismiss the present action.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated: July 3, 2006 By:   /s/ Francis G.X. Pileggi
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
Fox Rothschild, LLP
Suite 1300
919 North Market Street
Wilmington, Delaware  19801

Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com
E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath and Body Works, Inc.
Limited Brands, Inc.

11