# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1507 (SLR) |
| ) | JURY TRIAL DEMANDED |
| BATH & BODY WORKS, INC., ) | |
|   and ) | |
| LIMITED BRANDS, INC., ) | |
|   and ) | PUBLIC VERSION |
| KAO BRANDS CO. (f/k/a THE ANDREW ) | FILED: JULY 11, 2006 |
| JERGENS COMPANY), ) | |
|   and ) | DATED: JULY 6, 2006 |
| KAO CORPORATION, ) | |
| ) | |
|    Defendants. ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS BATH & BODY WORKS, INC. AND LIMITED BRANDS INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT 5,063,062**

FOX ROTHSCHILD LLP
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
Citizens Bank Center
Suite 1300
919 North Market Street
Wilmington, Delaware 19801-2323
Phone: (302) 655-3667
Fax: (302) 656-8920

*Attorneys for Defendants Bath & Body Works, Inc. and Limited Brands, Inc.*

OF COUNSEL:

WARD & OLIVO
John F. Ward
David M. Hill
Michael J. Zinna
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ..................................................................2

SUMMARY OF ARGUMENT ...........................................................................................2

STATEMENT OF FACTS ..................................................................................................3

    A.    The '062 Patent ..................................................................................................3

    B.    The Accused Products .......................................................................................7

ARGUMENT .......................................................................................................................8

    A.    The Legal Standard For Summary Judgment ..............................................8

    B.    The Legal Standard For A Finding Of Non-Infringement ..........................9

    C.    Claims 6 and 9 As Properly Construed Do Not Cover Any Of The Accused Products ............................................................................................11

        1.    None of the Accused Products contain 5% or more orange oil .....11

        2.    None of the Accused Products contain oat gum or oatmeal ..........12

        3.    Eighteen of the Accused Products are not "cleaning" products ....13

        4.    Twenty-four of the Accused Products have a pH outside the range of 4.5 to 6.0, inclusively ...............................14

CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). .................................................. 9, 14

*Bai v. L & L Wings, Inc.*, 160 F.3d 1350 (Fed. Cir. 1998)................................................ 10

*Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) .................... 9

*Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) ....................................... 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002) ....... 10

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ...................... 9, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................... 9

*Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043 (Fed. Cir. 2001)........... 10

*Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329 (Fed. Cir. 1987) ............................ 10

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)................................................ 11

*SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878 (Fed. Cir. 1988)........ 10

*Vivid Techs., Inc. v. American Science Eng'g, Inc.*, 200 F.3d 795 (Fed. Cir. 1999) ....... 10

**Statutes**

35 U.S.C. § 102................................................................................................................. 8

35 U.S.C. § 103.............................................................................................................. 6, 8

35 U.S.C. § 112.......................................................................................................... 5, 6, 7

**Rules**

Fed.R.Civ.P. 56(c) ............................................................................................................. 8

## INTRODUCTION

Plaintiff LP Matthews, L.L.C. ("plaintiff" or "LPM") alleges that Limited Brands, Inc. and Bath & Body Works, Inc. (hereinafter collectively referred to as the "Limited Defendants") are selling twenty-seven (27) products[1] which infringe Claims 6 and 9 of United States Patent No. 5,063,062 ("the '062 patent"; attached as Ex. A to the Declaration of David M. Hill, Esq. in Support of the Opening Brief in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,063,062).[2] The '062 patent, entitled "Cleaning Compositions With Orange Oil," is directed to a skin cleaning composition which utilizes at least 5% orange oil as its cleaning agent, an oat grain derivative product as its primary emulsifier, a natural moisturizer, and a pH in the range of 4.5 to 6.0, inclusively.

As explained in further detail below, the Accused Products are not cleaning compositions, do not have orange oil sufficient for cleaning, do not have an oat ingredient sufficient for emulsifying, and/or do not have a pH within the claimed range. In short, none of the Accused Products infringe the '062 patent – a fact that LPM's expert all but concedes.

Summary judgment is appropriate because no reasonable trier of fact could find infringement here. LPM has proffered none of its own evidence of infringement, and the Limited Defendants' formula sheets and test data relied on by both parties are evidence of

---

[1] A list of the twenty-seven (27) Limited Defendants' products accused of infringement of Claims 6 and/or 9 of the '062 patent is provided in Ex. B. These products will be hereinafter referred to collectively as the "Accused Products."

[2] The exhibits attached to the Declaration of David M. Hill, Esq. in Support of the Opening Brief in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,063,062 will hereinafter be referenced as "Ex. __".

1

*non*-infringement. Thus, the Limited Defendants respectfully request that the Court grant their motion for summary judgment that none of the Accused Products infringe Claims 6 or 9 of the '062 patent.

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, LPM, filed a Complaint against the Limited Defendants, KAO Brands Co., and KAO Corp. alleging infringement of the '062 patent. (D.I. 1). This Court entered a Scheduling Order on June 9, 2005. (D.I. 39). Fact discovery closed on January 26, 2006 (*Id.* at 1) and expert discovery closed on May 12, 2006. (*Id.* at 3). Claim construction briefs were filed on June 29, 2006, and summary judgment motions must be filed by July 6, 2006. (D.I. 243).

## SUMMARY OF ARGUMENT

1. A proper construction of both Claim 6 and Claim 9, as discussed more fully in the Limited Defendants' Opening Claim Construction Brief (D.I. 255), requires: (1) a cleaning composition, (2) at least 5% orange oil, (3) oatmeal (or oat gum for Claim 6) as the primary emulsifying agent, (4) a moisturizer, and (5) for Claim 6 only, a pH within the range of 4.5 – 6.0, inclusively. This is the only construction supported by the '062 patent and its prosecution history.

## REDACTED

**REDACTED**

6.      Summary judgment of non-infringement is appropriate here because there are no outstanding genuine issues of material fact. LPM's liability expert acknowledges that the Accused Products do not meet all of the limitations of Claims 6 or 9 as properly construed, and the Accused Product formula sheets that form the basis for LPM's continued assertions actually support a finding of non-infringement. Neither LPM nor its expert performed any tests to contradict these facts.

## STATEMENT OF FACTS

A.    <u>The '062 Patent</u>

The '062 patent, entitled "Cleaning Compositions with Orange Oil," issued on November 5, 1991, from an application filed on September 27, 1989. (Ex. A, Cover Page). The catalyst for the invention was co-inventor Phillip Low's observation that the juices from an orange he was eating were dissolving the sealing caulk on his hands. (Ex. C; 1/14/2006 Dep. Trans. of Phillip Low, 11-17). After consulting his business advisor, the industrial-type cleaner disclosed in the '062 patent was developed. (Ex. C, 11-17).

The '062 patent issued with twelve (12) claims, of which only independent Claims 6 and 9 are asserted in this case. They read as follows:

> 6.    A skin cleaning composition for external use on human tissues, comprising orange oil, a pharmaceutically

> acceptable moisturizer for human skin and an oat grain derivative product as an emulsifying agent, wherein said composition has a pH within a range of 4.5 to 6.0, inclusively. (Ex. A, Col. 10, lns. 1-6).
>
> 9. A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer. (Ex. A, Col. 10, lns. 13-17).

In order to determine the bounds of a suitable cleaning composition according to their invention, the Applicants evaluated various compositions and their respective physical properties to determine which combinations would effect cleaning. (*See generally* Ex. A, Col. 3-Col. 8). They compared (subjectively) the amount of orange oil needed in the composition, the amount and type of natural product required to form an emulsion, and the effective pH range of a cleaner. (*See* Ex. A, Col. 3-Col. 8).

With regard to the effective amount of orange oil, the Applicants concluded that:

> With respect to cosmetics, a composition according to the present invention could have <u>as little as 5% by volume of orange oil</u> although it was preferable to have a cleaning composition having at least 25% by volume of orange oil. (Ex. A, Col. 6, lns. 56-61)(emphasis added).

Indeed, co-inventor Phillip Low testified that the inventors tested compositions down to almost no orange oil and concluded that anywhere from 5% to 60% provided adequate cleaning while also being comfortable on the skin. (Ex. C, 26, 86-87). Furthermore, during the prosecution of the application leading to the '062 patent, the Applicants stated that orange oil is the "primary constituent" of the cleaning composition. (Ex. D; 9/18/90 Office Action Response, p. 2).

Regarding emulsifiers, the Applicants selected grain base derivatives (i.e., oatmeal gum and oatmeal) as the primary emulsifying agent. "In order to determine

4

whether a natural ingredient could act as an emulsifying agent, the Applicants selected a grain base derivative as an emulsifying agent. To this end, Applicants tested oatmeal gum and oatmeal to act as the primary emulsifier." (Ex. A, Col. 4, lns. 22-27). The Applicants' tests revealed that these two substances could perform as primary emulsifiers. (Ex. A, Col. 4, ln. 27 - Col 5, ln. 27). The patent does not indicate that any other substances were tested or that the Applicants knew whether any other grain base derivatives would even work as primary emulsifiers in their composition. (Ex. A, Col. 4, ln. 27 – Col 5 ln. 27).

## REDACTED

Regarding the appropriate pH for the composition, the Applicants concluded that the invention "should have a pH between 4.5 and 6.0, inclusively." (Ex. A, Col. 6, lns. 25-26; Col. 2, lns. 41-42).

Thus, a plain reading of the patent itself indicates that the inventors concluded: (1) the cleaning composition must contain at least 5% orange oil, (2) the only primary emulsifying agents known to be acceptable were oatmeal or oatmeal gum, and (3) the pH of the composition had to be within the range of 4.5 – 6.0, inclusively. The patent does not support another interpretation.

The Applicants' subsequent filing supports these limitations. On November 4, 1991, the Applicants filed a continuation-in-part application of the '062 patent, which was assigned application number 07/786,804 ("the '804 application").

In a first Office Action dated April 6, 1992, the Examiner rejected the claims, in part because of the term "oat grain derivative" was indefinite under 35 U.S.C. § 112. (Ex.

5

F; Office Action dated April 6, 1992, p. 2). In response, the Applicants noted that the term "oat grain derivative product" means a product "selected from the group consisting of oat gum and oatmeal." (Ex. G; Office Action Response dated July 6 1992, pp. 1-2).

After several additional Office Actions and Responses not pertinent here, the Examiner maintained his rejections and the Applicants appealed to the Board of Patent Appeals at the Patent and Trademark Office (the "Board"). Among other things, the Applicants reiterated that the primary emulsifier is formulated from a grain derivative product such as oatmeal or oatmeal gum.

Unfortunately for the Applicants, the Board affirmed several of the Examiner's 35 U.S.C. § 112 rejections, including the rejection that the independent claims were not enabled under 35 U.S.C. § 112, first paragraph. (Ex. H; 4/15/97 Board's Decision on Appeal, p. 8). The Board also rejected independent Claim 25 under 35 U.S.C. § 103 as being obvious in view of the combination of United States Patent No. 4,620,937, Richard L. Coleman, "D-Limonene as a Degreasing Agent," The Citrus Industry, Vol. 56, No. 11, and The Physicians' Desk Reference, 24th ed., 1969. According to the Board, the combination of these references "would have suggested to one of ordinary skill in the art a skin treating composition which comprises orange oil, aloe vera extract, and oatmeal." (Ex. H, p. 12).

Faced with the Board's insurmountable rejections, the Applicants opted to let the '804 application go abandoned.

B.  The Accused Products

**REDACTED**

As a threshold matter, the majority of Accused Products are simply not cleaning products – rather they include a wide range of personal care products, ranging from body lotions to leave-on nighttime moisturizers to acne treatments.[3] (*See* Ex B).

**REDACTED**

In contrast to the teachings of the '062 patent, the Accused Products merely utilize fragrance to enhance the aesthetic appeal of a beauty product to a potential consumer. This practice is well known in the art. Indeed, the practice of adding

---

[3]Initially, LPM accused thirty-seven (37) of the Limited Defendants' body care products (including lotions, moisturizers, creams, bath salts, body butters, mattifiers, washes, and scrubs). Over the course of this proceeding, plaintiff has withdrawn its baseless allegations as to ten (10) of the originally accused products.

[4] As discussed in greater detail in the Limited Defendants' Motion for Summary Judgment of Invalidity under 35 U.S.C. §112, filed concurrently herewith, the specification of the '062 patent does not support a cleaning composition that contains less than 5% orange oil.

[5] In fact, even assuming, *arguendo*, that plaintiff's ridiculous assertion that only 0.01% orange oil is necessary to infringe Claim 6 or Claim 9, these seven (7) Accused Products cannot infringe any claim of the '062 patent. (Ex. B).

7

fragrance to beauty products is ubiquitous and centuries old.[6] (*See* George H. Hurst, *Soaps, A Practical Manual of the Manufacture of Domestic Toilet and Other Soaps* (2d 1907) (Ex. K; "Soaps Manual"). Similarly Juliano United States Patent No. 4,014,995 (Ex. L; "Juliano"), which was cited by the Examiner during the prosecution of the '062 patent, discloses fragranced cosmetic products. (*See generally* Ex. L, Examples).

**REDACTED**

**ARGUMENT**

    A.    <u>The Legal Standard for Summary Judgment</u>

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Federal Circuit has held that

---

[6] As a result, any claim of the '062 patent that covers this process is invalid under 35 U.S.C. §§ 102 and/or 103. The reasons are more fully set out in the Limited Defendants' Motions for Summary Judgment of Invalidity under 35 U.S.C. §§ 102 and/or 103, filed concurrently with this motion.

8

summary judgment "is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).

In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *See Anderson*, 477 U.S. at 255. The existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See id.*, at 249. A "mere scintilla" of evidence in support of the non-movant's position is insufficient. *See id.*, at 252.

      B.    <u>The Legal Standard for a Finding of Non-Infringement</u>

A determination of non-infringement requires a two-step analysis. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The Court must first construe the patent claims in issue to determine their scope and meaning. *Id.* Claim construction is a question of law subject to *de novo* review. *Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). This Court has not yet construed

the asserted patent claims.  The trier of fact must then compare the properly construed claims to the allegedly infringing products.  *Markman*, 52 F.3d at 976.  This step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

  While the second step is a question of fact, summary judgment may still be appropriate. *Id.*  Literal infringement requires that each limitation of the asserted claim or claims be found exactly in the alleged infringer's product. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).  Where the accused device does not literally infringe, infringement may still be found under the doctrine of equivalents. *Id.* at 821-22.  To prevail under the doctrine of equivalents, a patentee must prove for each element of an asserted claim that the accused device "does substantially the same thing in substantially the same way to get substantially the same result. *Id.* at 822.  The doctrine of equivalents is, however, limited by the doctrine of prosecution history estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002).

  The patent owner suing for infringement has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).  Therefore, "an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case. *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1346 (Fed. Cir. 2001); *Vivid Techs., Inc. v. American Science Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999).

Here, summary judgment is appropriate. Once the claims are properly construed, there will be no set of facts upon which a jury could find infringement of any accused product.

    C.    The Claims as Properly Construed Do Not Cover Any Of The Accused Products

        1.    None of the Accused Products contain 5% or more orange oil

**REDACTED**

The inventors themselves acknowledged that 5% was the lower limit of their invention, stating that "[*b*]*roadly,* this composition comprises a first ingredient being between five percent (5%) and sixty percent (60%) by volume orange oil." (Ex. A, Col. 2, lns. 27-30)(emphasis added). This limitation makes logical sense, since the inventors stated outright that orange oil was their composition's primary cleaning agent (Ex. D, p. 3) consistent with their own testing (Ex. C, 26, 86-87). It is axiomatic that a finding of literal infringement requires that every limitation of the claims be found in an accused product. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed. Cir. 1992). Thus, since a composition which infringes the '062 patent must contain at least 5% orange oil and the parties agree that

---

[7] **REDACTED** – just like the orange oil found in the compositions disclosed in the Soaps Manual and Juliano. These products are in all relevant aspects the same as those disclosed in the Soaps Manual and Juliano. (*See generally*, Exs. K and L).

11

none of the Accused Products contain anywhere near 5% orange oil, summary judgment of non-infringement for all of the Accused Products is appropriate.[8]

    2.  None of the Accused Products contain oat gum or oatmeal

Both Claims 6 and 9 require, under a proper construction, oatmeal or oat gum to serve as the primary emulsifier.

### REDACTED

The inventors themselves stated that these were the only two "oat grain derivative" products they tested for use in their invention, noting that they "selected a grain base derivative as an emulsifying agent. To this end, Applicants tested oatmeal gum and oatmeal to act as the primary emulsifier."[9] (*See* Ex. A, Col. 4, lns. 25- 27; Ex. G, p. 2, Ex. H; *see also,* Ex. E, 336:4-11). Indeed, they limited Claim 9 to oatmeal exclusively. Even if the Court were to find that the oat grain derivatives found in the Accused Products were of the type contemplated by the patent, there can be no infringement because those oat derivatives are not "primary emulsifiers," i.e., the emulsifier that is "first in time" or "greatest in amount" – they are not emulsifiers at all.

---

[8] In fact, even assuming, *arguendo*, that plaintiff's assertion that only 0.01% orange oil is necessary to infringe Claim 6 or Claim 9, at least seven of the Accused Products cannot infringe any claim of the '062 patent. (Ex. B).

[9] In the event the phrase "oat grain derivative product" in Claim 6 is construed to encompass oat grain derivatives other than oatmeal and oat gum, there would still be no infringement by any of the Accused Products because none of them utilize an oat grain derivative as their primary emulsifier. (*See* Ex. J; Ex. A, Col. 4, lns. 25-27.)

It is undisputed that the Accused Products do not contain either oatmeal or oatmeal gum. Summary judgment of non-infringement for all of the Accused Products is appropriate.

### 3. Eighteen of the Accused Products are not cleaning products

**REDACTED**

This important difference is exemplified by the manner of use between a cleanser and a lotion. The former is used to wash off and remove unwanted foreign substances such as tar, caulking compounds, sealants, adhesives, and the like; the latter is liberally applied (and re-applied) as a medicinal preparation to heal damaged areas of the skin.

_____

**REDACTED**

Dr. Rhodes' unsupported contention that it is "expected" these products will have a cleaning function does not rise to the level of creating a genuine fact dispute.[11] Summary judgment is only inappropriate if there is enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson*, 477 U.S. at 249. A "mere scintilla" of evidence in support of the non-movant's position is insufficient. *See id.,* at 252.

Accordingly, there is no genuine issue of material fact here. Therefore, summary judgment of non-infringement as to these eighteen products (*see supra,* p. 13, n. 13 for a list of these eighteen products) is appropriate on this basis alone.

### 4. Twenty-four of the Accused Products have a pH outside the range of 4.5 To 6.0, inclusively

Claim 6 of the '062 patent requires the pH of the composition to be "within the range of 4.5 to 6.0, inclusively." (Ex. A, Col. 10, lns. 5-6). As properly construed in light of the specification, this means "including but not exceeding the endpoints of the range 4.5 to 6.0." (D.I. 255, p. 17).



**REDACTED**

---

[11] **REDACTED**

This statement is chemically unsupportable and wholly unsupported here either by tests or a specific discussion of what similarities lead Dr. Rhodes to his conclusion.

**REDACTED**

LPM acknowledges this. (*See* Ex. J, pp. 15-35; Ex B; Ex. M, pp. 19-38, 41-49, 51-52, App. B-1). LPM has performed no testing or proffered any evidence to contradict any of the pH data put forth by the Limited Defendants. Thus, there is no genuine fact dispute regarding the pH of these Accused Products.

## **REDACTED**

## **CONCLUSION**

For the foregoing reasons, the Limited Defendants' respectfully request that summary judgment be granted in its favor that none of the Accused Products infringe Claims 6 and 9 of the '062 patent.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated:  July 6, 2006

By:   /s/ Francis G.X. Pileggi
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
FOX ROTHSCHILD LLP
Suite 1300
919 North Market Street
Wilmington, Delaware  19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward

## **REDACTED**

>David M. Hill
>Michael J. Zinna
>WARD & OLIVO
>708 Third Avenue
>New York, New York  10017
>Phone: (212) 697-6262
>Fax: (212) 972-5866
>E-mail: wardj@wardolivo.com
>E-mail: hilld@wardolivo.com
>E-mail: zinnam@wardolivo.com
>
>*Attorneys for Defendants*
>Bath and Body Works, Inc.
>Limited Brands, Inc