**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1507 (SLR) |
| ) | JURY TRIAL DEMANDED |
| BATH & BODY WORKS, INC., ) | |
| and ) | |
| LIMITED BRANDS, INC., ) | |
| and ) | PUBLIC VERSION |
| KAO BRANDS CO. (f/k/a THE ANDREW ) | FILED: JULY 11, 2006 |
| JERGENS COMPANY), ) | |
| and ) | DATED: JULY 6, 2006 |
| KAO CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS BATH & BODY
WORKS, INC. AND LIMITED BRANDS, INC.'S MOTION FOR SUMMARY
JUDGMENT OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT**

FOX ROTHSCHILD LLP
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
Citizens Bank Center
Suite 1300
919 North Market Street
Wilmington, Delaware 19801-2323
Phone: (302) 655-3667
Fax: (302) 656-8920

*Attorneys for Defendants Bath & Body
Works, Inc. and Limited Brands, Inc.*

OF COUNSEL:

WARD & OLIVO
John F. Ward
David M. Hill
Michael J. Zinna
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .........................................................1

SUMMARY OF THE ARGUMENT .................................................................................1

STATEMENT OF FACTS ..................................................................................................3

ARGUMENT........................................................................................................................6

    I.      Summary Judgment Is Appropriate Here ......................................................6

    II.     The Applicants Engaged In Inequitable Conduct
            During The Prosecution Of The '062 Patent ...............................................7

          A.     The Applicants Knew that Coleman
                Disclosed the Use of Citrus Oil, Not
                Merely D-Limonene, in a Cleaning Composition............................9

          B.     The Lack of Evidence Suggests that the "Orange
                Oil v. D-Limonene" Tests Mentioned In the
                Sept. 18, 1990 Response Were Never Performed..........................11

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Allied Colloids, Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570 (Fed. Cir. 1995) ...................... 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 6

*Baxter Int'l. Inc. v. McGaw Inc.*, 149 F.3d 1321 (Fed. Cir. 1998) ....................................... 8

*Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) .................... 6

*Bio-Technology Gen. Corp. v. Novo Nordisk A/S*, 2004 U.S. Dist. LEXIS
   14959  (D. Del. 2004) ...................................................................................................... 7

*Brasseler U.S.A. v Stryker Sales Corp.*, 267 F.3d 1370 (Fed Cir. 2001) ............................ 8

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226
   (Fed. Cir. 2003) ............................................................................................................ 8, 10

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253
   (Fed. Cir. 1997) ............................................................................................................... 13

*Elk Corp. v. GAF Bldg. Materials Corp.*, 168 F.3d 28 (Fed. Cir. 1999) ............................ 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................... 6

*Merck & Co. v. Danbury Pharmacal*, 873 F.2d 1418 (Fed. Cir. 1989) .............................. 8

*Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp.*,
   424 F.3d 1347 (Fed. Cir. 2005) ..................................................................................... 7, 9

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359
   (Fed. Cir. 2001) ................................................................................................................. 7

*Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123 (Fed. Cir. 2006) ........... 12, 13

*Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556 (Fed. Cir. 1983) ......................... 7

*Tenneco Automotive Op. Co. v. Visteon Corp.*, 375 F. Supp. 2d 366
   (D. Del. 2005) ................................................................................................................ 8, 9

**STATUTES**

35 U.S.C. § 103 ............................................................................................................ 3, 5, 10

**RULES**

Fed. R. Civ. P. 56(c) ................................................................................................. 6

**REGULATIONS**

37 C.F.R. § 1.56(a)..................................................................................................... 7

## INTRODUCTION

Limited Brands, Inc. and Bath & Body Works, Inc. (hereinafter collectively referred to as the "Limited Defendants") respectfully request that the Court grant summary judgment that the asserted claims (Claims 6 and 9) of United States Patent No. 5,063,062 ("the '062 Patent") are unenforceable due to inequitable conduct, for the reasons discussed *infra*.

## NATURE AND STAGE OF THE PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. (hereinafter "LPM"), filed a Complaint against the Limited Defendants, KAO Brands Co., and KAO Corp. alleging infringement of the '062 patent. (D.I. 1). This Court entered a Scheduling Order on June 9, 2005. (D.I. 39.) Fact discovery closed on January 26, 2006 (*Id.* at 1) and expert discovery closed on May 12, 2006. (*Id.* at 3). Claim construction briefs were filed on June 29, 2006, and summary judgment motions must be filed by July 6, 2006. (D.I. 243).

## SUMMARY OF THE ARGUMENT

1.      To obtain allowance of the '062 patent, the inventors made two critical representations to the United States Patent and Trademark Office ("PTO"): (1) no one had previously used orange oil or other citrus oils in a cleaner for human skin, and (2) although the active ingredient in orange oil – d-limonene – had been used in cleaners for many years, the inventors of the '062 patent claimed that they performed tests verifying that orange oil (which is approximately 94% d-limonene) cleaned better than commonly-used d-limonene. Unfortunately, the evidence collected in this case indicates that neither

of these statements is true.

2.    In rejecting the application that led to the '062 patent, the Examiner relied on a reference that disclosed citrus oil in, *inter alia*, a hand cleaner. In an effort to obtain their patent at all costs, however, Applicants Phillip Low and Douglas Greenspan (hereinafter collectively "the Applicants") misrepresented that this reference only disclosed d-limonene, although they knew or should have known otherwise.

3.    Compounding the deception, the Applicants alleged that they had performed "tests" which showed the "surprising result" that orange oil cleaned better than d-limonene. No documentary evidence of these tests has been produced,

**REDACTED**

4.    These actions constitute inequitable conduct because they were intentional misrepresentations of information that was highly material to the application process. Therefore, the '062 patent should be deemed unenforceable.

5.    Summary judgment is appropriate because there are no genuine issues of material fact here. The clear wording of the Examiner's citrus oil reference is irrefutable.

**REDACTED**

6.    Thus, the Limited Defendants respectfully move for summary judgment of unenforceability due to inequitable conduct.

**STATEMENT OF FACTS**

The prosecution history of the '062 patent is particularly germane to this motion. The application was filed on September 27, 1989. (Cover page of the '062 patent; a copy of the '062 patent is attached as Ex. A to the Declaration of David M. Hill, Esq. in Support of the Opening Brief in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment of Unenforceability due to Inequitable Conduct).[1] As originally submitted to the PTO, the application contained 18 claims. The invention, in the Applicants words, was:

> A skin cleaning composition which is adapted for external use on human tissues. Broadly, this composition comprises a first ingredient being between five percent (5%) and sixty percent (60%) by volume orange oil, a second ingredient being a pharmaceutically acceptable moisturizer for human skin and a third ingredient being an emulsifying agent.

(Ex. B; U.S. Pat. App. Ser. No. 07/413395, p. 4, lns. 11-18).

Claims 1 – 15 were directed to a cleaning composition, and Claims 16 – 18 were directed to a towellet impregnated with a cleaning composition.[2]

In an office action dated June 18, 1990, the Examiner rejected Claims 1 – 15 under 35 U.S.C. § 103. (*See* Ex. C; 6/18/90 Office Action, pp. 2-4). Importantly, the rejection of every claim was based either wholly or in part on an article written by Richard Coleman published in *The Citrus Industry* in November 1975 (Ex. D; hereinafter

---

[1] The Exhibits referenced herein as "Ex. __" are the exhibits attached to the Declaration of David M. Hill, Esq. in Support of the Opening Brief in Support of Defendants Bath & Body Works, Inc. and Limited Brands, Inc.'s Motion for Summary Judgment of Unenforceability due to Inequitable Conduct.

[2] Claims 16 – 18 were ultimately cancelled. The first post-filing correspondence from the PTO was an election requirement, dated April 19, 1990. The Examiner found that Claims 1 – 15 and Claims 16 – 18 were drawn to patentably distinct inventions. In response, the Applicants elected Claims 1 – 15 in a response dated May 17, 1990. The election requirement (and original Claims 16 – 18) has no bearing on the present motion.

"Coleman").³ Coleman discloses experiments which utilized citrus oil to test the degreasing properties of d-limonene (the primary component of citrus oil and orange oil) in two hand cleaners. (Ex. D, p. 24). In citing Coleman against Claims 1 – 15, the Examiner stated, "[a]lthough distilled citrus oil (94% d-limonene) is used, it would be obvious to use orange oil, if it were not the source in this case." (Ex. C, p. 2).

The Applicants filed a Response on September 18, 1990 (Ex. E; hereinafter "the 9/18/90 Response"), in which they asserted that the Examiner's reliance on Coleman (as well as several other references) was improper, because:

> Each of the references rely on the cleaning properties of d-limonene as the primary cleaning constituent. The Examiner then concludes that it would be obvious to substitute orange oil for the d-limonene since the d-limonene is distilled from a citrus oil. Simply put, these references do not suggest the use of orange oil alone, but rather <u>teach away from</u> the use of orange oil since they rely on the distillate d-limonene.

(Ex. E, p. 2) (emphasis in original).

In essence, the Applicants asserted that their invention was patentable over the cited references, including Coleman, because in their view, those references only disclosed *d-limonene* in a cleaning composition. (Ex. E, p. 2). Coleman, however, specifically says *citrus oil* was used in the reported formulations. (Ex. D, p. 24).⁴ In fact, Coleman goes even further, noting that the test participants "expressed a definite preference for the citrus oil containing" cleaner. (Ex. D, pp. 24-25).

Also in the 9/18/90 Response, in order to highlight the alleged enhanced cleaning properties of orange oil over d-limonene, the Applicants recounted tests that compared

---

³ Claim 1 was rejected solely on Coleman. Claims 2 – 15 were rejected based on Coleman in combination with other references.

⁴ Also in this response, the Applicants acknowledge that citrus oil contains approximately 94% d-limonene, i.e., it is not "pure" d-limonene. (Ex. E, p. 3). Orange oil also contains about 94% d-limonene.

4

orange oil to d-limonene:

> <u>Applicants have tested</u> the compositions produced according to the ranges of the present application wherein an equal weight percent of d-limonene was substituted for the orange oil. In each case, the orange oil based composition had superior cleaning properties than the identical composition with an equivalent amount of d-limonene substituted for the orange oil. While Applicants believe that other esters and volatiles in the orange oil may contribute to the enhanced cleaning properties, although [sic] the exact reason for the enhanced cleaning properties has not yet been determined. Nonetheless, <u>Applicants have learned of a surprising result</u> from the raw orange oil in these enhanced cleaning properties. This distinction over the use of d-limonene in the prior art is significant and not at all obvious.

(Ex. E, pp. 2-3) (emphasis added).[5]

The Examiner issued a second Office Action on December 20, 1990. Following the Applicants' representations, he abandoned his reliance on Coleman, but again rejected Claims 1 – 15 under § 103. The Applicants amended their claims in a Response filed March 18, 1991, and a Notice of Allowability issued on April 10, 1990. The '062 patent issued on November 5, 1991.

Coleman was subsequently relied on by the Board of Patent Appeals & Interferences in its rejection of the '062 patent's continuation-in-part application. (Ex. F; 4/15/97 Board of Appeals Decision, p. 2).

**REDACTED**

---

[5] As discussed *infra*, no evidence was produced during discovery to confirm that these tests were performed.

5

# ARGUMENT

## I. SUMMARY JUDGMENT IS APPROPRIATE HERE

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Federal Circuit has held that summary judgment "is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).

In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *See Anderson*, 477 U.S. at 255. The existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See id.*, at 249. A "mere scintilla" of evidence in support of the non-movant's position is insufficient. *See id.*, at 252.

Summary judgment that the '062 patent in unenforceable or due to inequitable

6

conduct is appropriate here because there are no genuine issues of material fact. The plain wording of the Examiner's citrus oil reference is irrefutable. There are no documents to confirm the Applicants' tests,

**REDACTED**

## II. THE APPLICANTS ENGAGED IN INEQUITABLE CONDUCT DURING THE PROSECUTION OF THE '062 PATENT

Inequitable conduct occurs when, like here, a patent applicant breaches his or her "duty of candor and good faith" to the Patent & Trademark Office. 37 C.F.R. § 1.56(a); s*ee Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1359 (Fed. Cir. 2005). Inequitable conduct may include "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *See Novo Nordisk,* 424 F.3d at 1359. This duty extends to patent applicants as well as their attorneys. *See Elk Corp. v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999). This Court has recognized that affirmative misrepresentations by the patentee, in contrast to misleading omissions, are more likely to be regarded as material. *See Bio-Technology Gen. Corp. v. Novo Nordisk A/S*, 2004 U.S. Dist. LEXIS 14959 (D. Del. 2004); *see also Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983).

Materiality and intent must be established by clear and convincing evidence. *See Novo Nordisk,* 424 F.3d at 1359. Once materiality and intent have been established, the district court must weigh these factors in light of all of the circumstances to determine whether a finding that inequitable conduct occurred is warranted. *See id.*; *Purdue Pharma*

7

*L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001).

      A determination of inequitable conduct, therefore, entails a two step analysis. First, the court must determine whether the withheld or misrepresented information meets a threshold level of materiality. Information is considered material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. *See Tenneco Automotive Op. Co. v. Visteon Corp.*, 375 F. Supp 2d. 366, 372 (D. Del. 2005); *see also Allied Colloids, Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995). A reference, however, does not have to render the claimed invention unpatentable or invalid to be material. *See id.*; *see also Merck & Co. v. Danbury Pharmacal*, 873 F.2d 1418, 1420-21 (Fed. Cir. 1989).

      After determining that the applicant withheld or misrepresented material information, the court must decide whether the applicant acted with the requisite level of intent to mislead the PTO. *See id.*; *see also Baxter Int'l. Inc. v. McGaw Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). Intent to mislead does not require direct evidence, and is typically inferred from the facts. *See Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239 (Fed. Cir. 2003); *Brasseler U.S.A. v Stryker Sales Corp.*, 267 F.3d 1370, 1375-76 (Fed Cir. 2001). Where withheld or misrepresented information is material and the patentee knew or should have known of that materiality, he or she can expect to have great difficulty in establishing subjective good faith sufficient to overcome an inference of intent to mislead. *See Bristol-Myers*, 326 F.3d at 1239. In short, a "smoking gun," is not required in order to establish an intent to deceive. *See Tenneco,* 375 F. Supp. 2d at 372; *see also Merck*, 873 F.2d at 1422. When balanced against high materiality, the showing of intent can be proportionally less. *See id.*; *Bristol-Myers*, 326

F.3d at 1234.

      A.      THE APPLICANTS KNEW THAT COLEMAN DISCLOSED THE USE OF CITRUS OIL, NOT MERELY D-LIMONENE, IN A CLEANING COMPOSITION

A reference is considered material if there is a substantial likelihood that a reasonable Examiner would consider it important in deciding whether to allow the application to issue as a patent. *See Tenneco*, 375 F. Supp 2d. at 372. Here, there can be no doubt that Coleman was a highly material reference – it was the foundation for the Examiner's initial rejection of Claims 1 – 15. (Ex. C, pp. 2-5). Coleman was also relied on by the Board of Patent Appeals & Interferences in its rejection of similar claims a continuation-in-part application of the '062 patent. (Ex. F, p. 2). After chastising the Examiner and expressing "concern that the claims on appeal have not been adequately examined in the first instance by the [E]xaminer" (Ex. F, p. 7), the Board rejected the pending claims, based in part because "Coleman describes the use of d-limonene obtained from citrus oils, such as orange oil, as a hand cleaner … [and] as seen in the paragraph which bridges pages 24-25 of [Coleman], citrus oil-containing compositions were preferred." (Ex. F, p. 9).

With regard to intent, there is little doubt that the Applicants intended to mislead the Examiner by misrepresenting the teachings of Coleman as "relying on the distillate d-limonene."[6] Coleman specifically states that "citrus oil, (~94% d-limonene)" was used in its hand cleaner formulations. (Ex. D, p. 24). Coleman uses the terms "citrus oil" and "d-limonene" interchangeably, which highlights for the reader that his tests were evaluating

---

[6] Given how highly material Coleman is to the patentability of the '062 patent, the Limited Defendants' showing of intent can be "proportionally less" and a finding of inequitable conduct would still be appropriate. *See Novo Nordisk,* 424 F.3d at 1359.

9

the d-limonene sub-component of the citrus oil. (Ex. D, pp. 24-25). Applicants took Coleman's synonymous usage of the two terms and ran with it to concoct an argument that flies in the face of their own application. While a citrus industry neophyte might reasonably (but erroneously) consider a compound containing 94% d-limonene to "be" d-limonene, it was a peculiar argument coming from these Applicants – their patent application was heralding the exact opposite point. Indeed, the entire '062 patent is premised on the contention that orange oil, an oil containing approximately 94% d-limonene, is *not* d-limonene. (Ex. E, pp. 2-4). Coleman relies on d-limonene no more or less than the '062 patent does – both disclose the use of an oil whose main component is d-limonene. (Ex. D, pp. 24-25 and Ex. E, pp. 2-4).

It is untenable for the Applicants to claim that orange oil and d-limonene are different (in order to bolster the alleged novelty of their invention), but that citrus oil and d-limonene are the same (in order to overcome the most important piece of art cited against them). (Ex. E, pp. 2-4). The argument reeks of bad faith and could only have been proffered with the intent of misleading the Examiner into erroneously (and advantageously) reading Coleman as disclosing the use of d-limonene rather than citrus oil. Intent to mislead does not require direct evidence, and is typically inferred from the facts. *See Bristol-Meyers*, 326 F.3d at 1239. Here, the facts are: (1) Coleman states specifically that citrus oil was used in the compositions, and, in fact, that citrus oil was preferred over pure d-limonene (Ex. D, pp. 24-25), (2) the Applicants knew that citrus oil was not d-limonene (*see generally*, Exs. C-E), and (3) the Applicants knew that if their argument was successful, they would have eliminated the only reference used in every one of the pending § 103 rejections. (*See generally*, Exs. C and E).

It worked; the Examiner's rejections based on Coleman were not continued in the next Office Action.

Thus, there is no genuine issue of material fact here. The Applicants intentionally misled the Examiner as to the teachings of Coleman, a highly material reference. It is impermissible for the Applicants to benefit from such behavior. As such, the Limited Defendants' motion for summary judgment that the '062 patent is unenforceable should be granted.

> B. THE LACK OF EVIDENCE SUGGESTS THAT THE "ORANGE OIL v. D-LIMONENE" TESTS MENTIONED IN THE SEPT. 18, 1990 RESPONSE WERE NEVER PERFORMED

Following their misrepresentation that the Examiner's cited references only disclosed the use of d-limonene, Applicants recounted and relied on tests they allegedly performed, which demonstrated the alleged "surprising result" that orange oil is a better cleaner than d-limonene. (Ex. E, pp. 2-3).

This testing formed the sole basis for the Applicants' contention that orange oil cleaned better than d-limonene, the bedrock principle of their invention. (Ex. E, pp. 2-3). Despite the relevance of these tests to the novelty, validity, and enforceability of the '062 patent, *no one* – not the co-inventors, not the prosecution attorney, not LPM – has been able to produce a single document to corroborate that these tests were ever performed and/or that the test results were as reported by the Applicants to the Examiner. Of the over 8500 pages of documents produced in this suit by LPM, the co-inventors, and the prosecution attorney, *not one* confirms that these tests were carried out.

**REDACTED**

**REDACTED**

Fabricating these tests or inaccurately reporting the results would rise to the level of intentional misrepresentation of highly material facts. The Federal Circuit has stated that it is likely a highly material misrepresentation to tell the PTO that a "surprising discovery" was based on experimental results when no true experiments were conducted, and the "discovery" was actually deduced from supposed "insight." *Purdue Pharma L.P.*

---

[7] It also strains credibility that these alleged tests were not specifically reported to the PTO. Given the importance of these tests to the fundamental tenant of the invention, it would seem that if such tests were actually performed, they would have been specifically recounted, and in fact highlighted, by the Applicants. Instead, the Applicants provided nothing concrete in either their application or Office Action responses, and instead merely invited the Examiner to contact the prosecution attorney if he wanted more information. (*See* Ex. E, pp. 4-5).

12

*v. Endo Pharms., Inc.,* 438 F.3d 1123, 1133 (Fed. Cir. 2006).  That is exactly what happened here.  Rumors of these tests were the only "evidence" proffered during prosecution to support the Applicants' fundamental contention that orange oil cleaned better than d-limonene – a phenomenon that they deemed "a surprising result." (Ex. E, pp. 2-5).  There is a substantial likelihood that the Examiner considered these "surprising" results (and the fact that they were allegedly based on scientific experiments) not only important, but crucial to allowance. (*See generally* Ex. E).  The co-inventors and their attorney should have known this.

      A patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish "subjective good faith" sufficient to prevent the drawing of an inference of intent to mislead. *See Purdue Pharma,* 438 F.3d at 1133; *see also Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997).

### REDACTED

This wholly unsubstantiated "mere scintilla" of evidence is not enough to counter the fact that (1) there are no documents which confirm the testing, and (2)

### REDACTED

      Under these circumstances, summary judgment of unenforceability is appropriate.

13

**CONCLUSION**

Based on the forgoing, the Limited Defendants request that this Court grant summary judgment that the '062 patent is unenforceable due to the patentees' inequitable conduct.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated:  July 6, 2006

By:___/s/ Francis G.X. Pileggi_____
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
FOX ROTHSCHILD LLP
Suite 1300
919 North Market Street
Wilmington, Delaware  19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York  10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com
E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath and Body Works, Inc.
Limited Brands, Inc