IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C. | ) | REDACTED PUBLIC VERSION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1507-SLR |
| | ) | |
| BATH & BODY WORKS, INC.; LIMITED BRANDS, INC.; KAO BRANDS CO. (f/k/a THE ANDREW JERGENS COMPANY); and KAO CORPORATION | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**LP MATTHEWS' OPENING BRIEF IN
SUPPORT OF ITS CROSS-MOTION FOR SUMMARY
JUDGMENT OF INFRINGEMENT AGAINST THE KAO DEFENDANTS AND
UPDATED ANSWERING BRIEF IN OPPOSITION TO KBC'S MARCH 8, 2005
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (D.I. 39)**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, DC 20006

Dated: July 13, 2006

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

SUMMARY OF THE ARGUMENT ............................................................................... 2

STATEMENT OF FACTS ............................................................................................... 4

    A.    The '062 Patent And This Case .......................................................................... 4

    B.    The Kao Defendants' Orange Oil Patent and the Limited Defendants' Expert ............................................................................................................... 5

    C.    KBC's Accused Products .................................................................................. 6

ARGUMENT ................................................................................................................... 8

    A.    Summary Judgment Standard ........................................................................... 8

    B.    Infringement Is a Two-Part Analysis: Claim Construction and Accused Product Analysis ............................................................................... 8

    C.    The Kao Defendants' Accused Products Literally Meet the Properly Construed Orange Oil Limitation of Claims 6 and 9 of the '062 Patent .......... 9

        1.    The Kao defendants' Accused Products Contain Three Times the Orange Oil Required to Infringe. ................................................. 9

        2.    The Kao Defendants' Accused Products Are Skin-Cleaning Compositions ............................................................................................ 9

    D.    KBC's Original Motion Must Be Denied ...................................................... 10

    E.    The Kao Defendants' Proposed Claim Interpretation Disregards Precedent and Mischaracterizes the Patent Specification ............................. 10

        1.    KBC Improperly Attempts to Import a 5% Orange Oil Limitation from the Specification into Claims 6 and 9 ..................... 11

        2.    KBC's 5% Orange Oil Limitation Would Violate Precedent ............. 11

        3.    KBC Mischaracterizes the '062 Patent Specification, Which Supports Interpreting the Claims Consistent with their Clear Language ............................................................................................ 12

    F.    KBC's Brief Does Not Address Infringement under the Doctrine of Equivalents ...................................................................................................... 14

CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) .................................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................... 8

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com Inc.*,
   289 F.3d 801 (Fed. Cir. 2002) .................................................................... 13

*Digital Biometrics, Inc. v. Identix, Inc.*,
   149 F.3d 1335 (Fed. Cir. 1998) .............................................................. 9, 11

*Gart v. Logitech, Inc.*,
   254 F.3d 1334 (Fed. Cir. 2001) .................................................................. 12

*Grain Processing Corp. v. American Maize Products Co.*,
   840 F.2d 902 (Fed. Cir. 1998) .................................................................... 12

*Interactive Gift Express, Inc. v. CompuServe, Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) .............................................................. 9, 11

*Jansen v. Rexall Sundown, Inc.*,
   342 F.3d 1329 (Fed. Cir. 2003) .................................................................... 9

*K-2 Corp. v. Salomon S.A.*,
   191 F.3d 1356 (Fed. Cir 1999) ............................................................... 9, 11

*Leibel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) .................................................................... 11

*Markman v. Westview Instr., Inc.*,
   517 U.S. 370 (1996) ...................................................................................... 8

*Markman v. Westview Instr., Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) .................................................................... 8, 9

*National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*,
   166 F.3d 1190 (Fed. Cir. 1999) .................................................................... 9

*Paragon Podiatry Lab. v. KLM Lab.*,
   984 F.2d 1182, 1184-85 (Fed.Cir.1993) ....................................................... 8

*Roberts v. Ryer*,
   91 U.S. 157 (1875) ...................................................................................... 13

**Page**

*Scripps Clinic & Research Fdn v. Genetech, Inc.,*
    927 F.2d 1565, 1571 (Fed.Cir.1991) ................................................................. 8

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.,*
    275 F.3d 1371 (Fed. Cir. 2002) ......................................................................... 9

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
    299 F.3d 1313 (Fed. Cir. 2002) ....................................................................... 11

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................................... 9

**Statutes**

35 U.S.C. §271 (1994) ........................................................................................... 12

Fed. R. Civ. P. 56(c) ................................................................................................ 8

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. filed a Complaint for patent infringement against defendants Kao Brands Company (formerly known as The Andrew Jergens Company) ("KBC"), Kao Corporation, Limited Brands, Inc., and Bath & Body Works, Inc.[1] (D.I. 1.) LP Matthews amended its Complaint on February 2, 2005. (D.I. 5, 8.) Defendant KBC filed an Answer to the Amended Complaint on February 28, 2005 (D.I. 9), but Kao Corporation (KBC's parent) did not authorize its counsel to accept service. At that time, LP Matthews had only identified one accused product, Curél Ultra Healing.

On March 8, 2005, before Kao Corporation (or Limited Brands and Bath & Body Works) answered the Amended Complaint and before the Court entered its Scheduling Order (D.I. 39), KBC filed a Motion for Summary Judgment that its Ultra Healing product does not infringe the patent-in-suit, based solely on the claim element "orange oil" ("original motion"). (D.I. 12.)[2] In its supporting memorandum, KBC admitted that its accused Ultra Healing product contains orange oil as required by the literal language of the claims of the patent-in-suit. LP Matthews opposed KBC's original motion and, even though KBC admitted its Ultra Healing product literally meets the orange oil claim element[3], waited for the dispositive motion date to file a cross-motion for summary judgment of infringement.

---

[1] KBC and Kao Corporation are collectively "the Kao defendants." Limited Brands, Inc. and Bath & Body Works, Inc. are collectively "the Limited defendants."

[2] In this Memorandum, "KBC Br." refers to KBC's Memorandum in support of the original motion, filed on March 8, 2005. (D.I. 13.) "KBC Ex." refers to exhibits to KBC Br. "Ex." refers to exhibits attached to this Memorandum.

[3] Claim 6 requires "orange oil" without any qualification as to quantity. Claim 9 requires "forty-five percent (45%) or less by volume of orange oil...." KBC's Ultra Healing product contains orange oil.    **REDACTED**

This Memorandum supports LP Matthews' Cross-Motion for Summary Judgment of Infringement Against the Kao Defendants, filed today, and *updates and replaces* LP Matthews' answering brief in opposition to the original motion (D.I. 19). LP Matthews' motion includes three other infringing products that the Kao defendants did not disclose until after they filed their original motion.

On June 29, 2006, KBC filed a second Motion for Summary Judgment of Non-Infringement. (D.I. 249.) LP Matthews will oppose that motion in accordance with the Court's Scheduling Order, which provides for opposing motions in accordance with L.R. 7.1.2. (*See* D.I. 39.)

## SUMMARY OF THE ARGUMENT

LP Matthews' U.S. Patent No. 5,063,062 ("the '062 patent") claims compositions that clean human skin and contain orange oil and other components. (Ex. 1 at 9:3-10:25.) The Kao defendants waived their defenses to LP Matthews' charges of infringement based on the other components, leaving only the question of whether the four accused Kao products (1) contain orange oil and (2) are compositions that clean human skin. Neither claim 6 nor claim 9 of the '062 patent requires a minimum percentage of orange oil, provided that orange oil is present at a level that has a cleaning effect.[4] (*Id.* at 10:1-6, 13-17.)

Before creating KBC, Kao Corporation told the U.S. Patent and Trademark Office ("PTO") that orange oil acts as a solvent (cleans) at 0.01%, and the PTO issued Kao Corporation a U.S. Patent in 1991. Thus, when LP Matthews sued the Kao defendants for patent infringement, the Kao defendants could not claim that orange oil does not clean at

---

[4] Claims 6 and 9 are independent claims of the '062 patent. LP Matthews does not assert that KBC's accused products infringe claim 1, which, unlike claims 6 and 9, calls for a minimum of 5% orange oil. (Ex. 1 (KBC Ex. A) at 9:6.)

levels as low as 0.01%. The Kao defendants' four accused products[5] indisputably contain more than 0.01% orange oil, literally meeting the orange oil claim element. Unable to argue that 0.01% orange oil is not an effective cleaning constituent, the Kao defendants try to bootstrap an embodiment described in the '062 patent specification into an imported claim limitation. Despite requesting a departure from the Federal Circuit's dictate that claims get their ordinary meaning, the Kao defendants give no legal, or even factual, justification. There is no reason to depart from the ordinary meaning of "orange oil" and "forty-five percent (45%) or less by volume orange oil."

With respect to the skin-cleaning composition limitation, the Kao defendants' corporate designee had to admit that the accused Curél Extreme Care *face wash* and *body wash* products are cleaning compositions used on human skin. That's how those products were marketed. While the accused Extreme Care lotion and Ultra Healing products are not marketed as "cleaners," they have cleaning effects – just like the '062 patented invention has moisturizing effects (*E.g.* Ex. 1 at 4:18-22, 6:62-66.) Indeed, KBC's original brief does <u>not</u> say that its Ultra Healing product does not have any cleaning effect. Rather, KBC's corporate designee testified that its "lotions" treat unwanted substances on the skin in order to facilitate removal of those substances. That is a cleaning effect within the meaning of the '062 patent claims.

The Kao defendants' accused Extreme Care and Ultra Healing products are cleaning compositions for use on human skin that contain orange oil within the meaning of claims 6 and 9 of the '062 patent. No reasonable juror could conclude otherwise. KBC's original

---

[5] After they filed their premature summary judgment motion, the Kao defendants admitted that three other products may infringe the asserted claims.

motion should be denied. And the Kao defendants waived any defense based on other claim elements. Since their accused products meet each element of claims 6 and 9 that is in issue, LP Matthews' cross-motion for summary judgment of infringement against both KBC and Kao Corporation should be granted.

## STATEMENT OF FACTS

### A.   The '062 Patent-In-Suit And This Case.

The PTO issued the '062 patent to Douglas Greenspan and Philip Low on November 5, 1991. LP Matthews owns the '062 patent and charges the Kao defendants with infringing that patent by making, selling, and offering for sale four accused products: Curél Extreme Care face wash, Curél Extreme Care body wash, Curél Extreme Care lotion, and Curél Ultra Healing.[6]

Claims 6 and 9 claim compositions that clean human skin and contain orange oil, an oat ingredient, and a moisturizer. (Ex. 1 at 9:3-10:25.) The Kao defendants do not assert defenses to LP Matthews' infringement charges based on the oat ingredient, moisturizer, or pH claim elements. (Ex. 1 at 11:14-16:4; Ex. 3; Ex. 8.)

A composition that cleans human skin treats an unwanted substance on the skin to facilitate removal of that substance.[7] Neither claim 6 nor claim 9 recites a minimum

---

[6] Prior to filing this suit, LP Matthews was aware of the Ultra Healing product, not the Extreme Care line that includes two specific cleaners. The Kao defendants did, but they still filed a premature motion for summary judgment on just the Ultra Healing Product, waxing poetic about it being a moisturizer and not a cleaner. (KBC Br. at 2.)

[7] LP Matthews' claim construction position is fully set forth in its Opening Claim Construction Brief. (D.I. 254.)

percentage of orange oil in the composition. (Ex. 1 at 10:1-6, 13-17.[8]) Asserted claim 9 requires that the accused composition have a pH in a specified range.

**B.   The Kao Defendants' Orange Oil Patent and the Limited Defendants' Expert.**

Kao Corporation told the United States Patent and Trademark Office that it expects orange oil to act as a solvent at 0.01% or higher, and the PTO granted Kao Corporation United States Patent No. 5,013,485 ("the '485 patent"), entitled "Liquid Detergent Composition Containing Terpene and Calcium Or Magnesium Salts." (Ex. 4 at cover page, 3:5-10.) Kao's patent teaches household cleaning compositions that contain three components, one of which is a "terpene-type hydrocarbon solvent..." (*Id.* at 2:6-8, 5:32-34, 6:27-33.) Orange oil is identified as one such component. (*Id.* at 2:59, 3:3, 5:Table 2, 6:30.)

In fact, the Kao inventors tested their household cleaning compositions with 0.5% orange oil content.[9] (*Id.* at 5:Table 2.) Those tests showed that the 0.5% orange oil composition cleaned at the highest rating in the patent, "O: 80% of soiling removed" and "O: Second wiping not necessary." (*Id.* at 5:Table 2 and 4:40-59.) From their testing, the Kao inventors apparently concluded that at 0.01%, the terpene-type hydrocarbon, *e.g.* orange oil, cleaned (that is, acted like a solvent): "If the amount is less than 0.01 wt % of the composition, action as a solvent cannot be expected." (*Id.* at 3:8-10.) This is a reasonable extrapolation. (Ex. 12 at 4-5; Ex. 13 at 159-61, 163-64.)

---

[8] In contrast to claims 6 and 9, claim 1 recites a minimum percentage: "between five percent (5%) and sixty percent (60%) orange oil...." (Ex. 1 at 9:4-10.) LP Matthews does not assert that KBC infringes claim 1.

[9] Orange oil contains d-limonene, as noted in Kao's patent. The content of that terpene varies between 80 and 95%. Orange oil also contains numerous other active but non-terpene chemical entities. Consequently, the amount of actual terpene in the orange oil test composition is *lower*.

As demonstrated by the defendants' expert's experiments in this litigation, the Kao patent's teachings that 0.01% orange oil cleans household surfaces translate to cleaning skin. Messrs. Greenspan and Low recognized that utility of orange oil to clean skin and obtained the '062 patent. Specifically, the Kao inventors tested their household cleaning compositions on glass tiles. (Ex. 4 at 4:44-48, see also 4:1, 3.) So did the defendants in this case. In an effort to prove invalidity, the Limited defendants served an "Expert Report of John C. Carson, M.S. Regarding Greenspan United States Patent No. 5,063,062." (Ex. 5.[10]) Mr. Carson performed experiments to evaluate the cleaning effect of compositions according to the '062 patent on glass tiles.[11] (Ex. 5 at Appendix D-2; Ex. 6 at 49:5-8.) He observed that the '062 invention cleaned unwanted substances on the tiles.[12] (Ex. 5 at Appendix D-2; *e.g.* Ex. 6 at 69:4-7.) Although Mr. Carson's experiments are unreliable and inadmissible for a host of reasons addressed by Dr. Rhodes and in LP Matthews' *Daubert* motion, his use of the same type of glass tile and "expert" assertion that the cleaning activity on glass tiles provides evidence of cleaning activity on human skin is dispositive.

C.   **KBC's Accused Products.**

Since 2002, the Kao defendants have been making, selling, and offering for sale their accused Curél Ultra Healing product. (KBC Br. at 2; KBC Ex. B at Story Decl. ¶ 3-4; Ex. 2 at 180:17-181:9   **REDACTED**

From 1999 until 2002, they made, sold, and offered for sale their accused Curél

---

[10] Mr. Carson's report is excerpted for brevity.

[11] Mr. Carson's opinions do not meet the Supreme Court's standards for relevance and reliability. LP Matthews moved to exclude them. (D.I. 232.)

[12] The inventor of the '062 patent also marketed their commercial embodiment, Healthy Kleaner, for this purpose. (Ex. 7.)

Extreme Care face wash, body wash, and lotion products in 2002. (Ex. 2 at 245-46; Ex. 9 at 19:17-21.)

KBC's Rule 30(b)(6) designee admitted that the Extreme Care face and body wash products are cleaning compositions for use on human skin:

**REDACTED**

(Ex. 2 at 18:22-19:11.) The ingredient lists for the Extreme Care facial and body wash products shows that they contain            and         by volume of orange oil. (Ex. 10.)
**REDACTED**

The Kao defendants' Extreme Care lotion and Ultra Healing products are also compositions that clean human skin and contain more than 0.01% orange oil – three times more. KBC admits that the Ultra Healing product contains **REDACTED** orange oil ("citrus aurantium dulcis (orange) oil") and the Extreme Care lotion had the same formulation as the Ultra Healing. (KBC Br. at 2; Ex. 2 at 21:10-18, 22:4-7.) The Ultra Healing product treats dry skin and other unwanted substances on the skin so that those substances are removed more easily by, for example, abrasion, wiping, rubbing or shearing. The Kao defendants' corporate designee testified that this product treats unwanted substances like **REDACTED**

- 7 -

**REDACTED**

(Ex. 2 at 77:20-79:4, 137:5-139:3.) Thus, he testified that this product **REDACTED** ' and to other cleaning and removing effects like **REDACTED** (*Id.*) Consistently, the Curél website states that the product functions **REDACTED** (D.I. 19 at Ex. A.) Similarly, the Limited defendants' corporate designee testified that such lotions could **REDACTED** (Ex. 11 at 521:12-522:12.)

## ARGUMENT

### A. Summary Judgment Standard.

Summary judgment is properly granted where no genuine issues of material fact exist. Fed. R. Civ. P. 56(c). Though the evidence must be viewed in the light most favorable to the nonmoving party, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Scripps Clinic & Research Fdn v. Genetech, Inc.*, 927 F.2d 1565, 1571 (Fed.Cir.1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Even so, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1184-85 (Fed.Cir.1993) (citing *Anderson*, 477 U.S. at 247-48 (emphasis original)).

### B. Infringement Is a Two-Part Analysis: Claim Construction and Accused Product Analysis.

Determining infringement requires a two-step analysis. First, the court interprets the claims of the patent as a matter of law. *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 372 (1996). Second, the fact finder compares the construed claims to the accused products to

determine whether each claim element exists in that product. *See Markman v. Westview Instr., Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).

### C. The Kao Defendants' Accused Products Literally Meet the Properly Construed Orange Oil Limitation of Claims 6 and 9 of the '062 Patent.

LP Matthews' Opening Claim Construction Brief (D.I. 254) fully sets forth its claim construction position for the cleaning composition and orange oil claim elements. The Kao defendants waived any defense to infringement based on other claim elements.

#### 1. The Kao defendants' Accused Products Contain Three Times the Orange Oil Required to Infringe.

Neither claim 6 nor claim 9 requires a minimum percentage of orange oil, so long as orange oil is present at a volume sufficient to have a cleaning effect.[13] According to Kao's submissions under oath to the PTO, orange oil acts as a solvent (cleans) at volumes of 0.01% or more.

KBC admits that all four accused products contain more than 0.01% orange oil, literally meeting the orange oil element of claims 6 and 9.

#### 2. The Kao Defendants' Accused Products Are Skin-Cleaning Compositions.

The asserted claims recite a composition that cleans human skin – *i.e.* treats unwanted substances on the skin to facilitate removal of those substances. KBC's Rule 30(b)(6)

---

[13] KBC ignored Federal Circuit precedent directing that claim interpretation "must begin and remain centered on the language of the claims themselves." *Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001), and "The general rule is that terms in the claim are to be given their ordinary and accustomed meaning." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63 (Fed. Cir 1999). *See also, e.g., Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1333 (Fed. Cir. 2003) ("ordinary meaning of the claim language"); *National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999) ("language of the claim"); *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998) ("actual words"); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("words of the claim"). KBC also ignored that the plain meaning of 45% or less range in claim 9 reaches to the endpoints of the range recited in the claim. *See Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1375 (Fed. Cir. 2002) ("We agree with the district court that the plain meaning of a boiling point range...is that the range limits the composition to that stated in the claim.").

designee admitted that the Extreme Care face and body wash products are cleaning compositions for use on human skin.

The 30(b)(6) designee also testified that the Extreme Care lotion and Ultra Healing products treat unwanted substances on the skin to facilitate removal of the substances. No reasonable juror could conclude from that testimony that the lotion products do not have a cleaning effect and are therefore cleaning compositions.

**D.     KBC's Original Motion Must Be Denied.**

In its original motion, KBC does not cite a single case on claim interpretation or infringement,[14] even though, or perhaps because, the entire paper depends upon incorporation of unstated claim limitations into the claims. Although KBC admits that its accused Ultra Healing product "includes orange oil" (KBC Br. at 2), KBC does not cite a single fact regarding "cleaning." Instead, KBC submits unsupported attorney argument that "[a]s is apparent, [the Ultra Healing product] is a moisturizing lotion and not a skin cleanser." (*Id.*) KBC admits that unsupported facts like that do not meet the Rule 56 standard. (*Id.* (quoting Fed. R. Civ. P. 56(c)).) KBC's original motion may be denied for this reason alone.

**E.     The Kao Defendants' Proposed Claim Interpretation Disregards Precedent and Mischaracterizes the Patent Specification.**

KBC, unable to dispute facts concerning its infringement, attempts to rewrite the asserted claims to require a minimum of 5% orange oil. There is no justification in law for KBC's proposed rewriting of the claims, and KBC certainly does not present any. KBC's original motion should be denied.

---

[14] KBC cited three cases for the following propositions: (1) the Rule 56 standard, (2) the applicability of that standard to patent cases, and (3) the requirement for a good faith basis to bring suit. (KBC Br. at 2-4.)

"[A] party wishing to alter the meaning of a clear claim term must overcome the presumption that the ordinary and accustomed meaning is the proper one, *demonstrating why such alteration is required.*" *K-2*, 191 F.3d at 1362-63 (emphasis added); *see also Leibel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("The claims of a patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope."). KBC cannot overcome this heavy presumption by pointing to the testing of the low percentage embodiment in the specification. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (accused infringer cannot overcome heavy presumption of ordinary meaning "simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification").

### 1. *KBC Improperly Attempts to Import a 5% Orange Oil Limitation from the Specification into Claims 6 and 9.*

In an effort to avoid infringement, KBC incorrectly alleges that the specification says that "the lower limit for effective cleaning for the orange oil is a concentration of 5%." (KBC Br. at 2.) KBC's argument not only ignores clear claim language that does not specify a minimum percentage but also disregards precedent and mischaracterizes the patent specification.

### 2. *Adopting KBC's 5% Orange Oil Limitation Would Violate Controlling Precedent.*

"If the claim language is clear on its face, then [the Court's] consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified...."[15] *Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (emphasis added) (reversing summary judgment of non-

---

[15] Intrinsic evidence includes the claims of the patent, the written description of the patent, and the prosecution history of the patent. "Within the intrinsic evidence...there is a hierarchy of analytical tools. The actual words of the claim are the controlling focus." *Digital Biometrics*, 149 F.3d at 1344.

infringement where district court improperly imported limitations from the specification); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1341 (Fed. Cir. 2001) (finding district court improperly imported limitation from patent figures that illustrated preferred embodiment). KBC does not argue that the claim language was not clear or that the applicants deviated from the clear claim language. Accordingly, the claims should not be narrowed as KBC requests.

KBC also does not address the Federal Circuit's doctrine of claim differentiation, further supporting an interpretation consistent with the clear claim language. "[W]hen a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003) (internal quotation omitted).[16] Claim 1 contains a minimum orange oil percentage (5%) that should not be imported into claims 6 and 9, neither of which specifies a minimum percentage. The doctrine of claim differentiation provides another reason for this Court to reject KBC's improper limitation.[17]

### 3. KBC Mischaracterizes the '062 Patent Specification, Which Supports Interpreting the Claims Consistent with their Clear Language.

Not only do claims 6 and 9 use clear language that does not specify a minimum orange oil percentage, but the excerpt of the specification cited by KBC *supports* applying

---

[16] The doctrine of claim differentiation properly applies to distinctions between two independent claims, though it is more commonly applied in the context of independent-dependent claim elements. Thus, "[i]t is improper to read the limitation of one [independent] claim into another...." *Grain Processing Corp. v. Am. Maize Prods. Co.*, 840 F.2d 902, 911 (Fed. Cir. 1998) (citation omitted).

[17] Moreover, that the applicants drafted claim 1 with a minimum percentage, but did not so draft claims 6 and 9, demonstrates that both the applicants and the Patent Examiner knew the difference between no minimum and five percent.

the plain meaning of that claim language. That excerpt demonstrates that an embodiment of the invention with even five percent of the orange oil component effectively cleans difficult to remove substances specifically contemplated by the invention.

KBC cited from this excerpt:

> From these tests, Applicants concluded that...a composition according to the present invention could have as little as 5% by volume of orange oil although it was preferable to have a cleaning composition having at least 25% by volume orange oil.

(KBC Ex. A at 6:56-61 (underscore new; portion cited at KBC Br. at 2).) KBC ignored the underscored reference to testing that Mssrs. Greenspan and Low performed. (Ex. 1 at 6:56; KBC Br. at 2.)

That testing included an *embodiment* of the invention with five percent orange oil that removed cosmetics from the skin. (Ex. 1 at 6:44-45.) Cosmetics are among the "examples of substances that are difficult to remove" that led to the conception of this invention. (*Id.* at 1:26.) Accordingly, the full excerpt suggests that a composition with less than five percent orange oil would clean, unlike the contrary mischaracterization KBC provides without the testing reference. This complete recitation also militates against KBC's limited interpretation of the claim language that ignores other uses, including (for example) softening, moisturizing, rejuvenation,[18] or the healing and prevention of dry skin. *Accord Q-Pharma*, 360 F.3d at 1301 (rejecting a similar argument by The Andrew Jergens Co. (now KBC) for importing an unstated minimum percentage limitation from the specification into the claims).

---

[18] Some of these aspects of the invention are described in the specification, though an applicant is not required to conceive of every use to which his invention may be put, as discussed in the next Section. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002) (citing 35 U.S.C. §271 (1994) and *Roberts v. Ryer*, 91 U.S. 150, 157 (1875)).

KBC's accused product heals dry skin, likely due in part to its removing (*e.g.*, cleaning) unwanted dead or dry skin. (*See* D.I. 19 at Exs. A, B.)

**F.     KBC's Brief Does Not Address Infringement under the Doctrine of Equivalents.**

KBC's original motion does not address infringement under the doctrine of equivalents, although infringement under the doctrine of equivalents is no less actionable than literal infringement and plainly must be considered in the context of summary judgment of non-infringement. Accordingly, this Court should deny KBC's original Motion for Partial Summary Judgment for that reason as well. The claims should not be interpreted to exclude coverage that would read on products that clean in addition to having other uses, regardless of which uses are primary (*e.g.*, a moisturizer with a cleaning effect would infringe the claims). KBC, though arguing for a "skin cleaning" limitation, did not argue for an interpretation of it. It never has. (See Ex. 3.)

## CONCLUSION

Claims 6 and 9 read on compositions that clean human skin and contain at least 0.01% orange oil (the volume at which the defendants expect solvency). The Kao defendants' accused products contain three times that level and clean human skin – as demonstrated by uncorroborated party admissions. The Kao defendants' proposed, but unsupported, 5% orange oil percentage limitation ignores Federal Circuit precedent and misreads the patent specification. So does their conceptual argument that, to infringe, an accused composition must do nothing but clean skin. In their original motion, KBC offers no legal or factual justification for imposing those limitations. Rather, they ignore contrary Supreme Court and Federal Circuit precedent. KBC's original motion for summary judgment remains premature, unsupported, and unjustified; it should be denied. Moreover, summary judgment of literal infringement of claims 6 and 9 of the '062 patent by Kao's

accused Curél Ultra Healing and Extreme Care lotion, body wash, and face wash products should be granted.

ASHBY & GEDDES

/s/ *John G. Day*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware  19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, DC  20006

Dated: July 6, 2006
171019.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2006, the attached **REDACTED PUBLIC VERSION OF LP MATTHEWS' OPENING BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AGAINST THE KAO DEFENDANTS AND UPDATED ANSWERING BRIEF IN OPPOSITION TO KBC'S MARCH 8, 2005 MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (D.I. 39)** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz, Esquire<br>Potter Anderson & Corroon, LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE 19801 | HAND DELIVERY |
| Arthur I. Neustadt, Esquire<br>Oblon, Spivak, McClelland, Maier & Neustadt, P.C.<br>1940 Duke Street<br>Alexandria, VA 22314 | VIA FEDERAL EXPRESS |
| Francis G.X. Pileggi, Esquire<br>Fox Rothschild LLP<br>Suite 1300<br>919 North Market Street<br>Wilmington, DE 19801 | HAND DELIVERY |
| John Ward, Esquire<br>Ward & Olivo<br>708 Third Avenue<br>New York, NY 10017 | VIA FEDERAL EXPRESS |

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon