**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LP MATTHEWS, L.L.C.,                )<br>                                                      )<br>        Plaintiff,                             )<br>                                                      )<br>v.                                                  )<br>                                                      )<br>BATH & BODY WORKS, INC.,      )<br>   and                                          )<br>LIMITED BRANDS, INC.,             )<br>   and                                          )<br>KAO BRANDS CO. (f/k/a THE ANDREW )<br>JERGENS COMPANY),              )<br>   and                                          )<br>KAO CORPORATION,                 )<br>                                                      )<br>        Defendants.                        ) | C.A. No. 04-1507 (SLR)<br>JURY TRIAL DEMANDED |

**THE LIMITED DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR *DAUBERT*
MOTION TO EXCLUDE EXPERT TESTIMONY OF CHRISTOPHER T. RHODES**

FOX ROTHSCHILD LLP
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Phone: (302) 655-3667
Fax: (302) 656-8920

*Attorneys for Defendants Bath & Body Works, Inc.
and Limited Brands, Inc.*

OF COUNSEL:

WARD & OLIVO
John F. Ward
David M. Hill
Michael J. Zinna
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................1

    I.   Rhodes' Testimony Is Speculative And Not Based On Good Grounds.............1

        A.   Rhodes' testimony regarding the percentage of orange oil contradicts the clear teachings of the '062 patent and ignores the testimony of an inventor..............................1

        B.   Nothing suggests that experts in the field rely on patents .......................4

        C.   The '062 patent teaches that the pH range should not be expanded as Rhodes suggests............................................6

        D.   Rhodes relies on statements not in the patent .........................................6

CONCLUSION.........................................................................................................................8

**TABLE OF AUTHORITIES**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................................ 1, 7

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ........................................................... 7

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ............................................................... 7

*Hoffman-LaRoche, Inc. v. Promega Corp.*, 323 F.3d 1354 (Fed. Cir. 2003) ..................... 4

*In re Whiton*, 420 F.2d 1082 (CCPA 1970) ......................................................................... 6

*JMJ Enterprises, Inc. v. Via Veneto Italia Ice, Inc.*, 1998 U.S. Dist. LEXIS 5098 (E.D. Pa. April 15, 1998) *aff'd* 178 F.3d 1279 (3d Cir. 1999) .................................................. 7

*Miller v. United States*, 422 F.Supp.2d 441 (D. Del. 2006) ................................................ 4

*Steyck v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002) ............................... 7

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    308 F.3d 1167 (Fed. Cir. 2002) ................................................................................... 6

**Statutes**

35 U.S.C. § 282 ........................................................................................................................ 4

**Rules**

Fed. R. Evid. 702 ................................................................................................................ 1, 4

**Other Authorities**

*Manual of Patent Examining Procedures* (M.P.E.P.), 608.01(p)(II) ................................... 4

## INTRODUCTION

The Limited Defendants file this Reply Brief in support of its Motion to Exclude Expert Testimony of Christopher T. Rhodes (D.I. 230) and in response to LP Matthews, L.L.C.'s ("LPM" or "plaintiff") Answering Memorandum in Opposition to this motion (D.I. 264). The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 make clear that expert testimony must be based on reliable information that will assist the trier of fact. Because plaintiff's expert, Christopher T. Rhodes ("Rhodes"), uses unreliable information and methods in arriving at his opinions and conclusions, which also plainly contradict the intrinsic evidence as well as the testimony of the inventors, his proffered opinions are speculative, not based on good grounds, and should be excluded.

## ARGUMENT

### I.  Rhodes' Testimony Is Speculative And Not Based On Good Grounds

A.  Rhodes' testimony regarding the percentage of
    orange oil contradicts the clear teachings of the
    '062 patent and ignores the testimony of an inventor

It is clear from the intrinsic record and testimony of the inventors that 5% was determined to be the minimum quantity of orange oil for sufficient cleaning effect in the disclosed cleaning composition. (*See* D.I. 230, Ex. 1, '062 patent, Col. 6, lns. 56-61; Ex. 9, Low Deposition, 87:13-14). Rhodes' testimony regarding the percentage of orange oil contradicts these teachings of the '062 patent and plainly ignores the testimony of an inventor (presumably because they are devastating to LPM's case).

Rhodes conveniently ignores the inventor's testimony that testing of orange oil

1

below 5% was performed, but found to not clean sufficiently.  During his deposition,

Rhodes speculated that the '062 patent supports less than 5% orange oil because:

> "[a]pplicants concluded that with respect to cosmetics, a composition according to the present invention could have as little as 5 percent [by] volume.  They can only state that because that's all they've tested.  Since they haven't tested below 5 percent, they don't make a statement about it.  So they are being very cautious, they are being very conservative and I'm not taking issue with that statement." (Ex. 8, Rhodes Deposition, 164:15 - 165:1).

This plainly ignores one of the two co-inventors' clear testimony.  Inventor Phillip Low testified that in fact what happened was just the opposite.  Low confirmed that "[w]e went almost down to nothing [(i.e., zero orange oil)] and then back up to see where the effect started in." (Ex. 9, Low Deposition, 87:13-14).  The only way Rhodes can cling to his "as low as 0.01 position" is by deliberately ignoring this clear testimony of the inventor.

Rhodes' speculation and extrapolation (or rather fabrication) of the teachings of the '062 patent is similarly flawed.  The '062 patent describes undistilled orange oil as having a cleaning effect at concentrations "as little as 5%" of the composition. (*See*, *e.g.*, D.I. 230, Ex. 1, '062 patent, Col. 6, lns. 56-61).  Nowhere does the '062 patent mention or any suggest to one of skill in the art to that orange oil would clean at lower concentrations – and certainly not at concentrations much less that 1%.  Rather, the '062 patent plainly states that a sample having 5% orange oil "could not effectively clean" the substances tested. (D.I. 230, Ex. 1, Col. 6, lns. 41-45).  Moreover, the record plainly demonstrates that the inventors performed testing below 5%, but claimed the range 5-60% because that is the percent concentration where orange oil showed cleaning. (*See* Ex. 9, Low Deposition, 87:13-14).  Had Rhodes conducted a minimal investigation of the

2

teachings of the '062 patent, the testing reported therein, or even contacted the inventors to confirm his beliefs, he would have learned that the inventors did in fact perform testing below 5% orange oil – indeed, almost down to nothing – without achieving effective cleaning. (*See* Ex. 9, Low Deposition, 85:4-87:14).

Despite all of this, Rhodes relied exclusively on an unrelated patent – U.S. Patent No. 5,013,485 (Ex. 7; "the '485 patent") as the basis for his conclusion that orange oil cleans at 0.01% (*see* D.I. 230, Ex. 2 and Ex. 3, Rhodes Reports, p. 4) – a patent that was provided to him through LPM's counsel (*see* D.I. 230, Ex. 6, 158-159), Briefly, the '485 patent uses d-limonene/orange oil as only *one* of three cleaning agents in a liquid detergent composition. (Ex. 7, Col. 2, lns. 1-10, Col. 2, ln. 44 – Col. 3, ln. 4). Importantly, the '485 patent does not disclose (and Rhodes could not point to any disclosure) using orange oil apart from these other two cleaning agents to clean household surfaces, nor does it support Rhodes' conclusion that orange oil alone will have any cleaning effect, much less the effect Rhodes attributes to orange oil at concentrations as low as 0.01%. (*See* D.I. 230, Ex. 2 and Ex. 3, Rhodes Reports, p. 4). To the contrary, the Limited Defendants' technical expert, John Carson, tested the cleaning effect of orange oil and found that it does not have an effect at concentrations below 5%, let alone as low as 0.01% as Rhodes' speculates. (*See* D.I. 236, Ex. B, Carson Report, App. D).

Rhodes' proffered testimony regarding the cleaning effect of orange oil is speculative, not based on good grounds, and conflicts with the existing data in the record. Such testimony should be excluded.

B.     Nothing suggests that experts in the field rely on patents

Under Rule 702, an expert "must testify that the foundation of his opinion comes from a source 'reasonably relied upon' by experts in his field." *See Miller v. United States*, 422 F.Supp.2d 441, 444 (D. Del. 2006). Without this the testimony has no reliable foundation and should be excluded. *See Id.*

Irrespective of the specific teachings of the '485 patent, Rhodes does not provide any evidence that other scientists use patents as a basis for opinions, or further, that scientists manipulate what the patent does not state. In fact, it is quite the opposite. Patents may be prophetic, and there are no requirements that reported "tests" actually be performed. *See* MPEP 608.01(p)(II) ("Simulated or predicted test results and prophetical examples (paper examples) are permitted in patent applications. Working examples correspond to work actually performed and may describe tests which have actually been conducted and results that were achieved."). Indeed, nothing in the *ex parte* patent prosecution process ensures that patents are reliable "scientific" evidence – because they are frequently just plain wrong. *See, e.g., Hoffman-LaRoche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1364-1368 (Fed. Cir. 2003).

LPM's reliance on 35 U.S.C. § 282's presumption of validity is misplaced. The presumption of validity under § 282 has nothing to do with whether scientists in the field of formulation chemistry consider a patent a reliable scientific resource that is reasonably relied upon by experts in this field.

Rhodes' proffered testimony that relies on the '485 patent regarding the cleaning effect of orange oil is unreliable and not from a source "reasonably relied upon" by experts in his field. Such testimony should be excluded.

4

      C.      The '062 patent teaches that the pH range
               should not be expanded as Rhodes suggests

Rhodes' proffered testimony expanding the pH range beyond that taught by the '062 patent is speculative and not based on good grounds. Such testimony directly contradicts the teachings of the '062 patent. The Abstract of the '062 patent states that "[t]he composition is constituted to have a pH of between 4.5 and 6.0." (D.I. 230, Ex. 1, Abstract). The '062 patent plainly demonstrates that samples tested with pH's outside the 4.5 to 6.0 pH range just do not work. (D.I. 230, Ex. 1, Col. 5, lns. 53-63 and Col. 6, lns. 15-24). In the specification, the inventors reported that they "adjusted the amount of orange oil (ignoring whether the emulsion broke) to determine an effective pH range wherein the composition felt comfortable on the human hands." (D.I. 230, Ex. 1, Col. 5, lns. 31-35). To do so, the inventors tested compositions with a pH of 6.0, 7.0, 8.0, and 9.0, respectively. (D.I. 230, Ex. 1, Col. 5, lns. 35-61). The results of these evaluations were clear: "These empirical observations lead Applicants to conclude that an acidity of at least pH 6.0 is desirable." (D.I. 230, Ex. 1, Col. 5, lns. 60-63).

Similarly, to determine the lower endpoint of the range, the inventors evaluated compositions with a pH of 2.5, 3.0, 3.5, and 4.0. (D.I. 230, Ex. 1, Col. 5, ln. 64-Col. 6, ln. 27). These compositions "felt too astringent on the hands even after limited use." (D.I. 230, Ex. 1, Col. 6, lns. 19-20). In other words, based on these tests, a composition with a pH of about 4.0 or lower was also unacceptable. In this manner, Applicants zeroed in on the range that was just right: "Applicants accordingly concluded that it was desirable that the emulsified composition have a pH that is approximately 4.5." (D.I. 230, Ex. 1, Col. 6, lns. 22-23).

Moreover, the preferred embodiments of the claimed invention, Samples IV and

5

V, had pH values of 5.0 and 5.5, respectively. (D.I. 230, Ex. 1, Col. 4, lns. 62-65). In establishing the range of "4.5 to 6.0, inclusively," the inventors already expanded the pH range in the claims by the one half of a pH point in either direction suggested by Rhodes when it established the range at "4.5 to 6.0, inclusively." (D.I. 230, Ex. 1, Col. 6, lns. 24-27). Rhodes' additional expansion of the pH range is a plain contradistinction of the teachings of the '062 patent.

Additionally, "inclusive" or "inclusively" has traditionally been added after a recited range to make it clear that the endpoints should be included. *See, eg., Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002)("Groups 3a to 7a, inclusive, and 3b through 7b, inclusive, of the Periodic Table of Elements"); *In re Whiton*, 420 F.2d 1082 (CCPA 1970)("n is an integer from 4 to 8 inclusively and R is an alkylene group having from 4 to 7 carbon atoms, inclusively").

Rhodes proffered testimony ignores all of these plain teachings of the '062 patent. As a result, Rhodes' proffered testimony regarding the pH range can only be seen as speculative and unreliable, and should be excluded.

### D.    Rhodes relies on statements not in the patent

Throughout Rhodes' testimony, he relies on conjecture and speculation. Such unsupported inferences lack any reasonable scientific or common sense basis on fact, and should be excluded. For example, Rhodes, in discussing his basis for expanding the pH range by a half pH point, states:

> *Although they don't actually say so in the patent*, I take all their values, in my mind I see plus/minus half a pH point. (Ex. 6, Rhodes Deposition, 358:14-16). (Emphasis added).

Such analysis is unreliable and speculative – it is as if Rhodes pulled the $\pm 0.5$ pH points

6

out of thin air.  The ± 0.5 pH points is certainly not taught in the '062 patent and "expert testimony that ignores existing data and is based on speculation is inadmissible."  *JMJ Enterprises, Inc. v. Via Veneto Italia Ice, Inc.*, 1998 U.S. Dist. LEXIS 5098, *16 (E.D. Pa. April 15, 1998) *aff'd* 178 F.3d 1279 (3d Cir. 1999).  The Supreme Court has held that while "[t]rained experts commonly extrapolate from existing data … nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."  *Steyck v.  Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) (*quoting Elcock v. Kmart Corp.*, 233 F.3d 734, 756 (3d Cir. 2000)).

      This is precisely the case here and Rhodes' proffered testimony should be excluded.  It not only ignores the explicit teachings of the '062 patent and is purely speculative, but the analytical gap between the data and the opinion proffered is simply too great.  These types of conclusory opinions, even if offered by a recognized expert on the topic of the opinion, are speculative, not based on good grounds, and are insufficient to satisfy the requirements of *Daubert* and should be excluded.

## **CONCLUSION**

For the reasons enumerated above, the Limited Defendants respectfully request this court exclude Rhodes testimony as it relates to orange oil cleaning at less than 5%, and testimony that the pH range includes pH measurements outside the claimed pH range of Claim 6.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated: July 13, 2006                By:   /s/ Sheldon K. Rennie
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
FOX ROTHSCHILD LLP
Suite 1300
919 North Market Street
Wilmington, Delaware  19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com
E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath and Body Works, Inc.
Limited Brands, Inc.