# **EXHIBIT 9**

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LP MATTHEWS, LLC,              )
        Plaintiff,             )
        v.                     )
BATH & BODY WORKS, INC.;       )   CASE NO.:
LIMITED BRANDS, INC.;          )   04-CV-01507 SLR
KAO BRANDS CO. (f/k/a THE      )
ANDREW JERGENS COMPANY);       )
and KAO CORPORATION,           )
        Defendants.            )

- - - - - - - - - - -

DEPOSITION OF PHILLIP LOW

Saturday, January 14, 2006

Reported by:

Craig L. Knowles, CM

**Page 2**

```
 1            Boulder, Colorado
 2            Saturday, January 14, 2006
 3
 4       Deposition of PHILLIP LOW, a witness
 5  herein, called for examination by counsel for
 6  Defendants in the above-entitled matter, pursuant
 7  to notice and the Federal Rules of Civil Procedure,
 8  the witness being previously duly sworn by CRAIG
 9  KNOWLES, a Notary Public in and for the State of
10  Colorado, taken at the Boulder Marriott, Telluride
11  Room, 2660 Canyon Boulevard, Boulder, Colorado, at
12  9:23 a.m., on Saturday, January 14, 2006, and the
13  proceedings being taken down in Stenotype by CRAIG
14  KNOWLES and transcribed under his direction.
```

**Page 3**

```
 1            APPEARANCES
 2
 3  For Plaintiff:
 4       Robert A. Auchter, Esquire
 5       Jason R. Buratti, Esquire
 6       ROBINS, KAPLAN, MILLER & CIRESI, LLP
 7       Suite 1200
 8       1801 K Street, Northwest
 9       Washington, D.C. 20006-1307
10       202-775-0725
11
12  For Defendants KAO Corp. and KAO Brands:
13       Stephen G. Baxter, Ph.D., Esquire
14       Richard L. Chinn, Ph.D., Esquire
15       OBLON, SPIVAK, McCLELLAND, MAIER &
16       NEUSTADT, P.C.
17       1940 Duke Street
18       Alexandria, Virginia 22314
19       703-413-3000
```

**Page 4**

```
 1            APPEARANCES (Cont'd)
 2
 3  For Defendants Bath & Body Works and Limited
 4  Brands:
 5       John F. Ward, Esquire
 6       WARD & OLIVO
 7       708 Third Avenue
 8       New York, New York 10017
 9       212-697-6262
```

**Page 5**

```
 1            CONTENTS
 2  THE WITNESS:                        PAGE NO.
 3  PHILLIP LOW
 4       By Mr. Ward.............................. 6
 5       By Mr. Baxter........................... 92
 6
 7            E-X-H-I-B-I-T-S
 8  LOW EXHIBIT NO.                      PAGE NO.
 9   1   Copy of Assignment, LPM 000012/14      38
10   2   One-page handwritten document PL 0002  39
11   3   Agreement PL 0001                      44
12   4   Promissory Note PL 0003/4              47
13   5   Copy of envelope from Mr. Brady PL 00005 48
14   6   Letter, Low to Ingram, 6/16/93         52
15   7   Letter, Greenspan to Low, 6/26/93,
16       PL 0007                                54
17   8   Envelope, Greenspan to Low, 6/21/93    57
18   9   Undated Letter, Greenspan to Low PL 0009 75
19  10   Copy of check stub PL 0010             78
20  11   Three-page document, 11/17/89 DG6001/03 109
21  12   Two-page document DG3271/72           113
```

Phillip Low                                                      January 14, 2006
Bloulder, CO

**Page 6**

PROCEEDINGS:
- - -
Whereupon,
    PHILLIP LOW,
called for examination by counsel for Defendants and, having been previously duly sworn to the truth, the whole truth and nothing but the truth, was examined and testified further upon his oath as follows:
- - -
EXAMINATION BY COUNSEL FOR DEFENDANT BATH & BODY WOKS and LIMITED BRANDS
BY MR. WARD:

Q. Good morning, Mr. Low.
A. Good morning.
Q. My name is John Ward, I'm with Ward & Olivo in New York, and I represent Limited Brands and Bath3 & Body Works in this action.
    Have you ever been deposed before?
A. Yes.
Q. Would you tell me what were the circumstances of that?

**Page 7**

A. It was a building lawsuit.
Q. Were you the plaintiff?
A. We were.
Q. How did it turn out?
A. We won.
Q. Good. Just so you know, you know, I'm going to ask a series of questions, you'll answer. You can't nod or make sounds that the court reporter can't record for us.
    And any time you feel like you'd like to take a break, say the word.
A. Okay.
Q. What do you do for a living?
A. I have a home improvement and construction company.
Q. How long have you had that?
A. Ten years.
Q. What did you do before that?
A. I was a subcontract window installer.
Q. Do you recall how long you were doing that for?
A. Yeah, I have been doing that since 1979.

**Page 8**

Q. Okay. Before that, school?
A. Before that I was in school.
Q. Did you graduate from high school?
A. I did.
Q. Any college?
A. None.
Q. Any technical training?
A. Nope.
Q. It's my understanding that you are the man who had the idea to use orange in a cleaning composition, is that true?
A. That's true.
Q. Can you tell me how that came about, how'd you get that idea?
A. I was installing windows, and when you install windows, you have polyurethane type sealants that you use, two-part. And you get it all over your hands.
Q. Tell me, what --
A. Nothing really cleans it off.
Q. Take me through the process. So you are installing a window.

**Page 9**

A. Right.
Q. You've got a frame. Run us through it.
A. Well, you have a window opening. You take out the wood sashes. It depends how the window is measured, how the new system is going to go in. You are from the east, right?
Q. Yes. You can tell, huh?
A. You have a lot of wood windows, a lot of historic looking products, right.
Q. Yes, indeed.
A. Okay. What we will do is, we will take out the wooden sashes, leave the buck frame in. Then what we do is, we have a system that is historically replicated to cap over all of the old wood on the outside. And it's a new window frame that goes in on the inside and has new sashes and everything else. Then we seal up the outside, sort of a panning system out there. We seal up the panning system to make it weather tight. We put trims on the inside and seal that up to make it weather tight.
Q. All right.

Phillip Low                                        January 14, 2006
Bloulder, CO

**82**

1  like to take a quick look at with you, all right?
2       On Column 1, if you flip over, it's the
3  second page. Do you see at the top there are
4  column numbers?
5    A. Okay.
6    Q. Running down the center there are line
7  numbers. So I will try to direct you to the
8  general area, all right?
9    A. All right.
10   Q. Down at line 50 there is a paragraph that
11 begins, Orange oil. Do you see that?
12   A. Yes.
13   Q. The first sentence says, "Orange oil as a
14 natural product derived from the rind of oranges
15 has been recognized in the past to have some
16 cleaning capabilities."
17      Any idea what that is referring to?
18   A. No.
19   Q. And then the last sentence of that same
20 paragraph, it reads, "Rather, efforts in the past
21 have been directed to the combination of orange oil
22 with other cleaning solvents to produce floor

**83**

1  cleaners, glass cleaners and the like."
2    A. Where are you at?
3    Q. Sorry about that. 61. The last sentence
4  in that same paragraph.
5    A. Rather. Okay.
6    Q. Just read that.
7       (Witness examines document.)
8    A. Okay.
9       BY MR. WARD:
10   Q. Any idea what that is referring to?
11   A. No.
12   Q. Flip the page. Let's go to Column 3, okay?
13 Take a look at, it's line 14. There is a sentence
14 that begins "A test group." Do you see that?
15   A. Yes.
16   Q. It says, "A test group of ten persons, male
17 and female, were selected to subjectively evaluate
18 the results of these samples."
19      Do you remember the test group?
20   A. Well, that would have been my -- I don't
21 know all ten. I just know that there are some that
22 I had doing it. Rob Kelly, a guy that worked for

**84**

1  me. My mother-in-law, my wife, my brother-in-law.
2    Q. Were you aware of any other people involved
3  in these tests?
4    A. I know Doug had some people, but I don't
5  know who they were.
6    Q. You see right below that there is sample 1,
7  sample 2, sample 3. Do you see those?
8    A. Yes.
9    Q. Did you have any involvement in preparing
10 those samples?
11      MR. BURATTI: Objection. Form. Vague.
12   A. Yes, I had some involvement in preparing
13 these samples.
14      BY MR. WARD:
15   Q. All right. What was it?
16   A. You know, I was the cheerleader, so to
17 speak.
18   Q. There's nothing wrong with that?
19   A. Come on, Doug, let's try another one.
20   Q. Was it you or Doug who actually made these
21 samples?
22      MR. BURATTI: Objection to form.

**85**

1    A. Doug had the chemistry. It was Doug,
2  primarily.
3       BY MR. WARD:
4    Q. Flip the page one more time. Let's go to
5  Column 6, all right? Go down to line 56. There is
6  a paragraph that starts there, it starts with "From
7  these tests." Do you see that?
8    A. Yes.
9    Q. All right. Why don't you read it into the
10 record and then you'll have gotten up to speed.
11   A. "From these tests applicants concluded that
12 with respect to cosmetics composition according to
13 the present invention could have as little as five
14 percent by volume of orange oil, although it was
15 preferable to have a cleaning composition having at
16 least 25 percent by volume of orange oil."
17      MR. BURATTI: And you are entitled to read
18 more of that document if you would like to because
19 of the statement from the test --
20   A. To determine whether the moisturizers had
21 any effect on the composition --
22      MR. BURATTI: Actually -- you can read as

Page 86

1   much as you want.
2       THE WITNESS: I can read as much as I want?
3       MR. BURATTI: The paragraph refers to tests
4   in the patent, I just wanted to alert you, you are
5   allowed to read more to get up to speed.
6       THE WITNESS: Okay.
7       MR. BURATTI: You don't have to. You can
8   hear the question first.
9       THE WITNESS: Roll with the question.
10      BY MR. WARD:
11  Q.  Do you remember how you came up with that
12  five percent figure?
13      MR. BURATTI: Object to the form.
14  A.  Well, as I said earlier, we took from
15  probably 50 percent orange oil down to maybe even
16  one percent and found -- found it worked for what
17  we needed it to work.
18      And with respect to cosmetics, it would
19  have had to do with the burning of my wife's
20  eyelids.
21      BY MR. WARD:
22  Q.  That is when the orange oil --

Page 87

1   A.  There was too much.
2   Q.  There was too much orange oil in that
3   initial sample?
4   A.  Right.
5       MR. BURATTI: Objection. Vague.
6       BY MR. WARD:
7   Q.  Do you remember was that a 50 percent
8   sample?
9   A.  I don't believe that was 50, no. But I
10  can't -- I don't remember what percentage that was.
11  Q.  You said you went down all the way to
12  one percent?
13  A.  We went almost down to nothing and then
14  back up to see where the effect started in.
15  Q.  Was it your conclusion that the effects
16  started in at five percent?
17      MR. BURATTI: Objection misleading.
18  A.  As far as any conclusions, I didn't come to
19  any conclusions, all I was after was my specific
20  target was for caulking. Me personally.
21      BY MR. WARD:
22  Q.  Sure. Do you remember what happened at the

Page 88

1   one percent level?
2   A.  I don't remember.
3       MR. BURATTI: Objection.
4       THE WITNESS: Sorry. I'll slow down for
5   you.
6       MR. BURATTI: Objection to form.
7       MR. WARD: The reporter will catch up with
8   us. Don't worry.
9       MR. AUCHTER: It's not fair to the
10  reporter.
11      BY MR. WARD:
12  Q.  Let's go to Column 9. Just a quick
13  question. The last page. Do you see line 4,
14  Claim 1 starts on line 4.
15  A.  Okay.
16  Q.  Do you want to read that to yourself?
17  A.  Okay.
18  Q.  Claim 1 discloses a composition that has
19  three ingredients.
20      MR. BURATTI: Objection. Sorry.
21      BY MR. WARD:
22  Q.  The first ingredient is identified as

Page 89

1   between 5 and 60 percent by volume orange oil. The
2   second ingredient is a pharmaceutically acceptable
3   moisturizer and the third ingredient is an
4   emulsifying agent. Do you see that?
5   A.  Well, you had me read section 4. That
6   doesn't say that at all.
7   Q.  I said starting with line 4.
8   A.  That is number 4, isn't it? Oh, sorry.
9   Q.  That's okay.
10      (Witness examines document.)
11  A.  It's pretty much mumbo jumbo to me. What
12  do you want to know?
13      BY MR. WARD:
14  Q.  I want to know for each of these
15  ingredients, we will go through them one at a time,
16  whether it was your idea, Greenspan's idea or a
17  joint idea. Okay?
18      The first idea is five percent to
19  60 percent orange oil?
20      MR. BURATTI: Objection. Calls for a legal
21  conclusion.
22  A.  That would have been between the two of us.

118

1  A.  I can't be certain that the events leading
2  to this letter would have preempted my decision to
3  walk away.
4      BY MR. BAXTER:
5  Q.  Maybe I misphrased my question.  I'm not
6  asking you if the things in this letter were --
7  would have preempted your decision to walk away,
8  I'm saying especially these items little 3 and
9  little 4, the preemptive rights and the voting
10 rights, were they part of your decision to walk
11 away?
12     MR. BURATTI:  Same objections.
13 A.  I can't be certain.
14     MR. BAXTER:  Okay.  Could we just take a
15 couple-minute break?
16     MR. AUCHTER:  Absolutely.
17     (Recess.)
18     MR. BAXTER:  Mr. Low, I have no further
19 questions at this time.  Thank you.
20     THE WITNESS:  Oh, great.
21     MR. BURATTI:  Can we take a couple-minute
22 break?

119

1      MR. BAXTER:  Yes.  Go ahead.  Take your
2  break.
3      (Recess.)
4      (Continued without omission on page 126 of
5  the Business Confidential transcript.)
6  (Whereupon, at 12:20 p.m., the taking of the
7  instant deposition ceased.)
8
9      _____
10         PHILLIP LOW
11
12 SUBSCRIBED AND SWORN to before me this _____ day
13 of _____, 2006.
14
15     _____
16         Notary Public
17 My Commission Expires:_____

120

1       REPORTER'S CERTIFICATE
2      I, Craig L. Knowles, a Notary Public
3  within and for the State of Colorado, do hereby
4  certify that previous to the commencement of the
5  examination, the witness was duly sworn by me to
6  testify the truth.
7      I further certify that this transcript
8  was taken in shorthand by me at the time and place
9  herein set forth and was thereafter reduced to
10 typewritten form and that the foregoing constitutes
11 a true and correct transcript of the proceedings
12 had.
13     I further certify that I am not related
14 to, employed by, nor of counsel for any of the
15 parties or attorneys herein, nor otherwise
16 interested in the result of the within action.
17     In witness whereof, I have affixed my
18 signature this 20th day of January, 2006
19
20         Craig L. Knowles, CM
21         Notary Public.
22 My Commission Expires June 25, 2006