IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LP MATTHEWS, L.L.C.,

Plaintiff,

v.

BATH & BODY WORKS, INC.; LIMITED BRANDS, INC.; KAO BRANDS CO. (f/k/a THE ANDREW JERGENS COMPANY); and KAO CORPORATION,

Defendants.

C.A. No. 04-1507-SLR

**LP MATTHEWS' OPPOSITION TO KBC'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED UPON A SUBSEQUENT BOARD DECISION**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, DC 20006

Dated: July 14, 2006

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ..... 1

SUMMARY OF THE ARGUMENT ..... 2

STATEMENT OF FACTS ..... 3

A. During Prosecution of the '062 Patent-In-Suit, the Inventors Overcame the Patent Office's Concerns About Obviousness of Claims 6 And 9 ..... 3

B. The Continuation-In-Part Application Process Resulted in a Deficient *Sua Sponte* Board Decision on the Patentability of Claim 25 ..... 3

BOARD DECISION ..... 4

ARGUMENT ..... 5

A. Summary Judgment is Improper Where Genuine Issues of Material Fact Exist ..... 5

B. The Board's Opinion Violates Federal Circuit Precedent And Omits Essential Factors of an Obviousness Analysis – Rendering It Inadmissible and Leaving Open Issues of Fact that Bear on the Instant Motion ..... 6

C. The Board's Decision on Patentability Was Based on a Lower Standard of Proof Than Is Required to Declare a Granted Patent Invalid ..... 7

D. The Patent Office Considered an Obviousness Rejection of Claims 6 And 9 During Prosecution of the '062 Patent – Over the Same Prior Art And With a More Thorough Examination ..... 7

E. The Board's Analysis of the CIP Application Claim 25 Is Not Relevant to the Validity of '062 Patent Claims 6 And 9 Because Different Inventions Are Related ..... 8

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apotex USA, Inc. v. Merck & Co.*,
254 F.3d 1031, 1036 (Fed. Cir. 2001)................ 1, 7

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F3.d 1340, 1352 (Fed. Cir. 1998)................ 6

*Dann v. Johnston*
425 U.S. 219, 226 (1986)................ 6

*In re Dembiczak*,
175 F.3d 994, 999-1000 (Fed. Cir. 1999) ................ 6

*Graham v. John Deere Co.*,
383 U.S. 1, 17-18 (1961) ................ 5

*In re Oetiker*,
977 F.2d 1443, 1445 (Fed. Cir. 1992)................ 7

*Paragon Podiatry Lab. v. KLM Lab.*,
984 F.2d 1182, 1184-85 (Fed. Cir. 1993) ................ 6

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*
411 F.3d 1332, 1337 (Fed. Cir. 2005)................ 8

*In re Rouffet*
149 F3.d 1350, 1359 (Fed. Cir. 1998)................ 6

*Williams v. Borough of West Chester*,
891 F.2d 458, 471 (3d Cir. 1989)................ 2

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. filed a Complaint for patent infringement against defendants Kao Brands Company (formerly known as The Andrew Jergens Company) ("KBC"), Kao Corporation, Limited Brands, Inc., and Bath and Body Works, Inc. (D.I. 1.) LP Matthews amended its Complaint on February 2, 2005. (D.I. 5, 8.) This Court entered a Scheduling Order on June 9, 2005. (D.I. 39.) Fact discovery closed on January 27, 2006. (D.I. 39.) Expert discovery closed on May 12, 2006. (D.I. 39.) On June 15, 2006, the parties filed a Joint Claim Construction Statement. (D.I. 228.)

On June 29, 2006, the parties filed Opening Claim Construction Briefs, (D.I. 244, 254, 255) and KBC submitted the instant Motion for Summary Judgment that the '062 patent is invalid, "based upon a subsequent Board decision." (D.I. 245.) The "subsequent Board decision" was written by the Patent Office's Board of Patent Appeals and Interferences ("the Board") and says an invention incorporated in a continuation-in-part (CIP) application (now abandoned) was unpatentable due to obviousness. (D.I. 252 Ex. 1.) The CIP was parented from the '062 patent application, but issued some six years "subsequent" to the granting of the '062 patent itself. (*Id.*)

This Memorandum opposes KBC's motion for Summary Judgment of invalidity, and is submitted in accordance with the Court's Scheduling Order. (*See* D.I. 39.) The Board's opinion hardly forms the "clear and convincing" evidence required to overcome the presumption that the '062 patent is valid. *See, e.g., Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001).

## SUMMARY OF THE ARGUMENT

KBC's sole argument is based upon a Patent Office Board[1] opinion that was written six years "subsequent" to the granting of the '062 patent, and that does not pronounce upon any claim of the '062 patent. Rather than remove fact issues, the opinion highlights fact issues. It is a product of an administrative procedure replete with legal and factual errors evaluated under a different burden of proof concerning a different patent application examined by a different examiner for different claims under different guidelines and regulations. The Board's opinion is not admissible, cannot form the basis of a summary judgment motion, and does not remove any genuine issues of material fact from this case. It does not justify summary judgment.

First, the Board made legal errors in its analysis of the subsequent application by failing to define a person of ordinary skill in the art, and not addressing the motivation or suggestion to combine prior art references required for a finding of obviousness. Second, for this reason, it also is inadmissible as evidence for summary judgment. *See Williams v. Borough of West Chester,* 891 F.2d 458, 471 (3d Cir. 1989) ("Only evidence admissible at trial may be used to test a summary judgment motion. Thus evidence whose foundation is deficient must be excluded from consideration.") Third, the Board's report on patentability applied a preponderance standard of proof, not the clear and convincing standard required to declare a *granted* patent invalid. Fourth, the same Section 103 issue arose and was addressed six years earlier by a different examiner in a patent application that issued as the patent-in-suit, which is entitled to a presumption of validity. Finally, application claim 25 is different

[1] The "Board" is the Board of Patent Appeals and Interferences, an administrative organ of the Patent and Trademark Office to which adverse decisions of patent examiners are appealed.

from claims 6 and 9 of the '062 patent, making any Board opinion irrelevant to the case at hand.

## STATEMENT OF FACTS

### A. During Prosecution of the '062 Patent-In-Suit, the Inventors Overcame the Patent Office's Concerns About Obviousness of Claims 6 And 9.

The inventors submitted their application for what would eventually become the '062 patent, for "Cleaning Compositions with Orange Oil," on September 27, 1989. Many of the claims in the original application were rejected by the examiner under 35 U.S.C. §103 over the prior art Coleman, Dellutri, and Juliano references. (Ex. 1 LPM 000177-182). In response, the inventors argued that the cited references actually taught away from their invention by relying on the cleaning properties of d-limonene rather than those of the claimed orange oil. (Ex. 2 LPM 000183-00187). As a result, and with the benefit of English references, the examiner found application claims 10 and 12 allowable. (Ex. 3, LPM 000191-195.) These claims issued as asserted claims 6 and 9 of the '062 patent. Coleman and Dellutri were the d-limonene references cited by the Board in the CIP, and PDR 1969 was cumulative of Juliano. Thus, the question of obviousness of claims 6 and 9 had been tested.

### B. The Continuation-In-Part Application Process Resulted in a Deficient *Sua Sponte* Board Decision on the Patentability of Claim 25.

On November 4, 1991, the '062 patent inventors filed a continuation-in-part of the application that issued as the '062 patent. The inventors disclosed the references that had been considered by the examiner of the original application. Over the following two years, the inventors and the patent examiner sparred over whether the CIP specification met statutory requirements for the written description of the invention. In July, 1994, the

examiner finally rejected the CIP application, but not for obviousness (which had been addressed in the parent). The rejection was for perceived inadequacies in the written description. On August 8, 1994, the inventors appealed the examiner's final rejection to the Board of Patent Appeals and Interferences.

In a report issued on April 15, 1997, the Board found new grounds for rejection based on written description. The Board also, *sua sponte*, stated that application of claim 25 was not patentable under 35 U.S.C. §103. Specifically, the Board found claim 25 obvious over the same Coleman and Dellutri references, together with 1969 (and 1989) editions of the Physicians' Desk Reference (PDR). (*See* D.I. 252 Ex. 1 at 12.) On June 16, 1997, the inventors responded to the Board's opinion by exercising their option to amend the claims. (Ex. 4 at 225.) The inventors also disputed the Board's rejection for obviousness, pointing out that the Board had failed to provide evidence of a motivation to combine. The inventors abandoned the CIP application on December 18, 1997.

**BOARD DECISION**

The Board rejected application claim 25 as obvious in light of the Dellutri and Coleman references and PDR 1969 and 1989. (D.I. 252, Ex. 1 at 12.) The Board discussed each reference. Coleman "describes the use of d-limonene *obtained from* citrus oils, such as orange oil, as a hand cleaner" and says that "emollients or moisturizers...are conventionally used in combination with d-limonene." (D.I. 252, Ex. 1 at 9.) (Emphasis added.) Dellutri "also describes cleaning agents that can be used as a hand cleaner which include d-limonene *obtained from* orange oil" and states that "aloe vera extract may be used as an optional ingredient." *Id.* (Emphasis added.) PDR 1969 disclosed that "colloidal oatmeal has long been used to treat skin" and that "skin care compositions should be adjusted to have a pH

approximate to that of normal skin." (D.I. 252, Ex. 1 at 10-11.) (The Juliano reference also disclosed oats (see Ex. 2 at LPM 000183), making PDR 1969 cumulative of art of record in the '062 patent prosecution.) The Board also stated that PDR 1989 "disclosed" that skin care compositions could be impregnated on a soft cloth towelette and "hermetically sealed in packet member at the time of the present invention (D.I. 252 Ex. 1 at 12), though PDR 1989 actually describes a specific feminine hygiene product, comprising hydro-cortisone. (See Ex. 5.) On the sole basis of the individual components, the Board held that the invention of claim 25 would have been obvious.

Paradoxically, even as the Board reached its conclusion that application claim 25 would have been obvious, it directed the examiner to look for more prior art. In the next sentence, the Board recognized that its opinion did not end argument on these questions:

> If appellants elect the option under 37 CFR § 1.196(b) to re-open prosecution in front of the examiner, the examiner should expand the prior art search beyond the single subclass that has been searched and ensure that <u>all</u> relevant prior art regarding the use of the individual components of the present invention has been uncovered and considered.

(D.I. 252 Ex. 1 at 6-7). KBC truncates the quote (see D.I. 246 at 5), which contradicts their argument that abandonment somehow made the decision final.

## ARGUMENT

### A. Summary Judgment is Improper Where Genuine Issues of Material Fact Exist.

The question of obviousness is one of law based on underlying facts. These facts include the scope and content of the prior art, the differences between the prior art and claims at issue, the level of ordinary skill in the pertinent art, and any teaching or motivation to combine the elements of the prior art into the claimed invention. *See, e.g., Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1961); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1352

(Fed. Cir.1998). Summary judgment is properly granted where no genuine issues of material fact exist, Fed. R. Civ. P. 56(c) -- with emphasis on "genuine" and "material." *See, e.g., Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1184-85 (Fed.Cir.1993). Because the Board opinion is legally deficient, refers to a different invention than that of the '062 patent, was based on a lower standard of proof than is required to prove invalidity, and presented conclusions that were successfully traversed during prosecution of the '062 patent application, genuine issues exist about underlying material facts regarding invalidity. Thus, summary judgment would be improper on the basis of the "subsequent" Board opinion.

**B. The Board's Opinion Violates Federal Circuit Precedent And Omits Essential Factors of an Obviousness Analysis – Rendering It Inadmissible and Leaving Open Issues of Fact that Bear on the Instant Motion.**

The Board did not consider at all two "essential evidentiary components of an obviousness" inquiry: the level of ordinary skill in the pertinent art, and a "teaching or suggestion or motivation [to combine references]." *See Dann v. Johnston*, 425 U.S. 219, 226 (1976); *C.R. Bard, Inc*, 157 F.3d at 1352 "*[T]he Board must explain the reasons* one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious." *In re Rouffet,* 149 F.3d 1350, 1359 (Fed. Cir.1998). The Board did not assess the level of ordinary skill in the art. The Board did not "explain the reasons that such a person" would have been motivated to select and to combine Coleman, Dellutri and the PDR.[2] Failing to do so, the Board's opinion is legally deficient, must be "excluded from consideration" of this summary judgment motion. *See Williams, supra.*

---

[2] The inventors noted this omission in disputing the opinion after it was issued, but further proceedings were terminated because they abandoned the CIP application.

Moreover, "[b]road conclusory statements regarding the teaching of multiple references, standing alone, are not 'evidence.'" *In re Dembiczak*, 175 F.3d 994 (Fed. Cir. 1999). So the Board's independent assessment of each reference is not enough.

For these reasons, the Board's opinion is inadmissible as evidence of invalidity of the '062 patent and cannot form the basis of a summary judgment motion. At a minimum, the board's decision leaves open issues of fact regarding the motivation to combine prior art references (and the level of ordinary skill in the art). It was KBC's burden to prove all of the elements of its obviousness defense in its opening brief. The brief depends on the Board's decision. The Board's decision is six years too late and omits essential elements of the defense. The Federal Circuit would reverse the Board's decision (if it could be appealed), and this Court should deny KBC's motion based upon that decision.

**C. The Board's Decision on Patentability Was Based on a Lower Standard of Proof Than Is Required to Declare a Granted Patent Invalid.**

A patent is presumed valid, so invalidity must be shown by "clear and convincing" evidence. *See, e.g., Apotex USA, Inc.*, 254 F.3d at 1036 (Fed. Cir. 2001). On the other hand, a "preponderance of evidence" is required for the Patent Office to declare an invention unpatentable. *See, e.g., In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1992). Since the "clear and convincing" standard is harder to satisfy than the "preponderance" standard, the Board conclusion on unpatentability cannot be dispositive on any question of invalidity. Moreover, the Board does not even have jurisdiction over issued patents, which is discussed more completely in LP Matthews' Memorandum Supporting Its *Daubert* Motion to Strike the Expert Reports and Exclude the Trial Testimony of the Kao Defendants' Liability Expert, Robert Y. Lochhead. (See D.I. 237 at 6). LP Matthews incorporates that discussion.

**D. The Patent Office Considered an Obviousness Rejection of Claims 6 And 9 During Prosecution of the '062 Patent – Over the Same Prior Art And With a More Thorough Examination.**

During prosecution *of the patent-in-suit,* not a different application, the original examiner rejected asserted claims 6 and 9 for obviousness *over the same d-limonene references cited by the Board* in its "subsequent opinion." That rejection was overcome and the '062 patent was granted. Moreover, the examiner of the '062 application made a *broader* search for prior art than the "subsequent" examiner of the CIP application. The '062 patent issued after the original examiner searched *three* subclasses for prior art, 424/443, 424/401, and 514/783. (D.I. 246, Ex. A at cover sheet.) But the Board specified that the CIP deficiency arose because the subsequent examiner searched only one subclass for prior art. (D.I. 252, Ex. 1 at 5.)

It simply is not the case, as KBC argues, that the Board's concern that "the claims on appeal have not been adequately examined in the first instance by the examiner" (D.I. 252 Ex. 1 at 5.) represents a "deficiency" in the examination of the CIP application that is "equally applicable" to the '062 patent. The Board's concerns simply cannot apply to the '062 patent.

**E. The Board's Analysis of the CIP Application Claim 25 Is Not Relevant to the Validity of '062 Patent Claims 6 And 9 Because Different Inventions Are Related.**

KBC asserts that CIP application claim 25 is "substantively" the same as claims 6 and 9 of the '062 patent. (D.I. 246 at 4.) KBC selectively ignores not only that the CIP is a different application examined by a different examiner, but also that CIP application claim 25 is different than issued claims 6 and 9 of the '062 patent. The differences ignored by KBC compel rejection of KBC's unsupported theory:

> [I]n making the assessment of differences between the prior art and the claimed subject matter, section 103 specifically requires consideration of the claimed invention "as a whole." Inventions typically are new combinations of existing principles or features.... The "as a whole" instruction in title 35 prevents evaluation of the invention part by part.

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.* 411 F.3d 1332, 1337 (Fed. Cir. 2005) (internal citations omitted).

Application claim 25 does not describe the same "whole" invention as claims 6 and 9 of the '062 patent. At a minimum, fact issues exist as to whether they are the same. The differences between the '062 patent claims and claim 25 are shown in bold below:

| **'062 Patent** | **Abandoned Application Claim 25 (as appealed to the Board)** |
|---|---|
| **6.** A skin cleaning composition for external use on human tissues, comprising orange oil, a pharmaceutically acceptable moisturizer for human skin and an oat grain derivative product as an emulsifying agent, wherein said composition has a pH within a range of 4.5 to 6.0, inclusively. | A cleaning product **comprising a towellet formed of an absorbent material, said towellet being impregnated with a cleaning composition and hermetically sealed in a packet member** wherein said cleaning composition comprises a first ingredient **being between five percent (5%) and sixty percent (60%) by volume of orange oil,** a second ingredient being a pharmaceutically acceptable moisturizer **including a plant material such as plant oils and plant extract**, for human skin and a third ingredient being a grain based emulsifying agent in the form of an oat grain based derivative product. |
| **9.** A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer. | |

The CIP calls for ranges of contents of certain ingredients and does not include any mention of a pH claim element. In contrast, Claims 6 and 9 are composition claims and claim 9 requires a pH range. Claim 6 features "a pharmaceutically acceptable moisturizer for human skin" while application claim 25 features "a pharmaceutically accepted moisturizer including a plant material such as plant oils and plant extract, for human skin." Claim 9

features "oatmeal," while claim 25 features "a grain based emulsifying agent in the form of an oat grain based derivative product." Because of these differences, the Board's analysis of claim 25 of the CIP application is irrelevant to any analysis of claims 6 and 9 of the '062 patent – even if the Board's opinion did comport with the law of obviousness. LP Matthews disputes whether claims (considered in terms of their individual elements or as a whole) are sufficiently similar or different that any analysis of application claim 25 bears on an obviousness analysis of claims 6 and 9 of the '062 patent.

**CONCLUSION**

Summary judgment of invalidity of claims 6 and 9 cannot be granted on the basis of this "subsequent" Board decision that is six years too late, that fails to meet all the elements of the defense now asserted, that involved different examiners, that was not fully and fairly litigated, and that arose under a different burden of proof. The decision does not support granting KBC's motion but rather highlights the existence of disputed facts in this case. KBC's motion for summary judgment should be denied.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Plaintiff LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, DC 20006

Dated: July 14, 2006
171286.1