**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1507 (SLR) |
| | ) | JURY TRIAL DEMANDED |
| BATH & BODY WORKS, INC., | ) | |
| and | ) | |
| LIMITED BRANDS, INC., | ) | PUBLIC VERSION |
| and | ) | FILED: JULY 25, 2006 |
| KAO BRANDS CO. (f/k/a THE ANDREW | ) | |
| JERGENS COMPANY), | ) | DATED: JULY 20, 2006 |
| and | ) | |
| KAO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**THE LIMITED DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO LP
MATTHEWS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**

Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
FOX ROTHSCHILD LLP
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Phone: (302) 655-3667
Fax: (302) 656-8920

*Attorneys for Defendants Bath & Body
Works, Inc. and Limited Brands, Inc.*

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ..................................................................2

SUMMARY OF ARGUMENT ..........................................................................................3

STATEMENT OF FACTS .................................................................................................4

    A.    The '062 Patent ..................................................................................................4

    B.    The Accused Products........................................................................................6

ARGUMENT ....................................................................................................................10

    A.    Summary Judgment of Infringement Should Be Denied ..............................10

        1.    The Accused Products use orange oil, if at all, merely as a fragrance, not as a cleaner............................................................................................13

        2.    A majority of the accused products are lotions, creams, moisturizers, etc., and not cleaning compositions ..........................................................14

        3.    None of the Accused Products contain oatmeal or oat gum .....................17

        4.    The Accused Products do not contain any oat ingredient as the primary emulsifier....................................................................................18

        5.    The pH for most of the Accused Products falls outside the claimed range......................................................................................................19

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ............................................... 11, 17

*Bai v. L & L Wings, Inc.*, 160 F.3d 1350 (Fed. Cir. 1998) ................................................. 12

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ................................................... 11

*Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) .................................... 12

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311 (Fed. Cir. 2001) ........................ 3

*Gart v. Logitech, Inc.,* 254 F.3d 1334 (Fed. Cir. 2001) .................................................... 11

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) .......................... 12

*Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353 (Fed. Cir. 2005) ............... 19

*Novartis Corp. v. Ben Venue Laboratories, Inc.,* 271 F.3d 1043 (Fed. Cir. 2001)..... 11, 19

*Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329 (Fed. Cir. 1987) ............................ 12

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)............................................... 14

*SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878 (Fed. Cir. 1988).... 7, 12

**Statutes**

35 U.S.C. § 102 ................................................................................................. 13

35 U.S.C. § 103 ................................................................................................. 13

35 U.S.C. § 112 ............................................................................................. 8, 13

**Rules**

Fed.R.Civ.P. 56(c) ...................................................................................... 10-11

## INTRODUCTION

Limited Brands, Inc. and Bath & Body Works, Inc. (hereinafter collectively referred to as the "Limited Defendants) respectfully request that the Court deny Plaintiff LP Matthews, L.L.C.'s ("plaintiff" or "LPM") motion for summary judgment that twenty-seven (27) products[1] sold by the Limited Defendants infringe Claims 6 and 9 of United States Patent No. 5,063,062 ("the '062 patent") (D.I. 269, Ex. A). The '062 patent, entitled "Cleaning Compositions With Orange Oil," is directed to a skin cleaning composition containing at least 5% orange oil as its cleaning agent, an oat grain derivative product as its primary emulsifier, and a natural moisturizer, and having a pH in the range of 4.5 to 6.0, inclusively.

As explained in further detail below, the Accused Products are not cleaning compositions, do not have orange oil sufficient for cleaning, do not have an oat ingredient sufficient for emulsifying, and/or do not have a pH within the claimed range. In short, none of the Accused Products infringe the '062 patent – a fact that LPM's expert all but concedes. Summary judgment of infringement is inappropriate here because, *inter alia*, LPM has not met its burden of proving infringement. LPM has proffered none of its own evidence of infringement, and the Limited Defendants' formula sheets and test data relied on by both parties are evidence of *non*-infringement.

Throughout its supporting memorandum, LPM makes unfounded, blanket assertions that the Limited Defendants admit that the Accused Products meet "each claim element of one or both of the asserted claims." (*See, e.g.*, D.I. 269 at 1). This is simply not true. If the Court adopts either the Limited Defendants' or the Kao Defendants'

_____

[1] These products will be hereinafter referred to collectively as the "Accused Products", and are identified in the chart attached hereto as Ex. A.

1

proposed claim construction (*See* D.I. 244, 255), then as a matter of law none of the Accused Products can be found to infringe the asserted claims of the '062 patent, either literally or under the doctrine of equivalents. (*See* D.I. 260).  Similarly, even if the Court adopts all or even some of LPM's proposed claim constructions, the Accused Products still cannot be found to infringe the asserted claims.[2]  At a minimum, a genuine issue of material fact exists as to whether any of the Accused Products meet all of the limitations of the asserted claims, and therefore LPM's motion should be denied.

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, LPM filed a Complaint against the Limited Defendants, KAO Brands Co. and KAO Corp. alleging infringement of the '062 patent. (D.I. 1).  This Court entered a Scheduling Order on June 9, 2005. (D.I. 39).  Fact discovery closed on January 26, 2006 (D.I. 39 at 1), and expert discovery closed on May 12, 2006. (D.I. 39 at 3).  On June 22, 2006, the Limited Defendants' filed *Daubert* motions to exclude certain opinions and conclusions of LPM's proffered damages (Larry Evans) and technical (Christopher Rhodes) experts. (D.I. 239, 230).  On June 29, 2006, the parties filed Opening Claim Construction Briefs. (D.I. 244, 254, 255).  Pursuant to LPM's request, the deadline for filing summary judgment motions was extended from June 29, 2006 to July 6, 2006. (D.I. 243).  On July 6, 2006, the Limited Defendants filed, *inter alia*, motions for summary judgment of non-infringement and invalidity of the asserted claims of the '062 patent. (D.I. 260, 266, 270, 273).

_____

## REDACTED

2

## SUMMARY OF ARGUMENT

The law is unequivocal.  For a finding of infringement, every limitation of a patent claim must be found in the accused device.  *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1320 (Fed. Cir. 2001).  It is axiomatic that if one of the elements of a patent claim is missing from the accused device, that device cannot infringe the patent claim.  The '062 patent is directed to a skin cleaning composition containing at least 5% orange oil as its cleaning agent,[3] an oat grain derivative product as its primary emulsifier, and a natural moisturizer, and having a pH in the range of 4.5 to 6.0, inclusively. Contrary to LPM's assertion, the Limited Defendants have not admitted that each of the Accused Products meets each limitation of one or both of the asserted claims.  In fact, numerous required elements of each of the asserted claims of the '062 patent are missing from each of the Accused Products:

## REDACTED

---

[3] While LPM admits that the asserted claims of the '062 patent have a lower limit, there is no basis in the intrinsic evidence to support its self-serving lower limit of 0.01%.  The intrinsic evidence plainly demonstrates that the invention of the '062 patent required at least 5% orange oil for cleaning. (*See* D.I. 255 at 9-11).

In short, LPM has failed to demonstrate by a preponderance of the evidence that any of the Accused Products meet all of the claim elements of at least one of the asserted claims of the '062 patent. Rather, LPM mischaracterizes deposition testimony, fabricates admissions, and misstates the facts in a self-serving manner to create a set of so-called "indisputable facts" that it believes support infringement under its tenuous claim constructions. However, as shown below, not only are many of LPM's "facts" inaccurate, but they have been disputed throughout this litigation. As a result, plaintiff has not established a proper foundation to support its motion for summary judgment of infringement, which should therefore be denied in its entirety.

### STATEMENT OF FACTS

**A.    The '062 Patent**

The '062 patent, entitled "Cleaning Compositions with Orange Oil," issued on November 5, 1991, from an application filed on September 27, 1989. (D.I. 260, Ex. A, Cover Page). The catalyst for the invention was co-inventor Phillip Low's observation that the juices from an orange he was eating were dissolving the sealing caulk on his hands. (D.I. 260, Ex. C at 11-17). After consulting his business advisor, the industrial-type cleaner disclosed in the '062 patent was born. (D.I. 260, Ex. C at 11-17).

The '062 patent issued with twelve (12) claims, of which only independent Claims 6 and 9 are asserted in this case. (*See* D.I. 269 at 2). They read as follows:

> 6.    A skin cleaning composition for external use on human tissues, comprising orange oil, a pharmaceutically acceptable moisturizer for human skin and an oat grain derivative product as an emulsifying agent, wherein said composition has a pH within a range of 4.5 to 6.0, inclusively. (D.I. 260, Ex. A, Col. 10, lns. 1-6).

4

9.      A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer. (D.I. 260, Ex. A, Col. 10, lns. 13-17).

LPM now admits that both Claims 6 and 9 of the '062 patent have a required lower limit to the amount of orange oil in the claimed composition. (*See, e.g.,* D.I. 269 at 2). The '062 patent plainly discloses 5% as this required lower limit. (See, e.g., D.I. 260, Ex. A, Col. 6, lns. 56-61). In order to determine the bounds of a suitable cleaning composition according to their invention, the Applicants evaluated various compositions and their respective physical properties to determine which combinations would effect cleaning. (*See generally,* D.I. 260, Ex. A, Col. 3-Col. 8). They compared (subjectively) the amount of orange oil needed in the composition, the amount and type of natural product required to form an emulsion, and the effective pH range of a cleaner. (*See* D.I. 260, Ex. A, Col. 3-Col. 8).

With regard to the effective amount of orange oil, the Applicants concluded that:

With respect to cosmetics, a composition according to the present invention could have <u>as little as 5% by volume of orange oil</u> although it was preferable to have a cleaning composition having at least 25% by volume of orange oil. (D.I. 260, Ex. A, Col. 6, lns. 56-61)(emphasis added).

Indeed, co-inventor Phillip Low testified that the inventors tested compositions down to almost no orange oil and concluded that anywhere from 5% to 60% provided adequate cleaning while also being comfortable on the skin. (D.I. 260, Ex. C, 26, 86-87).

Regarding emulsifiers, the Applicants selected grain base derivatives (i.e., oatmeal gum and oatmeal) as the primary emulsifying agent. "In order to determine whether a natural ingredient could act as an emulsifying agent, the Applicants selected a

grain base derivative as an emulsifying agent. To this end, Applicants tested oatmeal gum and oatmeal to act as the primary emulsifier." (D.I. 260, Ex. A, Col. 4, lns. 22-27).  The Applicants' tests revealed that these two substances could perform as primary emulsifiers. (D.I. 260, Ex. A, Col. 4, ln. 27 - Col 5, ln. 27).  The patent does not indicate that any other substances were tested or that the Applicants knew whether any other grain base derivatives would even work as primary emulsifiers in their composition. (D.I. 260, Ex. A, Col. 4, ln. 27 – Col 5 ln. 27).

## REDACTED

Regarding the appropriate pH for the composition, the Applicants concluded that the invention "should have a pH between 4.5 and 6.0, inclusively." (D.I. 260, Ex. A, Col. 6, lns. 25-26; Col. 2, lns. 41-42).  As determined by the inventors, sample compositions having a pH above 6.0 or below 4.5 were simply inadequate.

Thus, a plain reading of the patent itself indicates that the inventors concluded: (1) the cleaning composition must contain at least 5% orange oil, (2) the only primary emulsifying agents known to be acceptable were oatmeal or oatmeal gum, and (3) the pH of the composition had to be within the range of 4.5 to 6.0, inclusively.  The patent does not support any other interpretation.

**B.    The Accused Products**

The Limited Defendants' sell thousands of fragrant body care products.  Although LPM originally charged 37 products, there are now only 27 products that stand accused of infringing the '062 patent.  Throughout the course of these proceedings, the Limited Defendants have denied that any of the Accused Products infringe any of the asserted

claims of the '062 patent.  The Limited Defendants have produced significant documentary evidence in support of its position, including the formula sheets, certificates of analyses, and manufacturing processes for each of the Accused Products and formula sheets for many of the individual ingredients used in the Accused Products. (*See* D.I. 260, Ex. I).  A careful review of the Accused Products' formulation sheets plainly illustrates that LPM's allegations have no merit. (*See generally,* D.I. 260, Ex. I).  For example, this documentary evidence shows that none of the Accused Products contain at least 5% orange oil (and that many do not contain any orange oil), that the pH is outside of the range claimed in the '062 patent for most of the Accused Products, and that any "oat" ingredient is not an emulsifying agent in any of the Accused Products.

In addition, the Limited Defendants expert independently evaluated various aspects of the Accused Products in light of the asserted claims of the '062 patent.  (*See* D.I. 260, Ex. M).[4]

## REDACTED

Despite the availability of each of the Accused Products to LPM, its proffered expert did not independently test any of the Accused Products; no testing was performed to determine if any of the Accused Products have any cleaning effect; no tests were performed regarding the functionality of any "oat" ingredients; no tests were performed

---

[4] Of course, the Limited Defendants do not have the burden of disproving infringement.  The burden of proof in any patent infringement case rests on the patentee, or in this case purported assignee, to prove infringement of each and every element by a preponderance of the evidence. *Smithkline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

to determine whether the alleged "orange oil" in any of the Accused Products provides a cleaning function; and no tests were performed to determine the pH of any of the Accused Products. Indeed, LPM's sole basis for asserting that the Accused Products are cleaning compositions comes from the product names and mere speculation.

Rather than rely on quantifiable, objective evidence in support of its infringement allegation, LPM twists deposition testimony into purported "blanket admissions" (See D.I. 269 at 5), and relies on mere speculation. (See, e.g., D.I. 269, Ex. E at 13). Many of their expert's conclusions - often based on misstated facts or miscalculations - are simply unreliable.

**REDACTED**

LPM admits that none of the Accused Products contain anywhere near 5% orange oil.[5] (*See* D.I.269; *see also* D.I. 260, Ex. J, pp. 14-35).

**REDACTED**

---

[5] As discussed in greater detail in the Limited Defendants' Motion for Summary Judgment of Invalidity under 35 U.S.C. §112 (D.I. 273), as well as in the Kao defendants' Motion for Summary Judgment of Invalidity for Lack of Written Description (D.I. 248), the specification of the '062 patent does not support a cleaning composition that contains less than 5% orange oil.

**<u>REDACTED</u>**

is derived from the rind of oranges. Quite simply, a mandarin is a tangerine, not an orange.

In stark contrast to the teachings of the '062 patent, the Accused Products merely utilize fragrance to enhance the aesthetic appeal of a beauty product to a potential consumer. This practice is well known in the art. Indeed, the practice of adding fragrance to beauty products is ubiquitous and centuries old. (*See* George H. Hurst, *Soaps, A Practical Manual of the Manufacture of Domestic Toilet and Other Soaps* (2d 1907) (D.I. 260, Ex. K (Soaps Manual)). More recently, Juliano United States Patent No. 4,014,995 (D.I. 260, Ex. L (Juliano)), which was cited by the Examiner during the prosecution of the '062 patent, discloses fragranced cosmetic products. (*See, generally,* D.I. 260, Ex. L, Examples).

## REDACTED

## ARGUMENT

### A.    Summary Judgment of Infringement Should Be Denied

Summary judgment is inappropriate unless the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Id.* at 255.

In the context of patent infringement, summary judgment is appropriate only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).  The burden of establishing infringement is upon the patentee suing for infringement and thus "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

A determination of infringement requires a two-step analysis. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  The Court must first construe the patent claims in issue to determine their scope and meaning. *Id.*  Claim construction is a question of law subject to *de novo* review. *Cybor Corp. v. FAS Techs, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  This Court has not yet construed the asserted patent claims.  The trier of fact must then compare the properly construed claims to the allegedly infringing products. *Markman*, 52 F.3d at 976.  This step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

While the second step is a question of fact, summary judgment may still be appropriate. *Id.*  Literal infringement requires that each limitation of the asserted claim or claims be found exactly in the alleged infringer's product. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).  Where the accused device does not literally infringe, infringement may still be found under the doctrine of equivalents. *Id.* at 821-22.  LPM, in its motion, has not alleged infringement under the doctrine of equivalents. (See D.I. 269).

The patent owner suing for infringement has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

Here, LPM alleges that the asserted claims of the '062 patent broadly cover compositions for cleaning skin that contain orange oil, an oat ingredient, and a moisturizer. (D.I. 269 at 2).  A plain reading of these claims in light of the intrinsic record, however, reveals that they require much more.  Indeed, under a proper construction, Claims 6 and 9 require: (1) a cleaning composition, (2) at least 5% orange

oil, (3) oatmeal (Claim 9) and oatmeal or oat gum as the primary emulsifying agent

(Claim 6), (4) a moisturizer, and (5) for Claim 6 only, a pH within the range of 4.5 to 6.0,

inclusively. (*See* D.I. 255). For the reasons discussed more fully in the Limited

Defendants' Motion for Summary Judgment of Non-Infringement of U.S. Patent No.

5,063, 062 (D.I. 260), none of the Accused Product infringe any of the asserted claims of

the '062 patent. Here, however, LPM has failed to demonstrate by a preponderance of

the evidence that any of the Accused Products meet each claim element of either of the

asserted claims.

Even assuming, *arguendo*, that LPM's tenuous claim constructions of asserted

Claims 6 and 9 is accurate *in toto*, for the reasons discussed below, summary judgment of

infringement is inappropriate.[9] LPM has failed to meet its burden, even anecdotally, of

proving infringement by a preponderance of the evidence. Indeed, as set forth herein and

in the Limited Defendants' motion for summary judgment of non-infringement, the

Accused Products cannot meet all of the limitations of the asserted claims, and at a

minimum LPM's motion raises genuine issues of material fact. Summary judgment of

infringement is therefore inappropriate.

    1.    The Accused Products Use Orange Oil, If at All,
             <u>Merely As a Fragrance, Not As a Cleaner</u>

## **<u>REDACTED</u>**

                              LPM admits that a proper construction of

the asserted claims requires that the orange oil provide a cleaning function. (*See, e.g.,* D.I.

---

[9] If LPM's overly broad claim construction is adopted, both of the asserted claims are invalid
under 35 U.S.C. §§ 102, 103, and/or 112 for the reasons set forth out in the Limited Defendants'
motions for summary judgment of invalidity. (*See* D.I. 266, 270, 273).

269 at 2).  To do so, the inventors acknowledged that 5% orange oil was the lower limit

for a cleaning effect. (*See, e.g.,* D.I. 260, Ex. A, Col. 2, lns. 27-30).  This limitation

makes logical sense, since the inventors stated outright that orange oil was their

composition's primary cleaning agent (*See* D.I. 260, Ex. D at 3) consistent with their own

testing (*See* D.I. 260, Ex. C, 26, 86-87).  And the '062 patent clearly teaches that

compositions with 5%, and even as much as 12.5% orange oil, are not "cleaners". As the

attached formula sheets plainly show,                    **REDACTED**

          **REDACTED**              (*See generally,* D.I. 260, Ex. I).  LPM, through its

proffered expert, admits this. (*See* D.I. 260, Ex. J at 14-35; D.I. 269 at 7-8).

  It is axiomatic that a finding of literal infringement requires that every limitation

of the claims be found in an accused product. *Read Corp. v. Portec, Inc.*, 970 F.2d 816,

821 (Fed. Cir. 1992).  Since, under a proper construction of the asserted claims, a

composition which infringes must contain at least 5% orange oil, LPM has failed to meet

its burden of proof of infringement by a preponderance of the evidence.


**REDACTED**


  2.  A Majority Of The Accused Products Are Lotions, Creams or
     <u>Moisturizers, And Not Cleaning Compositions</u>

  LPM admits that the term "cleaning composition" is a claim limitation. (D.I. 254).

_____


**REDACTED**

Proper construction of this limitation requires "a composition for removing unwanted non-water soluble substances from the skin, having as little as 5% orange oil, but preferably at least 25% orange oil". (D.I. 255 at 9-11).

## REDACTED

The specification of the '062 patent states that "the present invention generally relates to cleaning compositions suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives, and the like." (D.I. 260, Ex. A, Col. 1, lns. 5-9).  As is readily apparent, a majority of the Accused Products run far afield of this definition – many are leave-on nighttime facial treatments, acne preparations, body lotions, and body moisturizers. These products are not intended to, nor do they, remove unwanted substances from the skin.  (D.I. 260, Ex. M at 19-41).  This important difference is exemplified by the manner of use between a cleanser and a lotion.  The former is used to wash off and remove unwanted foreign substances such as tar, caulking compounds, sealants, adhesives, and the like; the latter is liberally applied (and re-applied) as a preparation to heal damaged areas of the skin.

In support of its contention that the Accused Products are cleaning compositions, LPM relies on an alleged "blanket admission" by the Limited Defendants', the names and marketing of the Accused Products, and mere speculation regarding the "similarity" of ingredients between among the Accused Products. (D.I. 269 at pp. 4-6).  None of this is sufficient for LPM to meet its burden of proof.

Initially, no such "blanket admission" was ever made by the Limited Defendants. The record plainly indicates that the Limited Defendants' do not admit that the Accused Products are cleaning compositions. The Limited Defendants' corporate representative on liability issues testified emphatically to the contrary:

**<u>REDACTED</u>**

Next, LPM simply relies on the product names and pure speculation to assert that the Accused Products are cleaning compositions. (D.I. 269 at 4-6).

**<u>REDACTED</u>**

Summary judgment is inappropriate if there is enough evidence, like here, to enable a

_____

**<u>REDACTED</u>**

16

jury to reasonably find for the nonmoving party on that issue. *See Anderson*, 477 U.S. at 249.

Accordingly, should the court adopt LPM's proposed claim construction regarding this limitation, a genuine issue of material fact exists here as to whether these eighteen products meet this limitation, and summary judgment of infringement is not appropriate.  In this case, a reasonable trier of fact could return a verdict for the Limited Defendants.  LPM has not proven by a preponderance of evidence that the Accused Products are cleaning compositions.  Thus, summary judgment of infringement should be denied.

      3.    <u>None of the Accused Products Contain Oatmeal or Oat Gum</u>

Both Claims 6 and 9 require, under a proper construction, oatmeal or oat gum to serve as the primary emulsifier.

**REDACTED**

The inventors themselves stated that these were the only two "oat grain derivative" products they tested for use in their invention, noting that they "selected a grain base derivative as an emulsifying agent. To this end, Applicants tested oatmeal gum and oatmeal to act as the primary emulsifier."[13] (*See* D.I. 260, Ex. A, Col. 4, lns. 25- 27).  Indeed, they limited Claim 9 to oatmeal exclusively.  Even if the Court were to find that the oat grain derivatives found in

———————————————————

**REDACTED**

17

the Accused Products were of the type contemplated by the patent, there can be no

infringement because those oat derivatives are not "primary emulsifiers," i.e., the

emulsifier that is "first in time" or "greatest in amount" – they are not emulsifiers at all.

Instead, these oat components are added for their well-known soothing effect on the skin

– an affect first noted in ancient Egypt.

It is undisputed that the Accused Products do not contain either oatmeal or

oatmeal gum.  Summary judgment of non-infringement for all of the Accused Products is

appropriate.

4.    The Accused Products do not contain any
      oat ingredient as the primary emulsifier

Claim 6 requires that the oat grain must "act as an emulsifying agent in the

accused product." (D.I. 269 at 12).  The only evidence offered by LPM in regards to this

element is the speculation of its proffered expert.  Unlike, the Limited Defendants'

expert, LPM's proffered expert admittedly did not perform any testing to determine if any

of the Accused Products contained an oat grain derivative product that functioned as an

emulsifying agent. (*See generally*, D.I. 269, Ex. E).[14]


**<u>REDACTED</u>**


However, mere

generalized testimony as to the overall similarity of the accused product to the claims in

issue is not sufficient to support a motion for summary judgment of infringement. *See*

---

[14] In refuting the Limited Defendants' liability expert's opinion (Mr. John Carson) that the oat
ingredients were not emulsifying agents, LPM contends that Mr. Carson did not perform any
specialized testing and/or calculations. LPM therefore asserts, incorrectly, that the Carson tests do
not create a genuine fact issue. (D.I. 269 at 14).

*Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005). It simply is not there, and efforts to twist testimony cannot change that fact.

Accordingly, summary judgment of infringement of Claim 6 is inappropriate because "the evidence on file fails to establish" that any of the Accused Products infringe the asserted claims (i.e., utilize an oat grain derivative as an emulsifying agent). *Novartis*, 271 F.3d at 1046. LPM's mere speculation as to an oat ingredient's <u>potential</u> does not meet its burden of proof.

   5.   <u>The pH for most of the Accused Products falls outside the claimed range</u>

Claim 6 of the '062 patent requires the pH of the composition to be "within the range of 4.5 to 6.0, inclusively." (D.I. 260, Ex. A, Col. 10, lns. 5-6). As properly construed in light of the specification, this means "including but not exceeding the endpoints of the range 4.5 to 6.0." (D.I. 255, p. 17). Twenty-four (24) of the Accused Products have a pH lower than 4.5 or higher than 6.0, i.e., outside the pH range claimed in Claim 6. (*See* Ex. A). LPM acknowledges this. (*See* D.I. 260, Ex. J at 15-35 and Ex. M at 19-38, 41-49, 51-52, App. B-1). LPM has performed no testing or proffered any evidence to contradict any of the pH data put forth by the Limited Defendants. Accordingly, summary judgment that these twenty-four (24) products infringe at least Claim 6 is inappropriate.

As set forth in the Limited Defendants' motion for summary judgment of non-infringement (D.I. 259, 260), under the Limited Defendants' proposed claim construction (see D.I. 255), the asserted claims of the '062 patent simply cannot read literally onto any of the Accused Products. Conversely, as set forth in the Limited Defendants' motions for

summary judgment of invalidity (D.I. 266, 270, 273), under LPM's proposed claim construction (see D.I. 254), the asserted claims of the '062 patent are invalid.  Moreover, as discussed herein, under LPM's proposed claim constructions, several disputed facts exist.  In short,

## **REDACTED**

## **CONCLUSION**

For the forgoing reasons, the Limited Defendants respectfully request that LPM's motion for summary judgment of infringement be denied in its entirety.  Further, for the reasons set forth therein, the Limited Defendants' respectfully request that their motion for summary judgment of non-infringement (D.I. 259, 260) be granted.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated:  July 20, 2006          By:____/s/ Sheldon K. Rennie_____
                               Francis G.X. Pileggi (Del. Bar No. 2624)
                               Sheldon K. Rennie (Del. Bar No. 3772)
                               FOX ROTHSCHILD LLP
                               Suite 1300

919 North Market Street
Wilmington, Delaware  19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com
E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath & Body Works, Inc.
Limited Brands, Inc.