## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 04-1507 (SLR) |
| v. | ) | |
| | ) | |
| BATH & BODY WORKS, INC.; | ) | **PUBLIC VERSION** |
| LIMITED BRANDS, INC.; | ) | |
| KAO BRANDS CO. (f/k/a THE ANDREW | ) | |
| JERGENS COMPANY); and | ) | |
| KAO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## KBC'S (1) OPPOSITION TO LPM'S CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT, D.I. 262 AND (2) REPLY TO LPM'S OPPOSITION TO KBC'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, D.I. 290

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
OF COUNSEL:                                P.O. Box 951
                                           Wilmington, DE 19899-0951
Arthur I. Neustadt                         Tel.: (302) 984-6000
Stephen G. Baxter                          rhorwitz@potteranderson.com
Richard L. Chinn                           dmoore@potteranderson.com
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.                      *Attorneys for Defendant*
1940 Duke Street                           *Kao Brands Co.*
Alexandria, VA 22314
Tel: (703) 413-3000

Dated: July 20, 2006
Public Version Dated: July 27, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ........................................................................................ 2

CONCISE STATEMENT OF FACTS ............................................................................. 3

ARGUMENT ................................................................................................................... 4

    The Accused KBC Products Do Not Have The Necessary 5% Orange Oil ................... 4

    The Accused KBC Lotions Are Not Skin Cleaning Compositions ................................ 8

CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

## Cases

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
   2006 U.S. App. LEXIS 11675 (Fed. Cir. May 11, 2006) ................................................. 5, 6

*Netword, LLC v. Centraal Corp.*,
   242 F.3d 1347 (Fed. Cir. 2001) ..................................................................................... 6

*Q-Pharma Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004) ..................................................................................... 7

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) ..................................................................................... 6, 7

## NATURE AND STAGE OF PROCEEDINGS

In this patent infringement action, the complaint was filed on December 8, 2004.
D.I. 1. On March 8, 2005, KBC filed a motion for summary judgment of non-
infringement with respect to the only accused KBC product at that time. D.I. 12.
Contrary to LPM's assertion, KBC was not required to include in its motion its
discontinued products which had not been accused of infringement.

On June 29, 2006, pursuant to paragraph 6 of the June 8, 2005 scheduling order
(D.I. 39), KBC filed a further summary judgment motion of non-infringement to update
and replace the previous motion which had yet to be decided. D.I. 250 ("This motion
updates and replaces the pending non-infringement summary judgment motion filed
March 8, 2005 (D.I. 12).").

On July 6, 2006, apparently unaware that the March 8, 2005 motion had been
replaced by the June 29, 2006 motion, LPM filed a cross-motion for summary judgment
of infringement against the replaced March 8, 2005 motion. D.I. 263. LPM's cross-
motion also included an "updated answering brief" against the replaced March 8, 2005
motion.

On July 13, 2006, apparently now recognizing that KBC had filed a motion on
June 29, 2006, LPM filed an "answering brief." D.I. 290.

In order to reduce the number of papers with respect to the non-infringement
issue, this paper responds to both (1) LPM's July 6, 2006 cross-motion for summary
judgment of infringement against the replaced March 8, 2005 motion and (2) LPM's July
13, 2006 answering brief against KBC's June 29, 2006 motion.

## SUMMARY OF ARGUMENT

As set forth in KBC's motion, the '062 patent-in-suit, entitled CLEANING
COMPOSITIONS WITH ORANGE OIL, is directed to a skin cleaning composition with
orange oil to remove unwanted substances such as tar, caulking compounds and the like.
Although the claims asserted to be infringed do not recite a lower limit for the orange oil,
the specification states that at least 5% orange oil is necessary for sufficient cleaning.
Although the accused products include orange oil, the amount of orange oil in each
product is        or less, *less* than            of the 5% necessary for sufficient
cleaning as stated in the specification.  Additionally, apart from the lack of sufficient
orange oil as noted above, two of the four accused products are lotions and are not
cleaning compositions.  Accordingly, there can be no infringement.

LPM's cross-motion and opposition are long on pejorative rhetoric but short on
substantive comment.

As to the 5% minimum for orange oil, the specification states in no uncertain
terms that "a composition *according to the present invention* could have as little as 5% by
volume of orange oil although it was preferable to have a cleaning composition having at
least 25% by volume orange oil." Col. 6, ll. 56-61, emphasis added.  Thus, the '062
inventors defined *their invention* as having a minimum of 5% orange oil.  Unable to deal
with this clear, plain and unequivocal statement, LPM in its cross-motion and opposition
tries to redefine the invention to reduce the minimum some            percent to
0.01%.  However, this is contrary to the inventors' definition of *their invention* in the
specification which, of course, is controlling.

2

LPM also tries to rewrite the definition of the invention for the claim term skin cleaning composition. The specification states that "[the] present invention generally relates to cleaning compositions suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives and the like." Col. 1, ll. 5-9. Unable to deal with the fact that the primary accused product (and a discontinued accused product) are lotions (not cleaning compositions) whose purpose is to heal and prevent extra dry skin, LPM concocts a new and fanciful theory. According to LPM, applying lotion to skin to heal it may result in the flaking off of dead skin which, according to LPM, transforms a lotion into a cleaning composition. However, besides being fanciful and baseless, this is contrary to the inventors' definition of *their invention* in the specification which, of course, is controlling.

## CONCISE STATEMENT OF FACTS

The concise statement of facts for KBC's opposition to LPM's cross-motion against the replaced March 8, 2005 motion and for KBC's reply on its June 29, 2006 motion is set forth in KBC's memorandum in support of its June 29, 2006 non-infringement summary judgment motion. D.I. 250 at 1-5.

In addition, KBC submits herewith a declaration of its expert Robert Y. Lochhead, Ph.D. concerning these facts.

3

## ARGUMENT

### The Accused KBC Products Do Not Have The Necessary 5% Orange Oil

Asserted claims 6 and 9 each require a skin cleaning composition. The cleaning is provided by the orange oil. Col. 2, ll. 2-7. The '062 specification specifically states how much orange oil is necessary to obtain sufficient cleaning – "a composition according to the present invention *could have as little as 5% by volume of orange oil.* Col. 6, ll. 56-61, emphasis added. This conclusion was based upon the test result that the 5% Sample XIV was "effective in removing cosmetics from the skin" (col. 6, ll. 44-45) even though it "could not effectively clean tar or caulking compounds" (col. 6, ll. 41-44). Thus, the '062 specification plainly states that orange oil percentages below 5% do not provide sufficient cleaning.

LPM does not dispute that the KBC products have only        or less orange oil.[1] Rather, LPM tries to redefine the '062 invention to reduce the minimum some        percent to 0.01%. However, this is directly contrary to the specification of the '062 patent, which specifically states that the invention has a 5% orange oil minimum. The '062 inventors do not state that there is no cleaning below 5% but, rather, provide with their 5% minimum that any such cleaning is insufficient for *their invention*.

LPM in its memorandum in support of its cross-motion (at 5-6) tries to redefine the '062 invention by pointing to a Kao patent (5,013,485) directed to "a liquid detergent composition for household use" (col. 1, ll. 10-11) which, of course, is not a skin cleaning composition. Although the '485 invention has an orange oil percentage as low as 0.01%,

---

[1]  The figures in LPM's memorandum in support of its cross-motion occasionally omit zeros making them larger than they should be. At page 7, line 18, it should be "        and        by weight" and, on line 21, it should be "        by volume."

4

the '485 invention is irrelevant since it certainly does not negate the fact that the '062 inventors plainly state in their specification that *their invention* has a minimum orange oil percentage of 5%.

LPM also refers in its memorandum in support of its cross-motion (at 6) to experiments run by BBW's expert John Carson. However, his experiments have nothing to do with the plain and unequivocal statement by the '062 inventors in their specification that *their invention* has a 5% orange oil minimum. Further, strangely, LPM now relies upon experiments that it seeks to exclude with its *Daubert* motion. Also, Mr. Carson is BBW's, not KBC's expert.

LPM in its memorandum in support of its cross-motion states (at 13) that cosmetics are difficult to remove. However, this statement without context is misleading since the '062 inventors stated in their specification that cosmetics were the easiest to remove among the materials sought to be removed.

> With respect to Sample XIV, the test group reported that cleaning properties were substantially reduced; *Sample XIV could not effectively clean tar or caulking compounds   Indeed, Sample XIV was only effective in removing cosmetics from the skin*

Col. 6, ll. 41-45, emphasis added.

LPM also argues that KBC is trying to import a 5% orange oil limitation from the specification into claims 6 and 9. However, as recently held by the Federal Circuit - "Where the specification makes clear that the invention does not include a particular feature [percentages below 5%], that feature is deemed to be outside the reach of the claims of the patent, *even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.*" *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 2006 U.S. App. LEXIS

11675, at \*3 (Fed. Cir. May 11, 2006) (emphasis added) quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). As further held by the Federal Circuit in *InPro, supra*, at \*3, "neither do the claims enlarge what is patented beyond what the inventor has described as the invention [5% and above]," quoting *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).

LPM also asserts that KBC does not address infringement under the doctrine of equivalents. However, the holding by the Federal Circuit in *Inpro* noted above is applicable to the doctrine of equivalents. A statement by the inventors in their specification as to what *their invention* covers, as in this case, is applicable to both literal infringement and the doctrine of equivalents. Also, *see SciMed, supra*, holding that a disclaimer in the specification (disclaiming dual lumen catheters) precludes application of the doctrine of equivalents to such a feature. Likewise, in the case at bar, the '062 inventors stated in their specification that orange oil percentages below 5% were insufficient to produce the cleaning necessary for *their invention*.

Further, LPM cannot now raise the doctrine of equivalents for the first time when KBC previously requested LPM to state the basis for its claim of infringement and LPM only asserted literal infringement. See exhibit A hereto.

LPM also argues claim differentiation since non asserted claim 1 recites a 5% minimum. However, a similar argument was made and rejected in *Inpro, supra*.

> *Inpro* invokes the doctrine of claim differentiation, and points out that unasserted claims 2, 24, and 33 refer specifically to a 'parallel bus interface,' and that unasserted claims 3, 25 and 32 refer to a 'direct access' parallel bus. *Inpro* argues that the presence of these limitations of the host interface in the unasserted claims demonstrates that the broader claim 34 is not limited to a parallel bus interface involving direct access.

6

*Inpro, supra* at *2. In rejecting this argument, the Federal Circuit noted that "[t]he boundaries of patented inventions are set forth in the claims, *construed in light of the description in the specification ....*" *Id*, emphasis added. Here, the specification plainly provides that the orange oil minimum is 5%.

LPM in its "answering brief" (at 4) tries to distinguish *Inpro* but is unable to do so. LPM's argument appears to be that there was one embodiment in *Inpro* whereas "the '062 patent described in the specification numerous volumes of orange oil and specified that orange oil still has a cleaning effect at a volume of 5%." However, contrary to LPM's assertion, each sample tested in the '062 specification was 5% or above supporting the inventors' statement that *their invention* has a 5% minimum.

LPM does not even try to distinguish *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) (specification limited claims to catheters with coaxial lumens and disclaimed catheters with dual lumens). Likewise, in the case at bar, the specification limits the invention to orange oil percentages of 5% and above and disclaims as insufficient orange oil percentages below 5%.

LPM in its memorandum in support of its cross-motion refers (at 13) to a prior Andrew Jergens (now KBC) case but fails to recognize that the patentee in that case withdrew his claim for infringement after he learned how small the $CoQ_{10}$ percentage was in the accused product. *Q-Pharma Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1298 (Fed. Cir. 2004). In contrast, in the case at bar, LPM refused to withdraw its claim for infringement even after KBC's counsel advised prior to the filing of an answer in this case that the accused product had an orange oil percentage of less than        in comparison to the 5% minimum set forth in the specification.

7

## The Accused KBC Lotions Are Not Skin Cleaning Compositions

The '062 inventors describe in their specification what they mean by a skin cleaning composition. More particularly, they state that "[t]he present invention generally relates to cleaning compositions suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives and the like" (col. 1, ll. 5-9) and "[a]nother object of the present invention is to provide a skin cleaning compound suitable for cleaning non-water soluble products such as grease, caulking, adhesives, sealants, tar, oils, ink and the like" (col. 2, ll. 12-15). Nowhere in the specification is a skin cleaning composition described as a lotion which when applied may result in the flaking off of dead skin. Accordingly, LPM's attempt to rewrite the specification to change a lotion into a skin cleaning composition must be rejected as contrary to the inventors' definition of *their invention* in the '062 specification with respect to both literal infringement and the doctrine of equivalents. *Inpro, supra.* Further, as noted above, LPM cannot now raise the doctrine of equivalents for the first time when KBC previously requested LPM to state the basis for its claim of infringement and LPM only asserted literal infringement. See Exhibit A hereto. Therefore, the accused lotions (as distinguished from the accused facial wash and body cleanser) are not skin cleaning compositions as required by claims 6 and 9.

## CONCLUSION

For the foregoing reasons, KBC's motion for summary judgment of non-infringement should be granted and LPM's cross-motion for summary judgment of infringement against the replaced March 8, 2005 motion should be denied.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Stephen G. Baxter
Richard L. Chinn
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314
Tel: (703) 413-3000

Dated:  July 20, 2006
Public Version Dated:   July 27, 2006

743022

By:   _/s/ David E. Moore_____
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        Hercules Plaza, 6th Floor
        1313 N. Market Street
        P.O. Box 951
        Wilmington, DE  19899-0951
        Tel: (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendant*
*Kao Brands Co.*

9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 27, 2006, the attached document

was hand-delivered to the following persons and was electronically filed with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF:

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE 19801

Francis G.X. Pileggi
Fox Rothschild LLP
919 Market Street
Suite 1300
Wilmington, DE 19801

I hereby certify that on July 27, 2006, I have Electronically Mailed the documents

to the following non-registered participants:

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
rjschutz@rkmc.com

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, NW
Washington, DC 20006
raauchter@rkmc.com
jrburatti@rkmc.com

John F. Ward
Ward & Olivo
382 Springfield Avenue
Summit, NJ 07901
wardj@wardolivo.com

By:    /s/ David E. Moore
       Richard L. Horwitz
       David E. Moore
       Potter Anderson & Corroon LLP
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE 19899-0951
       (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

673089