IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 04-1507 (SLR) |
| v. | ) |
| | ) |
| BATH & BODY WORKS, INC.; | ) |
| LIMITED BRANDS, INC.; | ) **PUBLIC VERSION** |
| KAO BRANDS CO. (f/k/a THE ANDREW | ) |
| JERGENS COMPANY); and | ) |
| KAO CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF ROBERT Y. LOCHHEAD, Ph.D IN SUPPORT OF KBC'S
(1) OPPOSITION TO LPM'S CROSS-MOTION FOR SUMMARY JUDGMENT
OF INFRINGEMENT, D.I. 262 AND (2) REPLY TO LPM'S OPPOSITION TO
KBC'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT, D.I. 290**

OF COUNSEL:

Arthur I. Neustadt
Stephen G. Baxter
Richard L. Chinn
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314
Tel: (703) 413-3000

Dated: July 20, 2006
Public Version Dated: July 27, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel.: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Kao Brands Co*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) C.A. No. 04-1507 (SLR) | |
| BATH & BODY WORKS, INC.; LIMITED ) | |
| BRANDS, INC.; KAO BRANDS CO. ) | |
| (f/k/a THE ANDREW JERGENS ) | |
| COMPANY); and KAO CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF ROBERT Y. LOCHHEAD, Ph.D IN SUPPORT OF KBC'S
(1) OPPOSITION TO LPM'S CROSS-MOTION FOR SUMMARY JUDGMENT
OF INFRINGEMENT, D.I. 262 AND (2) REPLY TO LPM'S OPPOSITION TO
KBC'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT, D.I. 290**

1. I am a Professor in the School of Polymers and High Performance Materials, the University of Southern Mississippi, Hattiesburg, Mississippi. I joined the department in 1990 and rose through the ranks from Associate Professor to Professor. I have also served in the capacities of Chair, Director and Interim Director as well as serving as the Dean of the College of Science and Technology at the University of Mississippi. Prior to joining the faculty at the University of Southern Mississippi, I was R&D Manager for Hydrophilic Polymers at BF Goodrich, Avon Lake and Brecksville, Ohio. My curriculum vitae is attached hereto as exhibit A.

2. I have reviewed the '062 patent and its prosecution history and the accused products.

CONFIDENTIAL

3. I am aware of but disagree with plaintiff LPM's assertion that the KBC accused products infringe claims 6 and 9 of the '062 patent. These products do not infringe for the following reasons.

4. Claim 6 requires "[a] skin cleaning composition for external use on human tissues" and claim 9 requires "[a] cleaning composition for use on human skin."

5. The Curél Ultra Healing lotion is a lotion. It is not a skin cleaning composition as required by claims 6 and 9.

6. The '062 patent defines the cleaning composition as one used to remove unwanted foreign substances from the skin. Thus, the specification states

> The present invention generally relates to cleaning compositions suitable for external application to human skin tissue in order to *remove unwanted substances* such as tar, caulking compounds, sealants, adhesives and the like. Col. 1, ll. 5-9, emphasis added.
>
> [T]he present invention is particularly adapted for cleaning non-water soluble products *from the human skin* in a safe, effective manner. Col. 1, ll. 11-14, emphasis added.
>
> A wide variety of cleaning compositions are known for external application to skin tissue in order to *remove dirt and unwanted materials*. Col. 1, ll. 17-19, emphasis added.
>
> [N]umerous substances with which the hands may be *soiled* do not respond to ordinary soap compositions. Col. 1, ll. 22-24, emphasis added.
>
> Examples of substances that are *difficult to remove* include grease, tar, oils, ink, caulking materials, adhesives, sealants, gums, cosmetics and other non-water soluble products. Col. 1, ll. 24-27, emphasis added.
>
> Another object of the present invention is to provide a skin cleaning compound *suitable for cleaning* non-water soluble products such as grease, caulking, adhesives, sealants, tar, oils, ink and the like. Col. 2, ll. 12-15, emphasis added.

2

CONFIDENTIAL

> Still a further object of the present invention is to provide a skin cleaning composition that ... *removes unwanted substances from the human skin* .... Col. 2, ll. 22-25, emphasis added.
>
> In each case, the emulsions were able to clean all caulking materials and tars, including silicone and polyurethane based caulking compounds as well as oil and grease *from the skin*. Col. 5, ll. 16-19, emphasis added.
>
> With respect to Sample XIV, the test group reported that cleaning properties were substantially reduced; Sample XIV *could not effectively clean* tar or caulking compounds. Col. 6, ll. 41-44, emphasis added.
>
> Sample XVII was reported to have approximately 80% of the cleaning effectiveness of Sample V in *removing all of the tested materials* .... Col. 6, ll. 51-55, emphasis added.
>
> According to the above, Applicants prefer the compositions set forth in Sample V and Sample XIX for use in *cleaning unwanted materials from human skin*. Col. 8, ll. 19-20, emphasis added.

7. Thus, as stated above, the '062 patent defines a skin cleaning composition as one to remove unwanted foreign substances from human skin.

8. The Curél Ultra Healing lotion is not a skin cleaning composition as required by claims 6 and 9 since its purpose is not to remove unwanted foreign substances from the skin. Rather, it is a lotion whose purpose is to treat and heal the skin. It is applied to the skin and left in place and is not used to clean, wash off and remove unwanted foreign substances.

9. LPM's conclusion that a lotion is a skin cleaning composition since its use may result in the removal of a small amount of dried skin is contrary to the '062 patent which defines a cleaning composition as one which removes unwanted foreign substances from the skin.

3

CONFIDENTIAL

10. For the reasons noted above with respect to the Curél Ultra Healing lotion, the discontinued Curél Extreme Care body lotion also did not infringe claims 6 or 9 of the '062 patent.

11. Claims 6 and 9 of the '062 patent require that the skin cleaning composition include "orange oil."

12. Claims 6 and 9 of the '062 patent cannot be construed to cover any orange oil percentage (by volume) less than 5% since the '062 patent specifically states that any such percentage will not adequately clean the skin.

13. As reported in the '062 patent, sample XIV (5% orange oil), sample XV (10% orange oil), sample XVI (15% orange oil) and sample XVII (25% orange oil) were tested.

> Samples XIV-XVII were prepared to have volume percents of orange oil approximately 5%, 10%, 15% and 25%, respectively. ... These Samples XIV-XVII were given to the test group to subjectively evaluate cleaning effectiveness. Col. 6, ll. 36-41.

14. Sample XIV (5% orange oil) could not clean a number of unwanted foreign substances from the skin and, indeed, could only clean cosmetics (the easiest to clean).

> With respect to Sample XIV, the test group reported that *cleaning properties were substantially reduced*; Sample XIV *could not effectively clean* tar or caulking compounds. Indeed, Sample XIV was *only effective* in removing cosmetics from the skin. Col. 6, ll. 41-45, emphasis added.

15. Sample XV (10% orange oil), although better than Sample XIV, still could not remove some unwanted foreign substances.

> Sample XV *eventually* was able to remove silicone caulking compounds but *was unable* to remove

4

CONFIDENTIAL

polyurethane caulkings or tar. Col. 6, ll. 46-48, emphasis added.

16. The '062 patent specifies that, although the composition can have as little as 5% orange oil to clean cosmetics (the easiest to clean), a higher percentage is necessary to clean other substances from the skin.

> From these tests, Applicants concluded that, *with respect to cosmetics*, a composition according to the present invention *could have as little as 5% by volume of orange oil* although it was preferable to have a cleaning composition having at least 25% by volume of orange oil. Col. 6, ll. 56-61, emphasis added.

17. This 5% minimum for orange oil is set forth throughout the '062 patent.

> Preferably the orange oil accounts for *between 5% and 60%* by volume, and it [is] further preferred that the composition contains 40% orange oil by volume. Abstract, cover page, emphasis added.

> The present invention, then, provides a skin cleaning composition which is adapted for external use on human tissues. Broadly, this composition comprises a first ingredient being *between five percent (5%)* and sixty percent (60%) by volume of orange oil .... Col. 2, ll. 25-29, emphasis added.

> the inventors have concluded that a suitable skin cleaning composition can be prepared wherein the skin composition has a first ingredient of *between 5%* and 60% by volume of orange oil .... Col. 8, ll. 39-42, emphasis added.

18. The Curél Ultra Healing lotion has an orange oil percentage less than 5%, less than        and even less than        , i.e.,        Thus, the Curél Ultra Healing lotion does not meet the orange oil limitation of claims 6 and 9.

19. The orange oil percentage in the discontinued Curél Extreme Care body lotion, body cleanser and facial wash is roughly the same as that in the Curél Ultra

5

CONFIDENTIAL

Healing lotion          and, therefore, also does not meet the orange oil limitation of claims 6 and 9.

20. Although immaterial for the reasons set forth above, LPM's conclusion that an orange oil percentage of 0.01% is sufficient to clean human skin in accordance with the '062 patent is incorrect. Indeed, such a conclusion would be contrary to the '062 patent which specifies a minimum of 5% for cosmetics (the easiest to clean). Although LPM refers to Kao patent 5,013,485 this patent is not directed to a skin cleaning composition and does not indicate that an orange oil percentage of 0.01% would be effective to adequately clean human skin.

I declare under penalty of perjury that the foregoing is believed to be true and correct.

Date: July 19, 2006

Robert Y. Lochhead, Ph.D.

Public Version Dated: July 27, 2006

CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 27, 2006, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE 19801

Francis G.X. Pileggi
Fox Rothschild LLP
919 Market Street
Suite 1300
Wilmington, DE 19801

I hereby certify that on July 27, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
rjschutz@rkmc.com

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, NW
Washington, DC 20006
raauchter@rkmc.com
jrburatti@rkmc.com

John F. Ward
Ward & Olivo
382 Springfield Avenue
Summit, NJ 07901
wardj@wardolivo.com

By: /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

673089