IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1507 (SLR) |
| | ) |
| BATH & BODY WORKS, INC.; LIMITED BRANDS, INC.; KAO BRANDS CO. (f/k/a THE ANDREW JERGENS COMPANY); and KAO CORPORATION, | ) **PUBLIC VERSION** |
| | ) |
| Defendants. | ) |

**KBC'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY BASED UPON
<u>LACK OF WRITTEN DESCRIPTION</u>**

OF COUNSEL:

Arthur I. Neustadt
Stephen G. Baxter
Richard L. Chinn
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314
Tel: (703) 413-3000
Fax: (703) 413-2220

Dated: July 21, 2006
Public Version Dated: July 27, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel.: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Kao Brands Co.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL BACKGROUND ............................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    Contrary to LPM's Assertion, There Is No Written Description For An
    Orange Oil Percentage of 0.035% or Less .................................................................... 2

    Contrary to LPM's Assertion, There Is No Written Description For A
    Lotion Which When Applied May Remove Some Dead Skin ...................................... 6

CONCLUSION ..................................................................................................................... 7

# TABLE OF AUTHORITIES

*LizardTech Inc. v. Earth Resource Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) ............................................................................. 5

*Q-Pharma Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) ............................................................................. 5

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ............................................................................. 5

## FACTUAL BACKGROUND

As set forth in KBC's opening brief, the '062 patent-in-suit is directed to a skin cleaning composition comprising orange oil, a moisturizer and oatmeal. The specification provides that the orange oil must be at least 5% (by volume) of the composition in order to provide sufficient cleaning. Yet the asserted claims simply recite orange oil without the 5% restriction. The accused KBC products have far less than even            orange oil (           or less). This results in two conclusions. First, there can be no infringement. Second, based upon LPM's assertion that the orange oil can be far less than even      of the composition, the asserted claims are invalid for lack of a written description since the specification plainly provides that the orange oil must be at least 5% of the composition to provide sufficient cleaning.

The asserted claims also lack a written description in one other respect. The invention is directed to, and the asserted claims specifically recite "[a] skin cleaning composition" and "[a] cleaning composition for use on human skin." However, the primary accused product is not a skin cleaning composition but, rather, is a lotion to heal dry skin. Based upon LPM's lotion infringement assertion (a lotion is a cleaning composition because applying it may remove some dead skin), the asserted claims are invalid for lack of a written description since the specification says nothing about removing dead skin as the purpose of the invention and, on the contrary, plainly provides that the invention is directed to "a skin cleaning compound suitable for cleaning non-water soluble products such as grease, caulking, adhesives, sealants, tar, oils, ink and the like" (col. 2, ll. 12-15).

## ARGUMENT

### Contrary to LPM's Assertion, There Is No Written Description For An Orange Oil Percentage of          or Less

LPM asserts (D.I. 301 at 5) that "[n]owhere does the '062 patent 'plainly state[] that an orange oil percentage below 5% is not satisfactory to achieve sufficient cleaning.'" However, the '062 inventors plainly state in their specification that "a composition according to the present invention *could have as little as* 5% by volume of orange oil although it was preferable to have a cleaning composition having at least 25% by volume of orange oil." Col. 6, ll. 56-61, emphasis added. The phrase *"could have as little as"* means that this is the minimum to achieve the purpose of the invention which is, of course, sufficient cleaning.

LPM has an entire section of its brief (at 3-4) with the title that "orange oil volumes less than 5% are described in the '062 patent specification." However, no such volume less than 5% is mentioned in the specification. Apparently, LPM views the broad recitation of "orange oil" as a recitation of a volume less than 5%. There are twenty-three samples set forth in the '062 specification and each has a stated orange oil percentage of 5% or greater, to wit:

2

| Sample | Orange Oil Percentage |
|---|---|
| I | 39 |
| II | 34.5 |
| III | 37 |
| IV | 42.75 |
| V | 36.5 |
| VI | 36.5 |
| VII | 36.5 |
| VIII | 36.5 |
| IX | 36.5 |
| X | 80 |
| XI | 70 |
| XII | 60 |
| XIII | 50 |
| XIV | 5 |
| XV | 10 |
| XVI | 15 |
| XVII | 25 |
| XVIII | 100 |
| XIX | 40.5 |
| XX | 50 |
| XXI | 50 |
| XXII | 50 |
| XXIII | 12.5 |

3

'062 patent, columns 3-7. Thus, the specification provides twenty-three samples having orange oil percentages 5% or above and no samples having percentages below 5%. This, of course, is entirely consistent with the statement by the '062 inventors in their specification that "a composition according to the present invention *could have as little as 5% by volume of orange oil* although it was preferable to have a cleaning composition having at least 25% by volume of orange oil." Col. 6, ll. 56-61, emphasis added.

LPM also asserts (at 1) that "[t]he specification discusses test compositions with many volumes of orange oil, illustrating the breadth of the claim term." However, the "breadth" of orange oil percentages as shown above is limited to the range of 5% and above.

LPM refers (at 1) to cosmetics as hard to clean which is misleading since cosmetics were the easiest to clean of the materials to be cleaned by the invention.

> With respect to Sample XIV, the test group reported that cleaning properties were substantially reduced; *Sample XIV could not effectively clean tar or caulking compounds. Indeed, Sample XIV was only effective in removing cosmetics from the skin.*

Col. 6, ll. 41-45, emphasis added.

LPM refers (at 6) to a statement by BBW's (not KBC's) expert that there is some cleaning down to the 1% range. However, the '062 inventors have plainly stated in their specification as noted above that any such cleaning would be insufficient for *their invention* which has a 5% minimum for sufficient cleaning.

4

LPM asserts (at 7) without any support whatsoever that "the '062 patent specification clearly contemplates, describes, enables and even tests orange oil volumes both lower and higher than five percent." However, as noted above, there were twenty-three samples mentioned in the specification and each had an orange oil percentage of 5% or greater. Thus, LPM's statement that the '062 patent specification "tests orange oil volumes both lower and higher than five percent" is, as noted above, demonstrably false.

LPM refers (at 6) to a prior Andrew Jergens (now KBC) case but fails to recognize that the patentee in that case withdrew his claim for infringement after he learned how small the $CoQ_{10}$ percentage was in the accused product. *Q-Pharma Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1298 (Fed. Cir. 2004). In contrast, in the case at bar, LPM refused to withdraw its claim for infringement even after KBC's counsel advised prior to the filing of an answer in this case that the accused product had an orange oil percentage of less than          in comparison to the 5% minimum set forth by the '062 inventors in their specification.

LPM tries (at 7) to distinguish *LizardTech* (and *Tronzo*) on the basis that "the '062 patent discloses many volumes of orange oil." However, as noted above, each of the many volumes of orange oil disclosed in the '062 patent are within the range of 5% and above and none are below 5%. Accordingly, *LizardTech* (and *Tronzo*) are directly applicable.

LPM refers (at 3) to a Kao patent directed to a liquid detergent composition for household use for its disclosure of the use of 0.01% orange oil. However, this patent cannot provide a written description for the '062 patent where the inventors plainly state

5

in their specification that sufficient cleaning for *their invention* requires an orange oil percentage of 5% or greater.

Thus, the '062 specification with its clear and unequivocal statement that an orange oil percentage of 5% or greater is necessary for sufficient cleaning (and the twenty-three samples in the specification which support this conclusion) includes no written description that an orange oil percentage of           or less would be satisfactory for sufficient cleaning.

### Contrary to LPM's Assertion, There Is No Written Description For A Lotion Which When Applied May Remove Some Dead Skin

The '062 specification plainly states that "[t]he present invention generally relates to cleaning composition suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives and the like" and that "[a]nother object of the present invention is to provide a skin cleaning compound suitable for cleaning non-water soluble products such as grease, caulking, adhesives, sealants, tar, oils, ink and the like." Col. 1, ll. 5-9; col. 2, ll. 12-15. LPM does not dispute that the accused KBC lotions do not remove unwanted substances such as tar, caulking compounds and the like. Rather, to assert infringement, LPM argues that the skin cleaning composition recited in claims 6 and 9 is met by a lotion since, when applied, it may remove some dead skin. However, the '062 specification includes no written description that the invention set forth therein is concerned in the least with removing dead skin. Accordingly, there is no written description of any invention directed to the removal of dead skin.

LPM's "moisturizer" argument is difficult to discern. Apparently, LPM's argument is that since a cleaning composition can include a moisturizer and since a lotion

6

can include a moisturizer, it necessarily follows that a lotion is a skin cleaning composition. However, this makes no sense whatsoever. It would be expected that a lotion whose purpose is to heal dry skin would include a moisturizer. Likewise, it would not be unusual for a skin cleaning composition to also include a moisturizer so that it can moisturize as it cleans. However, this does not transform a lotion into a skin cleaning composition.

Thus, there is no written description for a composition whose purpose is to remove dead skin.

## CONCLUSION

For the foregoing reasons, KBC's motion should be granted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Stephen G. Baxter
Richard L. Chinn
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314
Tel: (703) 413-3000
Fax: (703) 413-2220

Dated:  July 21, 2006
Public Version Dated:  July 27, 2006

743036

By: /s/ David E. Moore
  Richard L. Horwitz (#2246)
  David E. Moore (#3983)
  Hercules Plaza, 6th Floor
  1313 N. Market Street
  P.O. Box 951
  Wilmington, DE  19899-0951
  Tel: (302) 984-6000
  rhorwitz@potteranderson.com
  dmoore@potteranderson.com

*Attorneys for Defendant*
*Kao Brands Co.*

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 27, 2006, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE 19801

Francis G.X. Pileggi
Fox Rothschild LLP
919 Market Street
Suite 1300
Wilmington, DE 19801

I hereby certify that on July 27, 2006, I have Electronically Mailed the documents to the following non-registered participants:

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
rjschutz@rkmc.com

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, NW
Washington, DC 20006
raauchter@rkmc.com
jrburatti@rkmc.com

John F. Ward
Ward & Olivo
382 Springfield Avenue
Summit, NJ 07901
wardj@wardolivo.com

By:   /s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

673089