IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | REDACTED PUBLIC VERSION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1507-SLR |
| | ) | |
| BATH & BODY WORKS, INC.; LIMITED | ) | |
| BRANDS, INC.; KAO BRANDS CO. | ) | |
| (f/k/a THE ANDREW JERGENS | ) | |
| COMPANY); and KAO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**LP MATTHEWS' OPPOSITION TO THE LIMITED DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(800) 553-9910

*Attorneys for LP Matthews, L.L.C.*

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
(202) 775-0725

Dated: July 27, 2006
171473.1

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS................................................1

SUMMARY OF THE ARGUMENT.....................................................2

ARGUMENT...........................................................................3

      A.    Claims 6 And 9 Require That An Accused Composition Clean Human Skin............................................................................4

      B.    Claims 6 And 9 Require That An Accused Composition Contain 0.01% Or More Orange Oil, Which Cleans At That Volume.......................5

      C.    Claim 6 Requires That An Accused Product Contains At Least One Oat Grain Derivative Product That Acts As An Emulsifying Agent.............7

      D.    Claim 9 Requires That An Accused Product Have A pH Within The Range Of Approximately 4.0—6.5...............................................8

CONCLUSION..........................................................................9

# TABLE OF AUTHORITIES

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)............................................................6, 7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................3

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)............................................................4, 5

*Interactive Gift Express, Inc. v. CompuServe, Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001)............................................................3

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir 1999)............................................................3, 4

*Modine Mfg. Co. v. United States Int'l Trade Comm'n*,
    75 F.3d 1545 (Fed. Cir. 1996)............................................................6

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
    275 F.3d 1371 (Fed. Cir. 2002)............................................................6

*Varco, L.P. v. Pason Sys. USA Corp.*,
    436 F.3d 1368 (Fed. Cir. 2006)............................................................5

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. filed a complaint for patent infringement against defendants Kao Brands Company (formerly known as The Andrew Jergens Company), Kao Corporation, Limited Brands, Inc., and Bath and Body Works, Inc. (D.I. 1.)  LP Matthews amended the Complaint on February 2, 2005.  (D.I. 5, 8.) This Court entered a Scheduling Order on June 9, 2005.  (D.I. 39.)  Fact discovery closed on January 27, 2006.  (D.I. 39).  Expert discovery closed on May 12, 2006.  (D.I. 39.)  On June 15, 2006, the parties filed a Joint Claim Construction Statement.  (D.I. 228.)  The Limited defendants[1] served four expert reports on (1) patent law (Michael H. Davis, Esq.), (2) invalidity (John C. Carson, M.S.), (3) noninfringement (John C. Carson, M.S.), and (4) damages (Christopher L. Fern).  On June 22, 2006, LP Matthews filed *Daubert* motions to exclude Mr. Davis' opinions (D.I. 234, 238) and part of Mr. Carson's opinions (D.I. 232, 236).  On June 29, 2006, the parties filed Opening Claim Construction Briefs. (D.I. 244, 254, 255.)  The deadline for filing opening summary judgment motions was extended from June 29 until July 6, 2006.  (D.I. 243.)

On July 6, 2006, the Limited defendants filed a Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,063,062.  (D.I. 259.)  LP Matthews submits this memorandum in opposition to that motion.

---

[1] "Limited defendants" collectively refers to defendants Limited Brands, Inc., and Bath and Body Works, Inc.

## SUMMARY OF THE ARGUMENT

The Limited defendants' motion is wholly based on unsupported attorney argument, an erroneous construction of the '062 patent, and supposed "facts" that freely contradict their own witnesses' deposition testimony. Their motion is *not* based on any legal authority supporting defendants' narrow construction of claims 6 and 9. And it is *not* based on any "undisputed facts" entitling defendants to summary judgment. Indeed, the only undisputed facts and proper authority point in the opposite direction – to summary judgment for LP Matthews.

The '062 patent claims compositions that clean human skin and contain more than 0.01% orange oil, an oat ingredient, and a moisturizer. (Ltd Ex. A at 9:3-10:25.[2]) LP Matthews asserts that the Limited defendants infringe claims 6 and 9 of the '062 patent by at least making and selling 27 accused products. Claims 6 and 9 read:

> 6.    A skin cleaning composition for external use on human tissues, comprising orange oil, a pharmaceutically acceptable moisturizer for human skin and an oat grain derivative product as an emulsifying agent, wherein said composition has a pH within a range of 4.5 to 6.0, inclusively.

> 9.    A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer.

(*Id.* at 10:1-6, 13-17.)

Properly construed, defendants' accused products read on each element of claims 6 and 9. By the Limited defendants' own admission, each accused product cleans, and

---

[2] In this Memorandum, "Ltd Br." refers to the Opening Brief in Support of Defendants Bath & Body Works, Inc.'s and Limited Brands, Inc.'s Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,063,062. (D.I. 260.) "Ltd Ex." refers to exhibits to the Hill Declaration, filed in support of Ltd Br. "LPM Ex." refers to exhibits attached to this Memorandum.

contains more than 0.01% orange oil (a volume sufficient for the orange oil to act as a solvent and therefore clean) and an oat ingredient. Claim 6 requires an accused product to have an approximate pH within the range 4.5-6.0 or 4.0-6.5. According to the Limited defendants' specifications and certificates of analysis, their products meet the pH claim element of claim 6 as well. Thus, it is LP Matthews – not defendants – who should win summary judgment. At a minimum, there are disputed facts that preclude any summary judgment in defendants' favor.

ARGUMENT

As movants, the Limited defendants bear the burden of proving in their opening brief that no dispute of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The Court should resolve any disputed fact questions here in LP Matthews' favor. *Anderson*, 477 U.S. at 255. Viewed in the appropriate light, the Limited defendants' arguments and evidence fail to meet their burden of establishing non-infringement.

The Limited defendants correctly state that determining infringement requires a two-step analysis where the court must first interpret the claims of the patent as a matter of law and then compare the construed claims to the accused products to determine whether each claim element exists in that product. (Ltd Br. at 9-10.) It is also true that claim interpretation "must begin and remain centered on the language of the claims themselves." *Interactive Gift Express, Inc. v. CompuServe, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). "The general rule is that terms in the claim are to be given their ordinary and accustomed meaning." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63

(Fed. Cir 1999). Applying these principles here, defendants' accused products read on the clear language and ordinary meaning of claims 6 and 9.

**A.    Claims 6 And 9 Require That An Accused Composition Clean Human Skin**

Defendants assert that their products are not cleaning products, based solely on an erroneous and extremely narrow interpretation of the '062 patent, and in direct contravention to their own testimony.

**REDACTED**

Second, that defendants claim their products do not remove "tar, caulking compounds, sealants, adhesives, and the like" described in the specification does not dictate summary judgment in their favor. While some aspects of the invention may be described in the specification, an applicant is not required to conceive of every use to which his invention may be put. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com Inc.,*

289 F.3d 801, 809 (Fed. Cir. 2002) (citing 35 U.S.C. § 271 (1994) and *Roberts v. Ryer*, 91 U.S. 150, 157 (1875)). More importantly, this amounts to nothing more than a statement of one use of the invention, one that is not a claim element and should not be imported into the claims from the specification. *Varco, L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 1373 (Fed. Cir. 2006) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims."). Nonetheless, cosmetics are also among the "examples of substances that are difficult to remove" that led to the conception of the '062 patent. (Ltd Ex. A at 1:26.) Defendants have not contended that their products do not remove cosmetics, nor can they. At worst, a genuine issue of material fact thus remains as to whether the accused products clean; if anything, the evidence shows that the accused products do clean.

And, even under their erroneous claim construction, the Limited defendants infringe the asserted claims under the doctrine of equivalents. The accused lotions function (by treating unwanted substances on the skin to facilitate their removal) in the same way (by application to the skin) to achieve the same result (cleaning human skin). For this reason, too, defendants' motion should be denied.

## B.    Claims 6 And 9 Require That An Accused Composition Contain 0.01% Or More Orange Oil, Which Cleans At That Volume

Summary judgment must also be denied because defendants' argument further relies on improperly importing a minimum percentage limitation into claims 6 and 9 where none exists. "It is the *claims*, not the written description, which define the scope of the patent right...." *Catalina Mktg.*, 289 F.3d at 809 (Fed. Cir. 2002) (citing *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (emphasis in original)). The same way they do not require the cleaning specifically of tar or caulking compounds,

neither claim 6 nor claim 9 recites a minimum percentage of orange oil in the composition. (Ltd Ex. A at 10:1-6, 13-17.) Claim 6 of the '062 patent claims a composition "comprising orange oil." (*Id.* at 10:1-6.) Claim 9 requires "forty-five percent (45%) or less by volume of orange oil." (*Id.* at 10:13-17.) The plain meaning of the 45% or less range in claim 9 reaches to the endpoints of the range recited in the claim. See *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1375 (Fed. Cir. 2002) ("We agree with the district court that the plain meaning of a boiling point range...is that the range limits the composition to that stated in the claim.").[3] The specification of the '062 patent does not limit the claims to a minimum orange oil percentage either. For example, as stated in the '062 patent specification, "the more specific composition according to the preferred embodiment ... comprises forty-five percent (45%) or less by volume of orange oil." (Ltd Ex. A at 2:45-48.)

In contrast to claims 6 and 9, claim 1 was drafted to require at least 5% orange oil: "between five percent (5%) and sixty percent (60%) orange oil...." (*Id.* at 9:4-10.) Claim 1 includes a numerical limitation of 5%, but claims 6 and 9 do not. "It is usually incorrect to read numerical precision into a claim from which it is absent, *particularly when other claims contain the numerical limitation.*" *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1551 (Fed. Cir. 1996) (emphasis added); *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003) ("[W]hen a patent claim does not contain a certain limitation and another claim does, that

---

[3] In subsequent appellate history, the Supreme Court vacated and remanded the *Talbert* decision for consideration of whether the claim could read on equivalents outside of the stated range. On remand, the Federal Circuit concluded that equivalents were not available because the range was amended during prosecution. *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d 1355, 1358-59 (Fed. Cir. 2003). None of the orange oil percentage ranges or the pH range recited in the claims of the '062 patent were amended, entitling those ranges to a full scope of equivalents.

limitation cannot be read into the former claim in determining either validity or infringement."). Thus, properly construed, claims 6 and 9 require only that the accused product contain oil derived from an orange and require only enough of that ingredient to have a cleaning effect.

**REDACTED**

Should the Court import a 5% minimum limitation from the specification, which LP Matthews contends would contradict claim construction law and a plain reading of the text, there remains an insubstantial difference anyway between that volume and the amounts between 0.01% and 0.05% orange oil in defendants' products; both volumes act as solvents to clean. Furthermore, the percentage of orange oil in the accused products functions (as a solvent) in the same way (to treat an unwanted substance on the skin) to achieve the same result (cleaning human skin). These genuine issues of fact prevent judgment in the Limited defendants' favor.

### C.   Claim 6 Requires That An Accused Product Contain At Least One Oat Grain Derivative Product That Acts As An Emulsifying Agent

In blatant defiance of their own witnesses' testimony, defendants purport that they do not infringe claims 6 and 9 because none of their products contain oatmeal or oat grain derivative products. Indeed a factual dispute would seem to arise here simply between defendants' counsel's "undisputed" facts in support of this motion, and the deposition testimony of their witnesses. Claim 9 requires "oatmeal." (Ltd Ex. A at 10:13-17.)

**REDACTED**

Hence, they use oatmeal. Counsel for the Limited defendants asks

- 7 -

this Court not only to disregard the summary judgment standard and construe facts against LP Matthews, the non-movant, but to disregard their client's own conclusive admissions as well.

Claim 6 simply requires "*an* oat grain derivative product as *an* emulsifying agent." (Ltd Ex. A at 10:1-6.)

**REDACTED**

Taken together, these statements demonstrate that defendants' accused products infringe claims 6 and 9. At a minimum, in any event, they establish a genuine issue of material fact.

### D.   Claim 9 Requires That An Accused Product Have A pH Within The Range Of Approximately 4.0-6.5

The Limited defendants' interpretation of the required pH in claim 6 also contradicts the evidence. To be sure, claim 6 discloses a composition that has a "pH within a range of 4.5 to 6.0, inclusively." (Ltd Ex. A at 10:13-17.) Yet, this range in practice includes an actual pH of 4.0 to 6.5. One of skill in the art would understand that the inventors used colorimetric methods to measure pH – a method that does not permit precise measurements. (Ltd Ex. J at 5; LPM Ex. D at 130 - 131). pH measured colorimetrically has a precision of $\pm$ 0.5 pH units, which is consistent with the '062 patent's labeling of pH in Tables 1-3 as "approximate." (Ltd Ex. J at 5-6.) Indeed, all the

pH values in the patent, save one, are either an integer or an exact half of a pH unit. (Ltd Ex. J at 6; LPM Ex. D at 130:17 – 131:2.) Thus, the pH range limitations expressed in the '062 patent are only approximate values, due to the precision limits imposed by the colorimetric method. (Ltd Ex. J at 6; LPM Ex. D at 128:10-14.) Given this, the "pH within a range 4.5 to 6.0, inclusively" in claim 6 encompasses pH values as low as 4.0 and as high as 6.5. Because the Limited defendants' accused products fall within the 4.0 to 6.5 pH range, summary judgment must therefore be denied.

## CONCLUSION

For the foregoing reasons, the Limited defendants' Motion for Summary Judgment of Non-Infringement should be denied.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(800) 553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
(202) 775-0725

Dated:    July 21, 2006
171476.1

# EXHIBIT A

# REDACTED

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| .v. | ) |
| | ) Civil Action No. 04-1507-SLR |
| | ) Jury Trial Demanded |
| BATH & BODY WORKS, INC., | ) |
| LIMITED BRANDS, INC., | ) |
| KAO BRANDS CO. (f/k/a THE ANDREW | ) |
| JERGENS COMPANY), and | ) |
| KAO CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS BATH & BODY WORKS, INC.'S AND LIMITED
BRANDS, INC.'S JANUARY 13, 2006 SUPPLEMENTAL RESPONSE TO
PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANTS
BATH & BODY WORKS, INC. AND LIMITED BRANDS, INC.**

In accordance with paragraph 2(e) of the Scheduling Order, and pursuant to Rules

26(e) and 33 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Defendants Bath

& Body Works, Inc. and Limited Brands, Inc. (collectively the "Limited Defendants")

hereby supplement their responses to Plaintiff LP Matthews, L.L.C.'s ("LP Matthews")

*Third Set of Interrogatories to Defendants Bath & Body Works, Inc. and Limited Brands,*

*Inc.* The Limited Defendants incorporate by reference the "General Objections and

Comments" set forth in *Defendants Bath & Body Works, Inc.'s and Limited Brands,*

*Inc.'s Response to Plaintiff's First Set of Interrogatories to Defendants Bath & Body*

*Works, Inc. and Limited Brands, Inc.* and specific objections and responses set forth in

*Defendants Bath & Body Works, Inc.'s and Limited Brands, Inc.'s Response to Plaintiff's*

*Third Set of Interrogatories.*

## SUPPLEMENTAL RESPONSES TO INTERROGATORY NOS. 9-12

**INTERROGATORY NO. 9**

*If you contend that orange oil does not have a cleaning effect at a volume below 1% in the accused products, state the basis for that contention.*

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9

The Limited Defendants object to this Interrogatory No. 9 insofar as it seeks to discover information prepared in anticipation of litigation or for trial, or which is otherwise covered by the attorney work-product privilege or is subject to or falls within the scope of the attorney-client privilege, and will not supply information protected from discovery by virtue of any such privileges. The Limited Defendants also object to this request insofar as the term "cleaning effect" is vague and ambiguous. The Limited Defendants further object to this request as calling for expert discovery. The Limited Defendants further object to this interrogatory to the extent that it seeks information not within the control of the Limited Defendants. Subject to the foregoing specific objections, and the general objections referenced above, the Limited Defendants respond to Interrogatory No. 9 as follows:

The Limited Defendants' contention that orange oil does not have a cleaning effect at a volume below 1% is based in large part on statements found in the '062 patent itself. The results of the 23 tests referenced in the patent caused the inventors to conclude that a "skin cleaning composition can be prepared wherein the skin [cleaning] composition has a first ingredient of *between 5% and 60% by volume orange oil.*" While suggesting a composition preferably having 40% orange oil by volume, the '062 patent notes that at 5% orange oil by volume, "cleaning properties were substantially reduced." The '062 patent further states that, "with respect to cosmetics, a composition according to

the present invention could have *as little as 5%* by volume orange oil, although it was preferable to have a cleaning composition having at least 25% by volume orange oil."

None of the Bath & Body Works products accused of infringing the '062 patent contain anywhere near 5% orange oil. Furthermore, orange oil is not used as a cleanser in any of these products. To the extent that any of the accused products contain any orange oil or other orange ingredient, the contained ingredient is a component of the product, and is only present in amounts that are far less than 5%, and in many cases, far less than 1%. The Limited Defendants have no actual knowledge of the orange oil, if any is present, percentage of the accused third-party products they sell. However, upon information and belief, to the extent these products contain any orange oil it is less than 1%.

Documents previously produced by the Limited Defendants which contain information responsive to this interrogatory include BBW 000001-000079, 001233-001363, 003510-003543, 003757-003758, and 003763-003775.

**INTERROGATORY NO. 10**

*If you contend that none of the oat grain derivatives in any accused product have an emulsifying effect in that product, state the basis for that contention.*

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10**

The Limited Defendants object to this Interrogatory No. 10 insofar as it seeks to discover information prepared in anticipation of litigation or for trial, or which is otherwise covered by the attorney work-product privilege or is subject to or falls within the scope of the attorney-client privilege, and will not supply information protected from discovery by virtue of any such privileges. The Limited Defendants also object to this request insofar as the term "emulsifying effect" is vague and ambiguous. The Limited

Defendants further object to this request as calling for expert discovery. The Limited Defendants further object to this interrogatory to the extent that it seeks information not within the control of the Limited Defendants.

Further, the Limited Defendants object to this interrogatory as vague and ambiguous to the extent that the term "oat grain derivative" is unclear. Of the asserted claims from the '062 patent, this term is found only in independent claim 6, and the claims of the '062 patent have not yet been construed. It is therefore unclear as to what qualifies as an "oat grain derivative" at this time. Subject to the foregoing specific objections, and the general objections referenced above, the Limited Defendants respond to Interrogatory No. 10 as follows:

To the extent any of the accused products manufactured for Bath & Body Works contain "oat grain derivatives," the Limited Defendants contend that such oat grain derivatives do not act as emulsifiers in the accused products. The inventors of the '062 patent used between 28% and 42.75% of oatmeal or oat gum as emulsifiers in their own tests. Most of the accused products manufactured for Bath & Body Works contain less than 0.25% of any ingredient that could potentially be considered an oat grain derivative. None contain more than 3%. Upon information and belief, this would not be enough of an oat grain derivative to create an "emulsifying effect". Furthermore, to the extent any of the accused products manufactured for Bath & Body Works contain an oat grain derivative, that oat grain derivative is being used for the well-established soothing characteristics of oat-based products rather than for emulsification.

The Limited Defendants have no actual knowledge of the oat grain derivative content of the accused third-party products they sell, however, upon information and

belief, these products do not contain enough of an oat grain derivative for it to act "as an emulsifying agent", nor is it intended to act "as an emulsifying agent".

Documents previously produced by the Limited Defendants which contain information responsive to this interrogatory include BBW 000001-000079, 001233-001363, 003510-003543, 003757-003758, and 003763-003775.

**INTERROGATORY NO. 11**

*If you contend that any accused product does not contain oatmeal, state the basis for that contention.*

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11

The Limited Defendants object to this Interrogatory No. 11 insofar as it seeks to discover information prepared in anticipation of litigation or for trial, or which is otherwise covered by the attorney work-product privilege or is subject to or falls within the scope of the attorney-client privilege, and will not supply information protected from discovery by virtue of any such privileges. The Limited Defendants further object to this request as calling for expert discovery. The Limited Defendants further object to this interrogatory to the extent that it seeks information not within the control of the Limited Defendants. Subject to the foregoing specific objections, and the general objections referenced above, the Limited Defendants respond to Interrogatory No. 11 as follows:

As evidenced by the formula sheets that have been produced in this case, at least the following accused products do not contain oatmeal as an ingredient: True Blue Spa Better Lather Than Never Shower Bubble Bath & Shower Cream, True Blue Spa Good Clean Foam Face Wash, True Blue Spa Three Ring Citrus Scrub, Pure Simplicity Ginger Rejuvenating Body Scrub, Pure Simplicity Oat Oil Control Face Cleaner, Pure Simplicity

-5-

Everlasting Flower Night Nourisher, Pure Simplicity Oat Oil Control Face Moisturizer, Pure Simplicity Burdock Root Skin Mattifier, Pure Simplicity Ginger Rejuvenating Shower Foam, Pure Simplicity Fig Hydrating Body Bar, Pure Simplicity Ginger Rejuvenating Body Bar, Pure Simplicity Ginger Rejuvenating Body Lotion, Pure Simplicity Cocoa Restorative Body Balm, Pure Simplicity Fig Hydrating Body Balm, Pure Simplicity Ginger Rejuvenating Body Balm, Pure Simplicity Salt Toning Body Balm, Pure Simplicity Fig Hydrating Hand & Nail Cream, Pure Simplicity Ginger Rejuvenating Hand & Nail Cream, Cool Citrus Basil Body Lotion, Cool Citrus Basil Creamy Body Wash, Mango Mandarin Body Lotion, Mango Mandarin Skin Refining Body Scrub, Mango Mandarin Skin Renewal & Anti-Aging Body Wash, Mango Mandarin Creamy Body Wash, Mango Mandarin Skin Repair & Healing Body Butter, and Mango Mandarin Hand Repair & Healing Hand Cream.

The Limited Defendants have no actual knowledge of the oatmeal content of the accused third-party products they sell. However, upon information and belief, the Limited Defendants understand that at least the following products do not contain oatmeal: Murad Age Diffusing Serum, Murad Sheer Lustre Day Moisturizer, Murad Age Balancing Night Cream, Murad Skin Perfecting Lotion, Murad Acne Spot Treatment, Burt's Bees Orange Essence Facial Cleanser, Burt's Bees Citrus Facial Scrub, Davies Gate Lavender Oatmeal and Rice Bath, Davies Gate White Clover Oatmeal and Rice Bath, and Davies Gate Lemon Thyme Oatmeal and Rice Bath.

Documents previously produced by the Limited Defendants which contain information responsive to this interrogatory include BBW 001233-001363, 003510-003543, 003757-003758, and 003763-003775.

-6-

## INTERROGATORY NO. 12

*Identify your fixed and variable costs for each accused product sold since 1991.*

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12

The Limited Defendants object to this Interrogatory No. 12 to the extent that it seeks information not within the control of the Limited Defendants. The Limited Defendants also object to this interrogatory to the extent that it seeks information prior to the issue date of the patent-in-suit. The Limited Defendants further object to this interrogatory as overly broad and unduly burdensome. In addition, documents responsive to this Interrogatory No. 12, to the extent any such documents exist, have been made available to LP Matthews. From this information, LP Matthews is equally able to ascertain the information requested by this interrogatory by reviewing those documents. The Limited Defendants identify at least the following documents as being responsive to this Interrogatory: BBW 003849-004008, 004137, 004192-004197, 004204-004205, 004445-004446, 004631-004640, 004673-004675, 004676-004731, 004739-004749, and 007619-007827.

Respectfully submitted,

FOX ROTHSCHILD, L.L.P.

Dated: January 13, 2006

By:____/s/ Francis G.X. Pileggi_____
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
Fox Rothschild, LLP
Suite 1300
919 North Market Street
Wilmington, Delaware 19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com

-7-

E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com
E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath and Body Works, Inc.
Limited Brands, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this

13th day of January 2006 upon counsel of record at the address and manner listed below:

## VIA EMAIL AND FIRST CLASS MAIL, POSTAGE PREPAID

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi LLP
1801 K Street, Northwest
Washington, D.C. 20006

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899

## VIA EMAIL ONLY

Richard L. Horowitz
David Moore
Potter, Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 54402

Arthur I. Neustadt
Richard Chinn
Oblon, Spivak, McClelland, Maier & Neustadt PC
1940 Duke Street
Alexandria, Virginia 22314

Patrick R. Colsher

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LP MATTHEWS, L.L.C.,                          )
                                              )
                                              )
                Plaintiff,                    )
                                              )
        v.                                    )
                                              )  Civil Action No. 04-1507-SLR
                                              )  Jury Trial Demanded
BATH & BODY WORKS, INC.,                      )
LIMITED BRANDS, INC.,                         )
KAO BRANDS CO. (f/k/a THE ANDREW              )
JERGENS COMPANY), and                         )
KAO CORPORATION,                              )
                                              )
                Defendants.                   )

## DEFENDANTS BATH & BODY WORKS, INC.'S AND LIMITED BRANDS, INC.'S JANUARY 13, 2006 SUPPLEMENTAL RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANTS BATH & BODY WORKS, INC. AND LIMITED BRANDS, INC.

In accordance with paragraph 2(e) of the Scheduling Order, and pursuant to Rules 26(e) and 33 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Defendants Bath & Body Works, Inc. and Limited Brands, Inc. (collectively the "Limited Defendants") hereby supplement their responses to Plaintiff LP Matthews, L.L.C.'s ("LP Matthews") *Second Set of Interrogatories to Defendants Bath & Body Works, Inc. and Limited Brands, Inc.* The Limited Defendants incorporate by reference the "General Objections and Comments" set forth in *Defendants Bath & Body Works, Inc.'s and Limited Brands, Inc.'s Response to Plaintiff's First Set of Interrogatories to Defendants Bath & Body Works, Inc. and Limited Brands, Inc.* and specific objections and responses set forth in *Defendants Bath & Body Works, Inc.'s and Limited Brands, Inc.'s Response to Plaintiff's Second Set of Interrogatories to Defendants Bath & Body Works, Inc. and Limited Brands, Inc.*

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8

**INTERROGATORY NO. 8**

*Identify each product that defendant made, used, sold, offered for sale, or imported into the United States since 1991 that contains orange oil, one or more moisturizers, and one or more oat grain derivatives and identify each moisturizer and oat grain derivative in that product.*

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8

The Limited Defendants object to this Interrogatory No. 8 as overly broad and unduly burdensome in that it attempts to obtain information outside the permissible scope of discovery, and as not reasonably calculated to lead to the discovery of admissible information. The Limited Defendants further object to this interrogatory as calling for expert testing and discovery. Further, the Limited Defendants object to this interrogatory as vague and ambiguous to the extent that the term "oat grain derivative" is unclear. Of the asserted claims from the '062 patent, this term is found only in independent claim 6, and the claims of the '062 patent have not yet been construed. It is therefore unclear as to what qualifies as an "oat grain derivative" at this time.

The Limited Defendants also object to this interrogatory to the extent that it seeks information prior to the issue date of the patent-in-suit. The Limited Defendants further object to this Interrogatory to the extent that it seeks information regarding products outside the scope of the patent-in-suit. The patent-in-suit does not cover all products that contain "orange oil, one or more moisturizers, and one or more oat grain derivatives." Subject to the foregoing specific objections, and the general objections referenced above, the Limited Defendants respond to Interrogatory No. 8 as follows:

The Limited Defendants identify the products in its January 13, 2006 response to Plaintiff's Interrogatory No. 2 as products containing "orange" ingredients. These

-2-

products also contain one or more of the following "oat" ingredients: oat kernel protein, oat extract, sodium lauroyl oat amino acids, Unitanical oats, Actiphyte of oat, hydrolyzed oat protein, oat kernel oil, and oat protein powder. In addition, pursuant to Rule 33(d), Fed.R.Civ.P., the Limited Defendants state that the information sought by this request, to the extent that such information exists, may be found in the Limited Defendants' document production, including, for example, BBW 001304-001354, and the burden of extracting the information sought, if it is present, is substantially the same for the plaintiff as it is the Limited Defendants.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated: January 13, 2006

By:___/s/ Francis G.X. Pileggi___
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
Fox Rothschild, LLP
Suite 1300
919 North Market Street
Wilmington, Delaware 19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill
Michael J. Zinna
WARD & OLIVO
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866
E-mail: wardj@wardolivo.com
E-mail: hilld@wardolivo.com
E-mail: zinnam@wardolivo.com

*Attorneys for Defendants*
Bath and Body Works, Inc.
Limited Brands, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this

13th day of January 2006 upon counsel of record at the address and manner listed below:

### VIA EMAIL AND FIRST CLASS MAIL, POSTAGE PREPAID

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi LLP
1801 K Street, Northwest
Washington, D.C. 20006

Steven J. Balick
John G. Day
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899

### VIA EMAIL ONLY

Richard L. Horowitz
David Moore
Potter, Anderson & Corroon LLP
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19899

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 54402

Arthur I. Neustadt
Richard Chinn
Oblon, Spivak, McClelland, Maier & Neustadt PC
1940 Duke Street
Alexandria, Virginia 22314

Patrick R. Colsher

# EXHIBIT D

4/26/2006 Rhodes, Christopher

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF DELAWARE

3    - - - - - - - - - - - - - - x

4    L.P. MATTHEWS, L.L.C.,           :

5                 Plaintiff,    :

6         vs.                   : Civil Action

7    BATH & BODY WORKS, INC.;    : No. 04-1507 (SLR)

8    LIMITED BRANDS, INC.; KAO

9    BRANDS CO., (f/k/a THE        :

10   ANDREW JERGENS COMPANY);

11   and KAO CORPORATION,          :

12                 Defendants.   :

13   - - - - - - - - - - - - - - x

14   Deposition of CHRISTOPHER T. RHODES, Ph.D., a witness

15   herein, called for examination by counsel for Defendant

16   in the above-entitled matter, pursuant to notice, the

17   witness being duly sworn by Robert M. Jakupciak, a

18   Notary Public in and for the District of Columbia, taken

19   at the offices of Robins, Kaplan, Miller & Ciresi, L.L.P.,

20   1801 K Street, N.W., Washington, D.C., 20006, at 9:00 a.m.,

21   on April 26, 2006, and the proceedings being taken down

22   by Stenotype by Robert M. Jakupciak, RPR.

4/26/2006 Rhodes, Christopher

```
1
2     APPEARANCES:
3     On behalf of the Plaintiff:
4          JASON R. BURATTI, ESQUIRE
5          Robins, Kaplan, Miller & Ciresi, L.L.P
6          1801 K Street, N.W
7          Washington, D.C., 20006
8          (202) 736-2710
9     On behalf of Limited Defendants:
10         JOHN F. WARD, ESQUIRE
11         Ward & Olivo
12         798 Third Avenue
13         New York, New York  10017
14         (212) 697-6262
15    On behalf of Kao Corporation:
16         STEPHEN G. BAXTER, ESQUIRE
17         RICHARD L. CHINN, ESQUIRE
18         Oblon, Spivak, McClelland
19         Maier & Neustadt, P.C.
20         1940 Duke Street
21         Alexandria, Virginia  22314
22         (703) 413-3000
```

4/26/2006  Rhodes, Christopher

1          C O N T E N T S

2    THE WITNESS:  CHRISTOPHER T. RHODES, Ph.D.

3    EXAMINATION                          PAGE NO.

4         By Mr. Baxter ...................    4

5

6                                      .                    .

7

8              E X H I B I T S

9    RHODES EXHIBIT NUMBER            PAGE NO.

10   1     Curriculum Vitae ................   49

11   2     Rhodes Report ...................  109

12   3     Rhodes Updated Report ...........  109

13   4     '062 Patent .....................  133

14   5     '485 Patent .....................  150

15   6     Rhodes Responsive Report ........  216

16

17

18

19

20

21

22

4/26/2006  Rhodes, Christopher

```
1    Whereupon,
2                    CHRISTOPHER T. RHODES, Ph.D.,
3    called for examination by counsel for Defendant and
4    having been duly sworn by the Notary Public, was
5    examined and testified as follows:
6              EXAMINATION BY COUNSEL FOR DEFENDANT
7    BY MR. BAXTER:
8         Q.    Good morning.
9         A.    Good morning.
10        Q.    Could you please state your full name
11   for the record?
12        A.    Christopher Thomas Rhodes.  R-H-O-D-E-S.
13        Q.    Could you please state your current
14   address for the record?
15        A.    28 Prospect Avenue, Narragansett, Rhode
16   Island.
17        Q.    Is it Dr. Rhodes or Professor Rhodes or
18   Mr. Rhodes?
19        A.    Professor Rhodes is perfectly
20   satisfactory, thank you, sir.
21        Q.    My name is Steve Baxter, and I represent
22   the Kao defendants in this litigation.  Do you
```

4/26/2006 Rhodes, Christopher

1    Q.    So I just want to summarize.  It sounds

2    like to me what you are saying is that even in the

3    context of an emulsion, the, any differences in pH

4    values measured colorimetrically or

5    potentiometrically are due solely to precision and

6    that there is no mechanistic difference between

7    measuring pH colorimetrically in an emulsion and

8    measuring pH potentiometrically in an emulsion which

9    would give different values regardless of precision?

10          MR. BURATTI:  Objection to form.

11    A.    Counselor, that's rather a long question

12    and there are a number of points where I'm sure

13    inadvertently you've misrepresented my testimony.  I

14    did not say they were mechanistically.  I don't

15    think I ever used that modifier at all.

16          What I've said is, I think I said it

17    several times, that if you allow for the difference

18    in precision, as long as the two methods are carried

19    out appropriately, then they both of them should

20    give reliable data, but allowing for the difference

21    in precision.

22    Q.    I understand they might give reliable

1    data, but would -- putting precision aside, would

2    they give the same value?

3        A.        You cannot put precision aside, because

4    the precision is the number you get.  Let's

5    assume -- let me try this again one more time.

6                If I used a colorimetric method of

7    determining the pH of a skin lotion and the true pH

8    is 5.11, I would hope that if I used a

9    well-validated potentiometric method, in fact I

10   would go further and say I would expect that I would

11   get 5.11 or possibly 5.12, 5.10, like that.  But

12   with my colorimetric method, when I go to compare

13   with the color chart, I can't go to that precision,

14   and so I'm going to get a value of 5, and so there

15   will be differences in the values I'll get because

16   of the level of precision.

17                And I suggest that the patent is very

18   clear on this point.  It tells us in the tables that

19   they are approximate pH values.  And all the pH

20   values quoted, there's not one which is quoted to

21   the second decimal point.  And with one exception,

22   there is one pH value of 4.7.  But apart from that

4/26/2006 Rhodes, Christopher

1    exception, all the other values are given at either

2    a whole pH unit or half a pH unit.  4.5 or 4.

3        Q.    Can you measure a pH of 4.7

4    colorimetrically?

5        A.    Well, you take the chart and what you've

6    got on the chart is a color at the top at the most

7    alkaline range of that particular color paper and

8    you have got a color down at the bottom.  If you

9    were using this color paper, you see on the right

10   side of this chart that say 6, 5.5, 5, 4.5, 4 and so

11   on.  If you decided that you could interpolate

12   between, then indeed you might say 4.7.

13        But in general, using pH papers, a

14   precision of no better than plus/minus half a pH

15   unit is to be expected.

16        Q.    So is it proper to refer to a pH

17   measured colorimetrically as being 6.0 without a

18   plus or minus half pH unit?

19        MR. BURATTI:  Objection to form and same

20   standing objection to his line of questions.

21        A.    The patent very clearly indicates that

22   when the inventors were measuring pH, they knew that

**4/26/2006 Rhodes, Christopher**

1  they were not measuring it with great precision.

2  They specifically say in the tables approximate pH.

3  The reader is given that information.

4            You are now asking me should they not

5  have put a standard deviation with the value.  I

6  think that is expecting too much.  What they are

7  interested in is coming up with a skin lotion and

8  they give me a practical way of determining a pH

9  range.

10            MR. BAXTER:  Is it time to break for

11  lunch?

12            MR. BURATTI:  It is.  But before we do

13  that, I just want to put something on the record.

14  This pertains to counsel for the limited defendants

15  that's here.  Can you put an appearance in, John,

16  when you can?

17            The Kao defendants have waived defenses

18  based on pH and oat grain derivative elements in

19  this case.  They have denied L.P. Matthews discovery

20  on those elements, and L.P. Matthews in reliance on

21  the waiver of those defenses has foregone discovery

22  efforts.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of July, 2006, the attached **REDACTED PUBLIC VERSION OF LP MATTHEWS' OPPOSITION TO THE LIMITED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** was served upon the below-named counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esquire                                    <u>HAND DELIVERY</u>
Potter Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

Arthur I. Neustadt, Esquire                                    <u>VIA FEDERAL EXPRESS</u>
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, VA  22314

Francis G.X. Pileggi, Esquire                                  <u>HAND DELIVERY</u>
Fox Rothschild LLP
Suite 1300
919 North Market Street
Wilmington, DE  19801

John Ward, Esquire                                             <u>VIA FEDERAL EXPRESS</u>
Ward & Olivo
708 Third Avenue
New York, NY  10017


                                                      */s/ John G. Day*
                                                      _____

                                                      John G. Day