**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04-1507-SLR |
| BATH & BODY WORKS, INC.; LIMITED BRANDS, INC.; KAO BRANDS CO. (f/k/a THE ANDREW JERGENS COMPANY); and KAO CORPORATION, | ) | |
| Defendants. | ) | |

**LP MATTHEWS' MOTION TO STRIKE AND OPPOSITION TO THE LIMITED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF <u>UNENFORCEABILITY DUE TO ALLEGED INEQUITABLE CONDUCT</u>**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(800) 553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
(202) 775-0725

Dated: July 27, 2006
171473.1

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS....1

SUMMARY OF THE ARGUMENT....1

STATEMENT OF FACTS....2

A. The '062 Patent-in-Suit....2

B. Prosecution History of the '062 Patent....2

ARGUMENT....4

A. Because Their Answer Contained No Allegations of Inequitable Conduct, the Limited Defendants' Motion Must Be Stricken....4

B. The Limited Defendants' Motion Should Be Denied Since No Information Was Withheld Or Misrepresented....5

1. The Inventors Never Withheld or Misrepresented the Coleman Reference; There was Thus No Inequitable Conduct....5

2. There was No Misrepresentation Because D-Limonene Testing *was* Performed....7

CONCLUSION....9

# TABLE OF AUTHORITIES

## Cases

*See Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................8

*Atofina v. Great Lakes Chem. Corp.*,
441 F.3d 991 (Fed. Cir. 2006)..........................................................6, 7

*EMC Corp. v. Storage Tech. Corp.*,
921 F. Supp. 1261 (D. Del. 1996)........................................................4

*Ferguson Beauregard Logic/Controls Div. of Dover Res., Inc. v. Mega Sys., LLC*,
350 F.3d 1327 (Fed. Cir. 2003)...........................................................4

*Fiskars, Inc. v. Hunt Mfg. Co.*,
221 F.3d 1318 (Fed. Cir. 2000)...........................................................5

*Intertool, Ltd. v. Texar Corp.*,
369 F.3d 1289 (Fed. Cir. 2004)...........................................................6

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995).............................................................6

## Statutes

FED. R. CIV. P. 8(c) (2006).......................................................................4

## Regulations

37 C.F.R. § 1.132 (2006)........................................................................8

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. filed a complaint for patent infringement against defendants KBC Brands Company (formerly known as The Andrew Jergens Company), Kao Corporation, Limited Brands, Inc., and Bath & Body Works, Inc. (D.I. 1.) LP Matthews amended its Complaint on February 2, 2005, (D.I. 5, 8), and the Limited defendants[1] filed an Answer to the Amended Complaint, Affirmative Defenses, and Counterclaims on April 4, 2005 (D.I. 22). This Court entered a Scheduling Order on June 9, 2005. (D.I. 39.) Fact discovery closed on January 27, 2006, expert discovery closed on May 12, 2006, and amended pleadings were due December 6, 2005. (*Id.*) The deadline for filing opening summary judgment motions was extended from June 29 until July 6, 2006. (D.I. 243.)

On July 6, 2006, the Limited defendants filed a Motion for Summary Judgment of Unenforceability Due to Inequitable Conduct. (D.I. 258.) LP Matthews now moves to strike that motion pursuant to Rule 12(f). Additionally, LP Matthews submits this memorandum in opposition to the Limited defendants' motion.

## SUMMARY OF THE ARGUMENT

The Limited defendants' motion is both procedurally and substantively deficient. Their Answer never mentions or even hints at pleading inequitable conduct as an affirmative defense. Similarly, their interrogatory responses recite no instances of inequitable conduct that are specifically alleged here. Accordingly, their motion should be stricken.

Were the Court to consider the motion on the merits, it still must fail. Improper innuendo and unsupported accusations aside, the Limited defendants offer nothing to

[1] "The Limited defendants" collectively refers to Limited Brands, Inc. and Bath & Body Works, Inc.

show that any misrepresentations were made to the PTO or that an intent to mislead the PTO should be inferred. Summary judgment in defendants' favor must be denied.

## STATEMENT OF FACTS

### A.    The '062 Patent-in-Suit

The United States Patent and Trademark Office issued United States Patent No. 5,063,062 to Douglas Greenspan and Philip Low (collectively the "inventors") on November 5, 1991. (Ltd Ex. A at cover page.[2]) The '062 patent claims compositions for cleaning human skin that contain orange oil, an oat ingredient, and a moisturizer. (*Id.* at 9:3-10:25.) LP Matthews asserts that the Limited defendants infringe claims 6 and 9 of the '062 patent.

### B.    Prosecution History of the '062 Patent

The inventors filed an application for the '062 patent on September 27, 1989. (*Id.* at cover page.) The patent examiner initially rejected claims 1-15 under 35 U.S.C. § 103 as being unpatentable over an article written by Richard Coleman entitled "D-Limonene As A Degreasing Agent," published in *The Citrus Industry* in November 1975, and two other references. (Ltd Ex. C at 2-3.) In their response, the inventors explained that Coleman and the other references cited by the examiner did not disclose orange oil as a primary ingredient. (Ltd. Ex. E at 2.) "Rather, each of the references rely on the cleaning properties of d-limonene as the primary cleaning constituent" – not orange oil. (*Id.*) The inventors concluded that these references teach away from the use of orange oil since they rely on d-limonene from *distilled* citrus oil. (*Id.*) To support their conclusion, the

---

[2] In this Memorandum, "Ltd Br." refers to the Opening Brief in Support of Defendants Bath & Body Works, Inc.'s and Limited Brands, Inc.'s Motion for Summary Judgment of Unenforceability Due to Inequitable Conduct. (D.I. 284.) "Ltd Ex." refers to exhibits to the Hill Declaration, filed in support of Ltd Br. "LPM Ex." refers to exhibits attached to this Memorandum.

inventors cited tests they performed confirming that "undistilled orange oil has higher cleaning properties when used in a composition than distilled d-limonene." (*Id.*) The inventors offered to submit affidavits about these d-limonene tests, but the examiner declined. (*Id.* at 4-5.) The examiner ultimately agreed with the inventors and abandoned his reliance on Coleman.

Seventeen years after the d-limonene tests were performed, at his deposition, Mr. Low did not recall ever testing d-limonene. (LPM Ex. A at 135.) Yet, Mr. Low left Midwhelm, the corporation he and Mr. Greenspan formed, in early 1990 – shortly after the '062 patent application was filed in September 1989 and well before the inventors' response was submitted in September 1990. (*Id.* at 36-37.) Mr. Low had no involvement with the '062 patent application process, including any additional testing, after he left in 1990. (*Id.* at 70-71.)

**REDACTED**

## ARGUMENT

### A. Because Their Answer Contained No Allegations of Inequitable Conduct, the Limited Defendants' Motion Must Be Stricken

The Limited defendants' motion should not be heard on its merits. Inequitable conduct is an affirmative defense that must be timely pled in a responsive pleading. FED. R. CIV. P. 8(c). Claims for inequitable conduct must also fulfill the particularity requirement of Rule 9(b). *Ferguson Beauregard Logic/Controls Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003); *EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996). Any allegations of inequitable conduct must therefore disclose the relevant prior art as well as the purported fraudulent conduct. *EMC*, 921 F. Supp. at 1263.

Not only does the Limited defendants' answer fail to plead inequitable conduct as an affirmative defense, but it is completely devoid of the required specific allegations pertaining to inequitable conduct whatsoever. Nowhere does their answer refer to the Coleman reference specifically or any other relevant prior art generally. Nor does their answer set forth any instances of alleged fraudulent misconduct before the PTO. To the extent the Limited defendants make any vague references to inequitable conduct in their interrogatory responses, that is insufficient anyway, as a matter of law, to put LP Matthews on notice of this affirmative defense.[3] *EMC*, 921 F. Supp. at 1263-64 (alleged infringer could not use its interrogatory responses alleging inequitable conduct to fulfill the particularity requirements of Rule 9(b)). The Limited defendants have simply attempted to skirt their pleading obligations by seeking summary judgment on an

[3] In fact, in none of the Limited defendants' initial or supplemental responses to interrogatories do they specifically contend that the inventors misrepresented the Coleman reference to the PTO or lied about testing d-limonene.

affirmative defense that was never properly raised in a responsive pleading in the first place. Their motion should be stricken, as they waived this defense.

**B. The Limited Defendants' Motion Should Be Denied Since No Information Was Withheld Or Misrepresented**

Procedural deficiencies aside, the Limited defendants' motion lacks substantive merit. LP Matthews concurs that a determination of inequitable conduct requires a two-step inquiry: first, whether material information was withheld or misrepresented; second, whether the applicant intended to mislead the PTO. (Ltd Br. at 8.) Here, the inquiry comes up lame at the first step because the inventors never withheld or misrepresented any material information. Furthermore, the Limited defendants' attempt to establish an intent to mislead falls far short of clear and convincing. For these reasons, their motion for summary judgment should be denied.

**1. The Inventors Never Withheld or Misrepresented the Coleman Reference; There was Thus No Inequitable Conduct**

LP Matthews does not dispute that the Coleman reference is material. What LP Matthews does dispute, though, is the unsupported – and unsupportable – assertion that the inventors' representations to the PTO concerning the Coleman reference were less than forthright. Most importantly, the Coleman reference was not withheld; the examiner had the reference, which alone should be dispositive. *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) (reference is not withheld if it is cited to the examiner). Second, the inventors never mischaracterized the Coleman reference to the examiner. Simply put, Coleman discloses d-limonene in cleaning compositions. The d-limonene disclosed in Coleman is derived from distilled citrus oil. (Ltd Ex. D at LPM 000207.) Citrus oil is only identified in the Coleman reference as a source for d-limonene – and

even then it is *distilled* citrus oil. Neither pure citrus oil nor orange oil is ever disclosed as a primary ingredient. But, once again, the examiner had the reference before him and was in a position to follow up on this issue if he disagreed or had any additional concerns.

What the Limited defendants assert, in essence, is that disclosing d-limonene that happened to come from distilled citrus oil is the same as disclosing the use of undistilled orange oil itself as an ingredient. This is absurd on its face. By disclosing d-limonene from *distilled* citrus oil, Coleman actually teaches away from using orange oil the way the claimed invention does. That common sense reading of this reference – written in English – is consistent with the inventors' representations to the PTO, as well as LP Matthews' assertions in this litigation regarding the '062 patent. Therefore, no facts were ever misrepresented. *See Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 1002-03 (Fed. Cir. 2006) (patentee's statements to PTO did not constitute misrepresentations where they were consistent with facts stated in prior art references); *Intertool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1296-97 (Fed. Cir. 2004) (district erred in concluding that patentee's statements to PTO were misrepresentations because statements in prosecution history were not false or "clearly incorrect"). All the while, the examiner had the reference in front of him, read it, and interpreted it as he saw fit; he ultimately agreed with the inventors. It is presumed the examiner did his job. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) (it was presumed that examiner did his job and considered references where he initialed each reference and indicated he considered same).

At worst for LP Matthews, what the reference says and whether the inventors misread it presents a genuine issue of fact, not amenable to summary judgment. But were

we to assume, *arguendo*, that the inventors mischaracterized the Coleman reference to the PTO, the Limited defendants still do not make a showing of intent to mislead. The inventors' reading of the Coleman reference is at least reasonable. After reviewing the reference, the examiner agreed. The Limited defendants cannot clearly and convincingly establish an intent to mislead based on these facts alone, and despite the extensive discovery in this case, they present no additional evidence in support of an intent to mislead by the inventors. Under these circumstances, there can be no inequitable conduct. *Atofina*, 441 F.3d at 1002-03 (district court clearly erred in inferring intent to mislead where applicants' statement was consistent with references).

**2. There was No Misrepresentation Because D-Limonene Testing *was* Performed**

The inventors' testing further supports their representation to the PTO that d-limonene from *distilled* citrus oil (disclosed in Coleman) is not the same as *undistilled* orange oil (disclosed in the '062 patent). Indeed, the inventors' test results confirmed that "undistilled orange oil has higher cleaning properties when used in a composition than distilled d-limonene." (Ltd Ex. E at 2.)

Lacking a factual leg to stand on, the Limited defendants turn instead to accusing the inventors of lying about these tests. The Limited defendants chastise Messrs. Greenspan and Low for having only vague recollections about these tests – tests performed 17 years ago! In his deposition, Mr. Low said merely that, as he sat there, he did not "believe" he ever tested d-limonene. But Mr. Low and Mr. Greenspan parted ways after the '062 patent application was filed in September 1989 and well before the inventors' response to the PTO was submitted in September 1990. It is thus possible that Mr. Low did not recall testing d-limonene because he did not participate in the test, only

Mr. Greenspan did.  That one of multiple inventors does not recall a particular test 17 years later, or may not have been involved in it, does not prove the inventors lied to the patent office.  This is especially true at the summary judgment stage, construing disputed facts in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**REDACTED**

Far from the Limited defendants' view of deception, Messrs. Low and Greenspan's testimony, interpreted in the most sinister fashion, reflects the possibility that only one – not both – of the inventors performed these d-limonene tests.  Mr. Low's testimony in no way undermines what was said to the PTO.

By the same token, there is nothing incredible about the fact that these tests were not specifically reported to the PTO.  Were testing so important to the "fundamental tenant of the invention," as the Limited defendants proclaim, the examiner would have simply requested a Rule 132 affidavit.  *See* 37 C.F.R. § 1.132 (2006) (during prosecution, applicant may provide declaration to PTO submitting expert testimony and, at times, test data).  Certainly, the inventors offered to submit such affidavits, but the examiner declined.  As noted above, the examiner is presumed to have done his job, *Molins v. Textron*, 48 F.3d at 1184, and it is not for defendants to come along years after-the-fact

and self-servingly criticize a patent examiner for not seeking tests the examiner concluded he did not need at the time.

The Limited defendants' motion fails to establish inequitable conduct. The undisputed facts show that the inventors' response to the PTO states that d-limonene tests were performed; that Mr. Greenspan's testimony corroborates the representations made to the PTO; and that the prosecuting attorney, Mr. Martin, confirms that he received information pertaining to the d-limonene tests. The most that could be said for defendants' motion is that they identify some potential issues of fact, in the margins, relating to inequitable conduct. On summary judgment, of course, those factual questions must be resolved in the non-movant's favor.

## CONCLUSION

For the foregoing reasons, the Court should strike – or alternatively deny – the Limited defendants' motion for summary judgment of unenforceability.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(800) 553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
(202) 775-0725

Dated:    July 20, 2006
171473.1

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LP MATTHEWS, LLC, )
Plaintiff, )
v. )
BATH & BODY WORKS, INC.; ) CASE NO.:
LIMITED BRANDS, INC.; ) 04-CV-01507 SLR
KAO BRANDS CO. (f/k/a THE )
ANDREW JERGENS COMPANY); )
and KAO CORPORATION, )
Defendants. )

- - - - - - - - - - -

DEPOSITION OF PHILLIP LOW
Saturday, January 14, 2006

Reported by:
Craig L. Knowles, CM

Boulder, Colorado
Saturday, January 14, 2006

Deposition of PHILLIP LOW, a witness herein, called for examination by counsel for Defendants in the above-entitled matter, pursuant to notice and the Federal Rules of Civil Procedure, the witness being previously duly sworn by CRAIG KNOWLES, a Notary Public in and for the State of Colorado, taken at the Boulder Marriott, Telluride Room, 2660 Canyon Boulevard, Boulder, Colorado, at 9:23 a.m., on Saturday, January 14, 2006, and the proceedings being taken down in Stenotype by CRAIG KNOWLES and transcribed under his direction.

APPEARANCES

For Plaintiff:

Robert A. Auchter, Esquire
Jason R. Buratti, Esquire
ROBINS, KAPLAN, MILLER & CIRESI, LLP
Suite 1200
1801 K Street, Northwest
Washington, D.C. 20006-1307
202-775-0725

For Defendants KAO Corp. and KAO Brands:

Stephen G. Baxter, Ph.D., Esquire
Richard L. Chinn, Ph.D., Esquire
OBLON, SPIVAK, McCLELLAND, MAIER &
NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia 22314
703-413-3000

APPEARANCES (Cont'd)

For Defendants Bath & Body Works and Limited Brands:

John F. Ward, Esquire
WARD & OLIVO
708 Third Avenue
New York, New York 10017
212-697-6262

CONTENTS

THE WITNESS: PAGE NO.

PHILLIP LOW

By Mr. Ward............................. 6

By Mr. Baxter.......................... 92

E-X-H-I-B-I-T-S

| LOW EXHIBIT NO. | | PAGE NO. |
|---|---|---|
| 1 | Copy of Assignment, LPM 000012/14 | 38 |
| 2 | One-page handwritten document PL 0002 | 39 |
| 3 | Agreement PL 0001 | 44 |
| 4 | Promissory Note PL 0003/4 | 47 |
| 5 | Copy of envelope from Mr. Brady PL 00005 | 48 |
| 6 | Letter, Low to Ingram, 6/16/93 | 52 |
| 7 | Letter, Greenspan to Low, 6/26/93, PL 0007 | 54 |
| 8 | Envelope, Greenspan to Low, 6/21/93 | 57 |
| 9 | Undated Letter, Greenspan to Low PL 0009 | 75 |
| 10 | Copy of check stub PL 0010 | 78 |
| 11 | Three-page document, 11/17/89 DG6001/03 | 109 |
| 12 | Two-page document DG3271/72 | 113 |

P R O C E E D I N G S:

\- - -

Whereupon,

PHILLIP LOW,

called for examination by counsel for Defendants and, having been previously duly sworn to the truth, the whole truth and nothing but the truth, was examined and testified further upon his oath as follows:

\- - -

EXAMINATION BY COUNSEL FOR DEFENDANT
BATH & BODY WOKS and LIMITED BRANDS
BY MR. WARD:

Q. Good morning, Mr. Low.

A. Good morning.

Q. My name is John Ward, I'm with Ward & Olivo in New York, and I represent Limited Brands and Bath3 & Body Works in this action.

Have you ever been deposed before?

A. Yes.

Q. Would you tell me what were the circumstances of that?

MR. BURATTI: Objection to form.

A. I didn't do anything with it, Doug did something with it.

BY MR. WARD:

Q. Do you recall what he did?

A. No.

MR. BURATTI: Objection. Calls for speculation.

BY MR. WARD:

Q. There comes a point when there seems to be a break up, is that true?

A. That's true.

MR. BURATTI: Objection. Unfair characterization.

BY MR. WARD:

Q. If not a break up, what would you call it?

MR. BURATTI: Objection. Vague.

A. All right. There was a point when I didn't get along with him anymore.

BY MR. WARD:

Q. Could you tell us what happened?

A. Sales weren't going as Bill would have

D

liked, and I was being threatened with the potential that Bill was going to sue me for his 20-thousand-dollar investment because the product wasn't selling like it should have sold.

Q. Do you remember when this was?

A. Yeah, I think -- I think almost everything happened in '89. Almost everything happened in '89.

Q. Okay.

A. Or thereabouts, within -- within a few months of it being over, or the very first part of '90, somewhere in there.

Q. What happened then? You were getting threatened?

A. Right.

Q. And --

A. Well, I didn't want anything to do with these people, because, you know, I'm just a 30-thousand-dollar a year window installer. So a 20-thousand-dollar lawsuit by some people who I thought were a lot smarter than I was was something I didn't want to be involved in.

So I said buy me out.

Q. Did they?

A. Well, yeah. I mean, with a -- we had documents that pertained to me selling my shares and interests and everything to them for a fee.

Q. I've got a couple of them, so maybe that will help refresh some of your recollections if I show you some?

MR. BURATTI: Before we start using exhibits from yesterday I just want to alert you some of them are confidential and under a protective order. These aren't these, but if we use anything from yesterday, I would request anything that doesn't have a PL on it, let me see it before you show it to the witness.

MR. WARD: That would be fine.

MR. AUCHTER: I could run down and get a copy of that.

MR. WARD: It's just the assignment but it's attached.

MR. BAXTER: We don't have a separate --

MR. WARD: I don't have that many questions

about it. If you guys don't care, you've already seen it, I want to put it in front of him.

MR. AUCHTER: Mark it as a new exhibit. Richard has a stapler.

(Discussion off the record.)

(Whereupon, Deposition Exhibit 1 was marked for identification.)

MR. WARD: Why don't you just take a quick look at that.

(Witness examines document.)

THE WITNESS: Okay.

MR. WARD: For the record, Low Exhibit 1 is a copy of an assignment that was filed in the patent office, and it bears Bates numbers LPM 000012 through 14.

MR. BURATTI: Objection to the characterization as an assignment. It says Transmittal of Assignment on the cover page, second page and third page appear to be an Assignment of Patent Application.

BY MR. WARD:

Q. I'm only interested in the second page, Mr.

Q. Do you see the date?
A. Yes.
Q. For the signatures? What is that date?
A. 3-15-04.
Q. Do you believe that you still had an ownership interest in the patent as of March 15th, 2004?
MR. BURATTI: Objection. Calls for a legal conclusion.
A. Yes.
BY MR. WARD:
Q. Let's look at Greenspan 20.
For the record, Greenspan 20 is a 2-page document entitled Patent Assignment and it bears Bates numbers LPM 000007 and 8.
(Witness examines document.)
A. Okay.
BY MR. WARD:
Q. This is an assignment from The GreenSpan company to a company called LP Matthews. Have you ever heard of LP Matthews?
A. No.

Q. In the middle of the page do you see under Patent Number it says CA 2,026,304?

A. Yes.

Q. Were you aware that you have a Canadian patent?

A. No.

Q. If you flip to the second page of that document, again, do you see a date?

A. Yes.

Q. Can you tell me what that date is?

A. 3-15-04.

Q. Do you believe you still owned a piece of the patent as of March 15th, 2004?

MR. BURATTI: Objection. Calls for a legal conclusion.

A. Yes. Answer. Yes. Yes.

BY MR. WARD:

Q. Let's take a look at Greenspan 23. Greenspan 23 is a 2-page Terminal Disclaimer. It bears Bates numbers BBW 008517 and 8518.

Mr. Low, this document comes from a continuation in part application. Do you recall

filing a second application with the patent office?

A. I didn't have any involvement after my sale with the patents at all, so I have no idea.

Q. Do you mean --

A. No.

Q. In 1990 we are talking about?

A. Is this 1990? This is 1994.

Q. No, I'm asking when you say you didn't have any involvement after your sale --

A. No, that's correct.

Q. You are talking about the series of agreements we saw in 1990?

A. That's correct. So any documents, any patent applications, any of that stuff from 1994 I know absolutely nothing about.

MR. BURATTI: I would just like to put the group of documents you referred to on the record.

MR. WARD: Sure.

MR. BURATTI: You were referring to Low 3, Low 4 and page LPM 13 of Low 1, right?

MR. WARD: Correct.

(Pause.)

BY MR. WARD:

Q. I want to take a quick look at a page that is within Greenspan 12 which is a copy of the file history of the continuation in part application, and I'm only interested in pages 42 and 43.

MR. BURATTI: You are actually entitled to review the whole document if you want to.

THE WITNESS: How much time you guys have?

MR. BURATTI: Your questions will be restricted to this page?

MR. WARD: Yes. We'll be ready for the Super Bowl.

(Witness examines document.)

THE WITNESS: Okay.

BY MR. WARD:

Q. Just briefly, this is an application that is related to your initial application.

A. Okay.

Q. It was filed in 1991. Is that your signature on Page 42?

MR. BURATTI: 43.

A. Yes.

Q. Why were you testing the pH of the composition in December of 1988?

A. Because it -- if it was going to be on -- Doug said if it was going to be on your skin, you have to have it balanced with the skin, pH balanced with the skin. Some of the compositions weren't. So we would get burns, as well as my wife got burns.

Q. What was the percentage of orange oil that was in the composition you said was causing burning?

A. I can't remember.

Q. Do you remember testing compositions with percentages higher than 50 percent? You said 50 percent earlier.

A. Well, if you call squeezing the rind on the stuff, that would be one hundred percent.

Q. Okay.

A. And it dissolved the matter that I was after. So that in itself I think would be a hundred percent because it came right from -- and maybe whatever else is in the orange oil. I have

no idea.

But that was straight on from the discovery and as well as probably showing Doug, look what this stuff does and I'm going to do this and -- and going from there.

Q. Did you use -- did you ask any of your friends or family to use the composition that you had made up in December of 1988?

A. You know, I -- as soon as we had concoctions ready to try, then everybody would -- I would have said try this, try this, try this.

Q. That was in December of 1988?

A. I'm pretty certain in December we had a lot of this put together to where it wouldn't necessarily burn your skin and see what it did.

Q. So you were testing it in December of 1988?

A. Right.

Q. Did you ever test d-limonene?

A. I don't believe we ever tested d-limonene.

Q. Did you ever get d-limonene from any of the vendors?

A. No.

Q. Did you ever --
A. Not -- no.
Q. Did you ever discuss d-limonene with any of the vendors?
A. I called Ventura and asked them for orange oil, and they had some available, and they asked what I was -- what I wanted it for. I said well, we're using it as a cleaner.
Q. What did they say?
A. And they said, well, you -- don't you want some d-limonene? No, we want orange oil.
Q. Did Doug Greenspan ever tell you that he obtained d-limonene from any vendors?
A. Not to my knowledge. I don't remember that Doug Greenspan ever purchased any d-limonene.
Q. Do you remember if he ever got any samples of d-limonene?
A. I don't remember.
Q. Did he ever discuss any tests of d-limonene that he did with it?
A. Not to me. Not to my knowledge. But I believe we just used orange oil.

# EXHIBIT B

REDACTED

# EXHIBIT C

REDACTED

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of July, 2006, the attached **REDACTED PUBLIC VERSION OF LP MATTHEWS' MOTION TO STRIKE AND OPPOSITION ON THE LIMITED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF UNENFORCEABILITY DUE TO ALLEGED INEQUITABLE CONDUCT** was served upon the below-named counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

HAND DELIVERY

Arthur I. Neustadt, Esquire
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, VA 22314

VIA FEDERAL EXPRESS

Francis G.X. Pileggi, Esquire
Fox Rothschild LLP
Suite 1300
919 North Market Street
Wilmington, DE 19801

HAND DELIVERY

John Ward, Esquire
Ward & Olivo
708 Third Avenue
New York, NY 10017

VIA FEDERAL EXPRESS

*/s/ John G. Day*

John G. Day