# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1507-SLR |
| | ) | |
| BATH & BODY WORKS, INC.; LIMITED | ) | |
| BRANDS, INC.; KAO BRANDS CO. | ) | |
| (f/k/a THE ANDREW JERGENS | ) | |
| COMPANY); and KAO CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## LP MATTHEWS' OPPOSITION TO BATH & BODY WORKS, INC.'S AND LIMITED BRANDS, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 103

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(800) 553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
(202) 775-0725

*Attorneys for LP Matthews, L.L.C.*

Dated: July 27, 2006
171479.1

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS....................................................1

SUMMARY OF THE ARGUMENT..............................................................1

STATEMENT OF FACTS.........................................................................2

      A.    During Prosecution of the '602 Patent-In-Suit, the
               Inventors Overcame the Patent Office's Concerns About
               Obviousness of Claims 6 And 9 by Pointing Out That Their Invention
               Claimed Use of Orange Oil, not d-Limonene....................................2

      B.    The Continuation-In-Part Application Process
               Resulted in a Deficient *Sua Sponte* Board Decision on the
               Patentability of Application Claim 25..........................................3

ARGUMENT.......................................................................................5

      A.    Summary Judgment Is Not Appropriate Since
               Genuine Disputes of Material Fact Exist........................................5

      B.    Secondary Indicia of Non-obviousness Raise Fact
               Issues for Trial or Defeat that Defense.........................................7

CONCLUSION....................................................................................9

# TABLE OF AUTHORITIES

**Page**

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
157 F.3d 1340 (Fed. Cir. 1998)……………………………………………………..5

*Graham v. John Deere Co.,*
383 U.S. 1 (1961)………………………………………………………....5, 7

*In re Kahn,*
441 F.3d 977 (Fed. Cir. 2006)…………………………………………..............7

*Kao Corp. v. Unilever U.S., Inc.,*
441 F.3d 963 (Fed. Cir. 2006) …………………………………………..............8

*Paragon Podiatry Lab. v. KLM Lab.,*
984 F.2d 1182 (Fed. Cir. 1993)……………………………………………..5

## NATURE AND STAGE OF PROCEEDINGS

On December 8, 2004, plaintiff LP Matthews, L.L.C. filed a Complaint for patent

infringement against defendants Kao Brands Company (formerly known as The Andrew

Jergens Company) ("KBC"), Kao Corporation, Limited Brands, Inc., and Bath & Body

Works, Inc.[1] (D.I. 1.)  LP Matthews amended its Complaint on February 2, 2005.  (D.I. 5, 8.)

This Court entered a Scheduling Order on June 9, 2005.  (D.I. 39.)  Fact discovery closed on

January 27, 2006.  (D.I. 39.)  Expert discovery closed on May 12, 2006.  (D.I. 39.)  On June

29, 2006, the parties filed Opening Claim Construction Briefs.  (D.I. 244, 254, 255.)  On July

6, 2006, the Limited defendants filed this Motion for Summary Judgment of Invalidity under

35 U.S.C. § 103.  (D.I. 268, 270.)  This Answering Brief opposes that motion.

## SUMMARY OF THE ARGUMENT

The Limited defendants' arguments echo KBC's arguments that claims 6 and 9 of the

'062 patent are invalid as obvious based on a 1996 decision by the Board of Patent Appeals

and Interferences ("the Board").  (See D.I. 245, 246, 300.)  The Limited defendants interject

into this argument a manual directed to the manufacture of dry soaps.  (LEx. C.[2])  That refer-

ence, however, is cumulative of references before the examiner during prosecution of the

patent-in-suit.  Because it introduces neither new fact nor new law, the Limited defendants'

motion should be denied for the same reasons stated in LP Matthews' Opposition to KBC's

Motion for Summary Judgment based on Subsequent Board Decision.  (D.I. 300.)

In their brief, at best, the Limited defendants ignore the differences between orange

oil and d-limonene that even their own liability expert and corporate designee recognize.  At

---

[1] Limited Brands, Inc. and Bath & Body Works, Inc are "the Limited defendants."

[2] "LBR refers to the Limited defendants' Opening Brief in Support of their Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 103.  "LEx." refers to an exhibit cited in the declaration of David M. Hill, Esq. in

worst, they deliberately misrepresent the phrases "citric oil" and "citrus oil" in prior art that *clearly* discloses only d-limonene-containing compositions. Even their expert concedes this. Differences between orange oil and d-limonene alone compel denial of their motion, emphatically, in fact, since the '062 examiner had before him English versions of the same references and an opportunity to consider exactly the same argument the Limited defendants make today.

Thus, the Limited defendants disregard differences between orange oil and d-limonene that they knew about as a corporation. Then, they rely upon a Board decision that ignored the indisputable fact that orange oil was not a component of any prior art composition before it. Even if orange oil had been so disclosed, there is no evidence of its use as a cleaning agent for human skin. Moreover, neither the Limited defendants nor the Board identify any teaching, motivation or suggestion to combine the prior art they cite. And genine disputed facts exist regarding secondary indicia of non-obviousness, including at least commercial success, long felt need, and unexpected results.

## STATEMENT OF FACTS

**A.    During Prosecution of the '062 Patent-In-Suit, the Inventors Overcame the Patent Office's Concerns About Obviousness of Claims 6 And 9 by Pointing Out That Their Invention Claimed Use of Orange Oil, not d-Limonene.**

The inventors submitted their application for what would eventually become the '062 patent, for "Cleaning Compositions with Orange Oil," on September 27, 1989. Many of the original application claims were rejected by the examiner under 35 U.S.C. §103 over the prior art Coleman, Dellutri, and Juliano references. (Ex. 1.) In response, the inventors argued that the cited references actually taught away from using orange oil to clean human

support of LBR. "Ex." refers to exhibits cited in this brief.

skin because prior art d-limonene references required distillation of a different, natural

substance (oil from citrus fruits or other plants). (Ex. 2.) As a result, the examiner allowed

the claims. (Ex. 3.)

**B.    The Continuation-In-Part Application Process Resulted in a Deficient *Sua Sponte* Board Decision on the Patentability of Application Claim 25.**

On November 4, 1991, the '062 patent inventors filed a continuation-in-part

application based on the '062 patent application. The inventors immediately disclosed

Coleman and Dellutri. After the new examiner finally rejected the CIP for inadequacies in

the written description, the applicants appealed to the Board. On April 15, 1997, the Board

maintained the written description rejection and, *sua sponte*, added a rejection for

obviousness under 35 U.S.C. § 103. (LEx. G.) The new, un-briefed rejection applied

Coleman and Dellutri for an orange oil claim element, apparently not considering the Section

103 rejection in the patent application. The Board also cited the 1969 and 1989 editions of

the Physicians' Desk Reference (PDR), respectively, for the oat claim element and a

completely different application element calling for a towelette. (See LEx. G at 12.) The

Board did not state that the oat ingredient in PDR 1969 was an emulsifying agent. (*Id.*) The

inventors disputed the Board's rejection for obviousness and then abandoned the application.

In its *sua sponte* Section 103 rejection, the Board discussed Coleman and Dellutri

independently. Coleman, it said, "describes the use of d-limonene obtained from citrus oils,

such as orange oil, as a hand cleaner" and concluded that "emollients or moisturizers…are

conventionally used in combination with d-limonene." (LEx. G at 9.) The Board did not say

Coleman recites orange oil or citrus oil or citric oil.                    **REDACTED**

(Ex. 4, Carson Tr. at 215-16.) Dellutri "also describes cleaning agents

that can be used as a hand cleaner which include d-limonene obtained from orange oil" and

"aloe vera extract [that] may be used as an optional ingredient." *Id.* The Board did not say

Dellutri discloses orange oil or citrus oil or citric oil.

## REDACTED

(Ex. 4 at 202-04), contradicting the Limited defendants' representation

otherwise, *e.g.*, page 10 of their brief. The Board also said that PDR 1969 disclosed that

"colloidal oatmeal has long been used to treat skin" and that "skin care compositions should

be adjusted to have a pH approximate to that of normal skin." (Ex. 1 at 10-11.) Like PDR

1969, Juliano discloses colloidal oatmeal, making the PDR cumulative. (Compare Ex. 2 with

LEx. E.) The Board said PDR 1989 disclosed skin care compositions impregnated on a

towelet and "hermetically sealed in packet" (which may have been relevant to the

prosecution of the CIP). (LEx. G at 12.) But the Board did not identify a single reason to

combine these references, or discuss the level of ordinary skill in the art, both of which are

required to find obviousness. The Board, nevertheless, wrote that application claim 25 would

have been obvious.

Paradoxically, even as the Board reached its conclusion that application claim 25

would have been obvious, it directed the examiner to look for more prior art. (LEx. G at 6-

7.) The Board's decision says nothing of the '062 patent application. And while the Board

chastises the new examiner, for example, for searching only one subclass of prior art (LEx. G

at 5-7, cited in LBR), the examiner of the '062 patent searched three. (LEx. A at cover

page.) The Limited defendants, like the Board, ignored that fact, just as they ignore the facts

required for a finding of obviousness.

## ARGUMENT

**A.    Summary Judgment Is Not Appropriate Since Genuine Disputes of Material Fact Exist.**

Obviousness is a question of law based on underlying facts. Those facts are (1) the scope and content of the prior art, (2) whether the combined references disclose each and every element of the asserted claim, (3) the differences between the prior art and claims at issue, (4) the level of ordinary skill in the art, and (5) a teaching or motivation to combine the elements of the prior art into the claimed invention. *See, e.g., Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1961); *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1352 (Fed. Cir. 1998). Because each of these facts is material, none can be disputed for summary judgment to be proper. Fed. R. Civ. P. 56(c), *see, e.g., Paragon Podiatry Lab. v. KLM Lab.,* 984 F.2d 1182, 1184-85 (Fed.Cir.1993). LP Matthews disputes underlying facts (1), (2), (3), and (5). These disputes are genuine.

Additionally, there exist factual inquiries regarding secondary indicia of non-obviousness. And the Limited defendants' reliance on the Board's decision is misplaced because it does not address these fact issues and comes six years too late. Both the Limited defendants' opening brief and the Board's decision are wrought with genuinely disputed material facts. LP Matthews has already briefed the Board's decision and incorporates it here. (D.I. 300.) To recap, the decision is legally deficient, refers to a different invention than the '062 patent, was based on a lower standard of proof than is required to prove invalidity, and presented conclusions that were successfully traversed during prosecution of the '062 patent application. (*Id.*, generally.) The decision is also inadmissible and cannot form the basis of a summary judgment motion. (*Id.*)

Turning to the genuinely disputed facts underlying this obviousness case, the Coleman and Dellutri references disclose compositions that contain d-limonene as a cleaning component. Where a citrus oil is disclosed, it is only as a source of d-limonene. The examples of the composition in Coleman show that only d-limonene issued. Likewise, Dellutri actually defines "citric oil" as d-limonene (with chemical stabilizers). These arguments and these references were before the examiner, who clearly appreciated that d-limonene and orange oil were different.

**REDACTED**

Thus, even if the use of d-limonene as a cleaning agent had been suggested by prior art, the inventors' use of undistilled orange oil makes their invention patentably distinct.

And the applicants also points out this possible synergy between d-limonene and other orange oil constituents: "[O]ther esters and volatiles in the orange oil may contribute to the enhanced cleaning properties...." (Ex. 1.)

The Limited defendants did not identify a prior art reference that recites orange oil as a cleaning component in a composition that cleans human skin. Because no single reference discloses orange oil as a cleaning component, the Limited defendants' motion should be denied.

Because no combination of references discloses a composition according to claim 6

or claim 9, the Limited defendants' motion should be denied. Additionally (and alternatively), fact disputes exist regarding differences between d-limonene and orange oil that bear on the scope of the prior art, and the differences between the prior art and claims 6 and 9 – both of which are necessary underlying facts for a determination of obviousness. Finally, the Limited defendants do not identify a clear and convincing teaching, motivation or suggestion to combine in their opening brief, failing to carry their burden to prove no dispute of that fact underlying an obviousness determination. They cite without explanation the 1996 Board decision and no other reference for that motivation to combine references. (LBR at 9-10.) But obviousness depends on the facts at the time that the patent application was filed; hindsight is improper. *In re Kahn*, 441 F.3d 977, 986 (Fed. Cir. 2006) (reversing board for not explaining motivation-suggestion-teaching requirement). Like the Board here and the Board in *Kahn*, the Limited defendants fail to explain the motivation-suggestion-teaching requirement of Section 103 – and, since the '062 patent issued, their burden is even higher (clear and convincing) than the Board's (preponderance). (See D.I. 300 at 7.) Because the Limited defendants echo KBC's other obviousness arguments, LP Matthews incorporates its opposition here, and respectfully requests denial of the Limited defendants' motion for the same reasons as those stated in D.I. 300.

## B.    Secondary Indicia of Non-obviousness Raise Fact Issues for Trial or Defeat that Defense

A case for obviousness may be rebutted with evidence of so-called secondary indicia of non-obviousness, including commercial success, long felt need and unexpected results. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).

**REDACTED**

**REDACTED**

The inventors' own product, Healthy Kleaner, was marketed from 1989, and was just beginning to have some success when, in January, 1992, the Food and Drug Administration reclassifed Healthy Kleaner from a soap to an "adjunct to a medical device." The inventors were, in fact, victims of their own success – it was the fact that hospitals discovered that Healthy Kleaner was very good at removing bandage adhesive residue that caused the reclassification and recall. (Ex. 6 at 116:2-7, 118-20, 142-145; Ex. 7.)

These commercial successes indicate non-obviousness of the '062 invention. Unexpected results like those reported to the '062 patent examiner are another indicator of non-obviousness. *See, e.g., Kao Corp. v. Unilever U.S., Inc.,* 441 F.3d 963, 970 (Fed. Cir. 2006). The Limited defendants themselves produced documents that, even today, indicate orange oil is used for fragrance, not cleaning. (Ex. 7 at 9097.) These indicators form a factual basis for the rejection of the Limited defendants' motion.

Finally, testimonials by customers of Healthy Kleaner reflect long felt need and praise by others, further indicating that the '062 patent claims 6 and 9 are not obvious. (Ex. 8.)

## CONCLUSION

Claims 6 and 9 of the '062 patent are not obvious. The Limited defendants do not cite a reference that discloses orange oil as a cleaning component in a composition that cleans human skin. Nor do they identify timely activation, suggestion, or teaching to combine those references; hindsight is improper. The Board's 1996 record is addressed in D.I. 300. The Limited defendants' motion for summary judgment under Section 103 should be denied.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for LP Matthews, L.L.C.*

*Of Counsel:*

Ronald J. Schutz
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(800) 553-9910

Robert A. Auchter
Jason R. Buratti
Robins, Kaplan, Miller & Ciresi L.L.P.
1801 K Street, Suite 1200
Washington, D.C. 20006
(202) 775-0725

Dated:    July 21, 2006
171479.1

# EXHIBIT 1



**UNITED STA_ _ DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/413,395 | 09/27/789 | GREENSPAN | D | 1286 |

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO  80228

| EXAMINER |
|---|
| SPEAR, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 152 | 4 |

DATE MAILED:        06/18/90

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), ____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims _____1-18_____ are pending in the application.
   Of the above, claims _____16-18_____ are withdrawn from consideration.
2. ☐ Claims _____ have been cancelled.
3. ☐ Claims _____ are allowed.
4. ☒ Claims _____1-15_____ are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev.9-83)                    **EXAMINER'S ACTION**

Serial No. 413,395                                    -2-

Art Unit 152


This action is in response to the election with traverse of claims 1-15 submitted May 17, 1990 by Timothy J. Martin. The applicants' arguments have been considered but they are not deemed to be persuasive.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

> Subject matter developed by another person, which qualifies as prior art only under subsection (f) and (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claim 1 is rejected under 35 U.S.C. 103 as being unpatentable over Coleman, The Citrus Industry Pub., November 1975.

Coleman shows a lotion hand cleaner comprising approximately 57% d-limonene, moisturizer (lanolin) and emulsifying agents (Arlacel and Tween). Although distilled citrus oil (94% d-limonene) is used it would be obvious to use orange oil, if it were not the source in this case. Page 24-25.

Claim 2 is rejected under 35 U.S.C. 103 as being

Serial No. 413,395                    -3-

Art Unit 152


unpatentable over Coleman as applied to claim 1 above,

and further in view of Dellutri US 4,620,937.

Dellutri shows a skin cleaner comprising d-limonene

and further comprising aloe vera. To use aloe vera in

the Coleman invention would be obvious since both

inventors teach hand cleaners of similar compositions

containing moisturizers. Col. 1, lines 60-65. Col. 3,

lines 23-28.

Claims 3-7; 9-15 are rejected under 35 U.S.C. 103

as being unpatentable over Coleman and Dellutri as

applied to claim 2 above, and further in view of Juliano

et al US 4,014,995.

Juliano for claim 3 shows compositions for use on

the skin containing oat flour. Juliano further shows

oat flour as an emulsifier. Col. 1, lines 34-40. Col.

3, lines 16-25. To use the oat flour in the invention

described above would be obvious in as much as the use of

emulsifiers is a well recognized art. Nothing unobvious

is seen by using oatmeal in claim 4, since oatmeal by

definition is ground oats of a larger particle size than

flour.

For claim 5 both Dellutri and Juliano teach

compositions having a ph of 5.5. Juliano col. 2, lines

3-13, col. 3, lines 5-15. Dellurti col. 3, lines 52-59.

Serial No. 413,395                          ~4~

Art Unit 152

For claims 6-7 Juliano teaches the inclusion of
substances to maintain a specific ph. Nothing
un-obvious is seen in applicant' use of a ph range of
4.5-6, since the prior art shows the importance of ph
balanced preparations for on the skinuse.

Claim 8 is rejected under 35 U.S.C. 103 as being
unpatentable over Coleman, Dellutri, Juliano as applied
to claims 1-7 above, and further in view of Jones US
4,5 33,487.

Jones shows the preparation of d-limonene
containing buffers. The preparation is rendered
harmless to the skin primarily due to the presence of
the buffers. Col. 3, lines 43-50. To use the buffered
stable d-limonene preparations of Jones in the above
mentioned inventions would be obvious in view of the
prior art teachings. Note Dellutri's use of stabilized
d-limonene. Col. 2, lines 19-23.

For claims 9-11 see Coleman, Dellutril and Juliano
as applied to claim 3 above.

For claim 12 see Juliano as applied to claim 4
above.

For claims 13-15 see Coleman and Dellutri as
applied to claim 2. Glycerin, aloe vera, jojoba oil and
safflower oil are considered equivalents. Nothing
un-obvious is seen in applicants use of mixtures.

Serial No. 413,395                    -5-

Art Unit 152


The motivation to produce cleaning compositions for use on the skin arises from the teachings of Coleman, Dellutri, Juliano and Jones who suggest the desirability to prepare cleaners comprised of orange oil having enhanced cleaning properties.  The formulations are non-toxic, stable and non irritating to the skin. Claims 1-15 are rejected.

The Group and/or Art Unit location of your application in the Patent and Trademark Office has changed.  .To aid in correlating any papers for this application, all further correspondence regarding this application should be directed to Group 150, Art Unit 152.

Any inquiry concerning this communication should be directed to James M. Spear at telephone number 703-557-6525.

Spear:pla

(703) 557-6525

06/11/90

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 413395 | GROUP ART UNIT 152 | ATTACHMENT TO PAPER NUMBER 4 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Greenspan et al. | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 4014995 | 3-77 | Juliano et al. | 514 | 783 | |
| B | | 4533487 | 8-85 | Jones | 252 | 173 | |
| C | | 4620937 | 11-86 | Dellutri | 252 | 162 | |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS- DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R S | D-Limonene as a Degreasing Agent Richard L. Coleman, The Citrus Industry Vol. 56, No. 11, November, 1975, pages 23-25 |
|---|---|
| T | |
| U | |

| EXAMINER James M. Spear | DATE 6-1-90 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

# Paper Number 5

# EXHIBIT 2

RECEIVED

SEP 21 1990

GROUP 150

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patent Application for            :      Date: September 18, 1990
Greenspan and Low                 :      Group: Art Unit 152
Serial No.: 07/413,395            :      Examiner: J. Spear
Filed:  September 27, 1989        :      Action: AMENDMENT
For: CLEANING COMPOSITIONS WITH   :
     ORANGE OIL                   :

TO:  The Commissioner of Patents and Trademark Office
     Washington, DC  20231

Sir:

    In response to the Office Action of 18 June 1990, please reconsider the claims of this application in view of the following remarks:

## REMARKS

    These remarks are in response to the Office Action of 18 June 1990 in the above referenced patent application. In that application, Claims 1-18 were pending. However, Claims 16-18 were deemed withdrawn from consideration despite Applicants' traverse of the election.

    Of the remaining claims, Claim 1 was rejected over Coleman, The Citrus Industry Publication, November 1975 under 35 U.S.C. Section 103. Claim 2 was rejected over Coleman in further view of U.S. Patent No. 4,620,937 to Dellutri under 35 U.S.C. Section 103. Claims 3-7 and 9-15 were rejected over Coleman and Dellutri in further view of U.S. 4,014,995 to Juliano. Claim 8 was rejected over the Coleman reference in view of Dellutri and Juliano and in further view of U.S. Patent No. 4,553,487 to Jones.

At the outset, Applicants note with appreciation the thoroughness of the Examiner's comments in applying the cited references against the claims. However, Applicants have not amended their claims since they believe that the references teach away . from the present invention, as currently claimed, so that all of the claims in this application are allowable over these references. Applicants' position is supported by two arguments.

First, as the Examiner has noted, none of the cited references disclose the use of orange oil as a primary constituent. Rather, each of the references rely on the cleaning properties of d-limonene as the primary cleaning constituent. The Examiner then concludes that it would be obvious to substitute orange oil for the d-limonene since the d-limonene is distilled from a citrus oil.

Simply put, these references do not suggest the use of orange oil alone, but rather teach away from the use of orange oil since they rely on the distillate d-limonene. Applicants have found that undistilled orange oil has higher cleaning properties when used in a composition than distilled d-limonene. Applicants have tested the compositions produced according to the ranges of the present application wherein an equal weight percent of d-limonene was substituted for the orange oil. In each case, the orange oil based composition had superior cleaning properties than the identical composition with an equivalent amount of d-limonene substituted for the orange oil. While Applicants believe that other esters and volatiles in the orange oil may contribute to the enhanced cleaning properties, although the

2

exact reason for the enhanced cleaning properties has not yet been determined. Nonetheless, Applicants have learned of a surprising result from the raw orange oil in these enhanced cleaning properties. This distinction over the use of d-limonene in the prior art is significant and not at all obvious. Indeed, Applicants have found that their composition is effective on substances such as urethane caulking, paint and tar that resist d-limonene cleaning compositions.

The enhanced cleaning property of orange oil contributes to the second distinction between the compositions recited in this application and the prior art. A review of the prior art shows that d-limonene is used in weight percentage ratios that are above the lower ratios claimed in the present application. These ratios run from a low of 51% d-limonene (Coleman) to a high of approximately 70% d-limonene (Coleman). Dellutri uses approximately 58%-60% d-limonene. As noted in the Coleman reference, citrus oil contains approximately 94% d-limonene so that the equivalent amount of citrus oil necessary to provide the amount of d-limonene in the prior art compositions run from approximately 55%-75%.

Claim 1 of the present application claims a range of 5% to 60% orange oil which, as noted above, allows for greater cleaning ability for lesser of the included cleaning agent (orange oil). Since the expense of orange oil is fairly substantial, this surprising result allows a reduction in the proportion of orange oil as opposed to d-limonene, and this leads to substantial economies.

3

A derivative benefit is seen where the quantity of orange oil, (and thus the amount of d-limonene) since studies have indicated that d-limonene may have carcinogenic effects. For example, the attached study taken from the National Toxicology Study Program (January 1990) indicates a possible adverse effect from excess d-limonene. Where a cleaning composition is intended as one suitable for hand cleaning, as is the present invention, the benefits from reducing the quantity of d-limonene while maintaining the cleaning ability may be appreciated without further explanation.

Accordingly, all of the claims in this application are believed allowable for the inclusion of orange oil. However, several points directed to the dependent claims are in order since it is believed that the dependent claims contain allowable subject matter in their own right. In particular, those claims including the use of oat-grain derivatives and oatmeal. Here, it has been found that the oatmeal may lend cleaning properties in that oatmeal acts as a drawing agent to help remove certain oils or other materials from the surface to be cleaned. It also adds an abrasive quality to the cleaning compound to enhance the scrubbing ability.

Based on the foregoing, it is believed that this application is conditioned for allowance and action to that end is courteously solicited. Should the Examiner request any further information, in the form of affidavits or otherwise, regarding the matters addressed in this Amendment, the Examiner is invited to contact attorney for the Applicants at the telephone number

listed below. Applicants would specifically request the
opportunity to submit such affidavits in the event that the
Examiner maintains the rejection of the present application.

Respectfully submitted,

TIMOTHY J. MARTIN, P.C.

Timothy J. Martin, #28,640
Dana Rewoldt, #P-33,762
44 Union Blvd., Suite 620
Lakewood, Colorado    80228
(303) 988-0800

CERTIFICATE OF MAILING UNDER 37 C.F.R. 1.8

I hereby certify that the foregoing AMENDMENT is being
deposited with the United States Postal Service as first-class
mail, postage prepaid, in an envelope addressed to The
Commissioner of Patents and Trademarks, Washington, DC 20231, on
this ____ day of September, 1990.

5

NTP TECHNICAL REPORT

ON THE

# TOXICOLOGY AND CARCINOGENESIS

## STUDIES OF *d*-LIMONENE

(CAS NO. 5989-27-5)

# IN F344/N RATS AND B6C3F$_1$ MICE

(GAVAGE STUDIES)

C.W. Jameson, Ph.D., Study Scientist

NATIONAL TOXICOLOGY PROGRAM
P.O. Box 12233
Research Triangle Park, NC 27709

January 1990

NTP TR 347

NIH Publication No. 90-2802

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
Public Health Service
National Institutes of Health

*Conclusions:* Under the conditions of these 2-year gavage studies, there was *clear evidence of carcinogenic activity* of d-limonene for male F344/N rats, as shown by increased incidences of tubular cell hyperplasia, adenomas, and adenocarcinomas of the kidney. There was *no evidence of carcinogenic activity* of d-limonene for female F344/N rats that received 300 or 600 mg/kg. There was *no evidence of carcinogenic activity* of d-limonene for male B6C3F₁ mice that received 250 or 500 mg/kg. There was *no evidence* of carcinogenic activity of d-limonene for female B6C3F₁ mice that received 500 or 1,000 mg/kg.

An increased severity of spontaneous nephropathy, increased incidences of linear mineralization of the renal medulla and papilla, and hyperplasia of the transitional epithelium of the renal papilla were present in dosed male rats.

SUMMARY OF THE TWO-YEAR GAVAGE AND GENETIC TOXICOLOGY STUDIES OF d-LIMONENE

| Male F344/N Rats | Female F344/N Rats | Male B6C3F₁ Mice | Female B6C3F₁ Mice |
|---|---|---|---|
| **Doses** 0, 75, or 150 mg/kg d-limonene in corn oil by gavage, 5 d/wk | 0, 300, or 600 mg/kg d-limonene in corn oil by gavage, 5 d/wk | 0, 250, or 500 mg/kg d-limonene in corn oil by gavage, 5 d/wk | 0, 500, or 1,000 mg/kg d-limonene in corn oil by gavage, 5 d/wk |
| **Body weights in the 2-year study** Approximately 5% reduction in high dose group | Approximately 5% reduction in high dose group | No effect | 10% reduction in high dose group by end of study |
| **Survival rates in the 2-year study** 29/50; 33/50; 40/50 | 42/50; 40/50; 36/50 | 33/50; 24/50; 28/50 | 43/50; 44/50; 43/50 |
| **Nonneoplastic effects** Mineralization (7/50; 43/50; 45/50) and epithelial hyperplasia (0/50; 36/50; 43/50) of the renal papilla; renal tubular cell hyperplasia (0/50; 4/50; 7/50) | None | None | None |
| **Neoplastic effects** Renal tubular cell adenomas (0/50; 4/50; 8/50) and adenocarcinomas (0/50; 4/50; 3/50) | None | None | None |
| **Level of evidence of carcinogenic activity** Clear evidence | No evidence | No evidence | No evidence |

| **Genetic toxicology assays** | | | |
|---|---|---|---|
| *S. typhimurium* **(gene mutation)** Negative with and without S9 | Mouse L5178Y/TK⁺/⁻ **(Tfl-resistance)** Negative with and without S9 | **CHO Cells in Vitro** | |
| | | SCE Negative with and without S9 | Aberration Negative with and without S9 |

*Explanation of Levels of Evidence of Carcinogenic Activity is on page 6.
A summary of the Peer Review comments and the public discussion on this Technical Report appears on pages 9-10.

# Paper Number
# 6

# EXHIBIT 3



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO 80228

**NOTICE OF ALLOWANCE**
**AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/413,395 | 09/27/89 | 012 | SPEAR, J | 152 | 04/10/91 |

First Named Applicant: GREENSPAN, DOUGLAS H.

TITLE OF INVENTION: CLEANING COMPOSITIONS WITH ORANGE OIL

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | 1286 | 424-443.000 | 064 | UTILITY | YES | $525.00 | 07/10/91 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**
**PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS**
**APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

  A. If the Status is changed, pay twice the amount of the
    FEE DUE shown above and notify the Patent and
    Trademark Office of the change in status, or

  B. If the Status is the same, pay the FEE DUE shown
    above.

If the SMALL ENTITY is shown as NO:

  A. Pay FEE DUE shown above, or

  B. File verified statement of Small Entity Status before, or with,
    payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE,
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

_IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of_
_maintenance fees._

PTOL-85 (REV 12-89)(OMB Clearance is pending)

**PATENT AND TRADEMARK OFFICE COPY**

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/413,395 | 09/27/89 | GREENSPAN | 1286 |

| EXAMINER | |
|---|---|
| SPEAR, J | |
| ART UNIT | PAPER NUMBER |
| 152 | 8 |

TIMOTHY J. MARTIN
44 UNION BLVD., STE. 620
LAKEWOOD, CO 80228

DATE MAILED: 04/10/91

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to *Amendment filed March 19, 1991*

2. ☐ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are *1-2, 4-9, 11 and 13-15*

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has (__) been received. (__) not been received. (__) been filed in parent application Serial No. _____ filed on _____

6. ☒ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachment:
☒ Examiner's Amendment
— Examiner Interview Summary Record, PTOL-413
— Reasons for Allowance
— Notice of References Cited, PTO-892
— Information Disclosure Citation, PTO-1449

— Notice of Informal Application, PTO-152
— Notice re Patent Drawings, PTO-948
— Listing of Bonded Draftsmen
— Other

THOMAS A. PRICE
SUPERVISORY PATENT EXAMINER
ART UNIT 152

Serial No. 413395

Art Unit 152                                                              -2-

An Examiner's Amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the Issue Fee.

Authorization for this Examiner's Amendment was given in a telephone interview with Timothy J. Martin on April 5, 1991.

Non elected claims 16-18 have been cancelled by applicant. Applicant's amendment filed March 19, 1991, now places application in condition for allowance.

Claims 1-2, 4-9, 11 and 13-15 are allowable over the prior art of record.

Any inquiry concerning this communication should be directed to James M. Spear at telephone number 703 308-2351.

J. M. Spear

04/5/91

THURMAN K. PAGE
SUPERVISORY PATENT EXAMINER
ART UNIT 152

PART B - ISSUE FEE TRANSMITTAL

525-242-B
15-501

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advanced orders and notification of maintenance fees will be mailed to addressee entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| | INVENTOR'S NAME |
| | Street Address |
| Timothy J. Martin | City, State and ZIP Code |
| 44 Union Blvd., Ste. 620 | CO-INVENTOR'S NAME |
| Lakewood, CO 80228 | Street Address |
| | City, State and ZIP Code |
| | ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| | 04/27/89 | | | |

First Named Applicant

TITLE OF INVENTION: CLEANING COMPOSITIONS WITH ORANGE OIL

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| | 424-143.000 | 064 | UTILITY | YES | 525.00 | |

**3. Further correspondence to be mailed to the following:**

Timothy J. Martin
44 Union Blvd., Suite 620
Lakewood, Colorado  80228

**4.** For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed.

1  Timothy J. Martin

2

3

DO NOT USE THIS SPACE

120 HB 07/18/91 07413395     1 242     525.00 CK
120 HB 07/18/91 07413395     1 501      15.00 CK

**5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT** (print or type)

(1) NAME OF ASSIGNEE:
D. Greenspan and W. Ingram
(2) ADDRESS: (City & State or Country)
200 Lois Circle, Louisville, CO 80027
(3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION

**A.** ☐ This application is NOT assigned.
☒ Assignment previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

**PLEASE NOTE:** Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

**6a.** The following fees are enclosed:
☒ Issue Fee   ☒ Advanced Order - # of Copies (10) Ten   (Minimum of 10)

**6b.** The following fees should be charged to:   (Minimum of 10)
DEPOSIT ACCOUNT NUMBER
(Enclose Part C)
☐ Issue Fee   ☐ Advanced Order - # of Copies
☐ Any Deficiencies in Enclosed Fees   (Minimum of 10)

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Signature of party in interest or record)

(Date) July 10, 1991

NOTE: The Issue Fee will not be accepted from anyone other than the applicant, a registered attorney or agent, or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

PTOL-85B (REV 12-88)(OMB Clearance is pending)

TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE.

**Certificate of Mailing**

I hereby certify that this correspondence is being deposited with
the United States Postal Service with sufficient postage as first class
mail in an envelope addressed to:

> Box ISSUE FEE
> Commissioner of Patents and Trademarks
> Washington, D.C. 20231

on    July 10, 1991

                       (Date)

               Lori George

(Name of person making deposit)

*Lori D. George*

(Signature)

*7-10-91*

(Date)

Note: If this certificate of mailing is used, it can only be used to transmit the
Issue Fee. This certificate cannot be used for any other accompanying
papers. Each additional paper, such as an assignment or formal drawings,
must have its own certificate of mailing.

This form is estimated to take 20 minutes to complete. Time will vary
depending upon the needs of the individual applicant. Any comments on
the amount of time you require to complete this form should be sent to the
Office of Management and Organization, Patent and Trademark Office,
Washington, D.C. 20231 and to the Office of Information and Regulatory
Affairs, Office of Management and Budget, Washington, D.C. 20503.

EVEASE PTOL-85B (REV 12-89)(OMB Clearance is pending)



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RE:  Patent Application for    :    Dated:  July 10, 1991
     Douglas H. Greenspan       :    Group:  Art Unit 152
Serial No.: 07/413,395         :    Examiner:  J. Spear
Filed:  September 27, 1989     :    Action:  TRANSMITTAL OF BASE
For: CLEANING COMPOSITIONS      :             ISSUE FEE
     WITH ORANGE OIL            :

TO:  Box Issue Fees
     The Commissioner of Patents and Trademarks
     Washington, DC   20231

Sir:

Enclosed  is  our check no. 1069 in the  amount  of  $540.00
($525.00  for  Base Issue Fee plus $15.00 for  advance  order  of
patent  copies)  along with the Base Issue Fee  transmittal  form
PTOL-85b (Rev. 12-88).  Formal drawings were previously submitted
on 10 April 1991.

                              Respectfully submitted,

                              TIMOTHY J. MARTIN, P.C.

                              Timothy J. Martin, #28,640
                              Dana Rewoldt, #33,762
                              44 Union Blvd., Suite 620
                              Lakewood, Colorado      80228
                              (303)  988-0800


          CERTIFICATE OF MAILING UNDER 37 C.F.R. 1.8

      I hereby certify that the attached TRANSMITTAL OF BASE ISSUE
FEE  and  check  no. 1069 in the  amount  of  $540.00  is  being
deposited  with the United States Postal Service  as  first-class
mail in an envelope addressed to The Commissioner of Patents  and
Trademarks, Washington, DC 20231, on this _10_ day of July, 1991.


                              Lori D. George

# EXHIBIT 4

**REDACTED**

# EXHIBIT 5

**REDACTED**

# EXHIBIT 6

**REDACTED**

# EXHIBIT 7



*Product Data Sheet*
*Material Safety Data Sheet*

# FLORIDA CHEMICAL CO., INC.

351 Winter Haven Blvd. NE
Winter Haven, FL 33881-9432
Phone: (863) 294-8483
Fax: (863) 294-7783
Web Site: www.floridachemical.com
E-Mail: info@floridachemical.com

## PRODUCT DATA SHEET

Preparation Date: April 2005

## DESCRIPTION

Cold Pressed Orange Oil is the essential oil obtained from the expression of ripe orange fruit peel. Early/Midseason Cold Pressed Orange Oil comes from common orange varieties including Hamlin and Pineapple oranges. Valencia Cold Pressed Orange Oil is restricted to the late season Valencia fruit.

## APPEARANCE & ODOR

Bright and clear yellow to orange liquid. Early/Midseason tends to have slightly darker color. Characteristic odor of the fresh, sweet orange peel.

## USES & APPLICATIONS

Current d-Limonene formulators will find that Cold Pressed Orange Oil is an effective and economic way to add color and extra citrus aroma to their product. Cold Pressed Orange Oil is a food product with a history of uses in the flavor and fragrance industry. Examples include use as an ingredient in fruit flavors and floral perfume compositions. Cold Pressed Orange Oil is a common additive to many products requiring citrus flavor because of the characteristic sweet & fresh citrus notes.

## REGULATORY STATUS

d-Limonene (main component of Cold Pressed Orange Oil) has been designated as GRAS (Generally Recognized as Safe) by the Food and Drug Administration. The EPA has granted d-Limonene an exemption from the requirement of a tolerance when it is an inert ingredient used as a solvent or fragrance in pesticide formulations. d-Limonene is not considered a carcinogen, a developmental toxicant or mutagenic. d-Limonene is not listed on CA Proposition 65. Cold Pressed Orange Oil is an approved food ingredient listed in the FCC.

Cold Pressed Orange Oil is a naturally occuring VOC. Cold Pressed Orange Oil is reportable on average as 95% VOC (850 grams per litre, 6.8 lbs per gallon). Emulsions containing Cold Pressed Orange Oil can be exempt from VOC regulations. Contact state VOC or regulatory authorities for ruling.

## PACKAGING

Cold Pressed Orange Oil is packaged in epoxy-lined containers as follows:

| 1-Gallon Pail | - | 7 Pounds Net Weight | 3.2 kg Net Weight |
| 5-Gallon Pail | - | 35 Pounds Net Weight | 16 kg Net Weight |
| 55-Gallon Drum | - | 390 Pounds Net Weight | 177 kg Net Weight |

*Packaging continued next page*

EXHIBIT
Carson 9

BBW 009097

Drums are typically orange or black DOT approved steel drums coated with an epoxy-phenolic resin liner. All drums of our Cold Pressed Orange Oil are filled to a net weight of 390 lbs. Dimensions of 55-gallon drums are: length 23", width 23", and depth 35". Tank truck shipments average 6500 gallons (45,000 lbs). Overseas ISO tank shipments are either 20,000 liters (16,800 kg) or 24,000 liters (20,160 kg). Sample quantities are packaged in fluorinated plastic containers or glass (1 oz. samples).

## STORAGE & HANDLING

Store in a warehouse with a fire prevention system. Avoid contact with incompatible chemicals listed in Section IV. Store in tightly sealed full containers in well-ventilated controlled warehouse conditions. Partially filled containers should be blanketed with nitrogen. Antioxidants such as BHT are commonly used in addition to proper storage and handling procedures.

Improper storage and handling can lead to oxidation. Cold Pressed Orange Oil is "winterized" when it is first produced by storing at freezing temperatures to remove the majority of natural waxes. Although this process is done as thoroughly as possible, trace amounts of waxy solids may remain and settle out of the product when stored for an extended period of time, particularly in cold temperatures.

Cold Pressed Orange Oil samples and certificates of analysis are available upon request.

Caution: The user should conduct his/her own experiments and establish proper procedures and controls before attempting use on critical parts.

# Cold Pressed Orange Oil

## MATERIAL SAFETY DATA SHEET

Preparation Date: April 2005

### Emergency Phone Numbers:
Florida Chemical: (863) 294-8483
CHEMTREC 24 Hour Number: (800) 424-9300
Outside U.S., call CHEMTREC collect



**FLORIDA CHEMICAL CO., INC.**
*351 Water Haven Blvd. NE*
*Winter Haven, FL 33881-9432*
*Phone: (863) 294-8483*
*Fax: (863) 294-7783*
*Web Site: www.floridachemical.com*
*E-Mail: info@floridachemical.com*

### SECTION I: IDENTIFICATION

Trade Name: Cold Pressed Orange Oil —— Early/Midseason & Valencia
Product Codes: 330000-Early/Midseason     331000-Valencia     329000-Orange Oil Blend
CAS Number: 8028-48-6
EINECS Number: 232-433-8

### SECTION II: HAZARDOUS COMPONENTS

Volatile Ingredients: D-Limonene is the major component >90% of Early/Midseason and Valencia Orange Oil. Cold Pressed Orange Oil is a by-product of citrus, entirely of natural origin, and to the best of our knowledge and belief contains no artificial flavors, sulfites, nitrites, or pesticide residue exceeding tolerances established by the FDA. Cold Pressed Orange Oil does NOT contain lead, cadmium, mercury, or hexavalent chromium or come in contact with these chemicals since it is a citrus-derived essential oil expressed from orange peels. Further, Cold Pressed Orange Oil is packaged in food grade containers with inert liners that do NOT contain lead, cadmium, mercury, or hexavalent chromium. Cold Pressed Orange Oil does NOT contain and is NOT manufactured with any Class I or II ozone-depleting substances listed under the United States Clean Air Act of 1990.

Hazardous Materials Identification System – HMIS:
    1    Health Hazard – Mild skin irritant
    2    Flammability – Flashpoint above 100°F
    0    Reactivity – Stable
    G    Protection – Safety glasses & gloves recommended
This substance contains no materials subject to the reporting requirements of SARA TITLE III SECTION 313.

The information contained herein is based on current knowledge and experimental efforts as far as possible is accepted that the information is sufficient or correct in all cases. Users should consider that care may as a supplement to other information obtained by or thru data. No warranty is expressed or implied regarding the accuracy of this data, the results to be obtained from the use thereof, or that any such use will not infringe any patent. Users should make independent determination of suitability and completeness of information from all sources to assure proper use and disposal of these materials, the safety and health of employees and customers, and the protection of the environment. This information to be relied upon the condition the person receiving it shall determine its suitability for the particular purpose. This MSDS is to be used as a guideline for safe work practices and emergency response.

BBW 009098



Section III PHYSICAL DATA

| | |
|---|---|
| Appearance | Light yellow-orange oil |
| Odor | Fresh orange aroma |
| Specific Gravity (25°C) | 0.842 - 0.846 |
| Refractive Index (20°C) | 1.4720 - 1.4740 |
| Optical Rotation (25°C) | +94° - +99° |
| Aldehyde, % (as decyl) | 1.0 - 2.0 |
| Flashpoint (CCCFP) | >110°F ASTM D6450 |
| Boiling Point | 349°F (176°C) |
| Evaporation Rate | 0.2 (BuAc=1) |
| Water Solubility | Insoluble |
| Vapor Density (air=1) | Over 1 |
| Vapor Pressure (20°C) | <2mmHg |
| Percent Volatile by Volume | 98% |



Section IV FIRE AND EXPLOSION HAZARD DATA

Flashpoint (CCCFP): >110°F ASTM D6450.
Flammable Limits: LEL = Not Available.    UEL = Not Available.
Extinguishing Media: Carbon dioxide, foam or dry chemical.
Special Fire Fighting Procedures: SCBA recommended. Smother to exclude air. Do not use water. Handle as an oil fire.
Unusual Fire and Explosive Hazards: Combustible liquid. Keep away from heat, sparks, and open flame.
Incompatibility (Materials to avoid): Strong oxidizing agents.
Hazardous Decomposition Products: Not Available.
Hazardous Polymerization: Will not occur.
Conditions to Avoid for Polymerization: Not Available.
Stability Considerations: Stable.
Conditions to Avoid for Stability:  Avoid temperatures over 118°F (48°C).



Section V HEALTH HAZARD DATA

Health Hazards (Acute and Chronic): Product is a moderate irritant, moderate ingestion and slight inhalation hazard under acute local application.

This Product Contains No Carcinogens (NTP, IARC or OSHA).
Signs and Symptoms of Exposure: Product may be irritating to the skin, eyes, nose and throat.
Medical Conditions Generally Aggravated by Exposure: Persons with allergies or pre-existing skin conditions should avoid contact with this product.



Section VI TOXICOLOGICAL DATA

Eye Contact: Remove contact lenses at once. Immediately flush eyes with large quantities of clean water for at least 15 minutes. Call a physician immediately.
Skin Contact: Remove any contaminated clothing or shoes. Thoroughly wash affected area with soap. Flush with large quantities of clean water.  If irritation develops or persists, call a physician.
Ingestion: DO NOT induce vomiting. Administer water and call a physician or local Poison Control Center immediately.
Inhalation: Remove to fresh air and contact a physician immediately.

Section VII SPILL OR LEAK PROCEDURE

Steps to be Taken if Material is Released or Spilled: Use protective gloves to avoid skin contact. Small spills can be wiped up. Large spills should be absorbed by dirt, sand or other suitable absorbents for disposal. Do not hose spills down drains, sewers or waterways. Cold Pressed Orange Oil may be toxic to aquatic organisms. Move leaking containers to well ventilated area. No smoking. Eliminate any source of ignition. Minimize inhalation. Use NIOSH approved protection device.  CAUTION: slippery on floor.

Waste Disposal Method: Incinerate or Dispose in Accordance with Local, State and Federal Regulations.

BBW 009099

Drums are typically orange or black DOT approved steel drums coated with an epoxy-phenolic resin liner. All drums of our Cold Pressed Orange Oil are filled to a net weight of 390 lbs. Dimensions of 55-gallon drums are: length 23", width 23", and depth 35". Tank truck shipments average 6500 gallons (45,000 lbs). Overseas ISO tank shipments are either 20,000 liters (16,800 kg) or 24,000 liters (20,160 kg). Sample quantities are packaged in fluorinated plastic containers or glass (1 oz. samples).

<u>STORAGE & HANDLING</u>

Store in a warehouse with a fire prevention system. Avoid contact with incompatible chemicals listed in Section IV. Store in tightly sealed full containers in well-ventilated controlled warehouse conditions. Partially filled containers should be blanketed with nitrogen. Antioxidants such as BHT are commonly used in addition to proper storage and handling procedures.

Improper storage and handling can lead to oxidation. Cold Pressed Orange Oil is "winterized" when it is first produced by storing at freezing temperatures to remove the majority of natural waxes. Although this process is done as thoroughly as possible, trace amounts of waxy solids may remain and settle out of the product when stored for an extended period of time, particularly in cold temperatures.

Cold Pressed Orange Oil samples and certificates of analysis are available upon request.

<u>Caution:</u> The user should conduct his/her own experiments and establish proper procedures and controls before attempting use on critical parts.

# Cold Pressed Orange Oil

## MATERIAL SAFETY DATA SHEET

Preparation Date: April 2005

### Emergency Phone Numbers:
Florida Chemical: (863) 294-8483
CHEMTREC 24 Hour Number: (800) 424-9300
Outside U.S., call CHEMTREC collect



**FLORIDA CHEMICAL CO., INC.**
351 Winter Haven Blvd. NE
Winter Haven, FL 33881-9432
Phone: (863) 294-8483
Fax: (863) 294-7783
Web Site: www.floridachemical.com
E-Mail: info@floridachemical.com

### Section I. IDENTIFICATION

Trade Name: Cold Pressed Orange Oil —— Early/Midseason & Valencia
Product Codes: 330000-Early/Midseason   331000-Valencia   329000-Orange Oil Blend
CAS Number: 8028-48-6
EINECS Number: 232-433-8

### Section II. HAZARDOUS COMPONENTS

Volatile Ingredients: D-Limonene is the major component >90% of Early/Midseason and Valencia Orange Oil. Cold Pressed Orange Oil is a by-product of citrus, entirely of natural origin, and to the best of our knowledge and belief contains no artificial flavors, sulfites, nitrites, or pesticide residue exceeding tolerances established by the FDA. Cold Pressed Orange Oil does NOT contain lead, cadmium, mercury, or hexavalent chromium or come in contact with these chemicals since it is a citrus-derived essential oil expressed from orange peels. Further, Cold Pressed Orange Oil is packaged in food grade containers with inert liners that do NOT contain lead, cadmium, mercury, or hexavalent chromium. Cold Pressed Orange Oil does NOT contain and is NOT manufactured with any Class I or II ozone-depleting substances listed under the United States Clean Air Act of 1990.

Hazardous Materials Identification System -- HMIS:
1     Health Hazard -- Mild skin irritant
2     Flammability -- Flashpoint above 100°F
0     Reactivity -- Stable
G     Protection -- Safety glasses & gloves recommended

This substance contains no materials subject to the reporting requirements of SARA TITLE III SECTION 313.

The information contained herein is based on current knowledge and experience and is reasonably to be assumed that the information is accurate or correct in all cases. Users should consider this data only as a supplement to other information obtained by the user, his warranty is disclaimed or implied regarding the accuracy of this data, the results to be obtained from the use thereof, or that any such use will not infringe any patent. Users should make independent determinations of suitability and completeness of information from all sources before actual use and disposal of these materials, the safety and health of employees and customers, and the protection of the environment. This information is furnished upon the conditions the person receiving it shall determine its suitability for the particular purpose. This MSDS is to be used as a guideline for safe work practices and emergency response.

BBW 009100

# EXHIBIT 8

**REDACTED**

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2006, the attached **REDACTED PUBLIC VERSION OF LP MATTHEWS' OPPOSITION TO BATH & BODY WORKS, INC.'S AND LIMITED BRANDS, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 103** was served upon the below-named counsel of record at the address and in the manner indicated:

Richard L. Horwitz, Esquire                          HAND DELIVERY
Potter Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

Arthur I. Neustadt, Esquire                          VIA FEDERAL EXPRESS
Oblon, Spivak, McClelland, Maier & Neustadt, P.C.
1940 Duke Street
Alexandria, VA 22314

Francis G.X. Pileggi, Esquire                        HAND DELIVERY
Fox Rothschild LLP
Suite 1300
919 North Market Street
Wilmington, DE 19801

John Ward, Esquire                                   VIA FEDERAL EXPRESS
Ward & Olivo
708 Third Avenue
New York, NY 10017


                                    */s/ John G. Day*
                                    _____
                                    John G. Day