# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BATH & BODY WORKS, INC., ) <br>    and ) <br> LIMITED BRANDS, INC., ) <br>    and ) <br> KAO BRANDS CO. (f/k/a THE ANDREW ) <br> JERGENS COMPANY), ) <br>    and ) <br> KAO CORPORATION, ) <br> ) <br>     Defendants. ) | C.A. No. 04-1507 (SLR) <br> JURY TRIAL DEMANDED <br><br><br> **PUBLIC VERSION** <br> **FILED: AUGUST 2, 2006** <br><br><br> **DATED: JULY 28, 2006** |

## REPLY BRIEF IN SUPPORT OF THE LIMITED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

                                            FOX ROTHSCHILD LLP
                                            Francis G.X. Pileggi (Del. Bar No. 2624)
                                            Sheldon K. Rennie (Del. Bar No. 3772)
                                            919 North Market Street, Suite 1300
                                            Wilmington, Delaware 19801
                                            Phone: (302) 655-3667
                                            Fax: (302) 656-8920

                                            *Attorneys for Defendants Bath & Body*
                                            *Works, Inc. and Limited Brands, Inc.*

OF COUNSEL:

WARD & OLIVO
John F. Ward
David M. Hill
Michael J. Zinna
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................1

    A.    Most Accused Products are not Cleaning Compositions ................................2

    B.    The Accused Products Contain Less Than 5% Orange Oil ............................4

    C.    None of the Accused Products Contain Oatmeal or Oat Gum, Let Alone Use Them as the Primary Emulsifier ...................................6

    D.    The pH of Most of the Accused Products Falls Outside the Claimed Range ........................................................................................7

CONCLUSION......................................................................................................................9

i

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................... 7, 9

*Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323
    (Fed. Cir. 2001) ........................................................................................................ 8

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ............................ 3

*Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917) .................. 3

*North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1574
    (Fed. Cir. 1993) ..................................................................................................... 5, 7

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) ........................ 5

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,* 308 F.3d
    1167 (Fed. Cir. 2002) ............................................................................................... 8

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ...................... 8

# INTRODUCTION

Limited Brands, Inc. and Bath & Body Works, Inc. (hereinafter collectively referred to as the "Limited Defendants") file this Reply Brief in support of their Motion for Summary Judgment of Non-Infringement (D.I. 260) and in response to LP Matthews, L.L.C.'s ("plaintiff" or "LPM") Answering Brief in Opposition to this motion (D.I. 312).

LPM has never come to grips with the fact that Claim 1 tracks the language in the specification identifying the broadest embodiment of the claimed invention. In other words, the '062 patent makes it clear that Claim 1 is broader than either Claim 6 or Claim 9, which are both directed to preferred, i.e., narrower embodiments. LPM's entire case is premised on taking advantage of sloppy claim language to interpret Claims 6 and 9 more broadly than Claim 1, and more broadly than the disclosure. This is improper. It is axiomatic that claims cannot be interpreted narrowly in order to gain their allowance, and then broadly in litigation to convert legitimate actions into infringement. Viewed in light of its own specification, LPM's claim interpretations simply do not make sense.

# ARGUMENT

LPM's Opposition to the present motion does not raise any issues of material fact. LPM admits that no Accused Product contains more than 1% orange oil.[1] (D.I. 269 at 7-8). LPM admits that the inventors described orange oil as the primary ingredient of their cleaning composition. (D.I. 310 at 6). LPM admits that none of the Accused Products contain oatmeal or oat gum. (D.I. 269 at 13-14). And LPM has not and cannot refute

---

[1] LPM alleges that twenty-seven (27) products infringe Claims 6 and 9 of the '062 patent. These products are collectively referred herein as the "Accused Products."

1

that the '062 patent requires the use of an oat grain derivative as the primary emulsifier.[2] (*See, e.g.,* D.I. 260, Ex. A, Col. 4, lns. 25-27). Even a cursory review of the Accused Products' formula sheets illustrates that the Accused Products have none of these characteristics. (D.I. 260, Ex. I). LPM's opposition, like its case, is based solely on its unsupported and unsupportable construction of Claims 6 and 9 of the '062 patent (the asserted claims).[3]

The Accused Products are not cleaning compositions, do not have orange oil sufficient for cleaning, do not have an oat grain derivative sufficient for emulsifying, and/or do not have a pH within the claimed range. (D.I. 260, Ex. B). In short, none of the Accused Products infringe the '062 patent, a fact that LPM fails to rebut in its opposition to the present motion. Because there are no genuine issues of material fact, summary judgment of non-infringement is appropriate.

### A.   Most Accused Products are not Cleaning Compositions

LPM admits that the term "cleaning composition" is a claim limitation for both Claims 6 and 9. (D.I. 254 at 7-9). However, LPM improperly defines the term "cleaning composition" to be "a composition that can be applied to the human skin to treat unwanted substances on the skin in order to facilitate removal of those substances." (D.I. 254 at 8). This proposed definition is ostensibly supported by two pieces of "evidence" –

**REDACTED**

---

[3] Contrary to LPM's assertion, the '062 patent is directed to a skin cleaning composition containing at least 5% orange oil as its cleaning agent, an oat grain derivative product as its primary emulsifier, and a natural moisturizer, and having a pH in the range of 4.5 to 6.0, inclusively.

testimony from Dr. Lahanas, an employee of the Limited Defendants, and Dr. Rhodes, LPM's technical expert.

**REDACTED**

A patent is not a philosophical document.  Rather it is in the nature of a land deed – it sets out precise metes and bounds.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 997 (Fed. Cir. 1995) (Circuit Judge Mayer, concurring) (*citing Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 510 (1917)).  Here, the '062 patent discloses an industrial strength hand cleaner intended to remove "tar, caulking compounds, sealants, adhesives, and the like." (D.I. 260, Ex. A, Col. 1, lns. 5-9).

Eighteen (18) of the twenty-seven (27) Accused Products cannot be considered "cleaning compositions" under any rational interpretation.[4] Rather, they are treatments intended to remain on the skin. They are not intended to be washed off – this would defeat their intended purpose, be it treatment of dry skin, acne, etc. Common sense (as well as the '062 patent) dictates that such products are not "cleaning compositions."

### B.  The Accused Products Contain Less Than 5% Orange Oil

LPM admits that a proper construction of the each of the asserted claims (i.e., Claims 6 and 9) requires that the orange oil in its composition provide a cleaning function. (D.I. 312 at 7). Here, the '062 patent clearly instructs that samples containing 5% and 12.5% orange oil do not clean. (D.I. 260, Ex. A, Col. 6, lns. 41-45, Col. 8, lns. 4-8). Rather, they are only capable of removing makeup. (D.I. 260, Ex. A, Col. 6, lns. 44-45, Col. 8, lns. 4-6). So while an argument can be made as to whether or not compositions having as little as 5% are "cleaning" compositions, there can be no debate about compositions having less than 5% orange oil. The '062 patent clearly states that:

> Applicants concluded that, with respect to cosmetics, a composition according to the present invention could have as little as 5% by volume of orange oil although it was preferable to have a cleaning composition having at least 25% by volume of orange oil.

(D.I. 260, Ex. A, Col. 6, lns. 55-61).

LPM does not refute the fact that none of the Accused Products contain more anywhere near 5% orange oil. (*See* D.I. 312 at 7). In addition, LPM does not refute the Limited Defendants' assertion that any orange oil found in the vast majority of Accused Products comes from the fragrance or perfume. In an attempt to distinguish the '062

---

[4] These eighteen (18) products include lotions, creams, moisturizers, balms, body butters, serums, mattifiers, acne treatments, and nourishers.

4

patent from prior art, LPM draws the distinction between cleaning compositions containing orange oil as a cleaning agent and compositions which merely utilize orange oil as a fragrance. (*See* D.I. 306 at 4-6). Further, the inventors acknowledge that 5% orange oil is the lower limit to effectuate cleaning. (D.I. 260, Ex. A, Col. 2, lns. 27-30). This limitation makes logical sense, since orange oil is the "primary" cleaning agent. (*See* D.I. 260, Ex. D at 2-3).

The only "factual dispute" proffered by LPM is the fact that they allege that 0.01% is the minimum amount of orange oil required in Claims 6 and 9. (D.I. 312 at 7). In support of this tenuous contention, LPM asserts that it is improper to import the limitations from one claim into another. (D.I. 312 at 5-6). More specifically, LPM argues that Claims 6 and 9 cannot be read to require at least 5% orange oil because Claim 1 requires "5% to 60% orange oil." (D.I. 312 at 6; D.I. 260, Ex. A, Col. 9, lns. 5-7).

However, the fact is that Claim 1 is consistent with the specification's disclosure of the broadest embodiment of the claimed invention. In short, the '062 patent is very clear that Claim 1 is broader than the asserted claims in this case, which are directed to preferred (i.e., narrower) embodiments. Accordingly, LPM's interpretation of Claims 6 and 9 is improper, because it is well settled that "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

It is axiomatic that a finding of literal infringement requires that every limitation of the claims be found in the accused products. *North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1574 (Fed. Cir. 1993). Since a proper construction of the asserted claims requires 5% orange oil, and LPM admits that orange oil as a fragrance is

5

not covered by the '062 patent (D.I. 306 at 4), LPM has failed to meet its burden of proof of infringement by a preponderance of the evidence. Accordingly, summary judgment of literal non-infringement is appropriate.[5]

### C. None of the Accused Products Contain Oatmeal or Oat Gum, Let Alone Use Them as the Primary Emulsifier

Claim 9 requires oatmeal. (D.I. 255 at 14-15). Claim 6 requires oatmeal or oat gum as the primary emulsifying agent. (D.I. 255 at 13-14). LPM does not refute the fact that none of the Accused Products contain oatmeal or oat gum, the only oat grain derivatives identified in the '062 patent. (D.I. 260, Ex. A, Col. 2, lns. 36-38; *see also* D.I. 260, Ex. A, Col. 3-8). It is further undisputed that no Accused Product uses an oat grain derivative as the "primary" emulsifier.

**REDACTED**

LPM erroneously relies on the testimony of Dr. Lahanas to support its contention that oatmeal is contained in each of the products. (D.I. 312 at 7). However, Dr. Lahanas repeatedly testified that he was unfamiliar with oats and food chemistry in general. (*See generally* D.I. 312, Ex. A).

**REDACTED**

---

[5] In addition, LPM tacks on a doctrine of equivalents argument which is unsupported by any testimony or other particularized proof. More particularly, LPM merely asserts (without support) that there are "insubstantial" differences between 0.01% orange oil and 0.05% orange oil. (D.I. 312 at 7).

6

**REDACTED**

However, LPM's expert performed no actual testing of the oat grain derivatives in the Accused Products. (D.I. 260, Ex. J at 11-13; *see* D.I. 264 at 6).

**REDACTED**

This can hardly rise to the level of a genuine issue of material fact.

Because there are no issues of genuine fact, summary judgment is appropriate here. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, because LPM has failed to meet its burden of proof, none of the Accused Products meet each and every element of Claim 6 or Claim 9. Therefore it follows that none of the Accused Products can infringe either Claim 6 or Claim 9. *North Am. Vaccine*, 7 F.3d at 1574. Accordingly, summary judgment of non-infringement is appropriate.

D.  <u>The pH of Most of the Accused Products Falls Outside the Claimed Range</u>

Claim 6 requires the pH of the composition to be "within the range of 4.5 to 6.0, inclusively." (D.I. 260, Ex. A, Col. 10, lns. 5-6). The use of the term "inclusively" is so ubiquitous that a discussion hardly seems necessary. However, LPM's futile attempt to assert a larger pH range merits a cursory discussion. The use of the term "inclusively" is

used to indicate that the endpoints of a range should be included.[6]  Indeed, this comports with the results of the preferred embodiments disclosed in the '062 patent, which have pH values of 5.0 and 5.5.  (D.I. 260, Ex. A, Col. 4, lns. 62-35).  Nevertheless, LPM asserts that the term "inclusively" indicates a range of "4.0 to 6.5".  (D.I. 254 at 15-16).

Not only does LPM's construction eliminate the term "inclusively"[7] from the claim, but the only support for this contention is that a single instance of the word "approximate" indicates that the inventors utilized a testing procedure with an implied precision of +/- 0.5 pH units.  (D.I. 312 at 8-9).  However, this type of analysis flies in the face of LPM's own principle of claim construction analysis that claim construction "must begin and remain centered on the language of the claims themselves."  (D.I. 254 at 1) (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)).

Because there are no issues of genuine fact, summary judgment is appropriate here.  That is, eighteen (18) of the twenty-one (21) products accused of infringing Claim 6 of the '062 patent do not have a pH within the claimed range.[8]  Accordingly, summary

---

[6] *See*, e.g., *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002) ("Groups 3a to 7a, inclusive, and 3b through 7b, inclusive, of the Periodic Table of Elements").

[7] LPM's construction wholly ignores the term "inclusively."  It is well settled that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

**REDACTED**

8

judgment with respect to these eighteen (18) products is appropriate. *Anderson* 477 U.S. at 248.

## CONCLUSION

For the foregoing reasons, the Limited Defendants respectfully request that this Court grant their Motion for Summary Judgment of Non-Infringement.

                                          Respectfully submitted,

                                          FOX ROTHSCHILD LLP

Dated:  July 28, 2006                   By:   /s/ Sheldon K. Rennie
                                          Francis G.X. Pileggi (Del. Bar No. 2624)
                                          Sheldon K. Rennie (Del. Bar No. 3772)
                                          FOX ROTHSCHILD LLP
                                          Suite 1300
                                          919 North Market Street
                                          Wilmington, Delaware  19801
                                          Phone: (302) 655-3667
                                          Fax: (302) 656-8920
                                          E-mail: fpileggi@foxrothschild.com
                                          E-mail: srennie@foxrothschild.com

                                          OF COUNSEL:

                                          John F. Ward
                                          David M. Hill
                                          Michael J. Zinna
                                          WARD & OLIVO
                                          708 Third Avenue
                                          New York, New York 10017
                                          Phone: (212) 697-6262
                                          Fax: (212) 972-5866
                                          E-mail: wardj@wardolivo.com
                                          E-mail: hilld@wardolivo.com
                                          E-mail: zinnam@wardolivo.com

                                          *Attorneys for Defendants*
                                          Bath & Body Works, Inc.
                                          Limited Brands, Inc.