**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LP MATTHEWS, L.L.C., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1507 (SLR) |
| ) | JURY TRIAL DEMANDED |
| BATH & BODY WORKS, INC., ) | |
|    and ) | |
| LIMITED BRANDS, INC., ) | |
|    and ) | **PUBLIC VERSION** |
| KAO BRANDS CO. (f/k/a THE ANDREW ) | **FILED: AUGUST 2, 2006** |
| JERGENS COMPANY), ) | |
|    and ) | |
| KAO CORPORATION, ) | **DATED: JULY 28, 2006** |
| ) | |
|     Defendants. ) | |

**REPLY BRIEF IN SUPPORT OF THE LIMITED DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 103**

                                       FOX ROTHSCHILD LLP
                                       Francis G.X. Pileggi (Del. Bar No. 2624)
                                       Sheldon K. Rennie (Del. Bar No. 3772)
                                       919 North Market Street, Suite 1300
                                       Wilmington, Delaware 19801
                                       Phone: (302) 655-3667
                                       Fax: (302) 656-8920

                                       *Attorneys for Defendants Bath & Body Works, Inc.*
                                       *and Limited Brands, Inc.*

OF COUNSEL:

WARD & OLIVO
John F. Ward
David M. Hill
Michael J. Zinna
708 Third Avenue
New York, New York 10017
Phone: (212) 697-6262
Fax: (212) 972-5866

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................1

    A.    The Board Decision Is Clear And Convincing Evidence That The Asserted Claims Are Obvious....................................................................................2

    B.    Additional Prior Art Not Before The Board Corroborates The Obviousness Of Claims 6 And 9 ......................................................................................................6

    C.    The Prior Art Discloses All The Elements Of Claims 6 And 9 ...............................7

    D.    Applicants Sought To Mislead The Examiner With Fictitious Distinctions Between Orange Oil And D-Limonene .....................................................................9

    E.    No Nexus Exists Between The Claimed Invention And The So-Called Commercial Success ...............................................................................11

CONCLUSION.............................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984) .................. 7

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120 (Fed. Cir. 2000) ........ 7

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) ................................................................................... 5

*In re Spada*, 911 F.2d 705 (Fed. Cir. 1990) ................................................................................. 8

*Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157 (Fed. Cir. 2006) ............................................. 4, 7

*Miller Products Co., Inc. v. Veltek Assoc., Inc.,* 2004 U.S. Dist. LEXIS 1798
  (D. Del. February 10, 2004) ..................................................................................................... 6

*NPF Ltd. v. Smart Parts, Inc.*, 2006 U.S. App. LEXIS 16421 (Fed. Cir. June 27, 2006) ............ 11

*Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987) ...................... 11

**Statutes**

35 U.S.C. § 103 .................................................................................................................. 1, 2, 5, 12

**Regulations**

MPEP 1401 ..................................................................................................................................... 6

## INTRODUCTION

Defendants Bath & Body Works, Inc. and Limited Brands, Inc. (collectively referred to as the "Limited Defendants") file this Reply Brief in support of their Motion for Summary Judgment of Invalidity under 35 U.S.C. § 103 (D.I. 268) and in response to LP Matthews, L.L.C.'s ("LPM" or "plaintiff") Opposition to that motion (D.I. 313).

When Phillip Low observed that caulking seal on his hands started dissolving as he ate an orange, he was merely re-discovering a long-appreciated phenomenon. Orange oil and its primary constituent, d-limonene, have been used in cleaning compositions for decades. Soap makers have used the combination of oatmeal, orange oil and a moisturizer for even longer. LPM's argument fails to raise a genuine issue of material fact regarding the prior art disclosures. Summary judgment is appropriate because the '062 patent is invalid under 35 U.S.C. § 103 as obvious.

## ARGUMENT

The Board Decision is clear and convincing evidence that asserted Claims 6 and 9 are invalid under § 103. (D.I. 268, Ex. G, pp. 9-12). The Board rejected claims in the patentees' continuation-in-part application, United States Application Ser. No. 07/786,804 ("the '804 application") that were essentially the same as the asserted claims in this case. (D.I. 268, Ex. G, pp. 2, 7-12). In addition to the prior art that the Board and the Examiner relied upon in their rejections (D.I. 268, Ex. B, Ex. C, Ex. D, Ex. E), the Limited Defendants have located another compelling reference which was not before the Board or the Examiner – *Soaps, A Practical Manual of the Manufacture of Domestic, Toilet and Other Soaps*, by George Hurst (2d 1907) ("the Soaps Manual"). (D.I. 268, Ex.

O). When the Examiner rejected the claims of the '062 patent, he noted that use of orange oil was obvious in view of the well-known benefits of d-limonene in hand cleaners. With the addition of the Soaps Manual, the use of orange oil is not just obvious, it is anticipated.

    A.    The Board Decision Is Clear And Convincing Evidence That The Asserted Claims Are Obvious

A person is not entitled to a patent "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103. The Board rejected independent Claims 1, 17 and 25 of the '804 application because they were obvious in view of the prior art. (D.I. 268, Ex. G, pp. 2, 7-12). The Board's Decision highlights the disclosure of each claim element in the prior art, rendering the claims obvious. (D.I. 268, Ex. G, pp. 7-12). It follows that Claims 6 and 9 of the '062 patent, having substantially the same claim language, are also obvious in view of the same prior art. (D.I. 268, Ex. G, p. 2; Ex. A, Col. 10, lns. 1-6 and 13-17).

The Board's obviousness rejection was based on the combined disclosures of Coleman, Dellutri and the 1969 edition of the Physician's Desk Reference ("PDR").[1] (D.I. 268, Ex. G, pp. 10, 12). The Board found the motivation to combine these references from the fact that both Coleman and Dellutri disclosed hand cleaners having d-limonene for cleaning and aloe vera extract to reduce skin irritation. A page from the 1969 PDR listing Aveeno® and other oat-based products was cited as "evidence that

---

[1] The PDR is a well-known resource, published yearly for over fifty years, used by professionals seeking up-to-date information on drugs, herbal and nutritional supplements and over-the-counter remedies.

2

colloidal oatmeal has long been used to treat skin" for cleaning and reducing irritation of acne, rashes and the like. (D.I. 268, Ex. G, p. 10; Ex. D, p. 665).[2]

More specifically, the Board found that Coleman "describes the use of d-limonene obtained from citrus oils, such as orange oil, as a hand cleaner." (D.I. 268, Ex. G, p. 9). Coleman then added conventional emollients or moisturizers just like the '062 patent and the '804 application. (D.I. 268, Ex. G, p.9; Ex. C, pp. 24-25). Coleman further noted that testers "preferred [citrus oil-containing compositions] because they cause less skin irritation and had a pleasant odor." (D.I. 268, Ex. G, p.9; Ex. C, pp. 24-25).

The Board ruled that: "Dellutri also describes cleaning agents that can be used as a hand cleaner which include d-limonene obtained from orange oil." (D.I. 268, Ex. G, p. 9). The Board found that Dellutri discloses to one of skill in the art to use orange oil in the range of 20-90% volume concentration, very similar to the more than 25% preferred in the '062 patent. (D.I. 268, Ex. G, p. 9). Dellutri also teaches that by adding aloe vera, his cleaning agent becomes an effective, non-irritating hand cleaner of the type claimed years later in the '062 patent:

> The hand cleaner is substantially unique in that it also serves as a heavy duty cleaner for industrial and all purpose use, where the hand cleaner leaves the hands with a pleasant citrus flavor, a natural softness, and a refreshing fragrance. Furthermore, the hand cleaner can remove soiled ingredients from the hands including oil, grease, paint, tar, ink, adhesives, grass and fruit stains, etc. (D.I. 268, Ex. B, Col. 3, lns. 44-51).

With respect to oatmeal, the Board noted that "PDR 1969 is relied upon as evidence that colloidal oatmeal has long been used to treat skin in general and for treating skin conditions…. Those formulations also have had their pH adjusted to approximate

---

[2] In fact, the Aveeno website credits the ancient Egyptians with the first use of oatmeal for its skin-soothing qualities.

3

that of normal skin." (D.I. 268, Ex. G, p. 10).

LPM's arguments regarding motivation are misplaced. Motivation to combine can be found in the prior art references themselves. *See Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006). Here, Coleman and Dellutri both relate to hand cleaners having d-limonene from citrus oils as the cleaning agent and emollients or moisturizers to reduce skin irritation. (D.I. 268, Ex. G, p. 9; Ex. C, pp. 24-25; Ex. B, Col. 3, lns. 44-51). The 1969 PDR discloses colloidal oatmeal as used for cleaning and treating skin. (D.I. 268, Ex. G, p. 10; Ex. D, p. 665). One of skill in the art reading these references would have considered adding oatmeal, well-known for its skin-soothing qualities, to the hand cleaners of Coleman and Dellutri. (D.I. 268, Ex. G, pp. 10-11).

Motivation to combine can also be found in the nature of the problem to be solved. *See Medichem,* 437 F.3d at 1165. Coleman, Dellutri and the 1969 PDR all disclose products for soothing and cleaning the human skin. (D.I. 268, Ex. G, pp. 9-11; Ex. C, pp. 24-25; Ex. B, Col. 3, lns. 44-51; Ex. D, p. 665). One of skill in the art formulating a non-irritating hand cleaner would certainly consider substituting or supplementing the disclosed aloe vera, lanolin and other emollients and moisturizers identified by Coleman and Dellutri with oatmeal. (*See* D.I. 268, Ex. G, pp. 10-11). In fact, Aveeno did this generations ago. (*See, e.g.*, Juliano) (D.I. 268, Ex. G, p. 10; Ex. E).

The Board cited the relevance of these references as described *supra*, and did not merely list the element(s) that each disclosed. (D.I. 268, Ex. G, pp. 9-11). It included a detailed discussion of each reference, its subject matter, and the precise disclosure of the claim element(s). (D.I. 268, Ex. G, pp. 9-11).

Then, the Board provided its own explanation of why a hypothetical person of

4

skill in the art would be motivated to combine these references to arrive at the claimed invention, i.e., orange oil, a moisturizer and oatmeal in a cleaning composition having a pH approximating that of normal skin:

> On the basis of the combined disclosures of these three references, we hold that one of ordinary skill in the art would have found it obvious to treat human skin with a composition which comprises orange oil, aloe vera extract, and colloidal oatmeal.  As seen from Dellutri, the hypothetical person of ordinary skill in the art would have understood that such compositions should have a high volume percentage of orange oil.  That hypothetical person would have fully understood and expected at the time of the present invention that treating human skin with a composition which comprises orange oil, aloe vera extract, and colloidal oatmeal would be soothing and help alleviate itching and irritation.  Specifically, the hypothetical person would have found it obvious to use such a composition to treat damaged skin as claimed including skin which has been burned, acne, rashes, and poison ivy.
>
> In regard to the requirements of claims 5 and 6 that the resulting composition have a pH range of between 4.5 and 6.0, optionally through use of a buffering compound, we point to the disclosure in PDR 1969 that skin care compositions should be adjusted to have a pH approximate to that of normal skin.  Thus, the pH of the resulting composition is a result effective variable and would routinely be optimized by one of ordinary skill in the art. (D.I. 268, Ex. G, pp. 10-11).

The Board Decision clearly supports a finding that motivation to combine these references exists.  Hindsight was not used.  Undoubtedly recognizing this, LPM further contends that the Board's § 103 rejection, being *sua sponte*, is therefore somehow deficient, relying (improperly) on *In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006).  LPM misstates the outcome in this case, as the Federal Circuit **affirmed** the Board's § 103 obviousness decision, and did not reverse its findings.  *See id.* at 989.  In fact, the Court explicitly noted that the Board met the burden of proving motivation to combine the

references by a preponderance of the evidence. *Id.* at 989. This is just one more LPM mistake.

Once the inventors failed to appeal, the Board Decision became a final decision on the merits of the obviousness of a cleaning composition containing orange oil, a moisturizer and oatmeal. The Board actually criticized the Examiner of the '804 application for failing to conduct a thorough search of the prior art. (D.I. 268, Ex. G, pp. 5-6). This criticism applies equally to the Examiner of the '062 patent, who conducted an equally cursory prior art search. (*See* D.I. 268, Ex. I).

Unfortunately, the Patent Office has no mechanism in place whereby forbears in a patent family are scrutinized once progeny are questioned. If such a system were in place, the Patent Office itself would undoubtedly have rejected the '062 patent – for any one or more of the multitude of reasons provided by the Board. Under current practice, in the absence of additional prior art, only the patentee could have requested review of the '062 patent with a reissue request. (*See generally*, MPEP 1401). Given the vehemence of the Board's Decision, it is not surprising the LPM's predecessors did not subject their patent to such obvious risk. Now it falls to this Court to complete the work started by the Board, by applying its invalidity analysis to the '062 patent.

> B. Additional Prior Art Not Before The Board
> Corroborates The Obviousness Of Claims 6 And 9

The presumption of validity that accompanies an issued patent is a refutable presumption. *See Miller Products Co., Inc. v. Veltek Assoc., Inc.,* 2004 U.S. Dist. LEXIS 1798, *17 (D. Del. February 10, 2004) (a "patent enjoys the statutory presumption of validity unless and until [defendant] rebuts that presumption with clear and convincing

evidence."). The deference ordinarily given to the Examiner is at least partially if not entirely discharged where the court has prior art that was not before the Examiner. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984). The prior art may carry more weight and go further toward sustaining the attacker's unchanging burden. *Id.* Here, neither the Soaps Manual nor the 1969 PDR page were considered by the Examiner who allowed the '062 application. (D.I. 268, Ex. Ex. I; Ex. O).

The Soaps Manual, published in 1907, teaches a combination of orange oil with oatmeal and a pharmaceutically acceptable moisturizer for a cleaning composition. (D.I. 268, Ex. O, p. 272-273, 314). The Soaps Manual specifically includes recipes for Orange Soap and Oatmeal Soap that include orange oil, oatmeal and a moisturizer as basic ingredients. (D.I. 268, Ex. O, pp. 164, 272-273, 311-314). The 1969 PDR page identifies commercially available soaps and lotions containing oatmeal and having pH's adjusted to approximate that of human skin. (D.I. 268, Ex. D, p. 665). Because this prior art was not before the Examiner of the '062 patent, it may be given more weight in the determination of obviousness. *See American Hoist & Derrick Co.*, 725 F.2d at 1360.

    C.    <u>The Prior Art Discloses All The Elements Of Claims 6 And 9</u>

The inquiry for obviousness rests on the totality of the circumstances at the time of filing. *Brown & Williamson Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1124 (Fed. Cir. 2000). If all the elements of an invention are found in a combination of the prior art references, the invention is obvious and the patent invalid. *Medichem, S.A.*, 437 F.3d at 1164.

Dellutri and Coleman teach a skin cleaning composition having citric or citrus oil in combination with a moisturizer and having a pH approximate to the pH of skin, i.e., 5.5. (D.I. 268, Ex. B, Cover Page, Col. 2, lns. 15-16 and 19-26 and 33-36, Col. 3, lns. 23-32 and 57-58; Ex. C, p. 24-25). The 1969 PDR and Juliano teach skin cleaning compositions using oat flour or oatmeal in combination with moisturizers, having a pH of normal skin, for softening, soothing and minimizing skin irritation. (D.I. 268, Ex. D, p. 665, Ex. E, Col. 2, lns. 51-61 and Col. 3, lns. 16-21).

LPM argues that 1969 PDR and Juliano are deficient since they do not expressly point to the use of oat products as emulsifying agents. (D.I. 313, p. 3). This argument highlights the duplicitous nature of LPM's entire case. On the one hand, LPM argues for infringement, knowing full well that none of the Accused Products use an oat ingredient as an emulsifier. Their contention is that an oat ingredient in any amount has the ability to emulsify. (D.I. 313, p. 3). But here, to escape invalidity because of obviousness, LPM argues that the presence of an oat ingredient, even in insignificant amounts, is insufficient absent an express disclosure of an emulsifying effect. LPM cannot have it both ways – either the Accused Products do not infringe because they do not use any oat ingredient as an emulsifier (and they do not use oat gum or oatmeal at all), or the '062 patent is invalid because the oat used by the products listed in the 1969 PDR and Juliano had the ability to serve as an emulsifying agent. The later discovery of inherent properties in old products does not make the old product patentable. *See In re Spada*, 911 F.2d 705, 709 (Fed. Cir. 1990).

D.  Applicants Sought To Mislead The Examiner With Fictitious Distinctions Between Orange Oil And D-Limonene

Applicants did not distinguish orange oil from d-limonene based on a distillation process, as LPM alleges. (D.I. 313, pp. 2-3). Nor could they, since any such distinction has no technical basis. One of skill in the art would understand that the term used by Coleman, i.e., "citrus oil, ~ 94 % d-limonene," could only be referring to distilled orange oil. Coleman specifically gave the example of orange oil as a type of citrus oil for use in the hand cleaner. (D.I. 268, Ex. C, pp. 24-25). LPM's statement that d-limonene is distilled from a different natural substance than orange oil is inaccurate. (D.I. 313, pp. 2-3). D-limonene is found in and distilled from oils of all citrus fruits, but most typically from oranges.

Using undistilled orange oil was not a patentable distinction as LPM alleges – it was a step backwards. (*See* D.I. 313, p. 6). As an analogy, one can compare undistilled orange oil with whole milk. Whole milk is approximately 96% milk, 4% fat. Through a process like distillation, the fat content of milk can be reduced to 2%, 1% or 0% (skim milk). Similarly, undistilled orange oil is approximately 90% d-limonene and 10% impurities. Distilled orange oil is about 94% d-limonene, 6% impurities. Further distillation yields 100% d-limonene. Of course, one can use any of these forms of orange oil, undistilled, distilled or purified d-limonene in a cleaning composition, just as one can use any form of milk on cereal. One would not say that whole milk is derived from a different natural substance than non-fat milk – they all come from the cow. Similarly, one would not say d-limonene does not come from orange oil – it can be derived from all citrus oils, and is most highly concentrated in orange oil.

Even if LPM's distinction between orange oil and d-limonene had technical merit

9

(it does not), the argument is cut to pieces by the newly-found Soaps Manual. The Soaps Manual clearly discloses the use of orange oil in cleaning compositions. (D.I. 268, Ex. O). The recipes and methods disclosed in the Soaps Manual include formulae for Oatmeal Dry Soap, Orange Soap and Glycerine Soap, all of which comprise orange peel oil as one of the ingredients in combination with one or more natural or plant moisturizers such as glycerine or tallow. (D.I. 268, Ex. O, pp. 272-273, 314). Further, the Soaps Manual lists orange oil as a perfume that could be added to the soap. (D.I. 268, Ex. O, p. 164). It specifically suggests that soap makers should expand beyond the formulae "to any extent and of any character the soap-maker desires." (D.I. 268, Ex. O, pp. 312-314).

Applicants asserted that *ex parte* testing showed an unexpected and surprising difference between orange oil and d-limonene in order to overcome the Examiner's obviousness rejection:

> Applicants have found that **undistilled orange oil has higher cleaning properties** when used in a composition than distilled d-limonene. (D.I. 268, Ex. J, p. 2) (emphasis added).

Not only has LPM failed to provide the alleged testing supporting this claim, but co-inventor Phillip Low testified that no such testing was ever performed. (D.I. 268, Ex. H, 26, 86-87).

result. The experts in this case all testified that they would expect d-limonene to clean

**REDACTED**

Why wouldn't it? It has long been recognized that d-limonene is the cleaning agent in orange oil. Therefore, all else being equal, one would expect that a composition with 100% d-limonene would clean more effectively than one with 90% d-

limonene. And while the applicants made this unsupported assertion to gain allowance, neither they nor LPM has ever even attempted to prove its veracity.

**REDACTED**


      E.      No Nexus Exists Between The Claimed Invention And
             The So-Called Commercial Success

In a classic case of putting the cart before the horse, LPM argues for the commercial success of the '062 patent based on the sales of the defendants! This argument falls flat on both the law and the facts. On the law, in order to prove commercial success as a secondary factor of nonobviousness, LPM must prove a nexus between the alleged commercial success and the claimed invention beyond what was readily available in the prior art. *See NPF Ltd. v. Smart Parts, Inc.*, 2006 U.S. App. LEXIS 16421, *22 (Fed. Cir. June 27, 2006) (citation omitted). That means plaintiff's commercial success, not the allegedly infringing sales of defendants. The sales of a defendant are not properly added to the commercial success analysis until after the defendant is "proved to be an infringer." *Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1215 (Fed. Cir. 1987). This has not, and should not happen here. For now at least, defendants' sales cannot be used to support LPM's nonobviousness arguments.

On the facts, it is laughable that LPM would even attempt to claim commercial success for the Healthy Kleaner product.

**REDACTED**

11

**REDACTED**

In short, there has never been any commercial success even in the vicinity of the '062 patent.

**CONCLUSION**

The Board's Decision and analysis applying the prior art to the same claim elements meets the clear and convincing standard for proving patent invalidity for obviousness under 35 U.S.C. § 103.  The Limited Defendants have uncovered additional compelling evidence of obviousness.  This court should grant summary judgment.

Respectfully submitted,

FOX ROTHSCHILD LLP

Dated:  July 28, 2006

By:___/s/ Sheldon K. Rennie_____
Francis G.X. Pileggi (Del. Bar No. 2624)
Sheldon K. Rennie (Del. Bar No. 3772)
FOX ROTHSCHILD LLP
Suite 1300
919 North Market Street
Wilmington, Delaware  19801
Phone: (302) 655-3667
Fax: (302) 656-8920
E-mail: fpileggi@foxrothschild.com
E-mail: srennie@foxrothschild.com

OF COUNSEL:

John F. Ward
David M. Hill

> Michael J. Zinna
> WARD & OLIVO
> 708 Third Avenue
> New York, New York 10017
> Phone: (212) 697-6262
> Fax: (212) 972-5866
> E-mail: wardj@wardolivo.com
> E-mail: hilld@wardolivo.com
> E-mail: zinnam@wardolivo.com
>
> *Attorneys for Defendants*
> Bath and Body Works, Inc.
> Limited Brands, Inc.