IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 04-1507 (SLR) |
| v. | ) |
| | ) |
| BATH & BODY WORKS, INC.; | ) **PUBLIC VERSION** |
| LIMITED BRANDS, INC.; | ) **(REDACTED)** |
| KAO BRANDS CO. (f/k/a THE ANDREW | ) |
| JERGENS COMPANY); and | ) |
| KAO CORPORATION, | ) |
| | ) |
| Defendants. | ) |

### KBC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

|  |  |
|---|---|
|  | Richard L. Horwitz (#2246) |
|  | David E. Moore (#3983) |
|  | POTTER ANDERSON & CORROON LLP |
|  | Hercules Plaza, 6th Floor |
|  | 1313 N. Market Street |
|  | P.O. Box 951 |
|  | Wilmington, DE  19899-0951 |
|  | Tel.: (302) 984-6000 |
| OF COUNSEL: | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |
| Arthur I. Neustadt |  |
| Stephen G. Baxter | *Attorneys for Defendant* |
| Richard L. Chinn | *Kao Brands Co.* |
| OBLON, SPIVAK, McCLELLAND, |  |
| MAIER & NEUSTADT, P.C. |  |
| 1940 Duke Street |  |
| Alexandria, VA  22314 |  |
| Tel: (703) 413-3000 |  |

Dated:  July 31, 2006
Public Version Dated:  August 3, 2006

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Nature and Stage of Proceedings .......................................................................... 1

Summary of Argument .......................................................................................... 2

Concise Statement of Facts ................................................................................... 3

Argument ............................................................................................................... 3

    The '062 Inventors in Their Specification Plainly State That *Their Invention*
    Has an Orange Oil Minimum of 5% ................................................................. 3

    The '062 Inventors in Their Specification Plainly State That *Their Invention* Is
    Directed to "Cleaning Compositions Suitable for External Application to
    Human Skin Tissue in Order to Remove Unwanted Substances Such as Tar,
    Caulking Compounds, Sealants, Adhesives and the Like" .............................. 7

Conclusion ............................................................................................................. 8

# TABLE OF AUTHORITIES

*Cases*

*Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*,
   2006 U.S. App. LEXIS 11675 (Fed. Cir. May 11, 2006) .................................................. 5

*Netword, LLC v. Centraal Corp.*,
   242 F.3d 1347 (Fed. Cir. 2001) ........................................................................................ 5

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) ........................................................................................ 5

**Nature and Stage of Proceedings**

Pursuant to paragraph 7 of this Court's June 8, 2005 scheduling order (D.I. 39), KBC filed its opening claim construction brief on June 29, 2006. D.I. 244. This responsive claim construction brief is also being filed pursuant to paragraph 7 of the Court's scheduling order.

Paragraph 7 of the Court's scheduling order provides that "[i]ssues of claim construction shall be considered by the Court in conjunction with the summary judgment motions." In this regard, KBC filed a motion for summary judgment of non-infringement, a memorandum in support thereof and a reply in opposition to LPM's opposition to KBC's motion. D.I. 249, 250, 307. KBC also filed a motion for summary judgment of invalidity based upon lack of written description which also deals with claim construction issues, a memorandum in support thereof and a reply in opposition to LPM's opposition to KBC's motion. D.I. 247, 248, 314. In fact, KBC's opening claim construction brief specifically referred to and included by reference KBC's motions for summary judgment of non-infringement and invalidity based upon lack of written description. D.I. 244 at 2.

Although it is believed that the claim construction issues are adequately set forth in KBC's motions for summary judgment of (1) non-infringement and (2) invalidity based upon lack of written description, KBC provides the following additional response.

**Summary of Argument**

The '062 patent-in-suit, entitled CLEANING COMPOSITIONS WITH ORANGE OIL, is directed to a skin cleaning composition with orange oil to remove unwanted substances such as tar, caulking compounds and the like. Although the claims asserted to be infringed do not recite a lower limit for the orange oil, the specification states that at least 5% orange oil is necessary for sufficient cleaning. Although the accused products include orange oil, the amount of orange oil in each product is            , *less* than            of the 5% necessary for sufficient cleaning as stated in the specification. Additionally, apart from the lack of sufficient orange oil as noted above, two of the four accused products are lotions and are not cleaning compositions. LPM's strained and baseless claim constructions have at their core LPM's desire to try to prove infringement where there plainly cannot be any infringement.

As to the 5% minimum for orange oil, the specification states in no uncertain terms that "a composition *according to the present invention* could have as little as 5% by volume of orange oil although it was preferable to have a cleaning composition having at least 25% by volume orange oil." Col. 6, ll. 56-61, emphasis added. Thus, the '062 inventors defined *their invention* as having a minimum of 5% orange oil. Unable to deal with this clear, plain and unequivocal statement, LPM tries to redefine the invention to reduce the minimum some five hundred percent to 0.01%. However, this is contrary to the inventors' definition of *their invention* in the specification which, of course, is controlling.

LPM also tries to rewrite the definition of the invention for the claim term skin cleaning composition. The specification states that "[the] present invention generally

2

relates to cleaning compositions suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives and the like." Col. 1, ll. 5-9. Unable to deal with the fact that the primary accused product (and a discontinued accused product) are lotions (not cleaning compositions) whose purpose is to heal and prevent extra dry skin, LPM concocts a new and fanciful theory. According to LPM, applying lotion to skin to heal it may result in the flaking off of dead skin which, according to LPM, transforms a lotion into a cleaning composition. However, besides being fanciful and baseless, this is contrary to the inventors' definition of *their invention* in the specification which, of course, is controlling.

## Concise Statement of Facts

The concise statement of facts is set forth in KBC's supporting memoranda and replies on its motions for summary judgment of (1) non-infringement and (2) invalidity based upon lack of written description. D.I. 248, 250, 307, 314.

## Argument

### The '062 Inventors in Their Specification Plainly State That *Their Invention* Has an Orange Oil Minimum of 5%

Asserted claims 6 and 9 each require a skin cleaning composition. The cleaning is provided by the orange oil. Col. 2, ll. 2-7. The '062 specification specifically states how much orange oil is necessary to obtain sufficient cleaning – "a composition according to the present invention *could have as little as 5% by volume of orange oil.* Col. 6, ll. 56-61, emphasis added. This conclusion was based upon the test result that the 5% Sample XIV was "effective in removing cosmetics from the skin" (col. 6, ll. 44-45) even though it "could not effectively clean tar or caulking compounds" (col. 6, ll. 41-44).

3

Thus, the '062 specification plainly states that orange oil percentages below 5% do not provide sufficient cleaning.

LPM in its opening brief tries to redefine the '062 invention to reduce this minimum some five hundred percent to 0.01%. However, this is directly contrary to the specification of the '062 patent, which specifically states that the invention has a 5% orange oil minimum. The '062 inventors do not state that there is no cleaning below 5% but, rather, provide with their 5% minimum that any such cleaning is insufficient for *their invention*.

LPM also tries to redefine the '062 invention by pointing to a Kao patent (5,013,485) directed to "a liquid detergent composition for household use" (col. 1, ll. 10-11) which, of course, is not a skin cleaning composition. Although the '485 invention has an orange oil percentage as low as 0.01%, the '485 invention is irrelevant since it certainly does not negate the fact that the '062 inventors plainly state in their specification that *their invention* has a minimum orange oil percentage of 5%.

LPM asserts in its opening brief that cosmetics are difficult to remove. However, this statement without context is misleading since the '062 inventors stated in their specification that cosmetics were the easiest to remove *among the materials sought to be removed*.

> With respect to Sample XIV, the test group reported that cleaning properties were substantially reduced; *Sample XIV could not effectively clean tar or caulking compounds. Indeed, Sample XIV was only effective in removing cosmetics from the skin.*

Col. 6, ll. 41-45, emphasis added.

LPM also asserts in its opening brief that KBC is trying to import a 5% orange oil limitation from the specification into claims 6 and 9. However, as recently held by the

4

Federal Circuit - "Where the specification makes clear that the invention does not include a particular feature [orange oil percentages below 5%], that feature is deemed to be outside the reach of the claims of the patent, *even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.*" *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 2006 U.S. App. LEXIS 11675, at *3 (Fed. Cir. May 11, 2006) (emphasis added) quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). As further held by the Federal Circuit in *InPro, supra*, at *3, "neither do the claims enlarge what is patented beyond what the inventor has described as the invention [5% and above]," quoting *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).

LPM also argues claim differentiation since non asserted claim 1 recites a 5% minimum. However, a similar argument was made and rejected in *Inpro, supra*.

> *Inpro* invokes the doctrine of claim differentiation, and points out that unasserted claims 2, 24, and 33 refer specifically to a 'parallel bus interface,' and that unasserted claims 3, 25 and 32 refer to a 'direct access' parallel bus. *Inpro* argues that the presence of these limitations of the host interface in the unasserted claims demonstrates that the broader claim 34 is not limited to a parallel bus interface involving direct access.

*Inpro, supra* at *2. In rejecting this argument, the Federal Circuit noted that "[t]he boundaries of patented inventions are set forth in the claims, *construed in light of the description in the specification* ... ." *Id.*, emphasis added. Here, the specification plainly provides that the orange oil minimum is 5%.

LPM previously tried to distinguish *Inpro* (D.I. 290 at 4) but was unable to do so. LPM's argument appeared to be that there was one embodiment in *Inpro* whereas "the '062 patent described in the specification numerous volumes of orange oil and specified

5

that orange oil still has a cleaning effect at a volume of 5%." However, contrary to LPM's assertion there are twenty-three samples set forth in the '062 specification and each has a stated orange oil percentage of 5% or greater, to wit:

| Sample | Orange Oil Percentage |
|---|---|
| I | 39 |
| II | 34.5 |
| III | 37 |
| IV | 42.75 |
| V | 36.5 |
| VI | 36.5 |
| VII | 36.5 |
| VIII | 36.5 |
| IX | 36.5 |
| X | 80 |
| XI | 70 |
| XII | 60 |
| XIII | 50 |
| XIV | 5 |
| XV | 10 |
| XVI | 15 |
| XVII | 25 |
| XVIII | 100 |
| XIX | 40.5 |
| XX | 50 |
| XXI | 50 |
| XXII | 50 |
| XXIII | 12.5 |

6

'062 patent, columns 3-7. Thus, the specification provides twenty-three samples having orange oil percentages 5% or above and no samples having percentages below 5%. This, of course, is entirely consistent with the statement by the '062 inventors in their specification that "a composition according to the present invention *could have as little as 5% by volume of orange oil* although it was preferable to have a cleaning composition having at least 25% by volume of orange oil." Col. 6, ll. 56-61, emphasis added.

LPM asserts (at 10) that the '062 patent specification does not limit the claims to a minimum oil percentage. However, LPM's support for its assertion is the statement in the specification that "the *more specific* composition ... comprises forty-five percent (45%) or less by volume of orange oil" (emphasis added) which refers to lowering the "sixty percent (60%) by volume of orange oil" in the preceding paragraph and has no relation to the minimum orange oil percentage plainly stated in the specification - "a composition according to the present invention could have as little as 5% by volume of orange oil." Col. 6, ll. 56-61. Also, as set forth above, the specification sets forth twenty-three samples and not one is below 5% and twenty-two of the twenty-three are 10% or above.

### The '062 Inventors in Their Specification Plainly State That *Their Invention* Is Directed to "Cleaning Compositions Suitable for External Application to Human Skin Tissue in Order to Remove Unwanted Substances Such as Tar, Caulking Compounds, Sealants, Adhesives and the Like"

The '062 inventors describe in their specification what they mean by a skin cleaning composition. More particularly, they state that "[t]he present invention generally relates to cleaning compositions suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives and the like" (col. 1, ll. 5-9) and "[a]nother object of the present invention is to

7

provide a skin cleaning compound suitable for cleaning non-water soluble products such as grease, caulking, adhesives, sealants, tar, oils, ink and the like" (col. 2, ll. 12-15). Nowhere in the specification is a skin cleaning composition described as a lotion which when applied may result in the flaking off of dead skin. Accordingly, LPM's attempt to rewrite the specification to change a lotion into a skin cleaning composition must be rejected as contrary to the inventors' definition of *their invention* in the '062 specification *Inpro, supra.*

## Conclusion

For the foregoing reasons, KBC's suggested claim construction should be adopted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Arthur I. Neustadt
Stephen G. Baxter
Richard L. Chinn
OBLON, SPIVAK, McCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314
Tel: (703) 413-3000

Dated:  July 31, 2006
Public Version Dated:  August 3, 2006

743372

By:  /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Kao Brands Co.*

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**<u>CERTIFICATE OF SERVICE</u>**

I, David E. Moore, hereby certify that on August 3, 2006, the attached document was hand-delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

| | |
|---|---|
| Steven J. Balick | Francis G.X. Pileggi |
| John G. Day | Fox Rothschild LLP |
| Ashby & Geddes | 919 Market Street |
| 222 Delaware Avenue | Suite 1300 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |

I hereby certify that on August 3, 2006, I have Electronically Mailed the documents to the following non-registered participants:

| | |
|---|---|
| Ronald J. Schutz | Robert A. Auchter |
| Robins, Kaplan, Miller & Ciresi L.L.P. | Jason R. Buratti |
| 2800 LaSalle Plaza | Robins, Kaplan, Miller & Ciresi L.L.P. |
| 800 LaSalle Avenue | 1801 K Street, NW |
| Minneapolis, MN 55402-2015 | Washington, DC 20006 |
| rjschutz@rkmc.com | raauchter@rkmc.com |
| | jrburatti@rkmc.com |

John F. Ward
Ward & Olivo
382 Springfield Avenue
Summit, NJ 07901
wardj@wardolivo.com

                                       By:    <u>/s/ David E. Moore</u>
                                                  Richard L. Horwitz
                                                  David E. Moore
                                                  Potter Anderson & Corroon LLP
                                                  Hercules Plaza, 6th Floor
                                                  1313 N. Market Street
                                                  Wilmington, DE 19899-0951
                                                  (302) 984-6000
                                                  rhorwitz@potteranderson.com
673089                                               dmoore@potteranderson.com