# EXHIBIT 1

**Exhibit 1**
*LP Matthews, LLC v. Bath & Body Works, Inc., et al.*
**LP Matthews' Disputed Issues of Fact**

1.      Whether the Kao defendants infringe claim 6 of the '062 patent, either literally or by the doctrine of equivalents.

Determining infringement is a two-step process:  first, the court construes the claims and, second, the trier of fact decides whether each limitation in the properly construed claims is found in the accused device. *In re Hayes Microcomputer Prods., Inc.*, 982 F.2d 1527, 1541 (Fed. Cir. 1992).  The patentee has the initial burden to establish by a preponderance of evidence that one or more patent claims are infringed. *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001).

LP Matthews will prove by a preponderance of the evidence that claim 6 of the '062 patent reads on the Kao defendants' Curél Ultra Healing Lotion, Curél Extreme Care Facial Wash, Curél Extreme Care Body Cleanser, and Curél Extreme Care Body Lotion products, either literally or under the doctrine of equivalents.  The Kao defendants do not dispute that the oat ingredient, moisturizer, or pH claim elements read on their accused products.  With respect to the skin cleaning composition element, LP Matthews will present testimony of the Kao defendants' Rule 30(b)(6) witness, expert testimony, documents, and other factual testimony that the accused products are compositions that clean human skin.  Expert and factual testimony, and documents will also demonstrate that the accused products contain at least 0.01% orange oil, thereby meeting the orange oil claim element.  Even if literal infringement is not found, LP Matthews intends to prove that the accused products infringe by the doctrine of equivalents in that they include composition ingredients that perform substantially the same function in the substantially

same way to achieve substantially the same result as the orange oil element of the composition disclosed in claim 6.

2.    Whether the Kao defendants infringe claim 9 of the '062 patent, either literally or by the doctrine of equivalents.

Determining infringement is a two-step process: first, the court construes the claims and, second, the trier of fact decides whether each limitation in the properly construed claims is found in the accused device. *In re Hayes Microcomputer Prods., Inc.*, 982 F.2d 1527, 1541 (Fed. Cir. 1992). The patentee has the initial burden to establish by a preponderance of evidence that one or more patent claims are infringed. *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001).

LP Matthews will prove by a preponderance of the evidence that claim 9 of the '062 patent reads on the Kao defendants' Curél Ultra Healing Lotion, Curél Extreme Care Facial Wash, Curél Extreme Care Body Cleanser, and Curél Extreme Care Body Lotion products, either literally or under the doctrine of equivalents. The Kao defendants do not dispute that their accused products meet the oatmeal and moisturizer limitations of claim 9. With respect to the skin cleaning composition element, LP Matthews will present testimony of the Kao defendants' Rule 30(b)(6) witness, expert testimony, documents, and other factual testimony that the accused products are compositions that clean human skin. Expert and factual testimony, and documents will also demonstrate that the accused products contain at least 0.01% orange oil, thereby meeting the orange oil claim element. Even if literal infringement is not found, LP Matthews intends to prove that the accused products infringe by the doctrine of equivalents in that they include composition ingredients that perform substantially the same function in the substantially

same way to achieve substantially the same result as the orange oil element of the composition disclosed in claim 9.

      3.      Whether the Limited defendants infringe claim 6 of the '062 patent, either literally or by the doctrine of equivalents.

      Determining infringement is a two-step process:  first, the court construes the claims and, second, the trier of fact decides whether each limitation in the properly construed claims is found in the accused device. *In re Hayes Microcomputer Prods., Inc.*, 982 F.2d 1527, 1541 (Fed. Cir. 1992).  The patentee has the initial burden to establish by a preponderance of evidence that one or more patent claims are infringed. *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001).

      LP Matthews intends to establish by a preponderance of the evidence that claim 6 of the '062 patent reads on the Limited defendants' Burt's Bees Citrus Facial Scrub, Burt's Bees Orange Essence Facial Cleanser, Cool Citrus Basil Body Lotion, Mango Mandarin Creamy Body Wash, Mango Mandarin Skin Renewal & Anti-Aging Body Wash, Mango Mandarin Body Lotion, Murad Acne Spot Treatment, Murad Resurgence Age-Diffusing Serum, Murad Resurgence Age-Balancing Night Cream, Murad Resurgence Sheer Lustre Day Moisture, Murad Skin Perfecting Lotion, Pure Simplicity Burdock Root Skin Mattifier, Pure Simplicity Everlasting Flower Night Nourisher, Pure Simplicity Fig Hydrating Hand & Nail Cream, Pure Simplicity Ginger Rejuvenating Body Scrub, Pure Simplicity Ginger Rejuvenating Body Lotion, Pure Simplicity Ginger Rejuvenating Hand & Nail Cream, Pure Simplicity Ginger Rejuvenating Shower Foam, Pure Simplicity Oat Oil-Control Face Moisturizer, True Blue Spa Better Lather Than Never Bubble Bath and Shower Cream, and True Blue Spa Good Clean Foam Face Wash

accused products, either literally or under the doctrine of equivalents. Specifically, the evidence will show that the Limited defendants' accused products are cleaning compositions for human skin and contain at least 0.01% orange oil, an oat grain derivative product functioning as an emulsifying agent, one or more pharmaceutically-acceptable moisturizers, and have a pH between 4.0 and 6.5. Supporting evidence will be in the form of expert testimony, documents, and factual testimony from the Limited defendants' Rule 30(b)(6) witnesses and their suppliers. Even if literal infringement is not found, LP Matthews intends to prove that the accused products infringe by the doctrine of equivalents in that they include composition ingredients that perform substantially the same function in the substantially same way to achieve substantially the same result as the orange oil, oat grain derivative product, moisturizer, and pH elements of the cleaning composition disclosed in claim 6.

      4.      Whether the Limited defendants infringe claim 9 of the '062 patent, either literally or by the doctrine of equivalents.

      Determining infringement is a two-step process: first, the court construes the claims and, second, the trier of fact decides whether each limitation in the properly construed claims is found in the accused device. *In re Hayes Microcomputer Prods., Inc.*, 982 F.2d 1527, 1541 (Fed. Cir. 1992). The patentee has the initial burden to establish by a preponderance of evidence that one or more patent claims are infringed. *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001).

      LP Matthews intends to establish by a preponderance of the evidence that claim 9 of the '062 patent reads on each of the Limited defendants' Burt's Bees Citrus Facial Scrub, Burt's Bees Orange Essence Facial Cleanser, Cool Citrus Basil Body Lotion, Mango Mandarin Hand Repair & Healing Hand Cream, Mango Mandarin Skin Refining Body Scrub, Mango Mandarin

Skin Repair & Healing Body Butter, Mango Mandarin Creamy Body Wash, Mango Mandarin Skin Renewal & Anti-Aging Body Wash, Mango Mandarin Body Lotion, Murad Acne Spot Treatment, Murad Resurgence Age-Diffusing Serum, Murad Resurgence Age-Balancing Night Cream, Murad Resurgence Sheer Lustre Day Moisture, Murad Skin Perfecting Lotion, Pure Simplicity Burdock Root Skin Mattifier, Pure Simplicity Everlasting Flower Night Nourisher, Pure Simplicity Fig Hydrating Hand & Nail Cream, Pure Simplicity Ginger Rejuvenating Body Scrub, Pure Simplicity Ginger Rejuvenating Body Lotion, Pure Simplicity Ginger Rejuvenating Hand & Nail Cream, Pure Simplicity Ginger Rejuvenating Shower Foam, Pure Simplicity Oat Oil-Control Face Moisturizer, Pure Simplicity Ginger Rejuvenating Body Balm, Pure Simplicity Fig Hydrating Body Balm, Pure Simplicity Salt Toning Body Balm, True Blue Spa Better Lather, Than Never Bubble Bath and Shower Cream, and True Blue Spa Good Clean Foam Face Wash accused products, either literally or under the doctrine of equivalents. Specifically, the evidence will show that the Limited defendants' accused products are cleaning compositions for human skin, contain at least 0.01% orange oil, and oatmeal. Supporting evidence will be in the form of expert testimony, documents, and factual testimony. Even if literal infringement is not found, LP Matthews intends to prove that the accused products infringe by the doctrine of equivalents in that they include composition ingredients that perform substantially the same function in the substantially same way to achieve substantially the same result as the orange oil, oatmeal, and moisturizer elements of the cleaning composition disclosed in claim 9.

5.    The amount necessary to compensate LP Matthews for the Kao defendants' and the Limited defendants' use of the invention disclosed in claims 6 and 9 of the '062 patent, including, but not limited to, a reasonable royalty. (35 U.S.C. § 284).

A reasonable royalty may be determined based on hypothetical negotiations between willing licensor and willing licensee. *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990). Determination of the amount of the reasonable royalty includes consideration of expert testimony, *id. at* 1446; defendants' anticipated profits, as indicated by evidence of actual profits, *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); and what LP Matthews would have required to grant a license, *Trell*, 912 F.2d at 1446 (citing *CPG Prods. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1010 (Fed. Cir. 1985)).

LP Matthews will present evidence establishing the damages to which it is entitled to compensation for each defendants' infringement of claims 6 and 9 of the '062 patent. That evidence will be presented in the form of expert testimony regarding a hypothetical license negotiation resulting in a reasonable royalty, fact testimony, documentary evidence regarding the *Georgia-Pacific* factors, and documentary and testimonial evidence concerning the amount of sales of infringing products and the profits therefrom made by defendants.

6.    Whether the Kao defendants willfully infringed and are willfully infringing claims 6 and 9 of the '062 patent. (35 U.S.C. § 284).

LP Matthews contends that the Kao defendants did not obtain competent legal advice from counsel before or after the initiation of any possible infringing activity, *John Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998), and continued to practice the invention after LP Matthews notified the Kao defendants of their infringement without regard for their "affirmative duty to exercise due care to avoid infringement." *Id.*

Indeed, LP Matthews' evidence will show that the Kao defendants did not have a good faith belief that the '062 patent was invalid, unenforceable, or not infringed. LP Matthews' evidence will be presented in the form of expert testimony, documents, and factual testimony.

7.    Whether the Limited defendants willfully infringed and are willfully infringing claims 6 and 9 of the '062 patent. (35 U.S.C. § 284).

LP Matthews contends that the Kao defendants did not obtain competent legal advice from counsel before or after the initiation of any possible infringing activity, *John Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998), and continued to practice the invention after LP Matthews notified the Kao defendants of their infringement without regard for their "affirmative duty to exercise due care to avoid infringement." *Id.*

LP Matthews will present evidence that the Limited defendants, after being notified of their infringement of the '062 patent, failed to obtain competent opinion of counsel, and took no steps whatsoever to avoid infringement. LP Matthews' evidence will be presented in the form of expert testimony, documents, and factual testimony.

8.    The specification of the '062 patent sufficiently conveys to a person of skill in the art that patentee had possession of the inventions in claims 6 and 9 in September 1989. (35 U.S.C. § 112(1)).

LP Matthews will present evidence that the specification of the '062 patent sufficiently conveys to a person of skill in the art that the inventors possessed a skin cleaning composition containing orange oil with a minimum percentage below 5%, a moisturizer, and an oat grain derivative product. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003). Claims 6 and 9 themselves do not contain a minimum percentage. Nor does the specification state that orange oils in levels below 5% are unsatisfactory. LP Matthews also intends to prove that when the '062 patent application was filed in September 1989, a person of skill in the art would know from U.S. Patent No. 5,013,485 patent that orange oil in volumes of 0.01% could clean. Furthermore, the '062 patent is directed to a "skin cleaning composition that

not only removes unwanted substances from human skin but also moisturizes and revitalizes human skin." LP Matthews intends to support its assertions with expert testimony, documents, and factual testimony.

9.    The inventions claimed by claims 6 and 9 of the '062 patent were not inherently or explicitly disclosed in any prior art reference, more than one year prior to September 1989. (35 U.S.C. § 102).

Once the court construes the claims of the patent-in-suit, the fact-finder must compare the construed claims to the prior art to determine whether the claims are anticipated. *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998). LP Matthews intends to prove that neither the Soaps Manual nor Juliano references disclose compositions with all of the elements of claims 6 or 9 of the '062 patent. The evidence will establish that the references do not disclose compositions with orange oil as a cleaning component, that contain oatmeal, and that are moisturizers. This evidence will be in the form of expert testimony, documents, and factual testimony.

10.    The inventions claimed by claims 6 and 9 of the '062 patent would not have been obvious to a person of ordinary skill in the art in September 1989 in view of the prior art. (35 U.S.C. § 103).

Obviousness is a two-step inquiry: first, construing the claims which is a question of law for the court; second, comparison of the construed claims to the prior art, which is conducted by the fact-finder. *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998). LP Matthews will present evidence that the patented invention would not have been obvious to one of ordinary skill in the art in September 1989, in view of the prior art and the objective indicia of non-obviousness including commercial success, long felt need, and unexpected results. LP

Matthews intends to prove that the Coleman and Dellutri references do not disclose orange oil –
let alone orange oil as a cleaning agent for human skin. Rather, the cited references disclose
compositions that contain d-limonene which is different than orange oil. This evidence will be in
the form of expert testimony, documents, and factual testimony.

Furthermore, to the extent the continuation-in-part application and prosecution history is
admitted over LP Matthews' objection, LP Matthews' evidence will establish that the Board of
Appeals' rejection of claim 25 of a continuation-in-part application parented from the '062
patent does not clearly and convincingly establish that claims 6 and 9 of the '062 patent are
invalid for obviousness. It is presumed that a patent is valid and that the examiner properly
allowed the claims. *Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1036 (Fed. Cir.
2001); 35 U.S.C. § 282. The evidence presented will show that the Board of Appeals' rejection
occurred six years after issuance of the '062 patent, was evaluated under a different standard of
proof, pertained to a different application for a different invention, was examined by a different
examiner for different claims who did not consider and was not presented with arguments made
during prosecution of the '062 patent, and reviewed under different guidelines and regulations.
Expert and factual testimony, as well as documents presented by LP Matthews, will prove that
the Board of Appeals' decision does not establish the '062 patent's invalidity.

# EXHIBIT 2

**Exhibit 2**
*LP Matthews, LLC v. Bath & Body Works, Inc., et al.*
**The Kao defendants' Disputed Issues of Fact**

If the Court denies KBC's pending motions for summary judgment, Kao states that the following issues of fact remain to be litigated:

1.    Whether the accused products infringe claims 6 or 9 of the '062 patent.  *See* KBC's Motion for Summary Judgment of Non-Infringement.  (D.I. 249).

2.    Whether the claims of the '062 patent, as asserted by LPM, are invalid.  *See* Dr. Lochhead's expert report on invalidity; KBC's Motion for Summary Judgment of Invalidity Based Upon Lack of Written Description (D.I. 247); KBC's Motion for Summary Judgment of Invalidity Based Upon a Subsequent Board Decision (D.I. 245).

3.    Whether LPM lacks standing.  *See* KBC's Motion to Dismiss for Lack of Standing (D.I. 88)

4.    If liability is established, the amount of LPM's damages.

5.    If liability is established, whether infringement was willful.

6.    To the extent that Kao prevails, whether this is an exceptional case entitling Kao to recover its attorneys' fees.

# EXHIBIT 3

**Exhibit 3**
*LP Matthews, LLC v. Bath & Body Works, Inc., et al.*
**The Limited defendants' Disputed Issues of Fact**

## BBW'S STATEMENT OF ISSUES OF FACT TO BE TRIED

BBW expects that they will present the following issues of fact at trial.  BBW reserves

the right to modify, supplement, or change this Statement to reflect the Court's rulings on claim

construction and the dispositive motions currently pending.  BBW also reserves the right to

modify, supplement, or change this Statement to the extent necessary to fairly respond to any

new issues LPM raises in its Statement of Issues of Fact to Be Tried.  To the extent that any of

these issues is deemed an issue of law rather than an issue of fact, BBW incorporates said issue

by reference into BBW's Statement of Issues of Law to Be Tried.  Conversely, to the extent that

any issue in BBW's Statement of Issues of Law to Be Tried is deemed an issue of fact, BBW

incorporates that issue by reference into this Statement.

I.      BBW's Alleged Infringement

      1.      The Composition and Functionality of BBW's Accused Products.[1]

      2.      Whether, by a preponderance of the evidence, LPM can prove that BBW's

            Accused Products literally infringe claims 6 of the '062 patent.  *Festo Corp. v.*

---

[1] LPM has accused the following BBW's products: True Blue Spa Better Lather Than Never Bubble Bath & Shower Cream, True Blue Spa Good Clean Foam Face Wash, Pure Simplicity Ginger Rejuvenating Body Scrub, Pure Simplicity Everlasting Flower Night Nourisher, Pure Simplicity Oat Oil Control Face Moisturizer, Pure Simplicity Burdock Root Skin Mattifier, Pure Simplicity Ginger Rejuvenating Shower Foam, Pure Simplicity Ginger Rejuvenating Body Lotion,  Pure Simplicity Fig Hydrating Body Balm, Pure Simplicity Ginger Rejuvenating Body Balm, Pure Simplicity Salt Toning Body Balm, Pure Simplicity Fig Hydrating Hand & Nail Cream, Pure Simplicity Ginger Rejuvenating Hand & Nail Cream,  Bath & Body Works Cool Citrus Basil Body Lotion, Bath & Body Works Mango Mandarin Body Lotion, Bath & Body Works Mango Mandarin Skin Refining Body Scrub (Smoother), Bath & Body Works Mango Mandarin Skin Renewal & Anti-Aging Body Wash, Bath & Body Works Mango Mandarin Creamy Body Wash, Bath & Body Works Skin Repair & Healing Body Butter,  Bath & Body Works Mango Mandarin Hand Repair & Healing Hand Cream, Burt's Bees Citrus Facial Scrub, Burt's Bees Orange Essence Facial Cleanser, Murad Age-Balancing Night Cream, Murad Skin Perfecting Lotion, Murad Sheer Lustre Day Moisture SPF 15, Murad Age-Diffusing Serum, Murad Acne Spot Treatment (the "Accused Products") of infringing claims 6 and/or 9 of the '062 patent.

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003)(*en*

*banc*); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533 (Fed. Cir. 1991).

3.    Whether, by a preponderance of the evidence, LPM can prove that BBW's

Accused Products literally infringe claim 9 of the '062 patent. *Festo Corp. v.*

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003)(*en*

*banc*); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533 (Fed. Cir. 1991).

4.    The proper scope and meaning, to persons of ordinary skill in the art as of the

priority dates, of claim terms that are in the '062 patent.[2]

5.    Whether and when BBW had notice of LPM's claims of patent infringement.

## II.    Invalidity of LPM's Patent

6.    The effective priority date of the subject matter claimed in the '062 patent.

7.    Factual issues as to whether certain publications, systems, public uses,

processes, or actions are prior art with respect to the claims of the '062 patent.

35 U.S.C. §§ 102, 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

8.    Whether, by clear and convincing evidence, the '062 patent is invalid for lack

of a written description. 35 U.S.C. § 112.

9.    Whether, by clear and convincing evidence, claims 6 or 9 of the '062 patent

are anticipated by the prior art. 35 U.S.C. § 102.

10.    Whether, by clear and convincing evidence, claims 6 or 9 would have been

obvious to one of ordinary skill in the art as of the priority date of the asserted

claims. 35 U.S.C. § 103.

11.    The scope and content of the prior art. 35 U.S.C. §§ 102, 103; *Graham v.*

*John Deere Co.*, 383 U.S. 1 (1966).

---

[2] Subject to the Court's claim construction ruling.

12.    The differences, if any, between the prior art and each asserted claim. 35 U.S.C. §§ 102, 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

13.    The level of skill in the art for the subject matter claimed in the '062 patent. 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966).

14.    Whether LPM can prove that a nexus exists between any proffered secondary evidence of non-obviousness and the claimed subject matter. 35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Sjolund v. Musland*, 847 F.2d 1573 (Fed. Cir. 1988).

15.    Where BBW relies on either a single reference or a combination of references to assert invalidity under 35 U.S.C. § 103, whether there is a motivation to modify or combine the prior art references to arrive at the subject matter claimed in the patent-in-suit. 35 U.S.C. § 103.

16.    Whether, by clear and convincing evidence, claims 6 and 9 of the '062 patent are invalid for indefiniteness for failure to particularly point out and distinctly claim the subject matter that the applicants regarded as their invention. 35 U.S.C. § 112.

17.    Whether, by clear and convincing evidence, claims 6 and 9 of the '062 patent lack a sufficient supporting written description so as to teach one of ordinary skill in the art as of the priority date of those claims the subject matter being claimed by the patent. 35 U.S.C. § 112.

18.    Whether, by clear and convincing evidence, the specification of the '062 patent would have enabled one of ordinary skill in the art as of the priority date of claims 6 and 9 of the '062 patent to make and use the inventions

described in those claims without undue experimentation. *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345-1346 (Fed. Cir. 2005); *Harris Corp. v. IXYS Corp.*, 114 F.3d 1149 (Fed. Cir. 1997); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190 (Fed. Cir. 1990).

III. **Enforceability of LPM's Patent**

19.   Whether individuals associated with the filing or prosecution of the '062 patent withheld and/or misrepresented information from the United States Patent & Trademark Office. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995); *Consolidated Alum. Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804 (Fed. Cir. 1990).

20.   Whether the withheld and/or misrepresented information was material. *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309 (Fed. Cir. 2006); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995); *Consolidated Alum. Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804 (Fed. Cir. 1990).

21.   Whether the information was withheld and/or misrepresented with the intent to mislead or deceive the United States Patent & Trademark Office. *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181 (Fed. Cir. 2006); Molins *PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995); *Consolidated Alum. Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804 (Fed. Cir. 1990).

22.   Whether LPM delayed filing suit for an unreasonable length of time from the issuance of the '062 patent. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992); Poett v. Merit Systems Protection Board, 360 F.3d 1377, 1384 (Fed. Cir. 2004).

23. Whether BBW was prejudiced or injured by LPM's delay in filing suit. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992).

24. Whether LPM's communications and/or inaction misled BBW into believing that BBW would not be disturbed by LPM for BBW's manufacture, sale, or offers for sale of the Accused Products in which BBW is currently engaged. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992).

25. Whether BBW substantially relied on the misleading conduct of LPM in connection with BBW's manufacture, sale, or offers for sale of the Accused Products in which BBW is currently engaged. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992).

26. Whether BBW would be materially prejudiced if LPM is now permitted to proceed with this lawsuit. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992).

## IV.    <u>Plaintiff's Standing</u>

27. Whether LPM meets its burden of proof in establishing that it was the legal owner of the '062 patent at the time this lawsuit was filed. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Ortho Pharmaceutical Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 907 (1995).

28. Whether the assignments to LPM are valid and enforceable to confer title in the '062 patent to LPM, as of the date this lawsuit was filed. *Quiedan Co.,*

*Inc. v. Central Valley Builders Supply Co., Inc., et al.*, 1993 U.S. Dist. LEXIS 15238 (N.D. Cal. 1993); *Afros S.P.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1445 (D. Del. 1987).

29.     Whether all indispensable parties have been named in this lawsuit. Fed. R. Civ. P. 19(b)

**IV.     <u>Damages</u>**

30.     Whether LPM can prove that it is entitled to a royalty from BBW, and the amount of any such royalty, including the underlying *Georgia-Pacific* factors that support any such royalty. 35 U.S.C. § 284.

31.     Whether, by clear and convincing evidence, LPM can prove that BBW's alleged infringement of the patent-in-suit was willful. The determination of whether increased damages are warranted is a discretionary determination for the Court. 35 U.S.C. § 284; *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992).

32.     Whether, by clear and convincing evidence, LPM can prove that this is an exceptional case as it relates to BBW. If LPM meets this burden, the imposition of attorneys' fees and costs is a discretionary issue for the Court. Likewise, the issue of whether LPM is entitled to prejudgment interest or injunctive relief is left to the discretion of the Court. *Machinery Corp. v. Gullfiber AB*, 774 F.2d 467 (Fed. Cir. 1985).

33.     Whether, by clear and convincing evidence, BBW can prove that this is an exceptional case as it relates to LPM's initiation and prosecution of the action. If BBW meets this burden, the imposition of attorneys fees and costs is a

discretionary issue for the Court.  35 U.S.C. § 285; *Tate Access Floors, Inc. v. Maxcess Tech., Inc.*, 222 F.3d 958, 971-72 (Fed. Cir. 2000); *L.E.A. Dynatech v. Allina*, 48 F.3d 1527, 1530 (Fed. Cir. 1995).

34.    Whether LPM is entitled to injunctive relief against BBW.  *eBay, Inc. v. MercExchange, L.L.C.*, 2006 U.S. LEXIS 3872 (S. Ct. May 15, 2006).

# EXHIBIT 4

**Exhibit 4**
*LP Matthews, LLC v. Bath & Body Works, Inc., et al.*
**LP Matthews' Disputed Issues of Law**

1.      The amount of pre-judgment interest LP Matthews is entitled to receive in order to adequately compensate LP Matthews for the Kao defendants' and the Limited defendants' infringement of claims 6 and 9 of the '062 patent.  (35 U.S.C. § 284).

2.      The amount of post-judgment interest LP Matthews is entitled to receive in order to adequately compensate LP Matthews for the Kao defendants' and the Limited defendants' infringement of claims 6 and 9 of the '062 patent.  (28 U.S.C. § 1961)

3.      The amount of costs LP Matthews is entitled to receive in order to adequately compensate LP Matthews for the Kao defendants' and the Limited defendants' infringement of claims 6 and 9 of the '062 patent.  (35 U.S.C. § 284).

4.      Whether LP Matthews is entitled to a post-judgment equitable accounting of damages for the period of infringement of claims 6 and 9 of the '062 patent established at trial.

5.      The amount of enhanced damages LP Matthews is entitled to because of the Kao defendants' and the Limited defendants' willful infringement and litigation misconduct.  (35 U.S.C. § 284).

6.      Whether the Kao defendants and the Limited defendants shall be enjoined from infringing claims 6 and 9 of the '062 patent.  (35 U.S.C. § 283).

7.      The specification of the '062 patent enables a person of skill in the art how to practice the inventions in claims 6 and 9 without undue experimentation.  (35 U.S.C. § 112(1)).

LP Matthews intends to prove that the '062 patent enables a person of skill in the art how to practice the inventions in claims 6 and 9 – *i.e.*, a composition that may have less than 5% orange oil.  *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988); *Liquid Dynamics Corp. v.*

*Vaughan Co., Inc.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006). The evidence will show that the specification of the '062 patent – containing 23 test samples – provides sufficient guidance and examples to enable a person of skill in the art to produce a cleaning composition with less than 5% orange oil without undue experimentation. Supporting evidence will be in the form of expert testimony, documents, and factual testimony.

8.      Whether the '062 patent is unenforceable because of inequitable conduct.

In summary, LP Matthews will prove that neither Mr. Low nor Mr. Greenspan withheld or misrepresented material information in connection with the '062 patent. Messrs. Low and Greenspan accurately represented to the Patent Office that the Coleman reference did not disclose orange oil. And evidence will confirm that the Coleman reference only discloses d-limonene from distilled citrus oil – not undistilled orange oil as the primary ingredient. Similarly, the evidence will show that the inventors did not falsely state that they conducted tests comparing the cleaning abilities of d-limonene and orange oil. Because LP Matthews will prove that the inventors of the '062 patent never deceived the Patent Office, it will also establish that the inventors never intended to deceive the Patent Office. Given this, the '062 patent is not unenforceable.

LP Matthews' evidence will be presented in the form of expert testimony, documents, and factual testimony.

10.     If LP Matthews is not the prevailing party, whether either the Kao defendants or the Limited defendants have proved an exceptional case for an award of attorneys' fees. (35 U.S.C. § 285).

A prevailing party must prove an exceptional case by clear and convincing evidence. *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1380-81 (Fed. Cir. 2005). Even if an

exceptional case is found, however, the trial court enjoys great discretion in determining whether to award attorney fees for good reason pursuant to Section 285. *Id*.

If LP Matthews does not prevail on the dispositive motions or at trial, it intends to rebut any evidence proffered by the defendants that this is an exceptional case warranting an award of attorneys' fees. As argued in LP Matthews' briefs opposing summary judgment, the inventors did not engage in any fraud or inequitable conduct in procuring the '062 patent. Nor did LP Matthews know or have any reason to believe that claims 6 and 9 of the '062 patent are invalid or not infringed before filing suit. Indeed, LP Matthews' proposed claim construction and assertions of infringement against the defendants are consistent with both claims 6 and 9, as well as supported by the relevant prior art and the ordinary skill of a person in the art. Finally, LP Matthews is not guilty of any litigation misconduct, or vexatious or unjustified litigation. LP Matthews' evidence will be presented in the form of expert testimony, documents, and factual testimony.

**EXHIBIT 5**

**Exhibit 5**
*LP Matthews, LLC v. Bath & Body Works, Inc., et al.*
**The Kao defendants' Disputed Issues of Law**

If any statement included herein as an issue of law should be considered an issue of fact, it should be so considered.

1.    Whether the asserted claims of the '062 patent cover any of the accused products.

2.    Whether the asserted claims of the '062 patent are invalid for lack of written description under 35 U.S.C. § 112, ¶ 1.

3.    Whether the asserted claims of the '062 patent are invalid for obviousness under 35 U.S.C. § 103.

4.    Whether LPM lacks standing under Delaware law to bring suit. *Hall v. State of Delaware*, 655 A.2d 827 (Del. Super. 1994).

5.    If Kao prevails, whether it is entitled to its attorney fees under 35 U.S.C. § 285.

# EXHIBIT 6

**Exhibit 6**
*LP Matthews, LLC v. Bath & Body Works, Inc., et al.*
**The Limited defendants' Disputed Issues of Law**

BBW expects that it will present the following issues of law at trial. BBW reserves the right to modify, supplement, or change this Statement to reflect the Court's rulings on claim construction and the motions currently pending. BBW also reserves the right to modify, supplement, or change this Statement to the extent necessary to fairly respond to any new issues LPM raises in its Statement of Issues of Law. To the extent that any issue in BBW's Statement of Issues of Fact to Be Tried is deemed an issue of law, BBW incorporates that issue by reference into this Statement.

## I.  ISSUES ON WHICH BBW BEARS THE BURDEN OF PROOF

### A.  Invalidity

A patent is presumed valid, and the challenging party must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir. 2004). The presumption of section 282, however, is only "'a procedural device which places on [the challenger] the initial burden of going forward to establish a prima facie case on that issue.'" *Cable Elec. Prods., Inc, v. Genmark,* 770 F.2d 1015, 1022 (Fed. Cir. 1985). When a party presents evidence establishing a *prima facie* case of invalidity, the patentee must come forward with evidence to counter the challenge to the presumption of section 282. *Id.*

#### 1.  Anticipation

Section 102 of Title 35 of the United States Code states that a patent is invalid as anticipated if "the invention was patented or described in a printed publication in this . . . country. . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). A single prior art reference must disclose each and every limitation of the claimed invention for a patent to be anticipated. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379-80 (Fed. Cir. 2003). Anticipation is a question of fact. *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

A prior art reference may disclose features of the claimed invention either explicitly or inherently. "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *SmithKline*, 403 F.3d at 1343; *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). As such, "anticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those suggestions be enabling to one of skill in the art." *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1378 -1381 (Fed. Cir. 2001). "Where. . . the result is a necessary consequence of what was deliberately intended, it is of no import that the article's authors did not appreciate the results." *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999); *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1348-49 (Fed. Cir. 1999) ("Because 'sufficient aeration' was inherent in the prior art, it is irrelevant that the prior art did not recognize the key aspect of [the] invention . . . . An inherent structure, composition, or function is not necessarily known.").

2.    **Obviousness**

Section 103 of Title 35 of the United States Code states that "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Obviousness is a question of law, but it is based on a number of underlying facts. *Med. Instrumentation Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1220 (Fed. Cir. 2003). Those facts include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; and (3) the difference between the claimed invention and the prior art. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). Secondary factual considerations such as commercial success, long felt but unsolved needs, and failure of others must also be used to take into account the circumstances surrounding the origin of the subject matter sought to be patented. *See id.*; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983) ("It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness."). However, before a court may receive and give substantial weight to objective evidence of nonobviousness, the patent holder bears the burden of establishing that the particular objective fact that the patent holder uses to support its argument of nonobviousness arose from, or was related to, the existence of the patented invention rather than from independent activity. *Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

3

A patent is invalid as obvious under section 103 if the prior art suggests a motivation to combine prior art elements in a manner that would result in the claimed invention. "[O]bviousness does not require the prior art to reach expressly each limitation exactly. Rather, obviousness may render a claimed invention invalid where the record contains a suggestion or motivation to modify the prior art teaching to obtain the claimed invention." *Beckson Marine v. Nfin, Inc.*, 292 F.3d 718, 727 (Fed. Cir. 2002). In assessing the differences between an invention and the prior art, section 103 requires consideration of the claimed invention as a whole. *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed Cir. 2004).

A suggestion or motivation to combine prior art references may be implicit, as well as explicit, in the prior art. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999). Such a suggestion or motivation to combine can also "derive solely from the existence of a teaching, which one of ordinary skill in the art would be presumed to know, and the use of that teaching to solve the same or similar problem which it addresses." *In re Oetiker*, 977 F.2d 1443, 1448 (Fed. Cir. 1992). For the purpose of an obviousness inquiry, the hypothetical "person of ordinary skill in the art" is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field." *In re Nilssen,* 851 F.2d 1401, 1403 (Fed. Cir. 1988). While the Federal Circuit warns against employing hindsight in an obviousness analysis, "[t]hat warning does not provide a rule of law that an express, written motivation to combine must appear in prior art references before a finding of obviousness. Stated differently, this court has consistently stated that a court

4

or examiner may find a motivation to combine prior art references in the nature of the problem to be solved." *Ruiz*, 357 F.3d at 1276.

### 3.    Lack of Written Description

Section 112 of Title 35 of the United States Code states that a patent specification must contain "a written description of the invention." 35 U.S.C. § 112, ¶ 1. In order to fulfill the written description requirement of section 112, the specification must "describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that 'the inventor invented the claimed invention.'" *Regents of the Univ. of Cal. v. Eli Lily and Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997) (internal citations omitted). The test is whether possession of the claimed invention is shown at the time of the earliest application to which priority is claimed. *Vas-Cath Inc. v. Marhurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). Claims may be no broader than the supporting disclosure, and a narrow disclosure will limit claim breadth. *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1351 (Fed. Cir. 2004); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340-41 (Fed. Cir. 2001); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

To be adequately supported by the disclosure, claimed subject matter must be explicitly or inherently disclosed in the original application. While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, the question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. *Martin v. Mayer*, 823 F.2d

500, 504 (Fed. Cir. 1987) (stating that it is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure ... it is a question whether the application necessarily discloses that particular device.") Rather, the application itself must describe the invention, and must do so in sufficient detail that one skilled in the art can clearly conclude that the inventor was in possession of the claimed invention as of the filing date sought. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

Inherent disclosure may be inferred where a person of skill in the art would immediately discern that limitation at issue in the claims is necessarily present in the original disclosure. *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000). Inherency in the context of the written description requirement is a strict requirement that cannot be satisfied by educated guesswork. "In order for a disclosure to be inherent, 'the missing descriptive matter must necessarily be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure.'" *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen'l Elec. Co.*, 264 F.3d 1111, 1119 (Fed Cir. 2001) (quoting *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998)). Further, "[a] disclosure in a patent application that merely renders the later-claimed invention obvious is not sufficient to meet the written description requirement; the disclosure must describe the claimed invention with all its limitations." *Tronzo*, 156 F.3d at 1158. Section 112 always requires that the claim limitation must be necessarily present in the original disclosure, regardless of whether the disclosure is explicit or inherent.

### 4.     Lack of Enablement

Section 112 of Title 35 of the United States Code states that a patent specification must describe "the manner and process of making and using [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same . . . ." 35 U.S .C. § 112, ¶ 1.  A description is not sufficiently enabling to meet this requirement if it would require undue experimentation. *Atlas Powder Co. v. E. I. Du Pont de Nemours & Co.,* 750 F.2d 1569, 1576 (Fed. Cir. 1984).  As with the written description requirement, the enablement requirement must be satisfied as of the original filing date of the application.  *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.,* 315 F.3d 1335, 1339 (Fed. Cir. 2003).  Whether a disclosure is enabling under 35 U.S.C. § 112 "is a legal conclusion based upon underlying factual inquiries." *Johns Hopkins University v. CellPro, Inc.,* 152 F.3d 1342, 1354 (Fed. Cir. 1998).  *See also Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.,* 927 F.2d 1200, 1212 (Fed. Cir. 1991); *In re Wands,* 858 F.2d 731, 735, 736-37 (Fed. Cir. 1988).

Therefore, it is not sufficient that one of skill in the art would have been able to recognize what the applicant has invented; the disclosure must be also sufficiently detailed to enable one of ordinary skill in the art to practice each claimed aspect of the invention without undue experimentation.  The scope of the claims can be no broader than the scope of what the applicant has enabled.  *LizardTech, Inc. v. Earth Resource Mapping, Inc.,* 424 F.3d 1336, 1345-46 (Fed. Cir. 2005); *National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.,* 166 F.3d 1190, 1196 (Fed. Cir. 1999).

**5.    Indefiniteness**

The second paragraph of 35 U.S.C. § 112 states that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  If the scope of a claim limitation cannot be determined from the claims themselves, the specification, or the prosecution history, the claim fails to meet the definiteness requirement of 35 U.S .C. § 112.

The test for indefiniteness turns on whether a person of ordinary skill in the art would understand what is claimed (and what is not claimed) in light of the specification. *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1469 (Fed. Cir. 1993); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1576 (Fed. Cir. 1986).  A patentee is required to put the public on fair notice of what is and is not covered by a patent.

The developed and improved condition of the patent law, and of the principles which govern the exclusive rights conferred by it, leave no excuse for ambiguous language or vague descriptions.  The public should not be deprived of rights supposed to belong to it, without being clearly told what it is that limits these rights. *Merrill v. Yeomans,* 94 U.S. 568, 573 (1876).  The inventor must "inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not." *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938) (quoting *Permutit Co. v. Graver Corp.,* 284 U.S. 52, 60 (1931)). *See also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) (citing *United Carbon Co. v. Binney & Smith Co.*, 317 U S.

228, 236 (1942); *Gen. Elec.*, 304 U.S. at 369). In short, "[patent] claims must be 'particular' and 'distinct,' as required by 35 U.S.C. § 112, so that the public has fair notice of what the patentee and the Patent and Trademark Office have agreed constitute the metes and bounds of the claimed invention." *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed. Cir. 1991).

### B.    Unenforceability Due To Inequitable Conduct

Inequitable conduct is a violation of the duty of disclosure as set forth in 37 C.F.R. § 1.56 ("Rule 56"), the Rules of Practice of the United States Patent and Trademark Office. The duty of disclosure requires each individual associated with the filing and prosecution of a patent application to disclose to the Patent Office all information known to that individual to be material to patentability. 37 C.F.R. § 1.56 ("Rule 56"). The term "information" is intended to be all-encompassing and includes both prior art documents and statements from related litigation, including information arising from the "pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony." MPEP § 2001.04; MPEP § 2001.06(c).

Inequitable conduct requires a finding that the patentee or one of its agents intentionally failed to disclose material information to the patent examiner and that this failure was done with an intent to deceive. *E.g., Molins PCL v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995); *Baxter Int'l v. McGaw,* 149 F.3d 1321, 1327 (Fed. Cir. 1998). Thus, a pleading of inequitable conduct requires identification of material information and evidence from which intent can be inferred. Because of its fraud implications, inequitable conduct is typically held to the heightened pleading standard of

9

Rule 9(b). *See Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003) (stating that "inequitable conduct, while a broader concept than fraud, must be pled with particularity"); *see also Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 488 (D. Del. 2003) (citation string omitted).

The current version of Rule 56 provides that information is "material" to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) it refutes, or is inconsistent with, a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting an argument of patentability. 37 C.F.R. § 1.56 (2004). However, this version of Rule 56 is not the only benchmark available to the Court by which to measure materiality. The Court may also find that information is "material" to patentability under the previous "reasonable examiner" inquiry, which is met if there is a substantial likelihood that "a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application." *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006). In particular, the Federal Circuit explained that the current Rule 56 standard

> merely provides an additional test of materiality. That is, if a misstatement or omission is material under the new Rule 56 standard, it is material. Similarly, if a misstatement or omission is material under the "reasonable examiner" standard or under the older three tests [viz, the objective "but for," the subjective "but for," or the "but it may have" standards], it is also material. As we reasoned in *American Hoist* [725 F.2d 1350], to the extent that one standard requires a higher showing of materiality than another standard, the requisite finding of intent may be lower.

*Digital Control*, 437 F.3d at 1316. Under the "reasonable examiner" standard, a misstatement or omission may be material even if disclosure of that misstatement or

omission would not have rendered the invention unpatentable. *Id.* at 1318 (citation string omitted).

Generally, evidence of intent to deceive is "inferred from the facts and circumstances surrounding the applicant's overall conduct." *Paragott Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1189 (Fed. Cir. 1993). Direct evidence of intent to deceive is not required and rarely obtained. *Merck & Co., Inc. v. Danbury Parmacal, Inc.,* 73 F.2d 1418, 1422 (Fed. Cir. 1989) ("Intent need not, and rarely can, be proven by direct evidence.")

An inference of intent arises when the patentee or its agent fails to provide a credible explanation for its failure to disclose a known material reference. *Ferring B. V. v. Barr Labs., Inc.,* 437 F.3d 1181, 1191 (Fed. Cir. 2006) (upholding finding of intent to deceive where patentee knowingly withheld information about declarants' relationship with patentee and offered no credible, non-speculative explanation for the withholding); *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,* 394 F.3d 1348, 1354 (Fed. Cir. 2005) (upholding finding of intent to deceive where patentee withheld material prior art that it had disclosed to the FDA, and offered no credible, good faith explanation for the withholding.); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256-1257 (Fed. Cir. 1997) (upholding finding of intent to deceive where patentee and its counsel knowingly withheld a prior art reference relating to a point of novelty and made no effort to offer a good faith explanation of why it was never cited); *see also Paragon Podiatry Lab.,* 984 F.2d at 1193 (upholding finding of intent to deceive where there was evidence of a knowing failure to disclose pre-critical date commercial sales of

the patented device and no explanation was offered). Intent to deceive will be more readily inferred if an undisclosed reference is highly material. *Baxter Int'l*, 149 F.3d at 1327 (noting that the more material the omission, the less evidence of intent will be required in order to find that inequitable conduct has occurred).

### C.    Lack of Standing

A federal court is obligated to examine its jurisdiction. Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993). Standing cannot be inferred from the averments of the pleadings, *Grace v. American Cent. Ins. Co.*, 109 U.S. 278, 284 (1883), but "must affirmatively appear in the record." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884).

The party seeking jurisdiction bears the burden of establishing that it is a proper party to invoke judicial resolution of the dispute. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Ortho Pharmaceutical Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 907 (1995). In response to a motion for summary judgment on the issue of standing, the party alleging standing must set forth by affidavit or by other appropriate means "specific facts" to support its standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Standing is not a clerical error that can be rectified by the court. For example, in *Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345 (E.D. Mich. 2003), the plaintiff was misnamed in both the lawsuit and the patent assignment as "Corp." when its legal name

was "Inc.". The court reasoned that the "Hilgraeve" entity was the real party in interest –
it did own the patent – and it allowed an amended complaint rather than dismissal.

Under United States Patent law, standing is determined by virtue of the parties
rights on the date suit is filed. *Quiedan Co., Inc. v. Central Valley Builders Supply Co.,
Inc., et al.*, 1993 U.S. Dist. LEXIS 15238 (N.D. Cal. 1993). The right of the plaintiff to
recover depends upon its right at the inception of the suit and the nonexistence of a cause
of action when the suit was started is a fatal defect which cannot be cured by the accrual
of a cause of action pending suit. *Id.* (citing *Switzer Brothers, Inc. v. Byrne*, 242 F.2d
909, 913 (6th Cir. 1957)).

### D.    Attorneys' Fees for Defendants

An award of attorneys' fees may be justified against a plaintiff who has initiated
the action in bad faith by asserting unenforceable patents or otherwise, or who has
engaged in inequitable conduct before the PTO in securing the patent-in-suit, either under
Section 285 or under the Court's plenary authority. 35 U.S.C. § 285; *Tate Access Floors,
Inc. v. Maxcess Tech., Inc.*, 222 F.3d 958, 971-72 (Fed. Cir. 2000); *L.E.A. Dynatech v.
Allina*, 48 F.3d 1527, 1530 (Fed. Cir. 1995); *Cambridge Prods., Ltd, v. Penn Nutrients,
Inc.*, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992); *Fox Indus., Inc. v. Structural Preservation
Sys.,* 922 F.2d 801 (Fed. Cir. 1990).

## II.    MATTERS ON WHICH LPM BEARS THE BURDEN OF PROOF

### A.    Infringement

35 U.S.C. § 271(a) states:

> Except as otherwise provided in this title, whoever without
> authority makes, uses, offers to sell or sells any patented invention,
> within the United States or imports into the United States any
> patented invention during the term of the patent therefore, infringes
> the patent.

A determination of infringement requires a two-step analysis. The court first construes each asserted patent claim as a matter of law and then determines whether each and every limitation of each such claim is found in the accused product. *Kahn v. Gen'l Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998). The first step, claim construction, is a matter of law, while the second step is a question of fact. *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1.360, 1369 (Fed. Cir. 2002). The patentee bears the burden of proving infringement by a preponderance of the evidence. *Kahn*, 135 F.3d at 1476-77.

### 1.    Literal Infringement

"To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). The absence of a single limitation is fatal to the patentee's case. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). If an independent patent claim is not infringed it follows as a matter of law that any claims depending from that claim are also not infringed. *Wolverine World Wide Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

14

Further, the accused device must meet all the limitations of the claim as-is. "A device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim ..... The question is not what [a device] might have been made to do, but what it was intended to do and did do." *High Tech Medical Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995).

### 2.    Direct Infringement

Under section 271(a) of Title 35 of the United States Code, direct infringement is defined as follows:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

35 U.S.C. § 271(a). Thus, in order to directly infringe a patent claim, a person or entity must be proven to have made, used, offered to sell, or sold a patented invention within the United States or imported a patented invention into the United States. Each element of the allegedly infringed claim must be shown to be contained in the accused product or method, either literally or equivalently. *Netword*, 242 F.3d at 1353 ("all of the elements of the claim, as correctly construed, must be present in the accused system.").

### B.    Willful Infringement

To establish willful infringement, the patentee must prove, by clear and convincing evidence, "that the infringer acted in disregard of the patent... [and] had no reasonable basis for believing it had the right to do the acts." *Stickle v. Heublein, Inc.,*

15

716 F.2d 1550, 1565 (Fed. Cir. 1983).  Whether or not the infringement of a patent has

been willful is a question of fact that requires examination of the totality of the

circumstances in each case, including any mitigating or ameliorating facts.  *SRI Int'l, Inc.*

*v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1465 (Fed. Cir 1997); *Graco, Inc. v. Binks*

*Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *American Med. Sys., Inc. v. Medical Eng'g*

*Corp.*, 6 F.3d 1523, 1531 (Fed. Cir. 1993).  Accordingly, willfulness is a jury question.

*Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989).

In determining whether infringement has been willful, the primary consideration

is "whether the infringer, acting in good faith and upon due inquiry, had sound reason to

believe that it had the right to act in the manner that was found to be infringing."  *SRI*

*Int'l*, 127 F.3d at 1464-65.  A potential infringer having actual notice of another's patent

has an affirmative duty of due care that normally requires the potential infringer to obtain

competent legal advice before infringing or continuing to infringe.  *Minnesota Mining &*

*Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir.

(1992).

> To serve as exculpatory legal advice the opinion of counsel
> is to be viewed objectively, to determine whether it was
> obtained in a timely manner, whether counsel analyzed the
> relevant facts and explained the conclusions in light of the
> applicable law, and whether the opinion warranted a
> reasonable degree of certainty that the infringer has the
> legal right to conduct the infringing activity.

*Id.* at 1467.  At base, the inquiry regarding willfulness is whether, under all the

circumstances, a reasonable person would prudently conduct himself with any confidence

that a court might hold the patent invalid or not infringed.  *State Indus., Inc. v. Mor-Flo*

*Indus.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989).  "The proper time to assess willfulness is at

the time the infringer received notice. . . ."  *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d

16

1259, 1276 (Fed. Cir. 1999).

### C.    Damages for Patent Infringement

35 U.S.C. § 284 states:

> Upon finding for the claimant the court shall award the
> claimant damages adequate to compensate for the
> infringement, but in no event less than a reasonable royalty
> for the use made of the invention by the infringer, together
> with interest and costs as fixed by the court.

"The assessment of damages is a question of fact, and is decided by the jury when trial is
to a jury." *Weinar v. Rollform, Inc.*, 744 F.2d 797, 808 (Fed. Cir. 1984).

"The Supreme Court has interpreted [section 284] to mean that 'adequate'
damages should approximate those damages that will fully compensate the patentee for
infringement." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en
banc*). Section 284 sets a "reasonable royalty" as the floor below which the damage
award may not fall. *Id.* at 1545.

The patent owner must prove the amount of its damages by a preponderance of
the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1164
(Fed. Cir. 1991).

### 1.    Reasonable Royalty

The determination of a "reasonable royalty" involves imagining a "hypothetical
negotiation" between a willing licensor and a willing licensee at the time the alleged
infringement began. *Wang Labs. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).
Both the hypothetical licensor and the hypothetical licensee are assumed to know the

patent is valid and infringed, and are assumed to possess a "book of wisdom" that allows them to consider events that occurred after the date infringement began. *Fromson v. Western Plate and Supply Co.*, 853 F.2d 1568, 1574-76 (Fed. Cir. 1988).

The fifteen factors recited in *Georgia-Pacific Co. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y.1 970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971), are an appropriate basis for the determination of what constitutes a reasonable royalty. *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 n. 7 ( Fed. Cir. 1995). These factors are:

1.   The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

2.   The rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

3.   The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.   The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5.   The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6.   The effect of selling the patented specialty in promoting sales of other products of the licensee, that existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.   The duration of the patent and term of the license;

8.   The established profitability of the product made under the patent, its commercial success, and its current popularity;

9.   The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.    The extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.    The opinion testimony of qualified experts; and

15.    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee - who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention - would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific,* 318 F. Supp. at 1120.


**D.    Prejudgment Interest**

The court may award prejudgment interest to a prevailing patentee.  35 U.S.C. §

284.  The rate of prejudgment interest and whether it should be compounded or

uncompounded are matters left to the discretion of the district court.  *Nickson Indus., Inc.*

*v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988); *Bio-Rad Labs., Inc. v. Nicolet Instr.*

*Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).  The court has discretion to limit the interest

awarded where, for example, the patentee has caused undue delay in the lawsuit. *Nickson*

*Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988).


### E.    Enhanced Damages

If willful infringement is found, a district court has the discretion to award

damages up to three times the amount found or assessed as a compensatory award. 35

U.S.C. § 284. Enhanced damages are to be awarded only "as a penalty for an infringer's

increased culpability, namely willful infringement or bad faith." *Beatrice Foods Co.,*

*v. New England Printing & Lithographing Co.,* 923 F.2d 1576, 1579 (Fed. Cir. 1991).

Plaintiff must establish that it is entitled to increased damages, and the amount of any

increase, only after first proving by clear and convincing evidence that defendants'

alleged infringement was willful. 35 U.S.C. § 284; *American Original Corp. v. Jenkins*

*Food Corp.,* 774 F.2d 459 (Fed. Cir. 1985); *Read Corp.,* 970 F.2d at 826.

The district court nonetheless has discretion to refuse to increase damages even if

there is a willfulness finding. *Read Corp.,* 970 F.2d at 826. In deciding whether to

increase damages, the court should consider a number of factors, including (1) whether

the infringer deliberately copied the invention, (2) whether the infringer, upon being

notified that he might be infringing the patent, investigated the scope of the patent and

formed a good-faith belief that it was invalid, (3) the infringer's behavior during the

litigation, (4) the infringer's size and financial condition, (5) the closeness of the case, (6)

the duration of the willful infringement, (7) remedial action by the defendant, (8) the

defendant's motivation for harm, and (9) whether the defendant tried to conceal its

actions. *Id.* at 826-27. All circumstances must be considered, and the court may not

focus on one factor to the exclusion of all others. *Jurgens v. McKasy,* 927 F.2d 1552, 1562 (Fed. Cir. 1991). A court must also specifically explain any increase in damages awarded. *Read Corp.*, 970 F.2d at 828.


### F.    Attorneys' Fees for Plaintiff

In "exceptional cases" only, the court may award attorneys' fees to a prevailing patent owner based on a finding of willful infringement, proven by clear and convincing evidence. 35 U.S.C. § 285; *Avia Group Int'l, Inc. L.A. Gear California, Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988); *Revlon, Inc. v. Carson Prods. Co.*, 803 F.2d 676, 679 (Fed. Cir. 1986); *Modine Mfg. Co., v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). Attorneys' fees are awarded only to "avoid a gross injustice," and not simply to penalize a party for defending or prosecuting a lawsuit. *Revlon*, 803 F.2d at 679. Indeed, even an exceptional case does not require an award of fees. *Modine Mfg.*, 917 F.2d at 543.


### G.    Injunctive Relief

Under 35 U.S.C. § 283, courts "'may' issue [injunctive relief] in accordance with the principles of equity." *eBay Inc, v. MercExchange, L.L.C.*, 2006 U.S. LEXIS 3872 (S. Ct. May 15, 2006); *Richardson v. Suzuki Motor Co., Ltd.,* 868 F.2d 1226, 1247 (Fed. Cir. 1989). However, even if a patentee proves infringement, the grant of an injunction is not to be "automatic." *eBay Inc. v. MercExchange, L.L.C.*, 2006 U.S. LEXIS 3872 (S. Ct. May 15, 2006) (rejecting "invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination" of patent infringement); *id.* at ***7-8 (Kennedy, J., concurring)("Both the terms of the Patent Act and the

21

traditional view of injunctive relief accept that the existence of a right to exclude does not dictate the remedy for a violation of that right."). However, "before a court may grant such relief," a patentee "must" demonstrate the following four factors:

> (1) that it has suffered an irreparable injury;
>
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
>
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
>
> (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 2006 U.S. LEXIS 3872 (S. Ct. May 15, 2006).

In deciding whether permanent injunctive relief should be granted and the scope of such an injunction, the Court may take into account the fact that plaintiff willingly licenses the patent-in-suit to others and does not itself sell a product or service practicing the claims of the patent-in-suit. *Rite-Hite Corp.*, 56 F.3d at 1549; *Joy Techs., Inc. v. Flakt, Inc.,* 6 F.3d 770, 772-73, 775 (Fed. Cir. 1993). "If a patentee's failure to practice a patented invention frustrates an important public need for the invention, a court need not enjoin infringement of the patent." *Rite-Hite*, 56 F.3d at 1547.