IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LP MATTHEWS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-1507-SLR |
| | ) | |
| BATH & BODY WORKS, INC., | ) | |
| LIMITED BRANDS, INC., | ) | |
| KAO BRANDS CO., and KAO | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

At Wilmington this 19th day of October, 2006, having heard oral argument and having reviewed the papers submitted in connection with the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language in claims 6 and 9 of United States Patent No. 5,063,062 ("the '062 patent"), as identified by the above captioned parties, shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. **"Skin cleaning composition for external use on human tissues / cleaning composition for use on human skin"**: A

composition for removing unwanted non-water soluble substances from the skin.

Plaintiff argues for a broad construction of this limitation to cover any composition that has "an effect of treating unwanted substances so that the unwanted substance is easier to remove from the skin." (D.I. 229) Of course, such a broad construction encompasses rinsing your skin with water and, thereby, making it easier to remove dead skin cells. The court declines to give this patent such a broad expanse.

The specification of the '062 patent describes the invention as relating to "cleaning compositions suitable for external application to human skin tissue in order to remove unwanted substances such as tar, caulking compounds, sealants, adhesives and the like." ('062 patent, col. 1, ll. 6-9; col. 2, ll. 13-15 and 22-24) The specification goes on to describe that "it has not been readily apparent that orange oil alone or in combination with other substances could prove effective in cleaning compounds otherwise difficult to remove from the tissues of the skin." ('062 patent, col. 1, ll. 58-61) In investigating cleaning compositions "according to the present invention," the inventors tested "industrial type substances" that were "regarded as difficult to remove from the human hands." ('062 patent, col. 4, ll. 3-8); col. 5, ll. 17-19; col 6, ll. 36-55) In the prosecution history, the inventors hailed the superior cleaning

2

properties of orange oil as being effective in removing "substances such as urethane caulking, paint and tar that resist d-limonene cleaning compositions." (D.I. 254, ex. B at LPM 000185) There is absolutely no indication in the claims, the specification or the prosecution history that the invention was directed to a compound that simply lubricates the skin, making it easier to remove such substances as dead skin cells.

2. **"Orange oil / forty-five percent (45%) or less by volume of orange oil"**: At least 5% by volume of the non-water soluble liquid derived from an orange.

Plaintiff argues that this claim limitation should be construed broadly, without a minimum percentage of orange oil required. The court acknowledges in this regard that independent claim 1 includes the 5% by volume limitation, and the 5% by volume limitation is described in the patent as a preferred embodiment. The problem with plaintiff's construction, however, is that there is no indication in the intrinsic record that anything less than 5% by volume of orange oil effectively cleans anything, let alone the industrial type substances discussed in the patent.

Plaintiff argues that there is extrinsic evidence that as little as 0.01% by volume of orange oil is considered an effective cleaning compound; the evidence indicates otherwise. More specifically, United States Patent No. 5,013,485 ("the '485

3

patent"), captioned "Liquid Detergent Composition Containing Terpene and Calcium or Magnesium Salts," describes a liquid detergent composition "which comprises an anionic surface agent, a terpene-type hydrocarbon selected from monoterpenes and sesquiterpenes, and a water-soluble divalent metal salt" which does "not require dilution prior to use, nor an after-rinse," has "a high degree of safety," and "easily remove[s] soiling." ('485 patent, col. 1, ll. 62-68)  The composition has as essential components:  "(A) 0.01-1.0% by weight of an anionic surface active agent, (B) 0.01-1.0% by weight of a terpene-type hydrocarbon solvent selected from monoterpenes and sesquiterpenes, and (C) 0.001-0.1% by weight of a water-soluble divalent metallic salt." ('485 patent, Abstract)  D-limonene, contained in orange oil, was given as an example of component (B).  ('485 patent, col. 2, ll.57-59; col. 3, ll. 2-4)  Detergent compositions were prepared and tested according to three parameters:  detergency, wiping traces and solvent odor.  The results of these tests demonstrate that, of the 15 compositions tested, only six contained either D-limonene or orange oil, with none of the examples containing less than 0.3% by weight of D-limonene or orange oil.  It is clear from a careful reading of the patent that the invention disclosed therein is directed to the combination of three compounds that exhibit, when combined, cleaning and other properties.  The '485 patent does not

4

demonstrate that orange oil, on its own (particularly at quantities as small as 0.01% to 1.0% by volume), is an effective cleaning composition.

3. **"Oat grain derivative product"**: Material derived from the grain of an oat (which consists of the kernel and the husk of the grain).

('062 patent, col. 2, ll.34-38; col. 4, ll. 22-27, 55-65)

4. **"Emulsifying agent"**: An ingredient added to stabilize an emulsion (an emulsion is, e.g., a dispersion of oil in water).

('062 patent, col. 2, ll. 68 to col. 3, ll.1; col. 4, ll. 19-25)

5. **"Oatmeal"**: Material that is derived from the kernel of an oat grain (including liquid extracts and powders).

('062 patent, col. 4, ll. 51-62; D.I. 270, ex. J at LPM 000186)

6. **"Pharmaceutically-acceptable moisturizer"**: Material that has the effect of adding moisture to or keeping moisture in human skin that is also safe and effective for use on human skin.

('062 patent, Abstract; col. 2, ll. 68 to col. 3, ll. 2; col. 3, ll. 11-14; col. 8, ll. 45-58)

7. **"pH in a range 4.5 to 6.0, inclusively"**: "Inclusively"

means including but not exceeding the endpoints of the range.

('062 patent, col. 6, ll. 22-27)

_____
United States District Judge