IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LP MATTHEWS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-1507-SLR |
| | ) |
| BATH & BODY WORKS, INC., | ) |
| LIMITED BRANDS, INC., KAO | ) |
| BRANDS CO., and KAO CORP., | ) |
| | ) |
| Defendants. | ) |
| | |
| | |
| BATH & BODY WORKS, INC., and | ) |
| LIMITED BRANDS, INC., | ) |
| | ) |
| Counterclaim | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| LP MATTHEWS LLC, | ) |
| | ) |
| Counterclaim | ) |
| Defendant. | ) |

John G. Day, Esquire, Steven J. Balick, Esquire, Lauren E.
Maguire, Esquire, Tiffany Geyer Lydon, Esquire, Ashby & Geddes,
Wilmington, Delaware. Counsel for Plaintiff and Counterclaim
Defendant. Of Counsel: Robert Auchter, Esquire, Robins, Kaplan,
Miller & Ciresi LLP, Washington, D.C.

Francis G.X. Pileggi, Esquire, Sheldon Kevin Rennie, Esquire, Fox
Rothschild LLP, Wilmington, Delaware. Counsel for Defendants and
Counterclaim Plaintiffs Bath & Body Works, Inc. and Limited
Brands, Inc. Of Counsel: David M. Hill, Esquire, John F. Ward,
Esquire, Michael J. Zinna, Esquire, Ward & Olivo, Summit, New
Jersey.

Richard L. Horwitz, Esquire, David Ellis Moore, Esquire, Potter
Anderson & Corroon LLP, Wilmington, Delaware. Counsel for
Defendants Kao Brands Co. and Kao Corporation. Of Counsel:

Arthur I. Neustadt, Esquire, Richard L. Chinn, Esquire, Oblon
Spivak McClelland Maier & Neustadt, PC, Alexandria, Virginia.

**MEMORANDUM OPINION**

Dated:   October 19, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On December 8, 2004, LP Matthews LLC ("plaintiff") filed
suit against Kao Brands Co. and Kao Corporation (together,
"KBC"),[1] as well as Bath & Body Works, Inc. and Limited Brands,
Inc. (together, "BBW")[2] (collectively, "defendants"), alleging
infringement of claims 6 and 9 of United States Patent No.
5,063,062 ("the '062 patent") under 35 U.S.C. §§ 101 et seq..
(D.I. 1)   Plaintiff amended its complaint on February 2, 2005.
(D.I. 5)   On April 4, 2005, BBW filed a counterclaim against
plaintiff, requesting a declaratory judgment that:   (1) it did
not infringe the '062 patent; (2) the '062 patent is invalid; and
(3) the action at bar qualifies as an "exceptional case" under 35
U.S.C. § 285.   (D.I. 22)   Currently before the court are the
parties' motions for summary judgment on the issue of
infringement.   (D.I. 12, 249, 259, 262, 267)   The court has
jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1338(a), and
venue is proper under 28 U.S.C. §§ 1391 and 1400(b).

---

[1]Kao Corporation, a Japanese company, is the corporate
parent of Kao Brands Co. (D.I. 5 at ¶ 7)   Although it is not
entirely clear from the record that Kao Brands Co.'s motions for
summary judgment were also filed on behalf of Kao Corporation,
the court will assume as much and include Kao Corporation within
the term "KBC."

[2]As Limited Brands, Inc., a Delaware corporation, is the
parent corporation of Bath & Body Works, Inc. (D.I. 5 at ¶ 4),
the court will include it in the term "BBW."

## II. BACKGROUND

### A. The '062 Patent

The United States Patent and Trademark Office ("PTO") issued the '062 patent on November 5, 1991. (D.I. 2)   The patent lists Douglas Greenspan and William Ingram as the assignees.  (Id.)   On July 31, 1990, Greenspan and Ingram decided "to grant to The Greenspan Company [("Greenspan Co.")] the sole and exclusive right to control of the manufacture, license, marketing and all other aspects of control of the product Healthy Kleaner and control of the patent that has been applied for on the product if issued," which ultimately became the '062 patent; Greenspan and Ingram signed a nunc pro tunc agreement to that effect on March 15, 2004.  (D.I. 142, exs. B, E)   On January 15, 2004, Greenspan Co. purported to assign to plaintiff the rights to the '062 patent.[3]  (Id., exs. D, F)

The '062 patent, entitled "Cleaning Compositions with Orange Oil," describes the patented product ("the invention") as

> [a] cleaning composition for cleaning the skin [which] contains orange oil, a pharmaceutically acceptable moisturizer and an emulsifying agent[.]   Preferably the orange oil accounts for between 5% and 60% by volume, and it [is] further preferred that the composition contains 40% orange oil by volume.   The moisturizer is either glycerin, aloe vera, jojoba oil, safflower oil

---

[3]Defendants challenge the validity of this assignment (D.I. 142 at 4-5; D.I. 89 at 1; D.I. 256), in part because the proper name of Greenspan Co. is actually Greenspan **Corporation**.   (D.I. 257, ex. H)   For the purposes of this opinion only, the court will assume that the assignment was valid.

2

or a combination thereof. The emulsifying agent
preferably is oatmeal. The composition is constituted
to have a pH of between 4.5 and 6.0, and the
composition may be packaged as moistened towellets
[sic] in hermetic packets.

('062 patent, Abstract) The invention was designed to remove

"non-water soluble products" such as "grease, caulking,

adhesives, sealants, tar, oils, ink and the like," which

typically do not respond effectively to more common cleansers

like hand soap. (Id., col. 2, ll. 12-15) Other substances which

are commonly used to remove non-water soluble products "are harsh

and can damage the skin, especially after prolonged use." (Id.,

col. 1, ll. 28-43) The inventors recognized "the suitability of

orange oil" as a skin cleaning compound; however, "[o]range oil

by itself is a skin irritant that can cause inflammation of the

tissues." (Id., col. 1, ll. 50 to col. 2, ll. 7) As a result,

after creating a number of different samples with differing

amounts of orange oil and pH levels (id., col. 2-8), the

inventors claimed a range of mixtures which they believed would

"remove[] unwanted substances from the human skin but also act[]

to help clean and revitalize the human skin." (Id., col. 2, ll.

21-24)

Plaintiff alleges that defendants have infringed claims 6

and 9 of the '062 patent, which claims disclose the following:

6. A skin cleaning composition for external use on
human tissues, comprising orange oil, a
pharmaceutically acceptable moisturizer for human skin
and an oat grain derivative product as an emulsifying

3

agent, wherein said composition has a pH within a range of 4.5 to 6.0 inclusively.

. . . .

9. A cleaning composition for use on human skin comprising forty-five percent (45%) or less by volume of orange oil, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer.

(Id., col. 10, ll. 1-6, 13-17)[4]

## B. The Accused Products

### 1. The KBC Products

Plaintiff has accused four of KBC's products ("the KBC products") of infringement in the case at bar.[5] Plaintiff and KBC agree that the KBC products incorporate no more than 0.03% orange oil by weight (which translates to no more than approximately 0.035% orange oil by volume). (D.I. 248 at 4; D.I. 251, exs. 1-4; D.I. 260, ex. J at 35-37)

---

[4]Claim 1, the only other independent claim in the '062 patent, discloses:

A skin cleaning composition adapted for external use on human tissues, comprising a first ingredient being between five percent (5%) and sixty percent (60%) by volume of orange oil, a second ingredient being a pharmaceutically acceptable moisturizer for human skin and a third ingredient being an emulsifying agent in the form of an oat grain derivative product.

('062 patent, col. 9, ll. 4-10)

[5]The KBC products are: (1) Curél Ultra Healing Lotion, which is still currently in production; and (2) Curél Extreme Care Body Lotion, (3) Curél Extreme Care Facial Wash, and (4) Curél Extreme Care Body Cleanser, which have been discontinued. (D.I. 278 at 4)

4

## 2.  The BBW Products

Twenty-seven different products made by BBW ("the BBW products") are at issue in the case at bar.[6]  (D.I. 292 at 5-6) According to the report prepared by plaintiff's expert, Christopher T. Rhodes, the amount of orange oil contained in the BBW products ranges from a low of 0.01% to a high of 1%.  (D.I. 260, ex. J at 14-35)  The same report indicates that 25 of the BBW products contain no more than 3% of any oat-derived ingredient.[7]  (Id.)  The specified pH range for 16 of the BBW

_____

[6]The BBW products are:  (1) BBW Mango Mandarin Cream Body Wash; (2) TBS Better Lather Than Never Bubble Bath and Shower Cream; (3) BBW Mango Mandarin Skin Refining Body Scrub; (4) BBW Mango Mandarin Skin Renewal & Anti-Aging Body Wash; (5) Burt's Bees Citrus Facial Scrub; (6) Burt's Bees Orange Essence Facial Cleanser; (7) TBS Good Clean Foam Face Wash; (8) PS Ginger Rejuvenating Shower Foam; (9) PS Ginger Rejuvenating Body Scrub; (10) BBW Mandarin Body Lotion; (11) BBW Cool Citrus Basil Body Lotion; (12) BBW Mango Mandarin Hand Repair & Healing Cream; (13) BBW Mango Mandarin Skin Repair & Healing Body Butter; (14) PS Salt Toning Body Balm; (15) Murad Resurgence Sheer Lustre Day Moisture; (16) Murad Resurgence Age-Diffusing Serum; (17) Murad Resurgence Age-Balancing Night Cream; (18) Murad Skin Perfecting Lotion; (19) Murad Acne Spot Treatment; (20) PS Ginger Rejuvenating Body Lotion; (21) PS Oat Oil-Control Face Moisturizer; (22) PS Burdock Root Skin Mattifier; (23) PS Ginger Rejuvenating Body Balm; (24) PS Ginger Rejuvenating Hand & Nail Cream; (25) PS Fig Hydrating Body Balm; (26) PS Fig Hydrating Hand & Nail Cream; and (27) PS Everlasting Flower Night Moisturizer.  (D.I. 292 at 5-6)

[7]According to Rhodes, Burt's Bees Citrus Facial Scrub contains 32.769% oat flour in the dry herb blend, which accounts for 44.3% of the final product; likewise, he states that Burt's Bees Orange Essence Facial Cleanser is comprised of either 5.1% oat flour or 5.1% Avena Sativa (Oat) Kernel Protein.  (D.I. 260, ex. J at 27-28)

5

products overlaps in some way with the range of 4.5-6.0
(inclusive) stated in the '062 patent.[8]   (Id.)

## III.   STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(c). The moving party bears the burden of proving that no
genuine issue of material fact exists. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct." Horowitz v. Fed. Kemper
Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal
citations omitted). If the moving party has demonstrated an
absence of material fact, the nonmoving party then "must come

---

[8] (1) BBW Mango Mandarin Cream Body Wash; (2) TBS Better
Lather Than Never Bubble Bath and Shower Cream; (5) Burt's Bees
Citrus Facial Scrub; (6) Burt's Bees Orange Essence Facial
Cleanser; (8) PS Ginger Rejuvenating Shower Foam; (9) PS Ginger
Rejuvenating Body Scrub; (10) BBW Mandarin Body Lotion; (11) BBW
Cool Citrus Basil Body Lotion; (15) Murad Resurgence Sheer Lustre
Day Moisture; (16) Murad Resurgence Age-Diffusing Serum; (17)
Murad Resurgence Age-Balancing Night Cream; (19) Murad Acne Spot
Treatment; (20) PS Ginger Rejuvenating Body Lotion; (22) PS
Burdock Root Skin Mattifier; (26) PS Fig Hydrating Hand & Nail
Cream; and (27) PS Everlasting Flower Night Moisturizer.

6

forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

KBC filed a motion for summary judgment on the issue of non-infringement on March 8, 2005. (D.I. 12) On June 29, 2006, it filed another such motion (D.I. 249), which was meant to "update[] and replace the pending non-infringement summary judgment motion filed March 8, 2005 (D.I. 12)."[9] (D.I. 250 at 1) BBW filed a motion for summary judgment as to the same issue on

---

[9]As such, KBC's first motion for summary judgment based on non-infringement (D.I. 12) is denied as moot.

7

July 6, 2006.  (D.I. 259)  Plaintiff has filed cross-motions for summary judgment against both KBC (D.I. 262) and BBW (D.I. 267).

## A.  Literal Infringement

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent."  35 U.S.C. § 271(a). A court should employ a two-step analysis in making an infringement determination.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).  First, the court must construe the asserted claims to ascertain their meaning and scope.  Id.  Construction of the claims is a question of law subject to de novo review.  See Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998).  The trier of fact must then compare the properly construed claims with the accused infringing product.  Markman, 52 F.3d at 976.  This second step is a question of fact.  See Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).  Literal infringement occurs where each limitation of at least one claim of the patent is found exactly in the alleged infringer's product.  Panduit Corp. v. Dennison Mfg. Co., 836 F.2d 1329, 1330 n. 1 (Fed. Cir. 1987).  The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence.  SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

8

This court has construed the terms "orange oil" (in claim 6)[10] and "forty-five percent (45%) or less by volume of orange oil" (in claim 9)[11] to mean that products covered by the '062 patent must include, in an amount of at least 5% by volume, a non-water soluble liquid derived from an orange.  (D.I. 358 at 3) Consequently, in order for claims 6 and 9 of the '062 patent to read onto any of the KBC or BBW products, the accused product must contain 5% or more orange oil by volume.

Plaintiff alleges that KBC "infringe[s] asserted claims 6 and 9 of the '062 patent because [it] make[s], sell[s], and offer[s] for sale four products that are cleaning compositions used on human skin that contain more than 0.01% orange oil, a volume sufficient to have a cleaning effect."[12]  (D.I. 290 at 2) Plaintiff agrees with KBC that the KBC products only "contain

_____

[10]"A skin cleaning composition for external use on human tissues, **comprising orange oil**, a pharmaceutically acceptable moisturizer for human skin and an oat grain derivative product as an emulsifying agent, wherein said composition has a pH within a range of 4.5 to 6.0 inclusively."  ('062 patent, col. 10, ll. 1-6 (emphasis added))

[11]"A cleaning composition for use on human skin **comprising forty-five percent (45%) or less by volume of orange oil**, forty-five percent (45%) or less by volume of oatmeal and a pharmaceutically acceptable moisturizer."  ('062 patent, col. 10, ll. 13-17 (emphasis added))

[12]According to plaintiff, KBC "waived [its] defenses to [plaintiff's] charges of infringement based on the other components [of claims 6 and 9], leaving only the question of whether the four accused [KBC] products (1) contain orange oil and (2) are compositions that clean human skin."  (D.I. 290 at 2)

9

about 0.03% orange oil," but contends that "[such] volume of
orange oil is three times as much as the 0.01% that [KBC's] own
patent [United States Patent No. 5,013,485] indicates will
function to clean."[13]  (Id. at 3; see also D.I. 263 at 5-6)
Should the court's claim construction impose a 5% minimum
limitation on the '062 patent, plaintiff avers, "there is an
insubstantial difference between that volume and the 0.03% orange
oil in the [KBC] products; both volumes act [as] solvents to
clean."  (D.I. 290 at 3)

    Plaintiff has based its infringement claim against BBW on,
inter alia, the orange oil content of the BBW products.  (D.I.
269 at 6-11)  Using plaintiff's own calculations, none of the BBW
products is comprised of more than 1% orange oil, and only four
contain more than 0.5%.  (Id.; see also D.I. 260, ex. J at 14-35)
Despite this, plaintiff contends that the minimum amount of
orange oil required for the BBW products to infringe the '062

_____

    [13]Plaintiff and its expert, Christopher T. Rhodes, aver that
"orange oil can perform cleaning at levels of 0.01% or lower."
(D.I. 263, ex. 12 at 4).  This conclusion is purportedly based on
teachings disclosed in United States Patent No. 5,013,485 ("the
'485 patent"), which issued on June 28, 1989 and was subsequently
assigned to Kao Corporation.  (Id., ex. 4)  This court analyzed
the '485 patent in its claim construction order and found that
"the invention disclosed therein is directed to the combination
of three compounds that exhibit, when combined, cleaning and
other properties.  The '485 patent does not demonstrate that
orange oil, on its own (particularly at quantities as small as
0.01% to 1.0% by volume), is an effective cleaning composition."
(D.I. 358 at 4-5)

10

patent is 0.01%, "a volume sufficient for the orange oil to act as a solvent and therefore clean." (Id. at 2)

Claims 6 and 9 of the '062 patent, properly construed, teach cleaning solutions containing no less than 5% orange oil by volume. None of the four KBC products contains more than 0.035% orange oil by volume, an amount approximately 140 times smaller than the minimum concentration taught in the '062 patent. Likewise, the highest volume of orange oil in any of the BBW products is still 5 times smaller than the minimum required by the '062 patent. The amounts of orange oil taught by claims 6 and 9 of the '062 do not read on the KBC products, nor on the BBW products; therefore, KBC and BBW have not literally infringed the '062 patent.

## B.  The Doctrine of Equivalents

For there to be infringement under the doctrine of equivalents, the accused product must embody every limitation of a claim, either literally or by an equivalent. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 41 (1997). An element is equivalent if the differences between the element and the claim limitation are "insubstantial." Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316 (Fed. Cir. 1999). One test used to determine "insubstantiality" is whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation.

11

See Graver Tank & Mfq. Co. v. Linde Air Products Co., 339 U.S.
605, 608 (1950). This test is commonly referred to as the
"function-way-result" test. The mere showing that an accused
product is equivalent overall to the claimed invention is
insufficient to establish infringement under the doctrine of
equivalents. The patent owner has the burden of proving
infringement under the doctrine of equivalents and must meet its
burden by a preponderance of the evidence. See SmithKline
Diagnostics, Inc. v. Helena Lab. Corp., 859 F.2d 878, 889 (Fed.
Cir. 1988) (citations omitted).

Plaintiff maintains that, even if the KBC and BBW products
do not literally infringe the '062 patent, they do so under the
doctrine of equivalents. With regard to the KBC products,
plaintiff contends that

> [a] lotion may be a cleaning composition; the Kao
> defendants do not argue and have not argued that their
> lotions do not have a cleaning effect. Moreover, the
> accused lotions function (by treating unwanted
> substances on the skin to facilitate their removal) in
> the same way (by application to the skin) to achieve
> the same result (cleaning human skin). No reasonable
> juror could conclude that the accused lotions are not
> equivalents of the "cleaning composition" claim element
> called for by claims 6 and 9 of the '062 patent.

(D.I. 290 at 3) Likewise, plaintiff argues that the twenty-seven
BBW products "have a cleaning effect; that they may have other
effects and uses does not alter the fact that they are cleaning
compositions." (D.I. 331 at 5) BBW does not challenge
plaintiff's assertion that nine of its accused products are

12

marketed as cleansers. The remaining eighteen BBW products,
plaintiff contends, "remove unwanted substances from the skin,
such as soap film and dead skin.[14] This ability to remove
unwanted substances from the skin is [a] natural consequence of
the ingredients in these compositions."  (Id.)

Properly construed, claims 6 and 9 of the '062 patent teach
a composition for removing unwanted non-water soluble substances
from the skin. (D.I. 358 at 1-2)  The claimed composition does
so by incorporating at least 5% by volume of the non-water
soluble liquid derived from an orange.  (Id. at 3)  The orange
oil content of the KBC products fails to rise above approximately
0.03%; likewise, none of the BBW products has an orange oil
concentration of more than 1% per volume.  (D.I. 260, ex. J at
14-37)  According to the inventors' own conclusions (as revealed
in the '062 patent), amounts this small would be ineffective at
cleaning substances like "grease, tar, oils, ink, caulking

---

[14]The court notes that, while plaintiff attributes this
conclusion to BBW's corporate designee, Konstantinos M. Lahanas
(see D.I. 331 at 5, citing D.I. 269, ex. E, attach. 3 at 521:12-
522:12), a review of the cited testimony reveals that Lahanas
made no such conclusory statement about the BBW products.
Instead, Lahanas stated that, in order to remove film (left by
bar soaps) from human skin, "you would typically -- future
washings using different products or the simple act of the skin
naturally exfoliating gets rid of it."  (D.I. 269, ex. E, attach.
3 at 521:22)  When asked whether moisturizers would help remove
such film, Lahanas replied that moisturizers with oil "[c]ould
maybe soften that residual film and help it remove.  I could buy
that.  I am conjecturing on that."  (Id. at 522:10)

13

materials, adhesives, sealants, gums, [and] cosmetics" ('062 patent, col. 1, ll. 25-26).[15]

In his expert report supporting plaintiff's allegations of infringement, Christopher T. Rhodes based his conclusion "that orange oil can perform cleaning at levels of 0.01% or lower" entirely on the '485 patent (D.I. 263, ex. 12 at 4), which, as this court has already determined, "does not demonstrate that orange oil, on its own (particularly at quantities as small as 0.01% to 1.0% by volume), is an effective cleaning composition." (D.I. (Claim Construction opinon) at 4-5)  Other than its misplaced reliance on the '485 patent and Rhodes's unsupported statements that he and others of ordinary skill in the art "would . . . have every reason to expect that there will still be cleansing ability" at amounts lower than 5% (D.I. 263, ex. 13 at 166:11-12),[16] plaintiff has cited no extrinsic evidence that

_____

[15]Indeed, the inventors concluded that at least 5% orange oil was required even to effectively remove cosmetics, "although it was preferable to have a cleaning composition having at least 25% by volume of orange oil." ('062 patent, col. 6, ll. 56-61)

[16]In his deposition, Rhodes was asked whether he had "any basis other than [the '485 patent] to believe that orange oil can perform cleaning at levels of 0.01 percent or lower." (D.I. 263, ex. 13 at 159:4-6)  Rhodes replied in the affirmative and listed the '062 patent (which reported "data going down to 5 percent which has still got cleaning properties [though] not as good as [at] higher concentrations"); extrapolation based on his experience "as a scientist who has worked on emulsions [and] skin lotions"; and his "knowledge of the use of surfactants and of solvents, knowing that surfactants in particular are very active even at very low concentrations, and so I know that the limits of the effectiveness of the teachings of the '062 patent are going

14

orange oil is an effective cleanser in amounts of less than 5% by volume. As a result, plaintiff cannot show that the KBC and BBW products, all of which contain much less than 5% orange oil, perform substantially the same function in substantially the same way to obtain substantially the same result as the invention disclosed in the '062 patent.

For the reasons discussed above, the court finds that no genuine issues of material fact remain in the case at bar. Defendants' motions for summary judgment on non-infringement (D.I. 249, 259) are thereby granted, and plaintiff's cross-motions for summary judgment (D.I. 262, 267) are denied.

## V. CONCLUSION

For the reasons stated above, KBC's second motion for summary judgment as to non-infringement is granted and its first motion for summary judgment on that issue is denied as moot. BBW's motion for summary judgment on non-infringement is granted. Plaintiff's motions for summary judgment against both KBC and BBW are denied. An appropriate order shall issue.

---

to be much lower than 5 percent." (Id. at 159:7 to 160:18) Despite Rhodes's assertion that "someone skilled in the art, knowing that you are dealing with an organic solvent, . . . would expect that the cleansing ability would still be demonstrated at lower concentrations of orange oil" (id. at 166:17-22), and that the '485 patent merely confirmed what he already knew ("that the teachings [of the '062 patent] would be useful well below 5 percent") (id. at 161:3-4), neither Rhodes nor plaintiff has produced any quantitative data to support the contention that a compound with less than 5% orange oil can be an **effective** cleanser.

15